UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

SIERRA BOUCHER, LILY ENGEBRECHT,
NATASSIA TUHOVAK, HANNAH WHELAN
and CASSIDY WOOD,

                    Plaintiffs,

        vs.                                                          Case No.
                                                            1:22-cv-00381-CCR

TRUSTEES OF CANISIUS COLLEGE,

                    Defendant.

MEMORANDUM OF LAW IN SUPPORT OF
CANISIUS COLLEGE'S RULE 12(b) MOTION TO DISMISS AND
RULE 56 MOTION FOR SUMMARY JUDGMENT

WARD GREENBERG HELLER & REIDY LLP
1800 Bausch & Lomb Place
Rochester, New York 14604
(585) 454-0700

Thomas S. D'Antonio
Christine M. Naassana
*of counsel*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................ iii

PRELIMINARY STATEMENT ................................................................... 1

STATEMENT OF FACTS ........................................................................... 1

ARGUMENT ............................................................................................... 3

    I.    PLAINTIFFS' TITLE IX CLAIMS ARE TIME-BARRED ....................... 3

        A.  *The Untimely Harassment Claims Arising
            From Plaintiffs' 2019 Reports* ............................................. 3

        B.  *The Hostile Educational Environment
            Claims are Time-Barred* ..................................................... 5

        C.  *The Gender Discrimination
            Claims are Untimely* ........................................................... 5

    II.   TO THE EXTENT PLAINTIFFS PLEAD PRE-ASSAULT CLAIMS,
       THEY ARE UNTIMELY ............................................................. 6

    III.  VARIOUS ADDITIONAL CLAIMS ARE UNTIMELY ........................ 8

        A.  *The Retaliation Claims are Time-Barred* ........................... 8

        B.  *The Common Law Negligence-Based
            Claims Also are Untimely* ................................................... 9

    IV.  THE CONTINUING VIOLATION DOCTRINE DOES NOT
       SAVE ANY OF THE CLAIMS .................................................... 9

    V.   PLAINTIFFS' CLAIMS FAIL ON SUBSTANTIVE
       GROUNDS AS WELL ............................................................... 10

        A.  *The Sexual Harassment and Hostile Educational
            Environment Claims Fail* .................................................... 11

        B.  *Plaintiffs Do Not Plausibly Plead Claims for
            Gender Discrimination* ....................................................... 15

        C.  *Plaintiffs' Pre-Assault Claims Also Fail as a
            Matter of Law* ..................................................................... 17

i

D.  *Plaintiffs Also Fail to State a Title IX Retaliation Claim* .................................................................19

E.  *Plaintiffs Fail to State a Legally Cognizable Claim for Breach of Contract* ..........................................22

F.  *Plaintiffs' Promissory Estoppel Claim Fails as a Matter of Law* ..........................................................24

CONCLUSION.................................................................................................25

### TABLE OF AUTHORITIES

**Cases**            **Page**

*AB v. Rhinebeck Cent. Sch. Dist.*,
  361 F. Supp. 2d 312 (S.D.N.Y. 2005) ................................................................... 5

*Amaya v. Ballyshear LLC*,
  295 F. Supp. 3d 204 (E.D.N.Y. 2018) ................................................................... 8

*Andersen v. Rochester City Sch. Dist.*,
  2011 U.S. Dist. LEXIS 41184 (W.D.N.Y. Apr. 15, 2011) ................................... 19

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986).............................................................................................11

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ..................................................................................... 11, 18

*Bailey v. New York Law Sch.*,
  2021 U.S. App. LEXIS 34926 (2d Cir.) ...............................................................22

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ........................................................................................... 10

*Byrne v. Yale Univ.*,
  450 F. Supp. 3d 105 (D. Conn. 2020) ................................................................. 22

*Curto v. Edmundson*,
  392 F.3d 502 (2d Cir. 2004) ................................................................................. 5

*Cyberchron Corp. v. Calldata Sys. Dev., Inc.*,
  47 F.3d 39 (2d Cir. 1995) ................................................................................... 24

*Davis v. Monroe County Bd. of Educ.*,
  526 U.S. 629 (1999) ...................................................................... 4, 11, 12, 14

*Doe v. Bd. of Educ.*,
  982 F. Supp. 2d 641 (D. Md. 2013) .................................................................... 14

*Doe v. E. Irondequoit Cent. Sch. Dist.*,
  2018 U.S. Dist. LEXIS 76798 (W.D.N.Y. May 7, 2018) ............................... 17, 18

*Doe v. Syracuse Univ.*,
  2020 U.S. Dist. LEXIS 85708 (N.D.N.Y. May 15, 2020) ................................... 24

*Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*,
  837 F. Supp. 2d 162 (S.D.N.Y. 2011) .................................................................23

*Facchetti v. Bridgewater Coll.*,
  175 F. Supp. 3d 627 (W.D. Va. 2016) ................................................................ 14

*Fahs Constr. Grp., Inc. v. Gray*,
  725 F.3d 289 (2d Cir. 2013) ................................................................................ 9

*Faiaz v. Colgate Univ.*,
  64 F. Supp. 3d 336 (N.D.N.Y. 2014)....................................................................22

*Feibleman v. Trs. of Columbia Univ.*,
  2020 U.S. Dist. LEXIS 120835 (S.D.N.Y. July 9, 2020) ................................24, 25

*Fincher v. Depository Trust & Clearing Corp.*,
  604 F.3d 712 (2d Cir. 2010) .......................................................................... 19, 20

*Gant v. Wallingford Bd. of Educ.*,
  195 F.3d 134 (2d Cir. 1999) .............................................................................. 11

*Gebser v. Lago Vista Indep. Sch. Dist.*,
  524 U.S. 274 (1998). ...................................................................... 4, 13, 15

*Irrera v. Humpherys*,
  695 Fed. App'x. 626 (2d Cir. 2017) ..................................................................... 5

*Irrera v. Univ. of Rochester*,
  2016 U.S. Dist. LEXIS 203057 (W.D.N.Y. May 23, 2016) ........................... 3, 9, 21

*JD1 v. Canisius Coll.*,
  2022 U.S. Dist. LEXIS 113451 (W.D.N.Y. June 27, 2022) ............................. 6, 17

*Karasek v. Regents of the Univ. of Cal.*,
  500 F. Supp. 3d 967 (N.D. Cal. 2020) ..................................................................6

*Kelley v. Ithaca Coll.*,
  2019 U.S. Dist. LEXIS 102636 (N.D.N.Y. June 18, 2019) ....................... 3, 5, 9, 10

*Kelly v. Yale Univ.*,
  2003 U.S. Dist. LEXIS 4543 (D. Conn. Mar. 26, 2003) ........................................22

*Kerzhner v. G4S Govt. Solutions, Inc.*,
  138 A.D.3d 564 (1st Dep't 2016) ........................................................................ 9

*KF v. Monroe Woodbury Cent. Sch. Dist.*,
  2012 U.S. Dist. LEXIS 60341 (S.D.N.Y. Apr. 30, 2012) ............................... 12, 14

*Knelman v. Middlebury Coll.*,
  898 F. Supp. 2d 697 (D. Vt. 2012) .....................................................................22

iv

*Kollaritsch v. Michigan State Univ. Bd. of Trs.*,
  944 F.3d 613 (6th Cir. 2019) ................................................ 13

*Marshall v. Hyundai Motor America*,
  51 F. Supp. 3d 451 (S.D.N.Y. 2014) ....................................23

*MatlinPatterson ATA Holdings LLC v. Fed. Express Corp.*,
  87 A.D.3d 836 (1st Dep't 2011) ............................................24

*McGullam v. Cedar Graphics, Inc.*,
  609 F.3d 70 (2d Cir. 2010)......................................................5

*Murphy v. Neuberger*,
  1996 U.S. Dist. LEXIS 11164 (S.D.N.Y.) ............................23

*Noakes v. Syracuse Univ.*,
  369 F. Supp. 3d 397 (N.D.N.Y. 2019)...................................22

*Nungesser v. Columbia Univ.*,
  169 F. Supp. 3d 353 (S.D.N.Y. 2016) ....................... 15, 16, 22, 23, 24

*Oncale v. Sundowner Offshore Servs., Inc.*,
  523 U.S. 75 (1998) ................................................................ 16

*Papelino v. Albany Coll. of Pharm. of Union Univ.*,
  633 F.3d 81 (2d Cir. 2011) ........................... 4, 5, 11, 12, 15, 19

*Posso v. Niagara Univ.*,
  2020 U.S. Dist. LEXIS 205260 (W.D.N.Y. Nov. 2, 2020) ................. 13

*Posso v. Niagara Univ.*,
  518 F. Supp. 3d 688 (W.D.N.Y. 2021)...............................17, 18, 22

*Pruesser v. Taconic Hills Cent. Sch. Dist.*,
  2013 U.S. Dist. LEXIS 7057 (S.D.N.Y. Jan. 7, 2013) ........................ 12

*Purcell v. New York Inst. of Tech.*,
  931 F.3d 59 (2d Cir. 2019) ................................................... 3

*Rivas v. New York State Lottery*,
  745 F. App'x 192, 193 (2d Cir. 2018)................................. 9, 10

*Rochester-Genesee Reg'l Transp. Auth. v. Cummins, Inc.*,
  2010 U.S. Dist. LEXIS 75805 (W.D.N.Y. July 28, 2010) ................. 23

*Roskin-Frazee v. Columbia Univ.*,
  2018 U.S. Dist. LEXIS 28937 (S.D.N.Y. Feb. 21, 2018) ............... 11, 14

*Scavo v. CMA CGM S.A.*,
   2021 U.S. Dist. LEXIS 42062 (S.D.N.Y. Mar. 4, 2021) ........................................ 11

*Sharon B. v. Reverend S.*,
   244 A.D.2d 878 (4th Dep't 1997) ............................................................................ 9

*Smith v. New York City Dep't of Educ.*,
   2011 U.S. Dist. LEXIS 125069 (S.D.N.Y. Oct. 28, 2011) ...................................... 8

*Sutton v. Stony Brook Univ.*,
   2020 U.S. Dist. LEXIS 206999 (E.D.N.Y. Nov. 5. 2020) ............................... 15, 16

*Thomlison v. Sharp Elecs. Corp.*,
    2000 U.S. Dist. LEXIS 18979 (S.D.N.Y.) ............................................................ 19

*Tubbs v. Stony Brook Univ.*,
   343 F. Supp. 3d 292 (S.D.N.Y. 2018) ............................................................. 12, 14

*Twersky v. Yeshiva Univ.*,
   993 F. Supp. 429 (S.D.N.Y.) ................................................................... 3, 4, 6

*Ward v. New York Univ.*,
   2000 U.S. Dist. LEXIS 14067 (S.D.N.Y. Sept. 28, 2000) ..................................... 24

*Williams v. Columbia Univ.*,
   2012 U.S. Dist. LEXIS 130358 (S.D.N.Y. Aug. 8, 2012) ............................... 19, 20

*Yusuf v. Vassar Coll.*,
   35 F.3d 709 (2d Cir. 1994) ..................................................................................... 15

*Zamora v. N. Salem Cent. Sch. Dist.*,
   414 F. Supp. 2d 418 (S.D.N.Y. 2006) .................................................................... 17

## **Statutes**

Fed. R. Civ. P. Rule 12(b)(6) ................................................................................1, 10

Fed. R. Civ. P. Rule 56 ...........................................................................................1, 11

New York Civ. Prac. L. & R. 214(5) (McKinney's 2019 & Supp 2022) .......................9

## **Regulations**

34 C.F.R. § 106.45 ......................................................................................................14

## **Agency Guidance**

United States Department of Education, Office for Civil Rights, *Revised Sexual Harassment Guidance*, 2001 .................................................................................................................13

## PRELIMINARY STATEMENT

Defendant Canisius College seeks dismissal, pursuant to Federal Rules 12(b)(6) and 56, of all claims asserted in plaintiffs' Complaint, because those claims are untimely, legally insufficient, or both. Plaintiffs' conclusory and implausible allegations, and the instant motion Record, mandate that the requested dismissal issue, and that the Complaint be dismissed, with prejudice.

## STATEMENT OF FACTS

The salient facts are set forth in the accompanying Declaration of Linda Walleshauser, which supplements numerous generalized and internally inconsistent allegations in plaintiffs' lengthy Complaint. Those facts will be summarized briefly here, and will be discussed in more granular fashion below.

Plaintiffs were enrolled at Canisius College during the 2018-19 academic year. In January 2019, several of them accompanied Professor Michael Noonan, a long-serving, tenured faculty member, on a research trip to India. Upon their return to campus, in late January 2019, one of the plaintiffs voiced concerns about certain behaviors of Professor Noonan that she considered objectionable and troubling. She was directed to the College's Title IX Office, and she submitted a written complaint on February 7. Ultimately she and seven other female undergraduates met with the Title IX Coordinator, Linda Walleshauser, early in the morning on February 11. At that time, they reported several alleged acts of Professor Noonan's, including:

- Inappropriate touching, by having female students assist him in stretching his leg;
- Adjusting clothing of female students, such as tucking in bra straps at the shoulder area or assisting with microphone placements prior to video recordings;
- Braiding the hair of certain female students;
- Discussing the process of using suppositories or enemas to assist students suffering from digestive difficulties on overseas trips, and offering to assist students with the placement and insertion of these health aids;
- Inappropriate discussions of the romantic lives of students, and occasional discussions of his own romantic life;
- Commenting about student appearances, and occasionally demeaning students; and

- Showing cultural insensitivity to certain members of the local citizenry on the India trip that recently had concluded.

*See generally* Walleshauser Dec. at ¶¶ 3-9; Complaint, ¶¶ 120, 159, 222, 244, 306, 321, 356. Agreeing these reports were disturbing, between February 11 and 13 Ms. Walleshauser individually interviewed each student, and solicited written statements from them. She also immediately notified others in College leadership, leading to a decision, on February 14, 2019, that Professor Noonan be suspended pending completion of a thorough investigation. Because he was traveling and away from campus through February 21—and would not be in communication with any students—Canisius set a meeting with him for February 21, the day of his return. In the interim, it arranged for alternate instructors to cover his classes, and for faculty to assist with ongoing research projects and similar academic activities. Walleshauser Dec. at ¶¶ 10-16.

On February 21, Professor Noonan was notified of the allegations; he also was notified of his suspension, told he must leave campus, told he must not contact any students during the time he was suspended, and warned of the consequences if he engaged in any act of retaliation. Thereafter he retired from Canisius, effective June 1, 2019, but at no point from February 14, 2019 (3 days after the students met with Ms. Walleshauser) onward did Professor Noonan interact with any Canisius student, in any way, for any purpose. Walleshauser Dec. at ¶¶ 17-18, 26-31. And there is no allegation that Professor Noonan harassed plaintiffs, or anyone else, at any point after he returned from the India trip in January 2019.

In late May 2022—more than three years after the suspension commenced, this action was filed. The bulk of the claims, however, are subject to a three-year limitations period which expired, at the latest, in February 2022. Those claims all are time-barred, and all claims also are substantively meritless. The instant motion therefore in all respects should be granted.

<u>ARGUMENT</u>

The bulk of plaintiffs' claims are governed by a three year limitations period. Those claims accrued, at the latest, in February 2019; to be timely, the claims had to be interposed by February 2022. The Complaint was not filed until May 20, 2022, rendering the claims time-barred. Even had they been timely interposed (they were not), the claims each fail substantively, for a host of reasons articulated below. The Complaint therefore should be dismissed, with prejudice.

## I.   PLAINTIFFS' TITLE IX CLAIMS ARE TIME-BARRED

Plaintiffs' theory of Title IX liability is premised upon alleged acts of sexual harassment on the part of Professor Michael Noonan, purportedly occurring at various times between October 2016 and January 2019. *See* Complaint ¶¶ 51, 189. These claims all are untimely.

### A.   *The Untimely Harassment Claims Arising From Plaintiffs' 2019 Reports*

Title IX claims are governed by a three-year statute of limitations. *Purcell v. New York Inst. of Tech.*, 931 F.3d 59, 62-63 (2d Cir. 2019). In assessing the timeliness of such claims, the Second Circuit applies the general accrual rule, whereby claims accrue when plaintiff has "a complete and present cause of action." *Twersky v. Yeshiva Univ.*, 993 F. Supp. 429, 437 (S.D.N.Y.), *aff'd*, 579 F. App'x 7, 9 (2d Cir. 2014); *Irrera v. Univ. of Rochester*, 2016 U.S. Dist. LEXIS 203057, at *6 (W.D.N.Y. May 23, 2016). Post-harassment deliberate indifference claims accrue—at the *latest*— when those claims first come "into existence"—*i.e.*, when the College allegedly (1) has notice of severe sexual harassment, but (2) fails to respond in a reasonable manner. *See, e.g.*, *Kelley v. Ithaca Coll.*, 2019 U.S. Dist. LEXIS 102636, at *16-17 (N.D.N.Y. June 18, 2019); *Irrera*, 2016 U.S. Dist. LEXIS 203057, at *7.

The Second Circuit, describing the types of actions (or inactions) that could be characterized as "deliberately indifferent," identified extreme circumstances such as defendant's refusal to "take

any action in response" to known misbehavior, failure to investigate or to take similar steps aimed at "put[ting] an end to the harassment," or refusals to "take action to bring the recipient [institution] into compliance." *Papelino v. Albany Coll. of Pharm. of Union Univ.*, 633 F.3d 81, 90 (2d Cir. 2011) (quoting *Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 621, 651, 654 (1999) and *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998)).

Here, plaintiffs' deliberate indifference sexual harassment claims accrued, at the latest, in February 2019, when they allege that they reported Professor Noonan's harassment to the Title IX Office, and when plaintiffs themselves admit that the College removed Professor Noonan from campus, and prohibited him from contacting any student at Canisius. Complaint, ¶¶ 16, 20, 58, 59; *see also* Walleshauser Dec. at ¶¶ 8-17; Exhibit A.

The College's decision to remove the professor from student contact of any sort, within days of receipt of the students' complaints, without question "put an end to the harassment." *Papelino*, 633 F.3d at 90 (quoting *Davis*, 526 U.S. at 651). Indeed, no plaintiff alleges that she had any contact whatsoever with Professor Noonan, at any time or for any reason, after February 2019, and the College thereafter thoroughly investigated the allegations and took active measures to ensure that the professor had no further role on campus. Walleshauser Dec. at ¶¶ 13-18, 31.

Simply stated, no plaintiff alleges that any act of harassment occurred after the February 2019 reports were made to the Title IX Office, and the Record before this Court definitively establishes this as fact. To be timely, however, the claims must have accrued on or after May 20, 2019— within the three-year window prior to the filing of this suit. *See*, *e.g.*, *Twersky*, 579 Fed. App'x. at 10. Plaintiffs' Title IX deliberate indifference claims therefore are time-barred.

4

### B. *The Hostile Educational Environment Claims Are Time-Barred*

A plaintiff may not interpose a hostile educational environment claim premised upon acts occurring outside the limitations period, unless at least one of the acts occurred *within* three years of the filing of the Complaint. *Papelino* 633 F.3d at 90 (2d Cir. 2011) (collecting cases); *accord*, *AB v. Rhinebeck Cent. Sch. Dist.*, 361 F. Supp. 2d 312, 314-16 (S.D.N.Y. 2005). Here, Professor Noonan was barred from campus, and barred from contacting any plaintiff or any other Canisius student, as of February 2019. Walleshauser Dec. at ¶¶ 13-18. On the face of the Complaint, moreover, the last alleged act of sexual harassment occurred on the trip to India led by Professor Noonan, which concluded in January 2019. Complaint, ¶ 51. Plaintiffs' hostile environment claim, filed more than three years after the last of the allegedly hostile acts occurred, is untimely.[1]

### C. *The Gender Discrimination Claims are Untimely*

Similarly, a plaintiff may pursue a claim for deliberate indifference to gender-based discrimination only if suit is filed prior to the expiration of the governing three-year statute of limitations for gender discrimination. *Curto v. Edmundson*, 392 F.3d 502, 503-04 (2d Cir. 2004); *Kelley*, 2019 U.S. Dist. LEXIS 102636, at *16-17. Here, plaintiffs allege that they reported Professor Noonan's "gender-based misconduct" in February 2019, and they further allege dissatisfaction with the College's response to those reports at that time. Complaint, ¶¶ 16, 19. Any purported claim for gender discrimination thus expired, at the latest, in February 2022, and claims for gender-based misconduct should be dismissed on timeliness grounds as well.

---

[1] Indeed, even if a sexually offensive incident occurs within the limitations period, prior incidents will be considered "only if the incidents are sufficiently related." *Irrera v. Humpherys*, 695 Fed. App'x. 626, 629 (2d Cir. 2017) (citing *McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70, 77 (2d Cir. 2010). Here, no incident is alleged to have occurred on or after May 20, 2019, dispensing with any need to consider the "sufficient relationship" question. But if considered, it is plain that the individualized incidents alleged by plaintiffs are discrete, and thus not "sufficiently related."

## II.     TO THE EXTENT PLAINTIFFS PLEAD PRE-ASSAULT CLAIMS, THEY ARE UNTIMELY

Plaintiffs do not explicitly plead a claim for pre-assault deliberate indifference, and to be clear the Complaint does not plead that Professor Noonan was alleged to have assaulted any plaintiff, or anyone else. But even had plaintiffs attempted to assert a pre-assault claim, it would not survive.

The Second Circuit's general accrual rule dictates that any pre-assault claim accrued, at the latest, in the Fall of 2018, when plaintiff Tuhovak alleges the College had notice of her generalized reports of Professor Noonan's "verbal and emotional abuse" and "sexist, abusive behavior." *See id.*, ¶¶ 253, 258; *see also Twersky*, 579 F. App'x at 9. Claims stemming from this report would be untimely unless filed by Fall 2021, well before the instant action was commenced.

Even under the potentially more expansive "discovery accrual" rule, where a pre-assault claim would accrue when the plaintiffs knew or had reason to know of a school's policy of deliberate indifference creating a heightened risk of harassment, the claim still fails. The discovery accrual rule requires plaintiffs to have "notice not just of the concrete injury but of its cause—and the 'cause' for purposes of a pre-assault claim 'is the school's alleged policy, not just the assault itself.'" *JD1 v. Canisius Coll.*, 2022 U.S. Dist. LEXIS 113451, at *35 (W.D.N.Y. June 27, 2022) (quoting *Karasek v. Regents of the Univ. of Cal.*, 500 F. Supp. 3d 967, 979 (N.D. Cal. 2020)). But as soon as plaintiffs are aware of facts that either reasonably establish or reasonably negate the existence of such alleged policy of deliberate indifference, the claim accrues. Here, on the face of the Complaint plaintiffs plead multiple instances, all well prior to May 20, 2019, when each had reason to know of a purported policy of deliberate indifference[2] to reports of sexual misconduct:

- Plaintiff Boucher, in the Fall of 2018, "believed that Canisius condoned Noonan's behavior" when Professor Andrew Stewart and other students allegedly "suggested to

---

[2] The College in no way concedes that it was ever deliberately indifferent to a report of sexual misconduct. But the cited allegations evince each plaintiff's purported *belief* that the College maintained a policy of indifference, all well outside the applicable limitations period.

6

Boucher that Canisius knew about Noonan's inappropriate conduct," but Professor Noonan "was permitted to continue teaching at the College" (Complaint, ¶ 108);

- Plaintiff Tuhovak, also in the Fall of 2018, claimed she felt "extremely discouraged and unsupported" by the "College's inaction" after she reported Professor Noonan's "mistreatment" to Professor Susan Margulis (*id.*, ¶¶ 257, 258);

- Plaintiff Wood alleged she learned, in January 2019, that "women students and staff had complained about [Professor Noonan's] conduct in the past to the College, but Canisius never found a 'significant violation' of the rules and nothing ever came of those complaints" (*id.*, ¶ 368);

- Plaintiff Whelan's "alarms started going off in her head" in January 2019, because "she realized that Professor Noonan's conduct could be motivated by some sort of infatuation and seemed to be part of a pattern of misbehavior toward young women at the College" (*id.*, ¶ 313). When she made her report about him in February 2019 to the Title IX Office, however, she "believed that [the Title IX coordinator] was trying to excuse Noonan's misconduct" (*id.*, ¶ 339);

- All five plaintiffs claim they "continued working for and studying under Noonan for four (4) weeks after they came forward with their Title IX complaints about him [in late January 2019 or early February 2019], all the time unaware as to whether Noonan had been notified of their claims, and fearing he would lash out at them once he did find out" (*id.*, ¶¶ 16, 19, 64, 428).

Equally significant, both the Complaint and the motion Record establish that, well prior to May 20, 2019, plaintiffs had affirmative reason to know that Canisius *did not* maintain a policy of deliberate indifference to alleged instances of harassment, based upon their personal experiences:

- Plaintiff Tuhovak reported concerns about Professor Noonan to the Title IX Office on Thursday evening, February 7, and referenced concerns of others Friday, February 8;

- The Title IX Coordinator, who was off campus those days, arranged to meet personally with the students early in the morning on Monday, February 11, 2019;

- After receipt of written reports from eight students on February 12 and 13, the College leadership determined on February 14, 2019 that it would place Professor Noonan on involuntary suspension, relieve him of teaching and other academic responsibilities, and direct that he not contact Canisius students in any way, and the students were notified on February 15 that an investigation was underway;

- Because Professor Noonan was out of the area on February 14, and not scheduled to return to campus until February 21, a meeting was scheduled with him for February 21. The College used this period to identify alternative instructors to teach Professor

Noonan's assigned classes for the Spring 2019 semester; to ensure that students would have access to pertinent research materials that had been developed with Professor Noonan; and to designate alternate faculty members to collaborate with impacted students. These alternative academic supports were all in place as of February 2019;

- At the February 21, 2019 meeting, attended by Professor Noonan, the College's Title IX Coordinator and its Vice President for Academic Affairs, he was notified he was being suspended for an indefinite period, he was told to have "no contact" with students, and he was informed about the College's prohibition against retaliation; and

- At no time after February 14, 2019 did Professor Noonan teach a class, oversee a research project, or to the College's knowledge have any contact whatsoever with any plaintiff, or any other Canisius student.

*See* Walleshauser Dec. at ¶¶ 6-26, 31. While plaintiffs were not specifically informed of all details of what was at that time a confidential and ongoing investigation involving a tenured member of the faculty, they affirmatively allege they were aware that "at the end of February 2019" the College had removed Professor Noonan from campus, and prohibited him from contacting anyone at Canisius. Complaint, ¶ 20. They make no claim of any contact with Professor Noonan, moreover, from late February 2019 to this very day. Simply stated, all pre-assault claims accrued, at the latest, in February 2019, and such claims, filed in May 2022, are time-barred.

### III.   VARIOUS ADDITIONAL CLAIMS ARE UNTIMELY

#### A.   *The Retaliation Claims are Time-Barred*

Claims for unlawful retaliation accrue as of the date of the allegedly retaliatory act. *Smith v. New York City Dep't of Educ.*, 2011 U.S. Dist. LEXIS 125069, at * 11-12 (S.D.N.Y. Oct. 28, 2011) (collecting cases); *Amaya v. Ballyshear LLC*, 295 F. Supp. 3d 204, 219 (E.D.N.Y. 2018). Plaintiffs fail to specify any precise adverse action, let alone a date that retaliatory act purportedly occurred. However, the gravamen of their claim is that the College allegedly retaliated by failing to remove Professor Noonan from the campus, and from their academic universes, "as soon as" every plaintiff had reported his misconduct (*see* Complaint, ¶ 428(c)), and by failing to take a number of

precautionary actions after those early 2019 reports. *Id.*, ¶ 428(a)-(i). The retaliation claims thus accrued, at the latest, as of the date Professor Noonan was removed from campus and barred from student contact, which also occurred in February 2019. The retaliation claims are untimely.

## B. *The Common Law Negligence-Based Claims Also are Untimely*

Common law negligent retention and supervision claims are governed by a three-year limitations period as well. *See* New York Civ. Prac. L. & R. 214(5) (McKinney's 2019 & Supp. 2022); *Sharon B. v. Reverend S.*, 244 A.D.2d 878, 879 (4th Dep't 1997); *see also Kerzhner v. G4S Govt. Solutions, Inc.*, 138 A.D.3d 564, 565 (1st Dep't 2016). Here, the last act of alleged misconduct by Professor Noonan occurred on the "last CAC trip to India in January 2019." *See* Complaint, ¶¶ 51, 52. Plaintiffs' negligent retention and supervision claim, interposed over three years later, is thus barred by the applicable statute of limitations. Count VI should be dismissed.

## IV.   THE CONTINUING VIOLATION DOCTRINE DOES NOT SAVE ANY OF THE CLAIMS

Plaintiffs appear to rely upon the "continuing violation" doctrine to avoid dismissal on timeliness grounds. *See* Complaint, ¶¶ 404, 415. But the Complaint falls well short of the high standard required to properly invoke the continuous violation doctrine, which is "disfavored" and may apply only in "compelling circumstances." *Kelley*, 2019 U.S. Dist. LEXIS 102636, at *18, 24 (N.D.N.Y.) (collecting cases and noting courts in the Second Circuit are "loath" to apply the doctrine); *see also Irrera*, 2016 U.S. Dist. LEXIS 203057, at *8.

As a foundational matter, to invoke the disfavored doctrine, plaintiffs "must allege *both* the existence of an ongoing policy of discrimination *and some non-time-barred acts taken in furtherance of that policy.*" *Kelley*, 2019 U.S. Dist. LEXIS 102636, at *19 (emphasis supplied) (citing *Rivas v. New York State Lottery*, 745 F. App'x 192, 193 (2d Cir. 2018) and *Fahs Constr. Grp., Inc. v. Gray*, 725 F.3d 289, 292 (2d Cir. 2013)). Moreover, the doctrine has no application

to "discrete unlawful acts, even if the discrete acts were undertaken pursuant to a general policy that results in other discrete acts occurring within the limitations period," and even where the incidents of discrimination are "similar ones" but "not the result of a discriminatory policy or mechanism." *Kelley*, 2019 U.S. Dist. LEXIS 102636, at *19 (court refused to apply doctrine where complaint was "replete with allegations of separate and discrete acts that culminated" in college crew team member's constructive separation from the team).

The Complaint in this case also is devoid of any allegation of a "non-time-barred act" of harassment or discrimination after the India trip concluded, in January 2019. *See* Complaint, ¶¶ 16, 51, 52; *see also Rivas*, 745 F. App'x at 193; *Kelley*, 2019 U.S. Dist. LEXIS 102636, at *19. And Professor Noonan, who is the sole alleged source of plaintiffs' purported mistreatment, was removed from campus (and from any potential interaction with plaintiffs) in February 2019. *Id.*, ¶ 20. Thus, no allegedly actionable event occurred on or after May 20, 2019.

In addition, the acts alleged by plaintiffs were individual, discrete acts of alleged misconduct on the professor's part, which separately precludes application of the doctrine. *See* Complaint, ¶¶ 159, 222, 321, 356; *see also Kelley*, 2019 U.S. Dist. LEXIS 102636, at *20 ("[e]ach [discrete] discriminatory act starts a new clock for filing [a claim] alleging that act"). Accordingly, plaintiffs have pleaded no plausible basis for application of the continuing violation doctrine, or to otherwise revive claims that plainly are time-barred. Plaintiffs' challenged claims, set forth in Counts I through III and in Count VI of the Complaint, thus should be dismissed as untimely.

## V. PLAINTIFFS' CLAIMS FAIL ON SUBSTANTIVE GROUNDS AS WELL

To survive a Rule 12(b)(6) motion, a complaint must include particular factual allegations sufficient to state a plausible claim for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007). A claim is facially plausible when the facts pleaded allow the court to reasonably infer that

defendant is liable for the misconduct alleged. *Id.* at 556. There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Conclusory statements, speculation, legal conclusions, or other non-factual matter cannot support an actionable claim, *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009), and if plaintiffs cannot "nudge their claims across the line" from conceivable to plausible, a court will dismiss. *Id.* at 680.

Moreover, under Rule 56 the allegations will not be entitled to any such presumption. Instead, "a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading," but instead must submit "enough evidence…[so] that a jury could return a verdict in its favor." *Scavo v. CMA CGM S.A.*, 2021 U.S. Dist. LEXIS 42062 (E.D.N.Y. Mar. 4, 2021) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

### A.  *The Sexual Harassment and Hostile Educational Environment Claims Fail*

In *Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 644-45 (1999), the Supreme Court explained the "limited circumstances" in which a college may face institutional Title IX liability for sexual misconduct. Courts consistently apply the *Davis* framework in assessing the potential institutional liability arising from alleged faculty-on-student misconduct. *Papelino*, 633 F.3d at 88-89. To state a claim, plaintiff must plausibly allege: (1) harassment or misconduct that is "sexual" in nature; (2) actual notice to the college of acts of harassment "so severe, pervasive, *and* objectively offensive" that it effectively barred complainants from access to educational opportunities; and (3) an institutional response that was "clearly unreasonable in light of the known circumstances." *Davis*, 526 U.S. at 633, 648, 650, 651; *accord*, *Roskin-Frazee v. Columbia Univ.*, 2018 U.S. Dist. LEXIS 28937, at *11 (S.D.N.Y. Feb. 21, 2018).

The obligation of the college is to "merely respond to known…harassment in a manner that is not clearly unreasonable." *Davis*, 526 U.S. at 649; *accord*, *Gant v. Wallingford Bd. of Educ.*, 195

F.3d 134, 141 (2d Cir. 1999). A school fails to respond adequately only where it provides no response, or offers a response evincing "deliberate indifference to discrimination." *Papelino*, 633 F.3d at 89. This standard essentially "requires recklessness." *Tubbs v. Stony Brook Univ.*, 343 F. Supp. 3d 292, 309-10 (S.D.N.Y. 2018) (emphasis supplied) (quoting *Davis*, 526 U.S. at 643). Courts, moreover, will require both clear unreasonableness *and* actual knowledge before liability under Title IX may attach. *Roskin-Frazee*, 2018 U.S. Dist. LEXIS 28937, at *11, 12 (both prongs of the test "have real meaning," and courts will assess both prongs "as a matter of law").

Even where an educational institution is on actual notice of alleged sexual harassment, it "is not required to proceed in a particular manner, even if there are policies in place that would appear to require the initiation of a formal investigation." *KF v. Monroe Woodbury Cent. Sch. Dist.*, 2012 U.S. Dist. LEXIS 60341, at *22-23 (S.D.N.Y. Apr. 30, 2012); *accord*, *Pruesser v. Taconic Hills Cent. Sch. Dist.*, 2013 U.S. Dist. LEXIS 7057, at *32 (S.D.N.Y. Jan. 7, 2013). The Supreme Court also has expressly rejected any notion that any particular corrective action is required when responding to an incident of harassment. *Davis,* 526 U.S. at 648 (rejecting contention that school district "must immediately suspend or expel a student accused of sexual harassment").

Here, neither plaintiffs' allegations nor the motion Record support a Title IX claim under the "recklessness" and "clearly unreasonable" framework dictated by *Davis* and its Second Circuit progeny. Virtually immediately after several students, including plaintiffs, reported Professor Noonan's harassment to the Title IX Office, Canisius placed Professor Noonan on involuntary suspension pending investigation, to eliminate the possibility of further misconduct, and prohibit his interaction with plaintiffs and other Canisius students. Complaint, ¶¶ 16, 20, 58, 59, 66; Walleshauser Dec. at ¶¶ 8-18; Exhibit A. Despite this prompt preventative response, plaintiffs— incredulously—assert that Canisius "fail[ed] to take remedial action" and "did nothing" to stop

12

Professor Noonan's conduct. *Id.*, ¶¶ 1, 402. This allegation is not simply implausible; it is demonstrably false. *See* Walleshauser Dec. ¶¶ 3-31.

The Complaint also is devoid of any allegation that plaintiffs faced further harassment or hostility after their reports were brought to the Title IX Office. This is fatal to their Title IX-based claims. *See, e.g.*, *Posso v. Niagara Univ.*, 2020 U.S. Dist. LEXIS 205260, at *30-31 (W.D.N.Y. Nov. 2, 2020) (recommending dismissal of deliberate indifference claim where plaintiffs failed to plead "further severe, pervasive, or objectively offensive conduct" after reporting assault); *Kollaritsch v. Michigan State Univ. Bd. of Trs.*, 944 F.3d 613, 623-25 (6th Cir. 2019) (same).

The College's swift actions amply fulfilled its Title IX obligation to eliminate the alleged harassment, and prevent its recurrence. *See Gebser*, 524 U.S. at 287 (policies underlying Title IX seek primarily to put an end to discriminatory practices rather than compensate harassment victims). Emphasizing the goal of eliminating the harassment and equalizing the educational opportunities irrespective of gender, the United States Department of Education's Office for Civil Rights has explained: "As long as the school, upon notice of the harassment, responds by taking prompt and effective action to end the harassment and prevent its recurrence, the school has carried out its responsibility under the Title IX regulations." *See* United States Department of Education, Office for Civil Rights, *Revised Sexual Harassment Guidance*, 2001, at 12.[3]

Furthermore, to the extent plaintiffs allege Canisius never provided "any specific overview of the College's Title IX process, which Plaintiffs and the other women complainants repeatedly asked for" (*see* Complaint, ¶¶ 22-24, 61), such allegations are unfounded, and in all events do not support a cognizable deliberate indifference claim. At all relevant times, continuing to this day,

---

[3] The Department of Education's Title IX regulations effective August 14, 2020 rescinded this 2001 guidance, but it was in effect during the entire time period relevant to this action. (*See* https://www2.ed.gov/about/offices/list/ocr/docs/shguide.html [last visited July 22, 2022]).

Canisius students are given an overview of the Title IX process and procedures at orientation and other appropriate times; moreover, the entire Sexual and Gender-Based Misconduct Policy is posted on the College website. Walleshauser Dec. at ¶ 10 and text note 1. Even were it not, a failure to inform a student of the details of the Title IX process constitutes, at most, conduct falling far short of Title IX's "clearly unreasonable" or "recklessness" standards. *Roskin-Frazee*, 2018 U.S. Dist. LEXIS 28937, at *23 ("Even if the failure to inform Plaintiff of her Title IX rights violated university policy, such violation alone would be insufficient to establish deliberate indifference"); *see also Facchetti v. Bridgewater Coll.*, 175 F. Supp. 3d 627, 638 (W.D. Va. 2016) (Ample authority holds "neither a school's negligence in addressing a sexual assault, nor its failure to provide the remedy wanted by the victim," constitutes deliberate indifference) (collecting cases).

Moreover, upon Professor Noonan's retirement (effective June 1, 2019), the internal complaints properly were dismissed, as "the [employee]-respondent is no longer…employed by" the College, 34 C.F.R. § 106.45(3)(ii), and the most severe sanction under the Title IX process—permanent separation from the campus—had been effected. Plaintiffs' allegations that Canisius "never issued an investigative report" and never shared the outcome of their investigation are thus entirely irrelevant to a deliberate indifference analysis.

Finally, to the extent that the College failed to grant the precise relief they would have preferred, or briefed them on the schedule they desired, such claims are insufficient to support a deliberate indifference claim. The law is plain that a college's response is not clearly unreasonable simply because the victim advocated for stronger remedial measures. *See Tubbs*, 343 F. Supp. 3d at 316-17; *see also KF v. Monroe Woodbury Cent. Sch. Dist.*, 531 Fed. App'x. 132, 134 (2d Cir. 2013); *Doe v. Bd. of Educ.,* 982 F. Supp. 2d 641, 657 (D. Md. 2013) (Title IX plaintiffs lack the "right to make particular remedial demands") (quoting *Davis*, 526 U.S. at 648). Even if timely

14

(which they are not) plaintiffs' claims premised upon a deliberate indifference theory are substantively meritless. They should be dismissed.

**B.   *Plaintiffs Do Not Plausibly Plead Claims for Gender Discrimination***

A plaintiff establishes a *prima facie* Title IX gender discrimination claim by showing: (1) she was subjected to discrimination in an educational program; (2) the program receives federal assistance; and (3) the discrimination was based on sex. *Sutton v. Stony Brook Univ.*, 2020 U.S. Dist. LEXIS 206999, at *18 (E.D.N.Y. Nov. 5. 2020); *Nungesser v. Columbia Univ.*, 169 F. Supp. 3d 353, 363 (S.D.N.Y. 2016). To survive dismissal, plaintiff also must specifically allege the events claimed to constitute intentional discrimination, as well as circumstances giving rise to a plausible inference of discriminatory intent based on gender. *Yusuf v. Vassar Coll.*, 35 F.3d 709, 713 (2d Cir. 1994); *Sutton*, 2020 U.S. Dist. LEXIS 206999, at *19. Finally, plaintiff must plausibly plead that an official who has authority to address the alleged discrimination and to institute corrective measures on the university's behalf has actual knowledge of the discrimination, but fails to adequately respond. *Gebser*, 524, U.S. at 290; *Papelino*, 633 F.3d at 89.

As an initial dispositive matter, plaintiffs' own allegations completely contradict their gender discrimination theory. They allege in most conclusory fashion that Canisius subjected them to "different treatment on the basis of their gender," and that they "were treated differently and less favorably than similarly-situated male students." Complaint, ¶ 410. However, plaintiffs then explicitly allege that "Noonan reserved his most abusive behavior for *male students*." *Id.*, ¶ 380 (emphasis supplied). As particular examples of the professor's alleged favoritism *toward women and against men*, plaintiffs allege "Noonan's tendency to treat women students better than their male counterparts was so obvious that some male students complained about getting lower grades and being passed over" for trips. *Id.*, ¶ 381. Equally importantly, plaintiffs do not identify any

particular male students who were treated *more favorably* than plaintiffs, which is the *sine qua non* of a viable gender bias claim.  The absence of this critical allegation, and plaintiffs' otherwise illogical and contradictory allegations, are fatal to their gender discrimination claims. *See Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998) (Critical issue is "whether members of one sex are exposed to disadvantageous terms or conditions" to which other sex is not).

The Complaint, moreover, fails to plead facts giving rise to a plausible inference that Professor Noonan's alleged actions were *motivated* by gender. Plaintiffs cannot under the law presuppose that because their allegations against Professor Noonan concern instances of purported sexual harassment, everything that follows is "gender-based." *See Sutton*, 2020 U.S. Dist. LEXIS 206999, at *19-20; *accord*, *Nungesser*, 169 F. Supp. 3d at 364-67 (dismissing Title IX gender discrimination claim against university where "Sulkowicz's activism was aimed at Nungesser it was because of *his conduct* toward her…not because of *his status* as a male") (emphasis original). Any "gender-based misconduct" plaintiffs allege arose from Professor Noonan's purported harassment, but nothing about those circumstances suggests *his* gender-based bias or animus.

Finally, plaintiffs fail to plausibly plead that the College failed to adequately respond to their misconduct reports, and the motion Record thoroughly undercuts their ability to assert such a claim. Conclusory allegations that Canisius failed to "respond to" or "appropriately resolve instances of gender discrimination" are belied by the College's swift removal of Professor Noonan from any contact with plaintiffs, literally within days of their reports. Walleshauser Dec. at ¶¶ 8-18, Exhibit A; Complaint, ¶¶ 16, 20, 412. Thus, even had plaintiffs' gender bias claims been timely asserted (they were not), the claims fail substantively for several reasons, and should be dismissed.

### C.  *Plaintiffs' Pre-Assault Claims Also Fail as a Matter of Law*

A college may be responsible for pre-assault deliberate indifference only where it has actual knowledge of a heightened risk of sexual harassment, within a particular group or context. *See Zamora v. N. Salem Cent. Sch. Dist.*, 414 F. Supp. 2d 418, 424 (S.D.N.Y. 2006) (actual knowledge standard may be satisfied only by knowledge of a "substantial risk of serious harm" where there have been multiple prior allegations of the same conduct); *see also JD1*, 2022 U.S. Dist. LEXIS 113451, at *23-24 (W.D.N.Y.); *Posso*, 518 F. Supp. 3d 688, 698-700 (W.D.N.Y. 2021). Title IX liability does not attach simply because a school "should have known" about sexual abuse, and actual notice requires "more than a simple report of inappropriate conduct by a teacher." *Doe v. E. Irondequoit Cent. Sch. Dist.*, 2018 U.S. Dist. LEXIS 76798, at *64-65 (W.D.N.Y. May 7, 2018). A plaintiff instead must allege additional facts beyond past incidents of assault on campus to sustain a pre-assault Title IX claim, and those facts must give the school notice of a heightened risk that is specific enough to allow it to implement a remedy. *JD1*, 2022 U.S. Dist. LEXIS 113451, at *24-25. A "single alleged failure to respond [to a report of sexual harassment] is unlikely to plausibly establish a *policy* of deliberate indifference to sexual misconduct." *Id.* at *29.

Plaintiffs allege that a faculty member made a report of some sort to the Title IX Office related in some unspecified way to Professor Noonan in 2014, and a separate faculty member received another report in the Fall of 2018 about what was characterized by a female student as Professor Noonan's *verbal and emotional abuse* toward her. These allegations are insufficient. With respect to the 2014 "report," the Complaint pleads "Paul Waldau, the former Director of the Canisius graduate program in anthrozoology, reported Noonan to Canisius' Title IX office in 2014 on behalf of a woman student in the graduate department."  Complaint, ¶ 275. They seek to bootstrap this bare-boned and completely conclusory allegation into a claim that Canisius has known "since

2014" about Professor Noonan's "discriminatory misconduct targeted at women students" and his "sexual harassment and gender-based discrimination." *Id.*, ¶¶ 6, 7. Such a nexus does not exist, and plaintiffs have failed to plead facts showing any link between the 2014 "report" and Professor Noonan's subsequent acts of harassment, five years later.

The alleged 2018 report is equally incapable of supporting a pre-assault claim. Plaintiff Tuhovak claims on one occasion, in the Fall of 2018, she "met with the ABEC Chair, Susan Margulis, to complain about Noonan's verbal and emotional abuse, and how it was affecting her mental health." Complaint, ¶ 253. She further alleges she complained to Professor Margulis about "Noonan's mistreatment" and "sexist, abusive behavior." *Id.*, ¶¶ 12, 258.

Neither allegation plausibly pleads an institutional *policy* of deliberate indifference, although such a policy is a necessary prerequisite to pleading a cognizable pre-assault claim. *See Doe*, 2018 U.S. Dist. LEXIS 76798, at *66-67 (dismissing pre-assault claim where complaint failed to allege school was aware of the underlying facts of bus driver's prior criminal child endangerment charge); *see generally Ashcroft*, 556 U.S. at 678-79 ("Rule 8…does not unlock the doors of discovery for a plaintiff armed with nothing more than legal conclusions").

Contrasting these bare allegations with the claims in *Posso* make this point in compelling fashion. In *Posso*, two coaches and the University's Athletics Director were alleged to have known about "rampant sexual misconduct connected with the swim team and the consequent heightened risk of sexual assault," including a lengthy history of reports to the University regarding male swimmers bullying, intimidating, and engaging in numerous acts of physical violence against women swimmers, on a team led by those two coaches. *Posso*, 518 F. Supp. 3d at 698. Allegations about two reports of non-specific acts of alleged misconduct, four years apart, are vastly dissimilar, and do not plausibly plead that Canisius possessed actual knowledge of a heightened risk of sexual

harassment prior to February 2019. The pre-assault claims, in addition to being untimely, are not legally viable, and should be dismissed on this alternative ground.

**D.  *Plaintiffs Also Fail to State a Title IX Retaliation Claim***

The elements of a Title IX-based retaliation claim are: (1) engagement in "protected activity" by plaintiff, (2) defendant's knowledge of the protected activity, (3) "adverse school-related action," and (4) "a causal connection between the protected activity and the adverse action." *Papelino*, 633 F.3d at 92; *see also Williams v. Columbia Univ.*, 2012 U.S. Dist. LEXIS 130358, at *8 (S.D.N.Y. Aug. 8, 2012). Here, the Complaint is devoid of factual allegations plausibly asserting that Canisius took adverse action against plaintiffs because of the reports they made, let alone allegations plausibly linking such reports to any adverse action.

Significantly, *every* averment in support of plaintiffs' retaliation claim is premised on the College's purported *failure to act* after their reports to the Title IX Office. *See* Complaint, ¶¶ 29, 428(a)-(i). The Complaint is devoid of any allegation that Canisius engaged in any affirmative retaliatory act, which dooms plaintiffs' retaliation claims. The law is plain that "[a]ffirmative efforts to punish a [complainant] are at the heart of any retaliation claim." *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 721 (2d Cir. 2010) (quoting *Thomlison v. Sharp Elecs. Corp.*, 2000 U.S. Dist. LEXIS 18979, at *12 (S.D.N.Y. Dec. 18, 2000)); *accord*, *Andersen v. Rochester City Sch. Dist.*, 2011 U.S. Dist. LEXIS 41184, at *21 (W.D.N.Y. Apr. 15, 2011).

Plaintiffs here generally allege that Canisius retaliated by "failing to investigate" after they came forward to the Title IX Office, and "failing to remove" Professor Noonan promptly afterward, creating "an unsafe educational environment…which lasted for months." Complaint, ¶

428. These allegations again are demonstrably false. *See* Walleshauser Dec.[4] Even assuming they are not—an utterly unwarranted assumption here—the College's alleged indifference to the reports is insufficient, because in the typical retaliation case a failure to investigate "cannot be considered an adverse employment action taken in retaliation for filing of the same complaint." *Fincher*, 604 F.3d at 721; *accord Williams*, 2012 U.S. Dist. LEXIS 130358, at *8. A failure to investigate is relevant to a retaliation claim only if "the failure is in retaliation for some separate, protected act by the plaintiff," which is not the case here. *See Fincher*, 604 F.3d at 722.

Retaliation claims premised upon the College's alleged failure to provide supportive measures (*id.*, ¶¶ 424, 425, 428(i)), deprive plaintiffs of an opportunity to complete academic work "as they intended" (*id.*, ¶¶ 428(f)), and failing to assign new academic advisors and mentors (*id.*, ¶¶ 428(g), (h)), are similarly insufficient. The more granular allegations in this respect are:

- Plaintiff Boucher alleges Canisius "never offered any other kind of support" after she complained in 2019 (*id.*, ¶ 129), and she was "in danger" of not graduating on time because of the "failure to replace Noonan as [her] academic advisor" (*id.*, ¶ 132);[5]

- Plaintiff Engebrecht alleges no one "checked in" to ensure she was receiving medical attention (*id.*, ¶ 180), Canisius did "nothing" to ensure plaintiffs could complete the Project Tiger film (*id.*, ¶ 183), and "Canisius never made an effort" to ensure students relying on recommendations from Professor Noonan "had other options" (*id.*, ¶ 186);

- Plaintiff Tuhovak alleges that "no one at the College ever inquired" as to whether she needed any assistance after she made her 2019 report (*id.*, ¶ 274);

---

[4] Plaintiffs contradict their allegation that an unsafe environment existed "for months" by alleging—correctly—that Canisius removed Professor Noonan *the same month* they made their February 2019 reports. *See* Complaint, ¶ 20; *see also* Walleshauser Dec. at Exhibit A (February 21, 2019 letter from VPAA Margaret McCarthy to Professor Noonan).

[5] Curiously, plaintiff Boucher alleges Canisius failed to provide support, while simultaneously (and contradictorily) alleging that she "regularly attended a Canisius support group," which was led by Professor Andrew Stewart. *See* Complaint, ¶¶ 105-108.

- Plaintiff Whelan alleges there was a "lack of support" after her 2019 report (*id.*, ¶ 343), that and Canisius failed to help her find a mentor who could have provided a letter of recommendation and helped her plan her post-collegiate life (*id.*, ¶ 345); and

- Plaintiff Wood alleges Canisius never inquired about her well-being (*id.*, ¶ 387), and she graduated "without a recommendation letter to help her get into graduate school, and with no professor" to help her "map out" her post-collegiate life (*id.*, ¶ 388).

At no point does any plaintiff allege that she specifically needed, or specifically requested, particular support services in any of these areas, and in all events assertions that plaintiffs were essentially abandoned after Professor Noonan's suspension do not square with the actual facts.

The students complaining about Professor Noonan all were alerted, within days, as to alternate instructors and mentors, and participants in "Project Tiger" were afforded access to research data and support so they could complete their academic work. Walleshauser Dec. at ¶¶ 19-25; Exhibits B, C.[6] Allegations as to the unavailability of advisors which thwarted their "efforts to apply to graduate school" are both factually inaccurate, *id.* at ¶ 25, and "so conjectural as to be implausible." *See Irrera*, 2016 U.S. Dist. LEXIS 203057, at *12-14 (dismissing retaliation claim where allegations regarding negative references required a "tortured chain" of unsupported supposition, failing to satisfy "even the most liberal" pleading standard). Such is the case here as well.

With respect to counseling and academic accommodations, the posted College Policy spelled out those supports in detail, as well as how to access them, and plaintiffs were so advised when they made their reports. Walleshauser Dec. at ¶¶ 10-11 and text note 1.[7] And the College's prompt

---

[6] The claim Canisius "provided no support to the students involved in Project Tiger" (Complaint, ¶ 74) is contradicted by separate allegations that the ABEC Chair, Susan Margulis, "took over supervision of Project Tiger," and that the College provided plaintiffs who had traveled to India with their Project Tiger footage. *Id.*, ¶¶ 24, 71, 78; *see also* Walleshauser Dec. at ¶ 23, Exhibit B.

[7] Plaintiffs themselves plead that an email from Ms. Walleshauser states, explicitly, "As always, *the College and I are here to provide any needed support*." Complaint, ¶ 24 (emphasis supplied); *see also* Walleshauser Dec. at ¶¶ 29-30, Exhibits B, C.

suspension of Professor Noonan, prohibiting him from communicating with any Canisius students (*id.* at ¶ 17 and Exhibit A; Complaint, ¶ 20) also were strongly supportive of plaintiffs' interests.

Finally, plaintiffs' dissatisfaction with podcasts instead of a film regarding their India experiences (*id.*, ¶ 73) does not constitute adverse action. Which medium constitutes a superior pedagogical experience is a pure academic determination, not indicative of an adverse educational consequence. *See Byrne v. Yale Univ.*, 450 F. Supp. 3d 105, 117 (D. Conn. 2020) (courts must steer course between "excessive intervention in the affairs of the university and the unwarranted tolerance of unlawful behavior"). For these reasons, plaintiffs do not state a valid retaliation claim.

### E. *Plaintiffs Fail to State a Legally Cognizable Claim for Breach of Contract*

To state a viable breach of contract claim, plaintiff must allege: (1) the existence of an agreement; (2) adequate performance; (3) defendant's failure to perform; and (4) damages. *Posso*, 518 F. Supp. 3d at 703; *Kelly v. Yale Univ.*, 2003 U.S. Dist. LEXIS 4543, at *15 (D. Conn. Mar. 26, 2003). A student plaintiff in circumstances such as those at bar must cite to contractual provisions that are "specific and concrete." *Posso*, 518 F. Supp. 3d at 704 (citing *Knelman v. Middlebury Coll.*, 898 F. Supp. 2d 697, 709 (D. Vt. 2012)). "[G]eneral policy statements, rules, or guidelines" are inadequate to support a breach claim." *Id.*; *accord*, *Noakes v. Syracuse Univ.*, 369 F. Supp. 3d 397, 418 (N.D.N.Y. 2019) (plaintiff must identify a specific promise that was breached; "[c]onclusory allegations that a defendant breached an agreement are insufficient"); *Nungesser*, 169 F. Supp. 3d at 370 (same); *see also Faiaz v. Colgate Univ.*, 64 F. Supp. 3d 336, 358-359 (N.D.N.Y. 2014); *Bailey v. New York Law Sch.*, 2021 U.S. App. LEXIS 34926, at *12 (2d Cir.) (dismissing contract claim where statements in Code of Conduct, website, and other school communications did not contain discrete promises that gave rise to a contractual obligation). Plaintiff also must assert, in non-conclusory fashion, "*how* defendants breached"

pertinent contractual provisions. *See Murphy v. Neuberger*, 1996 U.S. Dist. LEXIS 11164, at \*45 (S.D.N.Y. Aug. 6, 1996) (emphasis supplied); *accord*, *Marshall v. Hyundai Motor America*, 51 F. Supp. 3d 451, 468 (S.D.N.Y. 2014); *see also Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 189 (S.D.N.Y. 2011).

Here, plaintiffs' purported contract claim is based entirely on the conclusory, and utterly "non-concrete," allegation that Canisius "fail[ed] to investigate and adjudicate" their reports against Professor Noonan pursuant to the Sexual Harassment and Gender-Based Misconduct Policy, and allegedly "retaliated" against plaintiffs for reporting Professor Noonan. Complaint, ¶ 439. The absence of citation to any precise contractual provisions, terms, language, or promises, let alone particular facts allegedly supporting a claim for *how* those particular terms purportedly were breached, is fatal to plaintiffs' contract claims. *See, e.g.*, *Rochester-Genesee Reg'l Transp. Auth. v. Cummins, Inc.*, 2010 U.S. Dist. LEXIS 75805, at \*12 (W.D.N.Y. July 28, 2010) (dismissing breach claim where complaint failed to identify precise contractual terms allegedly breached).

Moreover, broad references to the "Student Handbook" and the Sexual Harassment and Gender-Based Misconduct Policy (*id.*, ¶¶ 436, 439) as the source of contractual rights allegedly transgressed are far too general to constitute discrete and enforceable contractual promises. Finally, any contention that Canisius failed to investigate the 2019 reports is belied by the allegations plaintiffs make, Complaint, ¶¶ 20, 22, 66, as well as uncontroverted facts before this Court. *See* Walleshauser Dec. No actionable breach claim has been pleaded.[8]

---

[8] Although Count IV is captioned "Breach of Contract," the Complaint references "good faith and fair dealing" as well. Complaint, ¶¶ 437, 441. To the extent plaintiffs seek to assert a separate good faith and fair dealing claim, it would be duplicative of the contract claim, and fails on that basis, as well as the grounds recited herein. *See Nungesser*, 169 F. Supp. 3d at 372-73 (dismissing good faith and fair dealing claim as "duplicative of the breach of contract claim") (collecting cases).

**F.  *Plaintiffs' Promissory Estoppel Claim Fails as a Matter of Law***

Promissory estoppel has three elements: (1) a clear and unambiguous promise; (2) reasonable, foreseeable reliance by the party to whom the promise is made; and (3) injury to that party. *Cyberchron Corp. v. Calldata Sys. Dev., Inc.*, 47 F.3d 39, 44 (2d Cir. 1995); *accord*, *Nungesser*, 169 F. Supp. 3d at 374. Aspirational statements are insufficient to support an estoppel claim. *See Feibleman v. Trs. of Columbia Univ.*, 2020 U.S. Dist. LEXIS 120835, at *9-10 (S.D.N.Y. July 9, 2020); *Ward v. New York Univ.*, 2000 U.S. Dist. LEXIS 14067, at *18 (S.D.N.Y. Sept. 28, 2000).

Plaintiffs' estoppel claim is entirely repetitive of their breach of contract claim. They broadly allege that "various policies," including the College's Sexual Harassment and Gender-Based Misconduct Policy, constitute "representations and promises that Canisius should have reasonably expected to induce action or forbearance by Plaintiffs." Complaint, ¶ 445. As a threshold matter, a promissory estoppel claim is precluded because "a breach of contract claim may not give rise to tort liability unless a legal duty independent of the contract…has been violated." *Nungesser*, 169 F. Supp. 3d at 374 (citing *MatlinPatterson ATA Holdings LLC v. Fed. Express Corp.*, 87 A.D.3d 836 (1st Dep't 2011)); *Ward*, 2000 U.S. Dist. LEXIS 14067, at *18.

Plaintiffs also do not identify any clear, unambiguous promise made to them. Particular provisions of these "various policies," or the nature of plaintiffs' specific reliance, are never pleaded, and broad allegations that Canisius policy promised plaintiffs "would not suffer discrimination or harassment" (Complaint, ¶¶ 447, 448) are far too vague to support an estoppel claim. *Doe v. Syracuse Univ.*, 2020 U.S. Dist. LEXIS 85708, at *43 (N.D.N.Y. May 15, 2020) (dismissing estoppel claim where Code of Conduct statements were too "vague and general"); *Ward*, 2000 U.S. Dist. LEXIS 14067, at *18 (grounding estoppel claim on college policy tantamount to authorizing estoppel claim whenever broad policy statements issue).

Finally, to the extent plaintiffs allege that Linda Walleshauser "promised" that plaintiffs "would be permitted to review and comment on her investigative report" (Complaint, ¶¶ 22, 23) this purported statement also was insufficient to constitute a definite, actionable promise. *See Feibleman*, 2020 U.S. Dist. LEXIS 120835, at *9-10 (dismissing estoppel claim where university's policy seeking to resolve investigations within sixty days was aspirational and could not reasonably "be taken to the bank"). Even if the purported assurance made by Ms. Walleshauser was sufficiently concrete (it was not), plaintiffs also have not pleaded that they relied on that assurance to their detriment. Nor could they plausibly plead detrimental reliance, where the motion Record plainly establishes that Professor Noonan—the subject of plaintiffs' complaints—was removed from campus virtually immediately after they came forward to Ms. Walleshauser, addressing forcefully and definitively their relevant concerns. *See* Walleshauser Dec. at ¶¶ 10-18, 31; Exhibits A-C. For these reasons, no actionable promissory estoppel claim has been pleaded.

## CONCLUSION

For the reasons set forth above, the College's motion should be granted, and plaintiffs' Complaint in all respects should be dismissed.

Dated: July 22, 2022                      Respectfully submitted,

WARD GREENBERG HELLER & REIDY LLP

By:    /s/ Thomas S. D'Antonio
           Thomas S. D'Antonio
           Christine M. Naassana
1800 Bausch & Lomb Place
Rochester, New York 14604
Telephone: (585) 454-0700
Facsimile: (585) 423-5910
tdantonio@wardgreenberg.com
cnaassana@wardgreenberg.com

*Attorneys for defendant Canisius College, sued here as Trustees of Canisius College*

25