**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X
**SIERRA BOUCHER, LILY ENGEBRECHT,**
**NATASSIA TUHOVAK, HANNAH WHELAN,**
**and, CASSIDY WOOD,**

                               **PLAINTIFFS,**            **CASE NO. 1:22-CV-00381-CCR**


            **-against-**

**TRUSTEES OF CANISIUS COLLEGE,**
                                    **DEFENDANTS.**
-------------------------------------------------------------------X


**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION**
**TO MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12**
**AND MOTION FOR SUMMARY JUDGMENT PURSUTANT TO FED. R. CIV. P. 56**
**SUBMITTED BY DEFENDANT TRUSTEES OF CANISIUS COLLEGE**


Respectfully submitted by:

LAW OFFICE OF DANIELA NANAU P.C.
89-03 Rutledge Avenue
Glendale, New York 11385
Telephone: (888) 404-4975
Facsimile: (718) 998-6916
E-Mail: dn@danielananau.com

*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ................................................................ iv-v

PRELIMINARY STATEMENT ........................................................... 1

SUMMARY OF FACTUAL ALLEGATIONS ..................................... 3

STANDARD OF REVIEW ................................................................ 8

ARGUMENT .................................................................................... 8

I.      Canisius College Improperly Seeks Dismissal Based on Untested Discovery    8

II.     Plaintiffs Have Alleged Plausible Title IX Discrimination Claims    10

A.      Plaintiffs Have Alleged Plausible, Timely Pre-Assault Claims    10

B.      Plaintiffs Have Pled Plausible, Timely Post-Assault Claims    14

C.      Plaintiffs Have Pled Plausible Gender Discrimination Claims    17

III.    Plaintiffs Have Alleged Plausible, Timely Title IX Retaliation Claims    18

IV.    Plaintiffs Have Alleged Plausible Breach of Contract Claims    22

V.     Plaintiffs Have Alleged Timely Negligent Supervision and Retention Claims    24

CONCLUSION ................................................................................. 25

## **TABLE OF AUTHORITIES**

**PAGE**

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)                                        8

*Bailey v. New York L. Sch.,* 2017 WL 835190 (S.D.N.Y. Mar. 1, 2017),
        *aff'd,* 2021 WL 5500078 (2d Cir. 2021)                            20, 22

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007)                          8

*Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53  (2006)        18

*Castro v. Yale Univ.,* 518 F. Supp. 3d 593 (D. Conn. 2021)              18

*Chambers v. Time Warner, Inc.*, 282 F.3d 147 (2d Cir. 2002)            9

*Deravin v. Kerik*, 335 F.3d 195 (2d Cir. 2003)                              8

*DiFolco v. MSNBC Cable L.L.C.,* 622 F.3d 104 (2d Cir. 2010)          9

*Doe v. Sarah Lawrence Coll.*, 453 F. Supp. 3d 653 (S.D.N.Y. 2020)    16, 17, 21

*Emily O. v. Regents of the Univ. of Cal.,*
        2021 WL 1535539 (C.D. Cal. Mar. 9, 2021)                        16

*Faiaz v. Colgate Univ.,* 64 F. Supp. 3d 336 (N.D.N.Y. 2014)            23

*Fincher v. Depository Trust & Clearing Corp.,* 604 F.3d 712 (2d Cir.2010)   19, 21

*Gabelli v. S.E.C.*, 568 U.S. 442 (2013)                                      13

*Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274 (1998)            14

*Hernandez v. Coffey,* 582 F.3d 303 (2d Cir. 2009)                        10

*Irrera v. Humpherys*, 859 F.3d 196 (2d Cir. 2017)                        19

*Jane Doe v. Union College*, 2020 WL 1063063 (N.D.N.Y. Mar. 5, 2020)    24

*JD1 v. Canisius Coll.,* 2022 WL 2308902 (W.D.N.Y. June 27, 2022)      *passim*

*Karasek v. Regents of Univ. of Cal.*, 534 F. Supp. 3d 1136 (N.D. Cal. 2021)    14

*Karasek v. Regents of University of California*, 956 F.3d (9th Cir. 2020)    *passim*

## **TABLE OF AUTHORITIES**

**PAGE**

<u>**Cases**</u>

*Kelly v. Yale Univ.,* 2003 WL 1563424 (D. Conn. Mar. 26, 2003)         23

*Kerzhner v. G4S Gov't Sols., Inc.* 138 A.D.3d 564 (2016).         25

*Mosier v. State Univ. of New York*, 2020 WL 42830 (E.D.N.Y. Jan. 2, 2020)         15

*Noakes v. Syracuse Univ.,* 369 F. Supp. 3d 397 (N.D.N.Y. 2019)         22

*Novio v. New York Acad. of Art*, 286 F. Supp. 3d 566 (S.D.N.Y. 2017)         21

*Nungesser v. Columbia Univ.,* 244 F. Supp. 3d 345 (S.D.N.Y. 2017)         22

*Papelino v. Albany Coll. of Pharm.,* 633 F.3d 81 (2d Cir. 2011)         *passim*

*Posso v. Niagara Univ.*, 518 F. Supp. 3d 688 (W.D.N.Y. 2021)         *passim*

*Prasad v. Cornell Univ.,* 2016 WL 3212079 (N.D.N.Y. Feb. 24, 2016)         22

*Purcell v. N.Y. Inst-Coll. Of Osteopathic Med.,* 931 F.3d 59 (2d Cir. 2019)         13

*Rich v. Fox News Network, LLC*, 939 F.3d 112 (2d Cir. 2019)         24-25

*Rochester-Genesee Reg'l Transp. Auth. v. Cummins, Inc.*,
    2010 U.S. Dist. LEXIS 75805, (W.D.N.Y. July 28, 2010)         23

*Rochon v. Gonzales,* 438 F.3d 1211 (D.C. Cir. 2006)         19

*Roskin-Frazee v. Columbia Univ.*, 2018 WL 6523721 (S.D.N.Y. Nov. 26, 2018)   11

*SB ex rel. AB v. Newark Cent. Sch. Dist.*,
    2022 WL 541773 (W.D.N.Y. Feb. 23, 2022)         25

*Sharon B. v. Reverend S.,* 244 A.D.2d 878 (1997)         25

*Tedeschi v. Wagner Coll.,* 49 N.Y.2d 652 (N.Y. 1980)         22

*Tubbs v. Stony Brook Univ.*, 2016 WL 8650463 (S.D.N.Y. Mar. 4, 2016)         11, 16

*Twersky v. Yeshiva Univ.*, 579 F. App'x 7 (2d Cir. 2014)         13

*Williams v. Columbia Univ.,* 2012 WL 3879895 (S.D.N.Y. Aug. 28, 2012)         21

<u>**TABLE OF AUTHORITIES**</u>

**PAGE**

<u>**Cases**</u>

*York v*. *Ass'n of the Bar of the City of N.Y.*, 286 F.3d 122 (2d Cir. 2002)                 9

*Yusuf v. Vassar Coll.,* 35 F.3d 709 (2d Cir. 1994)                                     17

<u>**Rules**</u>

Fed. R. Civ. P. 12(b)(6)                                                            *passim*

Fed. R. Civ. P. 12(d)                                                                  10

Fed R. Civ. P. 56                                                                   *passim*

Plaintiffs Sierra Boucher, Lily Engebrecht, Natassia Tuhovak, Hannah Whelan, and Cassidy Wood respectfully submit this Memorandum of Law in opposition to the Motion to Dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) and Motion for Summary Judgment brought pursuant to Federal Rule of Civil Procedure 56 by Defendant Trustees of Canisius College. *See* Docket No. 5. Defendant's Memorandum of Law, submitted in support of its Motions, will be referred to as "Def. Mem." *See* Docket No. 5-6.

## PRELIMINARY STATEMENT

As set forth in the Complaint, Plaintiffs are five former undergraduate students who studied under Michael Noonan, a tenured faculty member who worked at Canisius College for forty years and used his position, as the founder of the Animal Behavior, Ecology and Conservation (ABEC) Program and as the Director of the Canisius Ambassadors for Conservation (CAC), to condition mentorship and departmental support on a student's submission to his constant sexually suggestive behavior and sexist comments that demonstrate his disdain for women.

Plaintiffs allege that Canisius College has had actual notice of Noonan's grooming behavior and sexual harassment of students since at least 2014 and likely earlier. In January and February 2019, Plaintiffs joined six other students to complain about Noonan's discriminatory misconduct, first to the Biology Department faculty, and later to Canisius College's Title IX Officer. Although Defendant promised to investigate Plaintiffs' complaints and protect them from further mistreatment, Noonan was permitted continue teaching for one month after they filed formal complaints against him, which caused each Plaintiff to suffer from depression, anxiety and extreme fear that Noonan would personally retaliate against them.

After Noonan was removed from campus, Canisius College permitted him to continue to exert power over Plaintiffs and harass them by refusing to provide film footage for a documentary

they intended to develop called "Project Tiger," which was for a class that enabled them to travel to India to study tiger habitats and preservation efforts. Plaintiffs allege that Canisius College failed to timely intervene to remedy the situation, despite the fact that Plaintiffs raised the issue of the film footage when they filed formal complaints, and the Project Tiger film was never made.

After they complained about Noonan's discriminatory misconduct, Canisius College demonstrated its deliberate indifference and retaliated against Plaintiffs in other ways, such as by failing to timely provide an instructor to support the completion of the Project Tiger film; by failing to provide Plaintiffs with mentors and advisors to replace Noonan, thereby depriving them of recommendation letters and information regarding graduation requirements; by failing to ensure that Plaintiffs received appropriate health care and other support; and, by failing to provide Plaintiffs who were Noonan's research students with ways to continue their scientific research.

Although Plaintiffs and the other women who complained about Noonan's discriminatory misconduct in January and February 2019 were promised by Canisius College that they would be notified of the outcome of Defendant's investigation, Canisius College's Title IX Officer waited until the last day of the semester in June 2019 to inform them in an e-mail that Noonan had been permitted to retire and no action was taken against him. Canisius College's response to Plaintiffs' complaints was deliberately indifferent, intended to protect its reputation even though it harbored a sexual predator among its faculty, and to leave Noonan's reputation intact.

Remarkably, Canisius College continues to attempt to avoid responsibility for its illegal conduct by touting that it allegedly took "swift actions [that] amply fulfilled its Title IX obligation to eliminate the alleged harassment and present its recurrence." *See* Def. Mem. at 13. Moreover, Defendant improperly seeks to curtail this proceeding by requesting that the Court entertain its

summary judgment motion before discovery has even begun. The Court should find that Canisius College's efforts are insufficient to meet the stringent requirements for dismissal at this early stage.

For all of the reasons stated herein, Plaintiffs respectfully request that the Court deny Defendant's Rule 12/56 Motions with prejudice, or alternatively permit them to file an Amended Complaint to cure any pleading deficiencies identified by the Court.

## SUMMARY OF FACTUAL ALLEGATIONS

As alleged in the Complaint, Defendant is a private college that receives federal funding and offers undergraduate and graduate programs to approximately 4000 students in Buffalo, New York. *See* Complaint, Docket No. 1, ¶¶ 36, 40. Each Plaintiff intended to become a scientist, and attended Canisius College to obtain a degree from the ABEC Program, which is one of the country's only interdisciplinary courses of study focusing on animal behavioral biology as well as issues relating to animal welfare, and wildlife conservation. *See id.,* ¶ 27. The ABEC Program and the Canisius Ambassadors for Conservation Program, both of which Noonan directed, has attracted millions in private donor dollars and government-sponsored grants to Canisius College. *Id.,* ¶ 5. As a result, Canisius College administrators held Noonan in high regard and this encouraged a cult of personality that afforded Noonan unlimited latitude at the expense of his students. *Id.,* ¶ 42.

Each Plaintiff alleges she spent a significant time at Canisius College taking animal behavior classes taught by Noonan; engaging in scientific studies as members of Noonan's research team; and by participating in school-sponsored trips throughout the United States and abroad as part of the CAC program, which was directed by Noonan. As demonstrated in the Complaint, at every opportunity, Noonan subjected Plaintiffs to inappropriate sexual comments and other sexist misconduct. *See e.g.,* Complaint, ¶¶ 79-394. Below are some examples of discriminatory mistreatment each Plaintiff endured during class time or school-sponsored trips:

Examples of Allegations Regarding Discriminatory Mistreatment of Boucher:

- Noonan constantly monitored whether Boucher was wearing a bra, regularly commenting positively when she was not wearing one. However, if they were traveling for CAC projects, Noonan would instruct Boucher to wear a bra. Noonan's monitoring of Boucher's appearance in this way made her very uncomfortable. *See* Complaint, ¶¶ 98-101.
- Boucher expressed discomfort when Noonan shared information about his personal life with her, including information about romantic relationships with his students. In response, Noonan implored Boucher to understand that his practice of dating students "is not that weird!" *Id.,* ¶¶102-03.
- Noonan referred to Boucher many times as his "daughter," and after meeting her mother at a school event, stated that he would be interested in dating her mother "if anything ever happened to your Dad," which shocked Boucher. *Id.,* ¶¶ 88-89.

Examples of Allegations Regarding Discriminatory Mistreatment of Engebrecht:

- Noonan called Engebrecht his "best friend," and told her many times "we would be very compatible," "we are soul mates," and "we are kindred spirits." *See* Complaint, ¶ 150.
- Noonan frequently discussed his dating life with Engebrecht during CAC trips, sharing information about his sex life as a young adult and his more current relationships, including one with a Canisius graduate student who he said he had been "frequenting." Noonan would tell Engebrecht: "I'd hit that!," which was his way of saying he wanted to have sex with a woman. *Id.,* ¶¶ 151-52.
- On many occasions, Noonan would raise the subject of older men dating younger women, telling Engebrecht that age differences "did not matter" so long as the person was "of consenting age." *Id.,* ¶155.
- In preparation for a CAC trip to Florida, Noonan attached a microphone to Engebrecht's underwear, and remarked that she is "flat-chested" and would not be able to hold the microphone pack in her bra, which made Engebrecht feel humiliated. *Id.,* ¶¶ 158-59.

Examples of Allegations Regarding Discriminatory Mistreatment of Tuhovak:

- During a CAC trip to Hawaii that no male students attended, Noonan engaged Tuhovak and the other students in discussions about what kind of guy they would like to date and whether it was inappropriate for him to date former Canisius students who he had personally taught, which made her feel very uncomfortable. *See* Complaint, ¶¶ 200-203.
- During that trip, Noonan filmed Tuhovak and other Canisius students in their bathing suits without their consent, which included when Tuhovak jumped off a cliff into the ocean and her bathing suit top flew up, exposing her breasts. *Id.,* ¶ 201.
- Noonan required Tuhovak to "stretch" his knee, which he made her do by straddling his leg to pull and massage it. Noonan explained that after he had knee surgery in 2017, his doctor suggested he perform these stretches, and Noonan would moan when Tuhovak stretched his knee, which made her very uncomfortable. *Id.,* ¶¶ 223-24.

<u>Examples of Allegations Regarding Discriminatory Mistreatment of Whelan:</u>

- During the Project Tiger trip, and prior to the trip, during preparations, Noonan told Whelan and the other students "I own your hair and bodies," which meant Whelan and her fellow students were forbidden from cutting or dying their hair throughout the length of the project, and that Noonan could dictate what they wore. *See* Complaint, ¶ 305.
- When the group first arrived in India, Noonan wanted to "have a chat" with Whelan during which he learned that she had problems with constipation while traveling and stressed that if Whelan needed anything to "help" the process, she could ask him and he would "provide what you need." Thereafter, Noonan regularly asked Whelan for updates on whether she had pooped, which made her extremely uncomfortable. *Id.,* ¶¶ 307-311.
- Noonan hounded Whelan and another student who was also constipated and pushed to allow them to have him administer an enema, saying that "at this point, laxatives and suppositories would be a waste of time," and that he was "worried about the seriousness" of their condition, which he said could become "life-threatening." *Id.,* ¶¶ 323-328.
- Whelan developed a urinary tract infection and asked to see a doctor in India. Noonan continued to ignore appropriate boundaries when he insisted on going into the examination room with Whelan, even though she did not want him to come, and Noonan never asked for her consent to be present. *Id.,* ¶¶ 333-335.

<u>Examples of Allegations Regarding Discriminatory Mistreatment of Wood:</u>

- Throughout a CAC trip to Florida with Wood and Engebrecht in 2018, Noonan wanted to engage in unending "girl talk," which meant listening to him talk about his loneliness; how he still "frequents" Moran, a Canisius graduate student; and how he had been in sexual relationships with many young women as an older man. *See* Complaint, ¶ 356.
- During the filming of Project Tiger in India, Noonan insisted on threading the microphone Wood used through her clothing to attach it to her underwear each time she needed one, and this permitted him to constantly touched her hair and clothing. *Id.,* ¶ 371.
- When Noonan found out that Wood had given Whelan and another student a laxative during the India trip, he pulled Wood aside and loudly lectured her that she needed his permission before she was permitted to help anyone with any medical issue. *Id.,* ¶ 378.

Plaintiffs allege that Canisius College has had actual knowledge about Noonan's grooming behavior and sexual harassment of women students since at least 2014, but likely earlier. *See* Complaint, ¶ 6. In 2014, Paul Waldau, the former Director of the Canisius graduate program in anthrozoology, reported Noonan to Canisius' Title IX office on behalf of a woman student in the graduate department. *Id.,* ¶ 275. Since 2014, Plaintiffs' allege that Canisius College's supervisory faculty and administrators have received numerous complaints regarding sexual harassment and

gender-based discrimination perpetuated by Noonan, and failed to adjudicate those complaints pursuant to the College's Sexual Harassment and Gender-Misconduct Policy. *Id.,* ¶ 7.

For example, as alleged, in 2018, Tuhovak met with ABEC Program Chair, Susan Margulis, to complain about Noonan's verbal and emotional abuse and how it was affecting her. *Id.,* ¶ 253. Margulis responded to Tuhovak's complaint by saying: "Well, what do you want me do about this situation? We all know he's difficult to work with. That's just the way he is!," *Id.,* ¶ 254. Margulis confirmed that she could do nothing to stop Noonan's misconduct. *Id.,* ¶ 256.

In the Spring of 2019, Tuhovak learned of another student who complained about Noonan's mistreatment to Elizabeth Hogan, who then served as Co-Chair of the Biology Department. Complaint, ¶ 56. Hogan's interview of that student led to Tuhovak. *Id.* During the same time period, Boucher, Engebrecht, Whelan and Wood attended meetings with other students who had previously attended CAC trips and/or studied under Noonan. During those meetings, Plaintiffs and their ABEC Program colleagues realized Noonan subjected all of them to the same kind of sexual harassment and manipulative, abusive conduct. *Id.,* ¶ 57.

A total of eleven (11) women students at Canisius College submitted formal complaints to Defendant's Title IX Officer, Linda Walleshauser between January and February 2019 regarding Noonan's sexual harassment and other discriminatory misconduct based on gender. *See* Complaint, ¶¶ 58-9. Although Plaintiffs, and the other students who came forward, repeatedly asked Walleshauser to explain Canisius' Title IX investigative and adjudicative process to them, she never provided any specific information and never directed them to review the Sexual Harassment and Gender-Based Misconduct Policy, itself. *Id.,* ¶ 61.

Although Walleshauser assured the Plaintiffs and other students who came forward that Canisius College took their concerns seriously, Defendant's administrators' actions did not follow

from Walleshauser's promises. *See* Complaint, ¶¶ 22-4; 63. For example, Canisius College did not remove Noonan from campus for more than four weeks after the students came forward, which caused Plaintiffs great distress because they constantly feared for their safety, worrying that Noonan would retaliate and do them harm. *Id.,* ¶¶ 64; 122-26; 177-180; 344-46; 385-87.

On April 26, 2019, Plaintiffs and the other students who raised complaints about Noonan met with Walleshauser regarding their frustration with the lack of updates on the alleged investigation. *See* Complaint, ¶ 21. Walleshauser said she could not share any information because it was "confidential," although she assured them that they would have an opportunity to review her investigative report, and take part in the "process," but avoided describing what that meant. *Id.,* ¶ 66. On June 11, 2019, Plaintiffs received an e-mail from Walleshauser in which they were informed that Noonan "retired" effective June 1, 2019, thereby foreclosing any opportunity for Plaintiffs to hold him accountable for his misconduct. *Id.,* ¶ 67.

Throughout the Spring 2019 semester, during Canisius College's alleged investigation, Defendant permitted Noonan to continue to expert control over Plaintiffs and harass them by failing to intervene when he refused to produce footage and other work product for the documentary film, Project Tiger. *See* Complaint, ¶¶ 68-73. Walleshauser acknowledged that the Project Tiger footage was " an issue" but never explained why Canisius College, which had funded the CAC trip to India, could not exert control over the footage shot by its students and provide it to Plaintiffs to enable them to complete the project. *Id.,* ¶ 69. Margulis, the ABEC Program Chair, who took over supervision of Project Tiger, provided very little actual support to Plaintiffs, telling them it was "too difficult" to figure out who owned the rights to the film footage. *Id.,* ¶¶ 70-1.

In addition, Canisius College offered no support services to Plaintiffs, including access to mental health care services; access to advisors and other mentors who could provide letters of

recommendation for graduate school, and offer advice on course selection to comply with graduation requirements; and research partners that could ensure Plaintiffs would complete their projects after Noonan was removed. *See* Complaint, ¶¶ 73-78. Canisius College's failure to provide support services to Plaintiffs affected all of them, particularly Boucher, Engebrecht, Whelan and Woods, whose senior year occurred after Noonan was removed and who dealt with Defendant's retaliatory treatment throughout their final semesters at the school during the 2019-2020 school year. *Id.,* ¶¶ 127-141 (Boucher); 176-188 (Engebrecht); 344-49 (Whelan); 387-94 (Wood).

## STANDARD OF REVIEW

To survive a Rule 12 motion to dismiss, a pleading must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). A claim has facial plausibility "when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678. In discrimination cases, the plaintiff's burden at this early stage in the litigation is "very lenient, even *de minimis.*" *Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir. 2003).

## ARGUMENT

### I.    Canisius College Improperly Seeks Dismissal Based on Untested Discovery

In the context of any motion brought pursuant to Fed. R. Civ. P. 12(b)(6), the issue is whether the plaintiffs' allegations contain sufficient facts to plausibly make out legal claims – in this case, gender-based hostile school environment, sex discrimination and retaliation claims brought pursuant to Title IX and common law claims. *See Iqbal*, 556 U.S. 678. "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to

support the claims," despite Defendant's efforts to the contrary. *See York v. Ass'n of the Bar of the City of N.Y.*, 286 F.3d 122, 125 (2d Cir. 2002).

Although Canisius College includes an incantation of the applicable Rule 12 standard, it consistently cites to summary judgment decisions, and inappropriate evidentiary submissions such as the Declaration submitted by Walleshauser, Defendant's Title IX Officer, and the documents attached thereto. *See* Docket No. 5-1 to 5-4. None of these evidentiary submissions are relevant to Defendant's Rule 12 motion and should be viewed as an effort to obfuscate the lack of merit underlying Canisius College's arguments in support of dismissal. The Second Circuit has repeatedly held that this kind of untested evidence is not suitable for consideration in adjudicating Rule 12(b)(6) motions, where the Court must:

> limit itself to facts alleged in the complaint, which are accepted as true; to documents attached to the complaint as exhibits or incorporated in the complaint by reference; to matters of which judicial notice may be taken; or to documents whose terms and effect are relied heavily upon in the complaint and, thus, are rendered "integral" to the complaint.

*Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002). Walleshauser's testimony does not fall into any of the exceptions enumerated in the standard above, which generally limits the consideration to what is alleged within the four corners of the Complaint. Where a document is not incorporated by reference, "[i[t must also be clear that there exist no material disputed issues of fact regarding [its] relevance[.]" *DiFolco v. MSNBC Cable L.L.C.,* 622 F.3d 104, 111 (2d Cir. 2010). Here, the Court should refrain from considering Walleshauser's Declaration because her untested testimony attempts to resolve factual disputes in Defendant's favor.

To the extent "matters outside the pleadings are presented to and not excluded by the Court, the motion must be treated as one for summary judgment" pursuant to Fed R. Civ. P. 56, which is inappropriate where, as here, discovery has not yet even begun and Canisius College failed to put

Plaintiffs on notice that they were moving for summary judgment. *See* F.R.C.P. 12(d); *Hernandez v. Coffey*, 582 F.3d 303, 308–09 (2d Cir. 2009) (notice before conversion into summary judgment motion is "particularly important" when the non-moving party is "entitled to an opportunity to take relevant discovery and to submit any evidence relevant to the issues raised by the motion").

**II.**    **Plaintiffs Have Alleged Plausible Title IX Discrimination Claims**

The allegations in Plaintiffs' Complaint support three theories of liability: (1) "pre-assault" sexual harassment/hostile school environment; (2) "post-assault" sexual harassment/hostile school environment; and, (3) gender discrimination. Each is a separate theory of liability under Title IX.

**A.**    **Plaintiffs Have Alleged Plausible, Timely Pre-Assault Claims**

Plaintiffs' pre-assault claims are based on Canisius College's condonation of ongoing sexual harassment of women students who studied under Noonan in the ABEC and CAC Programs, which constitutes a policy of deliberate indifference to reports of Noonan's sexual misconduct, leading to the sexual harassment of each Plaintiff. In support of their "pre-assault" theory, Plaintiffs rely on *Karasek v. Regents of University of California*, 956 F.3d 1093 (9th Cir. 2020). In *Karasek*, three women students sued regarding separate, unrelated instances of sexual assault that occurred while each participated in school-sponsored activities involving a trip with a school political club; a school-related research trip to Alaska; and a school-sponsored sports team. *Id.* at 1099-1103. The *Karasek* plaintiffs argued that the university should be held liable under Title IX because it failed to take action before the sexual assaults occurred, and that such failure served to increase the risk that the plaintiffs would be assaulted. *Id.,* at 1111-12.

Vacating the district court's dismissal of the plaintiff's pre-assault claims, the Ninth Circuit held that "[a]llegations that UC had actual knowledge or acted with deliberate indifference to a

particular incident of harassment are unnecessary to sustain this theory of liability," noting that "all [the plaintiffs'] need allege are facts demonstrating" of the following standard:

> A] pre-assault claim should survive a motion to dismiss if the plaintiff plausibly alleges that (1) a school maintained a policy of deliberate indifference to reports of sexual misconduct, (2) which created a heightened risk of sexual harassment that was known or obvious, (3) in a context subject to the school's control, and (4) as a result, the plaintiff suffered harassment that was "so severe, pervasive, and objectively offensive that it can be said to [have] deprive[d] the [plaintiff] of access to the educational opportunities or benefits provided by the school."

*Id.* at 1112-13. "A defendant acts with deliberate indifference for Title IX purposes 'when the defendant's response to known discrimination is clearly unreasonable in light of the known circumstances.'" *JD1 v. Canisius Coll.,* 2022 WL 2308902, at *8 (W.D.N.Y. June 27, 2022) (quoting *Roskin-Frazee v. Columbia Univ.*, 2018 WL 6523721, at *4 (S.D.N.Y. Nov. 26, 2018)). "The clearly unreasonable standard requires more than mere negligence; it is a high standard that seeks to eliminate any risk that an educational institution would be liable in damages not for its own official decision but instead for another individual's independent actions." *Id.* "[A] plaintiff must allege additional facts beyond past incidents of assault on campus to sustain a pre-assault Title IX claim,' but those facts need only give the school notice 'of a heightened risk that is specific enough to allow it to remedy such a policy.'" *Tubbs v. Stony Brook Univ.*, 2016 WL 8650463, at *9 (S.D.N.Y. Mar. 4, 2016).

Plaintiffs have alleged sufficient facts to demonstrate plausible pre-assault claims under Title IX premised on Canisius College's maintenance of a policy of deliberate indifference to reports regarding Noonan's sexual misconduct, which created a heightened risk for them. Plaintiffs allege that before they reported Noonan's discriminatory misconduct to Canisius College in January and February 2019, a professor reported Noonan to the Title IX office in 2014 on behalf of a student, and other women students and staff complained about his conduct in the past, but

Canisius College always found no "significant violation" of the rules and Noonan suffered no consequences. *See* Complaint, ¶¶274-75; 368-69. Plaintiffs also allege that in 2018, Tuhovak met with Margulis, ABEC Program Chair, to complain about Noonan's verbal and emotional abuse, and Margulis responded to Tuhovak by saying: "Well, what do you want me do about this situation? We all know he's difficult to work with. That's just the way he is!," *Id.,* ¶¶ 253-55.

Although the Second Circuit has not addressed the viability of "pre-assault" Title IX claims, courts within this District have cited *Karasek* favorably. *See Posso v. Niagara Univ.*, 518 F. Supp. 3d 688, 697–99 (W.D.N.Y. 2021); *accord JD1 v. Canisius Coll.,* 2022 WL 2308902, at *8-11. In *Posso*, the district court denied the university's motion to dismiss pre-assault claims where the "plaintiffs have adequately pleaded that [Niagara] had 'actual knowledge of a heightened risk that is specific enough to allow it to remedy' its policy of deliberate indifference to sexual harassment perpetrated by male swimmers" where the allegations demonstrated that at least seven faculty and administrators knew about the inappropriate behavior but failed to "take [action] to prevent further harm[.]" *See* 518 F. Supp. 3d at 698.

Similarly, in *JDI*, this Court denied Canisius College's motion to dismiss the plaintiffs' pre-assault claims, holding that the College's failure to follow up on a reported sexual assault by a student on the cross country/track team "is inexplicable" and that Canisius College received and failed to act upon anonymous reports of sexual misconduct by male track team members, which infers Canisius "College was aware of some of those alleged reports" before two of the plaintiffs were assaulted. *See JD1 v. Canisius Coll.,* 2022 WL 2308902, at *11.

In this case, Canisius College seeks dismissal of Plaintiffs' pre-assault claims by arguing that their allegations fail to demonstrate "actual knowledge of a heightened risk of sexual harassment within a particular group or context." *See* Def. Mem. at 17.  However, as noted above,

the Ninth Circuit specifically rejected the argument that "actual knowledge" was required for pre-assault claims under Title IX.  *See Karasek v. Regents of Univ. of California,* 956 F.3d at 1112-13 ("Allegations that UC had actual knowledge or acted with deliberate indifference to a particular incident of harassment are unnecessary to sustain [the pre-assault] theory of liability").

Moreover, Plaintiffs' allegations demonstrate a plausible pre-assault claim within two particular programs – the ABEC Program and the CAC Program – over which Noonan allegedly had a great deal of control. Therefore, like the plaintiffs in *Posso* and *JDI*, Plaintiffs in this case have "done more than make a general allegation of sexual misconduct on campus or object to inadequacies in the university's reporting and response policies." *Posso,* 518 F. Supp. 3d at 699.

Plaintiffs' pre-assault claims are timely, despite Canisius College's contention that the claims are time-barred. *See* Def. Mem. at 6-11. The Second Circuit has held that "personal injury actions are the 'most closely analogous' to Title IX claims, and thus applies New York's three-year statute of limitations to Title IX claims." *Purcell v. N.Y. Inst-Coll. Of Osteopathic Med.,* 931 F.3d 59, 62-3 (2d Cir. 2019). However, federal law governs the "accrual" of Title IX claims. *Twersky v. Yeshiva Univ.*, 579 F. App'x 7, 9 (2d Cir. 2014). Under federal law, "[a] claim generally accrues 'when it comes into existence,' *i.e.*, 'when the plaintiff has a complete and present cause of action.'" *Id.* (quoting *Gabelli v. S.E.C.*, 568 U.S. 442, 448 (2013)).

The *Karasek* court held that "a plaintiff's Title IX pre-assault claim accrues when the plaintiff knows or has reason to know of the school's policy of deliberate indifference that created a heightened risk of harassment." *See*  500 F. Supp. 3d at 978-79. This Court recently reached the same conclusion in *JD1 v. Canisius Coll.,* where Judge Crawford reasoned that in pre-assault cases, "the injury that is the basis of the plaintiff's action is not the assault" but is instead the

school's "policy of deliberate indifference that created a heightened risk of harassment, which is ultimately causally connected with the assault." 2022 WL 2308902, at *11–12.

In the instant case, Plaintiffs allege they became aware that Canisius College would do nothing in response to their complaints on June 11, 2019 when they were informed by e-mail that Noonan has been permitted to retire. Prior to that time period, Plaintiffs were not on notice that Canisius College had a policy of deliberate indifference to complaints about Noonan's sexual misconduct. As alleged in the Complaint, Tuhovak only learned about the 2014 complaint to Defendant's Title IX office by Professor Waldau after she complained in 2019. *See* Complaint, 274-275. Accordingly, Plaintiffs pre-assault claims are timely as this case was filed on May 20, 2022, within the statute of limitations that began on June 11, 2019. Therefore, Plaintiffs have alleged plausible, timely pre-assault claims and Defendant's motion to dismiss should be denied.

## B.      Plaintiffs Have Pled Plausible, Timely Post-Assault Claims

Canisius College's position regarding Plaintiffs' post-assault Title IX claims, which include a statute-of-limitations argument and an argument that its response after the alleged sexual assaults was not "clearly unreasonable," is similarly misplaced. Like pre-assault claims, an essential element of a Title IX post-assault claim is that the school's response was "clearly unreasonable." *Karasak*, 956 F.3d at 1105 (listing five elements for a post-assault claim; fourth element is that "the school must have acted with 'deliberate indifference' to the harassment"); *Karasek v. Regents of Univ. of Cal.*, 534 F. Supp. 3d 1136, 1151 (N.D. Cal. 2021) (response must be "an official decision ... not to remedy the violation") (quoting *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998)).

Here, Canisius College's response to Plaintiffs' complaints regarding Noonan's discriminatory misconduct demonstrated an official decision by Defendant not to remedy the

situation. Importantly, as alleged in the Complaint, even though Noonan was removed from campus one month after Plaintiffs made formal complaints to the Title IX Officer, Canisius College permitted him to continue to exert control over and harass Plaintiffs by enabling his refusal to provide them the India footage, which sabotaged their ability to make the Project Tiger documentary film. These allegations demonstrate plausible deliberate indifference because for post-assault claims, "deliberate indifference must, at a minimum, cause students to undergo harassment or make them liable or vulnerable to it." *Posso*, 518 F. Supp. 3d at 703.

Plaintiffs allegations are similar to the facts alleged in *Mosier v. State Univ. of New York,* where the university attempted to insulate itself from liability by finding that the plaintiff's sexual harassment complaint against her professor had been "substantiated" but did nothing more. 2020 WL 42830, at *6 (E.D.N.Y. Jan. 2, 2020). The district court dismissed the university's motion to dismiss, finding the plaintiff had alleged plausible deliberate indifference because of the defendant's ineffective response to her complaint, which included forcing her to take classes in the building where the professor maintained an office, and failing to assist her in obtaining a waiver so that she could student teach, as well as other instances of hostility designed to drive the plaintiff out of the program. *Id. See also Papelino v. Albany Coll. of Pharm.,* 633 F.3d 81, 90 (2d Cir. 2011) (where the Second Circuit held that the Dean of Students exhibited deliberate indifference when he failed to intervene after professor-harasser began retaliating against the plaintiffs).

Canisius College attempts to distract from Plaintiffs' allegations demonstrating its deliberate indifference, which includes the Title IX Officer's failure to explain their rights and options pursuant to the Sexual Harassment and Gender Misconduct Policy, and the six-month delay between Plaintiffs' initial complaints in January 2019 and Walleshauser's e-mail notification regarding Noonan's retirement on June 11, 2019, by arguing that students cannot establish

deliberate indifference by demanding a certain outcome to a Title IX complaint. *See* Def. Mem. at 12-13.  However, this argument is also misplaced.

"A school's delayed response constitutes deliberate indifference if it prejudices the plaintiff or if the delay was a 'deliberate attempt to sabotage [the p]laintiff's complaint or its orderly resolution.'" *JD1 v. Canisius Coll.,* 2022 WL 2308902, at *12–13 (quoting *Karasek, 956* F.3d at 1106). "This inquiry is driven by the facts of each individual case, not by general guidelines." *Id.* (citing *Emily O. v. Regents of the Univ. of Cal.*, 2021 WL 1535539, at *6 (C.D. Cal. Mar. 9, 2021)). In the case at bar, Canisius College's delay in resolving Plaintiffs' complaints, and its enabling of Noonan's ongoing harassment of Plaintiffs by withholding their work product for the Project Tiger film, which ultimately sabotaging their ability to complete the film, demonstrates plausible deliberate indifference. Moreover, a failure to apprise complaining students of their rights and options has consistently been viewed by the courts in the Second Circuit as a demonstration of deliberate indifference. *See Doe v. Sarah Lawrence Coll.*, 453 F. Supp. 3d 653, 666 (S.D.N.Y. 2020) (student's meeting with Title IX office "proceeded in a rushed, disorganized and undocumented manner, and the plaintiff was allegedly never fully explained her rights and options"); *Tubbs v. Stony Brook Univ.*, 2016 WL 8650463 (finding a plausible claim for deliberate indifference existed where Plaintiff reported a sexual assault and was not explained her options).

Finally, Plaintiffs allege they were on notice that Canisius College would do nothing in response to their complaints about Noonan on June 11, 2019 when they were informed by e-mail that Noonan has been permitted to retire. Accordingly, Plaintiffs post-assault claims are timely as this case was filed within the three year statute of limitations that began on June 11, 2019. For all of the reasons stated herein, Plaintiffs have alleged plausible, timely post-assault claims and Defendant's motion to dismiss should be denied.

**C.**     **Plaintiffs Have Pled Plausible Gender Discrimination Claims**

Canisius College contends that Plaintiffs have failed to allege plausible gender discrimination because the Complaint contains allegations that Noonan abused male students by failing to select them for CAC trips. *See* Def. Mem. at 15. In order to survive a motion to dismiss, a plaintiff alleging gender discrimination must specifically allege the events claimed to constitute intentional discrimination as well as circumstances giving rise to a plausible inference of discriminatory intent. *See Yusuf v. Vassar Coll.,* 35 F.3d 709, 713–14 (2d Cir. 1994).

In the case at bar, Plaintiffs allegations demonstrate that Noonan subjected them to constant sexually suggestive conduct and there are no allegations that he subjected male students to the same mistreatment. Moreover, Plaintiffs' allegations demonstrate that Noonan's misconduct was motivated by gender bias. For example, Tuhovak observed Noonan discuss unrelated topics during class trips, such as the #MeToo Movement, which Noonan commented, was "scapegoating good men." Noonan also discussed how Bill Cosby did nothing wrong and that the women who came forward against him were "simply looking for attention." *See* Complaint, ¶¶ 228-230. While preparing to film a class presentation for Noonan, Boucher observed him pepper another student with questions about her personal life and lecture her about the "importance of having children at a young age," despite the student's statement that she wanted to focus on her education and professional life. *Id.,* ¶¶ 90-95.  Moreover, Plaintiffs allegations demonstrate that Canisius College has historically failed to remedy sexual harassment complaints relating to Noonan. Such facts are sufficient, at this stage, to support at least a minimal plausible inference that Plaintiffs were subjected to discrimination on account of sex. *See Doe v. Sarah Lawrence Coll.,* 453 F. Supp. 3d at 667 (denying motion to dismiss gender discrimination claims where the college allegedly had history of failed efforts to remedy sexual harassment complaints by students). Accordingly,

Plaintiffs have alleged plausible gender discrimination claims pursuant to Title IX and Defendant's motion to dismiss should be denied.

**III.**    **Plaintiffs Have Alleged Plausible, Timely Title IX Retaliation Claims**

In Count III, Plaintiffs allege violations of Title IX's prohibition against retaliation, which include *inter alia,* Canisius College's failure to investigate and adjudicate Plaintiffs' complaints about Noonan's sexual misconduct in accordance with its Sexual Harassment and Gender-Based Misconduct Policy; and, depriving Plaintiffs of any supportive measures as defined in that policy. As a result, Plaintiffs allege they were deprived of *inter alia* the ability to harness the resources of the College to make the documentary film; obtain recommendation letters for graduate school; and important information about graduation requirements, which almost prevented Boucher from gradating on time. *See* Complaint, ¶¶ 417-32.

"Retaliation against individuals because they complain of sex discrimination is intentional conduct that violates the clear terms of Title IX," *Papelino*, 633 F.3d at 91. Under Title IX, the elements of a *prima facie* retaliation are: (1) protected activity by the plaintiff; (2) knowledge by the defendant of the protected activity; (3) adverse school-related action; and (4) a causal connection between the protected activity and the adverse action." *Id.* For a Title IX retaliation claim to survive a motion to dismiss, the plaintiff must plausibly allege that: (1) defendants discriminated—or took an adverse action—against her, (2) because she has opposed any unlawful practice. *Castro v. Yale Univ.,* 518 F. Supp. 3d 593, 611 (D. Conn. 2021). In the context of a retaliation claim, an adverse action may be "any action that could well dissuade a reasonable [student] from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57  (2006).

Notwithstanding Canisius College's position to the contrary, *see* Def. Mem. at 19-22, Plaintiffs' allegations that it failed to investigate their complaints is actionable retaliation if the adverse action alleged is not merely the failure to investigate, which is the case here. In *Fincher v. Depository Trust & Clearing Corp.,* the Court of Appeals held that "failure to investigate a complaint cannot be considered an adverse ... action taken in retaliation for the filing of that *same* complaint" because it "will not ordinarily constitute a threat of further harm[.]" 604 F.3d 721, 722 n. 8 (2d Cir.2010) (emphasis added). The *Fincher* Court acknowledged, however, that a defendant's failure to investigate a complaint may be retaliatory "if the failure is in retaliation for some *separate,* protected act by the plaintiff." *Id.* at 722 (emphasis added). For instance, in *Rochon v. Gonzales,* 438 F.3d 1211 (D.C. Cir. 2006), the D.C. Circuit found adverse action where an employer failed to investigate a death threat against an employee in retaliation for the employee's lodging an earlier discrimination complaint. *See* 438 F.3d at 1216–20.

In this case, Plaintiffs allege they engaged in protected activity by complaining about Noonan's discriminatory misconduct to Biology Department faculty first and then the Title IX Officer during the January and February 2019 time period, and then continued to engage in protected activity regarding Canisius College's failure to keep them apprised of the investigation and their role in the adjudicative process, which resulted in a meeting with Plaintiffs and the other complaining students and Walleshauser in April 2019.  *See* Complaint, ¶¶ 58-65.

At this early stage in the proceeding, before discovery has been conducted, these allegations are sufficient to establish that Defendant's retaliatory treatment was prompted by Plaintiffs' ongoing engagement in protected activity, including during the meeting in April 2019, when they insisted on an update on the investigation, and complained about Walleshauser's failure to keep them informed. *See Irrera v. Humpherys*, 859 F.3d 196, 198–99 (2d Cir. 2017) (reversing

dismissal, holding plaintiff pled a plausible retaliation claim he received no job interviews, even though he was highly qualified, and the plaintiff provided "no allegation that he [was] aware of a negative reference sent to any particular school")[1].

In *JD1 v. Canisius Coll.,* this Court refused to dismiss a Title IX retaliation claim brought by one plaintiff who alleged the following facts in support of that claim: (1) [the plaintiff]  stopped attending [track] team parties); (2) [the track team coach] contacted [the plaintiff's] parents and told them that the student she was dating would be a bad influence; (3) [the plaintiff] emailed members of the Athletic Department at the time of her resignation indicating that she resigned due to the assault and "other conduct of the Defendants. *See* 2022 WL 2308902, at *15. Plaintiffs in this case have arguably pled more robust retaliation claims because the retaliatory conduct alleged were all adverse actions related to their academic activities at Canisius College.

Moreover, allegations that Plaintiffs were deprived of access to professors who would write them letters of recommendation for graduate school because Defendant failed to ensure they were assigned to advisors after Noonan was removed from campus and permitted to retire is a plausible adverse action in the Title IX context. In *Bailey v. New York L. Sch.,* a district court denied the law school's motion to dismiss where the plaintiff alleged she was unable to obtain a letter of recommendation from a professor after having complained to school officials about allegedly improper conduct by another student. 2017 WL 835190, at *7 (S.D.N.Y. Mar. 1, 2017), *aff'd,* 2021 WL 5500078 (2d Cir. 2021). The court found that the close proximity between the plaintiff's alleged complaints and the alleged retaliation made it "at least minimally plausible ... that the

---

[1] Defendant incorrectly cites to the district court decision in *Irrera,* which was subsequently reversed, without acknowledging the Second Circuit's decision. *See* Def. Mem. at 21.

School took adverse action[.]" *Id; see also Novio v. New York Acad. of Art*, 286 F. Supp. 3d 566, 578-79 (S.D.N.Y. 2017) (same).

Here, the close temporal proximity to Plaintiffs' initial complaints to members of the Biology Department faculty in January 2019, their formal complaints to Canisius College's Title IX Officer in February 2019, and Defendant's retaliatory conduct, which commenced with the College's failure to immediately remove Noonan from campus and did so only four weeks after Plaintiffs' first came forward with complaints about his discriminatory misconduct, is also sufficient to establish the requisite causal connection. *See Papelino*, 633 F.3d at 91 ("Close temporal proximity between the plaintiff's protected activity and the ... adverse action may in itself be sufficient to establish the requisite causal connection.").

None of the cases discussed and cited to by Defendant support dismissal of Plaintiffs' retaliation claims because those cases involved allegations that are materially different from the instant case. In *Williams v. Columbia Univ.,* (discussed in Def. Mem. at 19-20), the plaintiff's only allegations in support of her Title IX retaliation claim related to the university's failure to investigate her complaint, which was held to be insufficient to sustain the claim. 2012 WL 3879895, at *3 (S.D.N.Y. Aug. 28, 2012); *see also Fincher v. Depository Tr. & Clearing Corp.,* 604 F.3d at 721 (discussed in Def. Mem. at 19-20), (affirming dismissal of Title VII retaliation claim because "[a]n employee whose complaint is not investigated cannot be said to have thereby suffered a punishment for bringing that same complaint").

Canisius College attempts to obtain dismissal of Plaintiffs' Title IX retaliation claims by citing to the factual allegations contained in Walleshauser's Declaration and attached exhibits, which is not an appropriate submission before discovery has been conducted. *See* Def. Mem. at 20-21; *cf. Doe v. Sarah Lawrence Coll.,* 453 F. Supp. 3d 664-65 (declining to consider the

defendant's "exhibits [which] may be helpful at trial on the merits of Plaintiff's allegations, [but] it cannot be said, at this juncture, that such exhibits are integral to the complaint").

Additionally, Plaintiffs' retaliation claims are timely because they allege that Defendant's retaliation began during the Spring of 2019 and continued to the time four of them graduated the following year, in 2020. Accordingly, the Plaintiffs have alleged plausible, timely retaliation claims under Title IX and Defendant's motion to dismiss should be denied.

## IV.     Plaintiffs Have Alleged Plausible Breach of Contract Claims[2]

In New York, the relationship between a university and its students is contractual in nature. *Papelino v. Albany College of Pharm.,* 633 F.3d at 93 "The terms of the implied contract are contained in the university's bulletins, circulars and regulations made available to the student." *Id.* "To survive a motion to dismiss for a breach of contract claim, the complaint must allege facts which show: (1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of the contract by the defendant, and (4) damages." *Prasad v. Cornell Univ.,* 2016 WL 3212079, at \*19-21 (N.D.N.Y. Feb. 24, 2016).

A student asserting a breach of contract claim must identify the specific terms of the implied contract that were allegedly violated by the college. *See Tedeschi v. Wagner Coll.,* 49 N.Y.2d 652, 661–62 (N.Y. 1980) (vacating dismissal and remanding breach of contract claim of student against college for failure to follow suspension policy). Canisius College wrongly[3]

---

[2] Plaintiffs withdraw Count V in light of their breach of contract claim articulated in Court IV.
[3] None of the cases cited by Defendant are on all fours. *See* Def. Mem. at 22-23, including *Bailey v. New York L. Sch.,* 2021 WL 5500078, at \*5 (2d Cir. Nov. 24, 2021) (district court properly dismissed breach of contract claim based on assurances made in NYLS's Code of Conduct, website, and other communications because none of those statements contain discrete promises that give rise to contractual obligation); *Posso v. Niagara Univ.,* 518 F. Supp. 3d at 704 (granting dismissal of breach of contract claim because a student cannot maintain the claim based solely on the implied covenant of good faith"); *Noakes v. Syracuse Univ.,* 369 F. Supp. 3d 397 (N.D.N.Y. 2019) (same); *Nungesser v. Columbia Univ.,* 244 F. Supp. 3d 345 (S.D.N.Y. 2017) (same); *Faiaz*

contends that Plaintiffs have allegedly failed to "assert, in a non-conclusory fashion, *how* defendant[] breached pertinent contract provisions." *See* Def. Mem. at 22-3 (emphasis in original). However, Defendant's argument is misplaced because Plaintiffs identify specific provisions of the Sexual Harassment and Gender Based Misconduct Policy that were violated when it failed to investigate and adjudicate Plaintiffs' complaints about Noonan's discriminatory mistreatment, and then retaliated by depriving them of all supportive measures they were entitled to pursuant to school policy. *See* Complaint, ¶¶ 417-443.

Canisius College's Sexual Harassment and Gender Based Misconduct Policy states that it applies to all employees and prohibits gender-based misconduct and retaliation. *See* Complaint, ¶ ¶ 422-23. The policy states that "[s]upportive [m]easures can be available before or after the filing of a Formal Complaint" and "may include . . . Counseling. . . Modifications of work or class schedules; Campus escort services; and Restrictions on contact between the parties (including 'No Contact Orders') . . . . and; Other Supportive Measures deemed appropriate by the Title IX Coordinator." *Id.* ¶ 425.  In Count III, Plaintiffs allege that Canisius College failed to afford any of the Plaintiffs access to counseling and they had to seek out and pay for those services, themselves; failed to provide Plaintiffs with campus escort services when they expressed fear of retaliation from Noonan after they made formal complaints; failed to afford Plaintiffs involved in Project Tiger with a dedicated professor who would help them obtain footage from their trip to India from Noonan; and failed to afford Plaintiffs new ABEC Program advisors and mentors, which resulted in *inter alia* Plaintiffs being denied accurate information regarding graduation requirements as well as recommendation letters and other assistance. *See id.*, ¶¶ 417-32.

---

*v. Colgate Univ.,* 64 F. Supp. 3d 336 (N.D.N.Y. 2014) (same); *Rochester-Genesee Reg'l Transp. Auth. v. Cummins, Inc.,* 2010 U.S. Dist. LEXIS 75805, (W.D.N.Y. July 28, 2010); *Kelly v. Yale Univ.,* 2003 WL 1563424 (D. Conn. Mar. 26, 2003) (same).

Plaintiffs' allegations in support of their breach of contract claim is comparable to a similar claim raised in *Papelino. See* 633 F.3d at 94. In that case, the Second Circuit reversed the district court's grant of summary judgment, holding that genuine issues exist for trial with respect to whether the College breached policy and its implied duty of good faith by, *inter alia,* failing to investigate the plaintiffs' complaint of sexual harassment, and by mishandling the retaliatory disciplinary proceedings that the plaintiffs were subjected to after the professor-harasser accused them of cheating, which resulted in the temporary denial of two of the plaintiffs' diplomas and in a failing grade being issued to the third plaintiff for one class. *See also Doe v. Sarah Lawrence Coll.,* 453 F. Supp. 3d at 668 (denying motion to dismiss student's breach of contract claim where the plaintiff alleged that the college mishandled and failed to investigate her Title IX complaint, and that she was not informed she was protected from retaliation or offered any accommodations in accordance with SLC's Policy); *Jane Doe v. Union College*, 2020 WL 1063063, at *8 (N.D.N.Y. Mar. 5, 2020) (finding no basis to dismiss breach of contract claim where the plaintiff alleged specific allegations pertaining to how Defendants handled her investigation in contravention of school policy.). Therefore, Plaintiffs' breach of contract claims are plausible and Defendant's motion to dismiss should be denied.

## V.   **Plaintiffs Have Alleged Timely Negligent Supervision and Retention Claims**

Defendant's attack on Plaintiffs' negligent supervision and retention claims, as articulated in Count VI, is limited to an allegation that the claim is not timely. *See* Def. Mem. at 9. Canisius College's position is informed by a narrow reading of Plaintiffs' allegations regarding Noonan's harassment, which Defendant states "occurred on the last CAC trip to India in January 2019. *Id.*

To state a claim for negligent supervision and retention, a plaintiff must allege that the employee was "acting outside the scope of his or her employment." *Rich v. Fox News Network,*

*LLC*, 939 F.3d 112, 129–30 (2d Cir. 2019). New York courts consistently have held that sexual misconduct does "not further an employer's business, even when committed within the employment context." *See SB ex rel. AB v. Newark Cent. Sch. Dist.*, 2022 WL 541773, at *9 (W.D.N.Y. Feb. 23, 2022) (teaching assistant who persuaded student to send pornographic photos was "clearly ... outside the scope of his employment"). Here, Plaintiffs allege that Noonan continued to subject them to harassment, which is conduct outside of the scope of his employment, after they filed formal complaints with Canisius College's Title IX Officer when he refused to provide footage of the India trip, and ultimately prevented Plaintiffs from developing the Project Tiger film. Noonan's efforts to harass Plaintiffs only came to an end on June 11, 2019, when Walleshauser notified Plaintiffs that "[w]ith respect to Project Tiger, you will be afforded access to the film . . . for using in your own finished work." *See* Complaint, ¶ 24.

Plaintiffs have alleged Noonan subjected them to harassing conduct outside the scope of his employment within the limitations period. The cases cited by Defendants support Plaintiffs' position. *See* Def. Mem. at 9. In *Sharon B. v. Reverend S.,* the Fourth Department reversed dismissal of the plaintiff's negligent retention claim because "defendants failed to establish that the action was commenced more than three years after the last act of alleged sexual abuse." 244 A.D.2d 878, 879–80 (1997).  Similarly, in *Kerzhner v. G4S Gov't Sols., Inc.,* the First Department reversed dismissal, holding that "the claim, brought in 2013 based on an incident that occurred in 2011, [and] is not time-barred." 138 A.D.3d 564, 565 (2016). Accordingly, Plaintiffs' negligent supervision and retention claims are timely and Defendant's motion to dismiss should be denied.

## **CONCLUSION**

For all of the reasons set forth above, Plaintiffs respectfully request that the Court deny the Defendant's Motion to Dismiss brought pursuant to Fed. R. Civ. P. 12(b)(6) and Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56 in their entirety, with prejudice.

Dated: September 1, 2022

Respectfully submitted,

LAW OFFICE OF DANIELA NANAU P.C.

DANIELA NANAU

89-03 Rutledge Avenue
Glendale, New York  11385
Telephone: (888) 404-4975
Facsimile: (718) 998-6916
E-Mail: dn@danielananau.com

*Attorneys for Plaintiffs*

.