UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

SIERRA BOUCHER, LILY ENGEBRECHT, NATASSIA TUHOVAK, HANNAH WHELAN, and CASSIDY WOOD,

Plaintiffs,

-against-

TRUSTEES OF CANISIUS COLLEGE,

Defendants.

Case No. 1:22-cv-00381-CCR

**REPLY MEMORANDUM OF LAW IN SUPPORT OF CANISIUS COLLEGE'S RULE 12(b) MOTION TO DISMISS AND RULE 56 MOTION FOR SUMMARY JUDGMENT**

WARD GREENBERG HELLER & REIDY LLP
1800 Bausch & Lomb Place
Rochester, New York 14604
(585) 454-0700

Thomas S. D'Antonio
Christine M. Naassana
*of counsel*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ ii

I. ESTABLISHED RECORD FACTS ARE DISPOSITIVE OF PLAINTIFFS' CLAIMS ........ 1

II. PLAINTIFFS' STATUTORY AND TORT-BASED CLAIMS ARE ALL TIME-BARRED ........ 6

III. PLAINTIFFS' CLAIMS FAIL SUBSTANTIVELY AS WELL ........ 8

A. *The Title IX-Based Claims are not Viable* ........ 8

*B. The Remaining Claims Fail as Well* ........ 9

CONCLUSION ........ 10

# TABLE OF AUTHORITIES

**Cases** **Page**

*Adelson v. Harris*, 774 F.3d 803 (2d Cir. 2014) ..... 3

*Alphonse Hotel Corp. v. Tran*, 828 F.3d 146 (2d Cir. 2016) ..... 3

*Andersen v. Rochester City Sch. Dist.*, 2011 U.S. Dist. LEXIS 41184 (W.D.N.Y. Apr. 15, 2011) ..... 10

*Anderson v. Rochester-Genesee Reg'l Transp. Auth.*, 337 F.3d 201 (2d Cir. 2003) ..... 3

*Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629 (1999) ..... 9

*Deleon v. Ayers*, 2022 U.S. Dist. LEXIS 33599 (W.D.N.Y. Feb. 25, 2022) ..... 3

*Doe v. E. Irondequoit Cent. Sch. Dist.*, 2018 U.S. Dist. LEXIS 76798 (W.D.N.Y. May 7, 2018) ..... 9

*Ferrari v. Keybank N.A.*, 2009 U.S. Dist. LEXIS 160 (W.D.N.Y. Jan. 5, 2009) ..... 1

*Gualandi v. Adams*, 385 F.3d 236 (2d Cir. 2004) ..... 3

*Hernandez v. Coffey*, 582 F.3d 303 (2d Cir. 2009) ..... 5

*Irrera v. Univ. of Rochester*, 2016 U.S. Dist. LEXIS 203057 (W.D.N.Y. May 23, 2016) ..... 7

*JD1 v. Canisius Coll.*, 2022 U.S. Dist. LEXIS 113451 (W.D.N.Y. June 27, 2022) ..... 10

*Jones v. SEIU Local 1199*, 2009 U.S. Dist. LEXIS 119035 (W.D.N.Y. Dec, 22, 2009) ..... 1

*Kelley v. Ithaca Coll.*, 2019 U.S. Dist. LEXIS 102636 (N.D.N.Y. June 18, 2019) ..... 7

*Nungesser v. Columbia Univ.*, 169 F. Supp. 3d 353 (S.D.N.Y. 2016) ..... 9

*Paddington Partners v. Bouchard*, 34 F.3d 1132 (2d Cir. 1994) ..... 3, 4

*Toshiba Corp. v. Am. Media Int'l LLC*, 2012 U.S. Dist. LEXIS 125344 (S.D.N.Y. Sept. 4, 2012) ..... 3

*Trapp v. Reliance Std. Life Ins. Co.*, 2010 U.S. Dist. LEXIS 136438 (W.D.N.Y. Dec. 27, 2010) 1

**Statutes and Rules** **Page**

FED. R. CIV. P. 12(b)(6) .......... 4

FED. R. CIV. P. 12(d) .......... 5

FED. R. CIV. P. 56(a)(2) .......... 4

FED. R. CIV. P. 56(b) .......... 3

FED. R. CIV. P. 56(d) .......... 3, 5

Western Distict of New York Local Rule 56(a)(2) .......... 1, 5

## I. ESTABLISHED RECORD FACTS ARE DISPOSITIVE OF PLAINTIFFS' CLAIMS

Local Rule 56(a)(2) mandates that parties opposing summary judgment file a response to each numbered paragraph in the moving party's Statement of Undisputed Facts. Absent such a responsive submission, each of movant's stated facts may be "*deemed admitted*" for purposes of the motion. *See, e.g.*, *Trapp v. Reliance Std. Life Ins. Co.*, 2010 U.S. Dist. LEXIS 136438, * 3 at n. 1 (W.D.N.Y. Dec. 27, 2010) (citation omitted) (where no responsive statement was filed, facts in movant's Local Rule 56 Statement "are deemed admitted to the extent they are supported by the record evidence"); *accord*, *Ferrari v. Keybank N.A.*, 2009 U.S. Dist. LEXIS 160, *16 (W.D.N.Y. Jan. 5, 2009) (collecting cases); *see also Jones v. SEIU Local 1199*, 2009 U.S. Dist. LEXIS 119035, *11-12 (W.D.N.Y. Dec, 22, 2009) ("Rule 56 provides that plaintiff may NOT oppose summary judgment simply by relying upon the allegations in the complaint") (emphasis supplied).

No responsive Statement was filed by plaintiffs in response to the College's detailed Statement of Undisputed Facts. Thus, the following facts should be deemed admitted with respect to the College's dispositive motion:

- On Thursday, February 7, 2019, while traveling out of the area, Interim Title IX Coordinator Linda Walleshauser received an e-mail from plaintiff Tuhovak, expressing concerns about "a professor." (Statement of Undisputed Facts [Dkt # 5-5] at ¶ 4).

- On Monday, February 11, when first back on campus, Ms. Walleshauser met with eight students (including all five current plaintiffs) to discuss their concerns about the behavior of Michael Noonan, a tenured professor. (Dkt # 5-5 at ¶¶ 7-10).

- Within two days of this initial February 11 meeting, Ms. Walleshauser had met individually with each student, and secured their written accounts of concerns about Professor Noonan. (Dkt # 5-5 at ¶¶ 11-12).

- The day after those meetings concluded (February 14), Canisius leadership (which had been immediately alerted to the students' misconduct reports), determined that

Professor Noonan would be placed on involuntary leave, pending investigation, and during that leave would neither be permitted to be on campus, nor allowed to have contact with any student at the College. (Dkt # 5-5 at ¶¶ 13-14).

- Professor Noonan was away from campus between February 14 and 21, with no student contact; upon his return on February 21, he met with College leadership, was notified that he was being placed on involuntary leave, and was told that any acts of retaliation would merit disciplinary action, including immediate termination. (Dkt # 5-5 at ¶¶ 15, 17-20; *see also* Dkt # 5-2).

- That same day, the eight students who had come forward—including all plaintiffs—were informed that Professor Noonan was on leave, and that he had been counseled that retaliation against them was prohibited. (Dkt # 5-5 at ¶ 21).

- The reporting students were periodically informed of the efforts underway to ensure that the misbehaviors they reported would not recur, and of efforts the College was making to address their complaints. This included follow-up meetings to secure additional information from them, an April 26, 2019 meeting with all students to discuss the progress being made, and weekly updates thereafter. (Dkt # 5-5 at ¶ 22; *see also* Walleshauser Dec. [Dkt # 5-1] at ¶¶ 26-29).

- During the Spring 2019 semester, after Professor Noonan's suspension, a wide variety of academic supports for all potentially impacted students—again including all five plaintiffs—were put in place. These supports included alternate class and lab instructors; alternate advisors for ongoing research projects; help with Ignatian Day scholarship projects; and access to alternate faculty for academic counseling and graduate school recommendations. (Dkt # 5-5 at ¶¶ 27-31).

- At no point after February 14, 2019 did Professor Noonan teach a class, oversee a research project, travel with a student, or have any contact whatsoever with any Canisius student, including any plaintiff. (Dkt # 5-5 at ¶ 26).

These uncontroverted facts belie plaintiffs' stubborn (and factually insupportable) insistence that Canisius "did nothing" in response to their complaints, and establish that well more than three years before they filed this action, plaintiffs were well aware that a great deal was being done by

the College to remediate their reported concerns, and to support their academic efforts in the wake of Professor Noonan's compelled absence from campus.

Seeking to sidestep their obligations to address the facts head-on, counsel for plaintiffs asserts that a summary judgment motion is premature, because "discovery has not yet even begun." Dkt. 10 at 14. This assertion is meritless, for several reasons. First, Rule 56(b) authorizes an application for summary judgment "at any time." FED. R. CIV. P. 56(b); *see generally Anderson v. Rochester-Genesee Reg'l Transp. Auth.*, 337 F.3d 201 (2d Cir. 2003).

Second, a party contesting the propriety of summary judgment on the grounds that discovery is needed must show "*by affidavit or declaration* that, for *specified reasons*, it cannot present facts essential to justify its opposition[.]" FED. R. CIV. P. 56(d) (emphasis supplied). To meet the Rule 56(d) standard, that sworn submission must establish "(1) what facts are sought and how they are to be obtained; (2) how these facts are reasonably expected to raise a genuine issue of material fact; (3) what efforts the affiant has made to obtain them; and (4) why the affiant's efforts were unsuccessful." *Gualandi v. Adams*, 385 F.3d 236, 244 (2d Cir. 2004).

"A reference to Rule 56(d) and to the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for a Rule 56(d) affidavit." *Toshiba Corp. v. Am. Media Int'l LLC*, 2012 U.S. Dist. LEXIS 125344, *12 (S.D.N.Y. Sept. 4, 2012) (quoting *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1137 (2d Cir. 1994)); *see also Deleon v. Ayers*, 2022 U.S. Dist. LEXIS 33599, *12 (W.D.N.Y. Feb. 25, 2022). The requisite affidavit from a party opposing summary judgment on the grounds that discovery is warranted also must identify with specificity the discovery allegedly required, and "must show that the material sought is germane to the [claim], and that it is neither cumulative nor speculative, and a bare assertion that the evidence supporting a plaintiff's allegation is in the hands of the defendant is

insufficient." *Alphonse Hotel Corp. v. Tran*, 828 F.3d 146, 151 (2d Cir. 2016) (quoting *Paddington Partners*, 34 F.3d at 1138); *accord*, *Adelson v. Harris*, 774 F.3d 803, 809 (2d Cir. 2014). Here, the only submission made by plaintiffs in response to the College's motion—and the evidentiary Record created by that motion—is an unsworn Memorandum of Law that does not come close to satisfying the obligations imposed by Rule 56(d). The conclusory assertion in that Memorandum, that consideration of "matters outside the pleadings" is "inappropriate where, as here, discovery has not yet even begun" is woefully insufficient.[1]

Third, even had plaintiffs made a properly supported request under Rule 56(d) (they did not), they would not be excused from their obligations under Local Rule 56(a)(2) to file a responsive Counterstatement identifying the facts (if any) that they would propose to dispute. This is particularly the case where virtually all facts set forth in the College's Statement of Undisputed Facts relate to events well known to plaintiffs. *They* were parties reporting the alleged misconduct; *they* were present at the meetings with Ms. Walleshauser and others; *they* were recipients of the updates and communications from Ms. Walleshauser; *they* were privy to all information imparted to them by the faculty in the ABEC and Biology Departments in the wake of Professor Noonan's suspension; *they* were among the students provided with academic supports and accommodations by those faculty members after Professor Noonan was suspended; and *they* were aware that the College had taken decisive and prompt remedial action in response to their complaints (if for no other reason than the fact that they never saw Professor Noonan again after they complained).

---

[1] Plaintiffs seem to suggest that this motion, by its terms, is limited to Rule 12(b)(6). *See, e.g.*, Dkt # 10 at 9 ("None of these evidentiary submissions are relevant to Defendant's Rule 12 motion and should be viewed as an effort to obfuscate the lack of merit underlying Canisius College's arguments in support of dismissal"). That assertion blithely ignores the explicit language of the College's Notice of Motion, styled a "Notice of Motion to Dismiss *and/or for Summary Judgment*," and explicitly referencing Rule 56 among the bases for the relief sought. *See* Dkt. # 5.

There was, simply stated, no "need" for discovery in order for plaintiffs to be in a position to reply to the College's Rule 56.1 Statement.

Finally, plaintiffs' contention that the College "failed to put Plaintiffs on notice that they were moving for summary judgment" is equally untenable. As noted, the express language in the Notice of Motion belies this assertion. *See* Dkt. # 5 and text note 1, *supra.*[2] The case cited for the proposition that "notice before conversion" into a summary judgment motion is required is completely inapposite. In *Hernandez v. Coffey*, 582 F.3d 303 (2d Cir. 2009), defendants had moved for judgment on the pleadings, pursuant to Rule 12©. The district court, as authorized by Rule 12(d), converted the motion to a Rule 56 motion in order to consider material outside the pleadings. *Id.* at 307. The Second Circuit noted that a "district court acts properly in converting a motion for judgment on the pleadings into a motion for summary judgment when the motion presents matters outside the pleadings, *but [Rule 12(d)] requires that the court give 'sufficient notice to an opposing party and an opportunity for that party to respond*." *Id.* (emphasis supplied). Hernandez also was a *pro se* prisoner litigant, prompting the Second Circuit to further observe that "[i]n the case of a *pro se party*…notice is particularly important because the pro se litigant may be unaware of the consequences of his failure to offer evidence bearing on triable issues." *Id.* at 308 (emphasis supplied).

Here, unlike in *Hernandez*: (a) the motion before this Court *has always sought Rule 56 relief*; (b) plaintiffs themselves recognized and acknowledged that fact; (c) the documents filed with the College's motion included all those required when summary judgment relief is sought,

---

[2] Plaintiffs cannot credibly contend that summary judgment was not among the relief they understood was being sought by the College on this motion, as counsel's own July 25, 2022 letter to this Court referenced the College's submission as a "Motion to Dismiss/Summary Judgment." *See* Dkt # 7.

including the requisite Notice and the Local Rule 56.1 Statement; (d) Rule 12(d) has no application whatsoever under these circumstances; and © from the inception of this case plaintiffs have been represented by counsel, who well understands the "meaning and consequences" of a summary judgment motion.

For all these reasons, plaintiffs cannot escape the consequences of the established Record facts before this Court, or their failure to contest those facts.

## II. PLAINTIFFS' STATUTORY AND TORT-BASED CLAIMS ARE ALL TIME-BARRED

Plaintiffs contend that both their pre-assault claims and post-assault Title IX claims accrued on June 11, 2019. *See* Dkt # 10 at 14, 16. That is the date when plaintiffs conclusorily allege in their Complaint (and nowhere else) that "they became aware that Canisius College would do nothing in response to their complaints." *Id.* But that self-serving assertion flies in the face of the factual Record (both as established by Canisius and as admitted by plaintiffs).

Plaintiffs surely knew that Canisius had done a great deal well before June 2019—including first and foremost removing Professor Noonan from their presence and thereby eliminating the possibility of exposure to any continuing misconduct. The College, among other things: (a) suspended Professor Noonan in February 2019; (b) banned him from campus, and from any student contact, effective immediately upon his suspension; (c) replaced him with alternate faculty members on student research projects, student counseling needs, and student recommendation obligations in February 2019; and (d) met with plaintiffs (and other reporting students) regularly throughout the Spring of 2019, beginning in February 2019, continuing in April and weekly thereafter, to inform them of progress on the matter.

To be sure, on these uncontested facts no viable case can be made that plaintiffs reasonably believed the College was "doing nothing," or that it had a policy of deliberate indifference to their

reported concerns which they first realized in June 2019. The College's swift, resounding response to the concerns reported in February 2019—and addressed comprehensively within days of those reports—negates any contention that the limitations period somehow accrued on June 11, 2019.[3]

Pre-harassment deliberate indifference claims accrue, at the latest, when plaintiffs are aware of facts that either reasonably establish or reasonably negate the existence of an institutional policy of deliberate indifference. *See* Dkt. # 5-6, Point II at 6-8.[4] The Record facts here establish that, as of February 2019, plaintiffs were aware of the College's remedial actions, and had the ability to assess whether those actions evinced deliberate indifference. In seeking to seize upon the fact they learned of Professor Noonan's forced retirement in June 2019 as a basis to argue their claims were timely, plaintiffs ignore the glaring fact that he was removed from their presence promptly in February as a direct result of their complaints, and that they knew of that fact. But indeed that is not just an "inconvenient truth" for plaintiffs in this case—it is dispositive of their pre-harassment claim (and all other harassment and Title IX-based claims).

For instance, post-harassment deliberate indifference claims accrue—at the latest—when those claims first come "into existence"—*i.e.*, when the College allegedly has notice of severe sexual harassment, but (2) fails to respond in a reasonable manner. *See* Dkt # 5-6, Point I(A) at 3-4*, e.g.*, *Irrera v. Univ. of Rochester*, 2016 U.S. Dist. LEXIS 203057, *6 (W.D.N.Y. May 23, 2016); *accord*, *Kelley v. Ithaca Coll.*, 2019 U.S. Dist. LEXIS 102636, *16-17 (N.D.N.Y. June 18, 2019).

---

[3] To the extent that plaintiff Tuhovak argues she did not learn about Professor Waldau's 2014 report to the Title IX Office until "after she complained in 2019" (Dkt. 10 at 14), this claim is contradicted by her own allegations that in the Fall of 2018, she felt "extremely discouraged and unsupported" by the "College's inaction" after she reported Professor Noonan's "mistreatment" to Professor Susan Margulis. Dkt. 1 at ¶¶ 257, 258.

[4] Plaintiffs are correct that the Second Circuit has not addressed whether such pre-assault claims are viable, but for purposes of this motion the College will assume that they can be stated in theory. On this Record, however, they fail.

To the extent plaintiffs contend Canisius was "deliberately indifferent," a post-harassment claim by definition focuses on actions taken in response to the complaints reported on February 11, 2019. While plaintiffs conclusorily assert that the College's response "demonstrated an official decision by Defendant not to remedy the situation," Dkt # 10 at 14-15, the actions taken in the days immediately after February 2019—actions established as fact as opposed to unverified allegation—completely eviscerate that claim. And allegations that the College at unspecified times "enabled" Professor Noonan's refusal to provide them the India footage, which "sabotaged" their ability to make the Project Tiger documentary film, again founders on the Record facts. Plaintiffs do not contest the *facts* that on February 21, 2019 they were assigned alternate mentors "to discuss how to proceed with their ongoing research projects and documentaries," and that as of February 26 Canisius Professor Susan Margulis had met with each reporting student (including plaintiffs) in order to collaborate and assist them with that Project Tiger work. *See* Dkt # 5-1 at ¶¶ 22-23.[5]

Similarly, gender discrimination, hostile environment, harassment and negligence claims accrue when the allegedly unlawful conduct occurs. As Professor Noonan was relieved of his responsibilities and had no further contact with any plaintiff after February 21, 2019, and his last interaction with them occurred in January 2019, plaintiffs' failure to assert these claims prior to February 21, 2022 is dispositive. Dkt. # 5-6, Points I(B), (C) and Points III (A), (B) at 5, 8-9.

## III. PLAINTIFFS' CLAIMS FAIL SUBSTANTIVELY AS WELL

### *A. The Title IX-Based Claims are not Viable*

The *sine qua non* for Title IX-based post-assault claims is a viable showing that the College was "deliberately indifferent" to known acts of gender-based misconduct. Dkt # 5-6 at 11-14; *see*

[5] These uncontested facts similarly foreclose plaintiffs' ability to pursue a negligent hiring and retention claim, as plaintiffs concede that the only grounds upon which that claim can be pursued relate to Professor Noonan's alleged failure to allow them to develop the Project Tiger film. *See* Dkt. 10 at 25.

*generally Davis v. Monroe Cty. Bd. Of Educ.*, 526 U.S. 629, 644-45 (1999). There is no serious question on this Record as to plaintiffs' ability to make such a showing—they cannot. Their reliance on case law denying Rule 12 motions challenging allegations of continued exposure to an alleged harasser, institutional failures to furnish supports, or "delayed responses" to student reports of serious misconduct, *see* Dkt # 10 at 15-16, are plainly inapposite. And plaintiffs' continued insistence they were "on notice that Canisius College would do nothing in response to their complaints about Noonan," *id.* at 16, is frivolous given the uncontested facts before this Court.

Similarly, plaintiffs seek to avoid the consequences of their own pleading when they dismiss the significance of allegations that Professor Noonan treated male students less favorably than females, while at the same time insisting that he was gender-biased against them. Dkt. # 10 at 17. But the Complaint is devoid of any allegation that Professor Noonan treated men *more favorably* than women, or that his actions were motivated by bias *against them*. Absent such allegations, the gender discrimination claims are substantively deficient, as well as untimely. *See* Dkt # 5-6 at 15-17; *Nungesser v. Columbia Univ.*, 169 F. Supp. 3d 353, 363 (S.D.N.Y. 2016).

Finally, the Title IX pre-assault claims cannot stand absent specific factual allegations of prior incidents giving the College notice of a heightened risk specific enough to allow it to develop and implement a remedy. Here, no such particular allegation has been made, nor have plaintiffs plausibly alleged an institutional policy of deliberate indifference. *See* Dkt # 5-6 at 17-19; *Doe v. E. Irondequoit Cent. Sch. Dist.*, 2018 U.S. Dist. LEXIS 76798, *64-65 (W.D.N.Y. May 7, 2018). Indeed, the uncontroverted factual Record in this case belies any claim of institutional indifference. Plaintiffs' untimely pre-assault claims thus fail on the merits as well.

***B. The Remaining Claims Fail as Well***

Plaintiffs insist that various alleged failures to act by Canisius, many of them demonstrably untrue, are sufficient to support a retaliation claim. They are wrong. As a threshold matter, the

"retaliatory" conduct alleged (plaintiffs being "deprived of access" to professors, deprived of "any supportive measures," and deprived of access to research resources, and the College allegedly "declining" to investigate their reports of Professor Noonan's misconduct) is disproven by the uncontroverted facts. Moreover, retaliation presupposes an affirmative act, also not alleged here. *See, e.g.*, *Andersen v. Rochester City Sch. Dist.*, 2011 U.S. Dist. LEXIS 41184, *20-21 (W.D.N.Y. Apr. 15, 2011). The case relied on by plaintiffs, *JD1 v. Canisius Coll.*, 2022 U.S. Dist. LEXIS 113451 (W.D.N.Y. June 27, 2022) illustrates this deficiency well. There, the retaliation claims that survived Rule 12 scrutiny involved affirmative alleged actions by a coach—contacting parents and e-mailing others with negative information. Dkt # 10 at 20. No similar allegation is made here.

Plaintiffs' contract claims also fail. They allege that the College's failure to afford them supportive measures, failure to afford them access to alternative faculty resources and failure to provide "new ABEC Program advisors and mentors" breached the College's Title IX policy. Dkt # 10 at 23. But *none* of these "failures" were supported by the factual Record, nor have plaintiffs otherwise alleged an actionable breach. *See* Dkt # 5-6 at 22-23.

Finally, plaintiffs cannot assert a viable negligent retention claim. While to be sure Professor Noonan's misconduct, reported in February 2019, would be conduct outside the scope of his employment, the uncontroverted facts establish that promptly after that misconduct was reported, he was removed from campus, and never again interacted with any plaintiff. *See* Dkt # 5-1 at ¶¶14-18, 31; Dkt # 52-; Dkt # 5-5 at ¶¶ 9-19, 26. In addition to being time-barred, plaintiffs cannot establish a breach of duty, or proximate causation. Their negligence-based claim fails.

## CONCLUSION

For the reasons set forth above, and in Canisius College's initial submissions on this motion, plaintiff's claims should be dismissed as untimely, as well as on the merits.

Dated: September 15, 2022

Respectfully submitted,

WARD GREENBERG HELLER & REIDY LLP

By: s/Thomas S. D'Antonio
Thomas S. D'Antonio

1800 Bausch & Lomb Place
Rochester, New York 14604
(585) 454-0700
tdantonio@wardgreenberg.com

*Attorneys for defendant Canisius College*

Christina M. Naassana,
of counsel.