UNITED STATES DISTRICT COURT
FOR THE
WESTERN DISTRICT OF NEW YORK

SIERRA BOUCHER, LILY ENGEBRECHT, )
NATASSIA TUHOVAK, HANNAH )
WHELAN, and CASSIDY WOOD, )
                               )
    Plaintiffs, )
                                 )
      v. )     Case No. 1:22-cv-00381
                                 )
TRUSTEES OF CANISIUS COLLEGE, )
                                 )
    Defendants. )

**OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS' MOTION TO DISMISS**
(Doc. 5)

Plaintiffs Sierra Boucher, Lily Engebrecht, Natassia Tuhovak, Hannah Whelan, and Cassidy Wood ("Plaintiffs") bring this action against Defendants Trustees of Canisius College (the "College") alleging causes of action for violations of Title IX of the Educational Amendments of 1972, 20 U.S.C. § 1681, for sexual harassment/hostile educational environment (Count I), gender discrimination (Count II), and retaliation (Count III). Plaintiffs also assert breach of contract (Count IV), estoppel and reliance (Count V),[1] and negligent retention and supervision (Count VI).

Pending before the court is the College's motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). (Doc. 5.) On September 1, 2022, Plaintiffs opposed the College's motion to dismiss (Doc. 10), and on September 15, 2022, the College replied (Doc. 12), at which time the court took the pending motion under advisement.

On November 1, 2022, the court issued a text order denying in part without prejudice the College's motion for summary judgment, finding that motion inappropriate

---

[1] Plaintiffs have withdrawn Count V. *See* Doc. 10 at 27 n. 2.

at this stage while a motion to dismiss is pending and without the benefit of discovery. *See* Doc. 14.

Plaintiffs are represented by Daniela Elizabeth Nanau, Esq. The College is represented by Thomas S. D'Antonio, Esq. and Christine Marie Naassana, Esq.

## I.    Allegations in the Complaint.

The College is a private institution that provides both undergraduate and graduate degree programs with approximately 4,000 enrolled students at any given time. Plaintiffs are students who attended the College between approximately 2016 and 2020.

Plaintiffs allege that they "specifically attended [the] College to obtain a degree from the" school's Animal Behavior, Ecology and Conservation Program ("ABEC Program"), which "is one of the country's first interdisciplinary courses of study combining the behavioral biology of animals[] with issues relating to animal welfare[] and wildlife conservation, with a focus on experiential learning[.]" (Doc. 1 at 6, ¶ 27.)

Non-party Michael Noonan ("Professor Noonan"), a tenured professor, worked at the College for forty years, founded the ABEC Program, and chaired the ABEC Program for at least part of those forty years. Professor Noonan was known as a "specialist in animal behavior and conservation" who "attract[ed] significant grant and donor money to the school[.]" *Id.* at 8, ¶ 42. He also served, at times, as the Director of Canisius Ambassadors for Conservation ("CAC"), which provided students with the opportunity to visit "distant locations to study wildlife and conservation issues[] first-hand[.]" *Id.* at ¶ 46. On CAC trips, students recorded video footage for short films.

Alleging that Professor Noonan "used CAC trips to spend unmonitored time away from the College with targeted students," *id.* at 9, ¶ 49, Plaintiffs claim he was a "serial sexual predator" and the College "demonstrated deliberate indifference to numerous complaints[] raised by or on behalf of many women students and others[] regarding the discriminatory mistreatment they were subjected to by" Professor Noonan. *Id.* at 1, ¶ 1. Plaintiffs further assert that Professor Noonan used his positions as Chair of the ABEC Program and Director of CAC "to condition mentorship and departmental support on a student's submission to his constant sexually suggestive behavior that regularly crossed

2

the line of acceptable conduct[.]" *Id.* at ¶ 2. In addition to "sexually suggestive discourse" wherein he insisted "on engaging in 'girl talk' about his own dating history[,]" Professor Noonan allegedly requested hugs from students, engaged in "constant inappropriate touching of student[s'] hair and clothing, including their bra straps and underwear[,]" inquired "about the sex lives of his students[,]" and made "numerous suggestions," including to each Plaintiff, "that young women should be open to dating older men[.]" (Doc. 1 at 2, ¶ 3.) Plaintiffs allege that Professor Noonan told female students what they could and could not wear and dictated how students styled their hair before filming CAC events. *Id.* at 24, ¶ 161, 42, ¶ 305.

The College allegedly knew of Professor Noonan's behavior as early as 2014 because it "received numerous complaints regarding sexual harassment and gender-based discrimination perpetuated by" him. *Id.* at 2, ¶ 7. Plaintiffs assert that the College "failed to adjudicate those complaints pursuant to" its policies. *Id.* For example, in 2018, Plaintiff Tuhovak raised complaints about Professor Noonan's behavior to Susan Margulis, the ABEC Program Chair, which "went unremedied." *Id.* at 3, ¶ 12.[2] After complaining, Plaintiff Tuhovak "learned that Paul Waldau, the former Director of the [College's] graduate program in anthrozoology, reported [Professor] Noonan to [the College's] Title IX office in 2014 on behalf of a woman student in the graduate department." *Id.* at 39, ¶ 275.

During a January 2019 CAC trip, Professor Noonan told Plaintiff Wood "that women students and staff had complained about his conduct in the past to the College, but [the College] never found a 'significant violation' of the rules and nothing ever came of those complaints." *Id.* at 50, ¶ 368. In a support group for science and math scholarship students, Professor Andrew Stewart "routinely remark[ed] on how 'mean' he found [Professor] Noonan and how he had observed [Professor] Noonan be an 'asshole' to other faculty." (Doc. 1 at 17, ¶ 106.) Many of the students in the support group agreed with

---

[2] In this meeting, Plaintiff Tuhovak allegedly complained about Professor Noonan's verbal and emotional abuse. In response, Ms. Margulis stated, "We all know he's difficult to work with. That's just the way he is!" (Doc. 1 at 36, ¶ 255.)

Professor Stewart, "claiming that [Professor] Noonan treated them poorly[] and only focused his attention on a few, select students." *Id.* at ¶ 107. From these comments, Plaintiff Boucher understood "that [the College] knew about [Professor] Noonan's inappropriate conduct" and condoned such misbehavior because it allowed him to continue to teach at the College. *Id.* at ¶ 108.

Professor Elizabeth Hogan, who was Co-Chair of the Biology Department at the time, "learned from another Canisius professor that [Professor] Noonan had subjected one of the women on his research team to sexual misconduct and that the student wanted to file a Title IX complaint against [Professor] Noonan." *Id.* at 3, ¶ 11. Professor Hogan allegedly interviewed that unnamed student, who led her to Plaintiff Tuhovak, who, in turn, requested guidance from Professor Hogan regarding how to file a Title IX complaint. In January 2019, Professor Hogan referred the matter to the College's Title IX officer, Linda Walleshauser. Plaintiff Tuhovak "knew that other women had been subjected to the same sexual misconduct she suffered and urged them to come forward to complain about [Professor] Noonan." *Id.* at ¶ 15.

In January 2019, Professor Noonan and his students planned "to collect information and video footage for Project Tiger, a film intended to be about India's efforts to protect tigers and their national habitat in the country[.]" *Id.* at 9, ¶ 51 ("Project Tiger"). In late January or early February 2019, after completion of the trip, Plaintiffs "attended meetings with the other students who had previously attended CAC trips and/or studied under [Professor] Noonan, including [Plaintiff] Tuhovak. During those meetings, Plaintiffs and their ABEC Program colleagues began to realize that [Professor] Noonan subjected all of them to the same kinds of sexual harassment and manipulative, abusive conduct." (Doc. 1 at 10-11, ¶ 57.) Plaintiffs joined several other female students in presenting a document to the College's Title IX office which "provid[ed] specific detail about [Professor] Noonan's sexual harassment and gender-based misconduct[.]" *Id.* at 3, ¶ 16; *see also id.* at 11, ¶ 58 (alleging that Plaintiffs and five other students reported Professor Noonan's behavior to the College's administration, including the Title IX officer, "during January and February 2019"). Ms. Walleshauser told the students that she

would investigate their allegations "and assured Plaintiffs and the other women present that their voices would be heard during the process[] and that they would be protected from retaliation and given support by [the College.]" *Id.* at 4, ¶ 17.

Plaintiffs allege that they "work[ed] for and stud[ied] under [Professor] Noonan for four . . . weeks after they came forward with their Title IX complaints about him, all the time unaware as to whether [Professor] Noonan had been notified of their claims[] and fearing he would lash out at them once he did find out." *Id.* at ¶ 19. At the end of February 2019, the College "removed [Professor] Noonan from campus and relieved him of all teaching duties, prohibiting him from contacting anyone at [the College] until the completion of the alleged Title IX investigation." *Id.* at ¶ 20. Despite removing him from campus, Plaintiffs allege the College "made no immediate effort to obtain the footage in [Professor] Noonan's possession for Project Tiger." (Doc. 1 at 12, ¶ 68.) As a result, the students who had worked on Project Tiger, including the majority of Plaintiffs, were unable to complete the project as originally conceived and instead produced a series of podcasts about their experiences in India.

On April 26, 2019, Plaintiffs and the other women who had filed Title IX complaints met with Ms. Walleshauser "to complain about the lack of information regarding the College's alleged investigation of [Professor] Noonan." *Id.* at 4, ¶ 21. Ms. Walleshauser promised the students that they would be part of the process once her investigation was completed. She advised "that Plaintiffs and the other complainants would be permitted to review and comment on her investigative report to the College," but "refused to provide any specific overview of the College's Title IX process, which Plaintiffs and the other women complainants repeatedly asked for." *Id.* at 4-5, ¶ 22; *see also id.* at 11, ¶ 61 (alleging that Ms. Walleshauser "never directed [Plaintiffs] to review the Sexual Harassment and Gender-Based Misconduct Policy"). Plaintiffs allege the College never issued such a report, nor did it share with Plaintiffs "any other information about [its] alleged Title IX investigative process regarding [Professor] Noonan." *Id.* at 5, ¶ 23.

On June 11, 2019, some Plaintiffs received an email from Ms. Walleshauser notifying them that Professor Noonan had retired from the College effective June 1, 2019. No additional information regarding the outcome of the investigation of his alleged misconduct was provided.

After Plaintiffs complained about Professor Noonan's behavior, the College allegedly retaliated against them by undermining their efforts to obtain footage from Project Tiger, neglecting to provide them with instructors to support the completion of the Project Tiger film in a timely manner, and failing to provide them with mentors and advisors to replace Professor Noonan, "thereby depriving them of recommendation letters and information regarding graduation requirements[] and[] failing to provide [Professor] Noonan's research students with viable ways to continue their research projects after [Professor] Noonan was removed from campus." *Id.* at 6, ¶ 29.

As a result of the alleged acts and omissions of the College, Plaintiffs allege they have suffered harm to their mental health and their future educational and professional prospects and endeavors.

## II.     Conclusions of Law and Analysis.

### A.     Standard of Review.

To survive a motion to dismiss filed pursuant to Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

The sufficiency of a plaintiff's complaint under Rule 12(b)(6) is evaluated using a "two-pronged approach[.]" *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010) (internal quotation marks omitted) (quoting *Iqbal*, 556 U.S. at 679). First, the court discounts legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements[.]" *Iqbal*, 556 U.S. at 678. The court is also "'not bound to accept as true a legal conclusion couched as a factual allegation[.]'" *Id.*

(citation omitted). Second, the court considers whether the factual allegations, taken as true, "plausibly give rise to an entitlement to relief." *Id.* at 679. This second step is fact-bound and context-specific, requiring the court "to draw on its judicial experience and common sense." *Id.* The court does not "weigh the evidence" or "evaluate the likelihood" that a plaintiff's claims will prevail. *Christiansen v. Omnicom Grp., Inc.*, 852 F.3d 195, 201 (2d Cir. 2017).

The Second Circuit has "cautioned district courts against imposing too high a burden on plaintiffs alleging discrimination at the 12(b)(6) stage." *Doe v. Columbia Univ.*, 831 F.3d 46, 55 n.8 (2d Cir. 2016); *see also Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015) ("The discrimination complaint . . . must be viewed in light of the plaintiff's minimal burden to show discriminatory intent."); *Dawson v. New York City Transit Auth.*, 624 F. App'x 763, 770 (2d Cir. 2015) ("At the pleading stage, district courts would do well to remember this exceedingly low burden that discrimination plaintiffs face even *after* they have survived a motion to dismiss.").

### B.     Whether Plaintiffs' Title IX Claims are Time-Barred.

The College asserts that all of Plaintiffs' Title IX claims are time-barred because the Complaint was not filed within three years of Professor Noonan's alleged misconduct and the College's alleged deliberate indifference.[3] "[T]he statute of limitations is ordinarily an affirmative defense that must be raised in an answer," but "a statute of limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint." *Thea v. Kleinhandler*, 807 F.3d 492, 501 (2d Cir. 2015) (quoting *Ellul v. Congregation of Christian Bros.*, 774 F.3d 791, 798 n.12 (2d Cir. 2014))

---

[3] Plaintiffs characterize Count I (sexual harassment/hostile school environment) as offering two theories of liability. *See* Doc. 10 at 15 (explaining that "[t]he allegations in Plaintiffs' Complaint support . . . 'pre-assault' sexual harassment/hostile school environment" and "'post-assault' sexual harassment/hostile school environment" theories of liability). "[A] pre-assault claim alleges that the school maintained a policy of deliberate indifference to sexual harassment that created a heightened risk of it and, ultimately, led to a plaintiff's particular harassment[.]" *Karasek v. Regents of Univ. of Cal.*, 500 F. Supp. 3d 967, 970 (N.D. Cal. 2020). A post-assault claim, in turn, "alleges that a school's response to a complaint of sexual misconduct violated Title IX[.]" *Id.* Plaintiffs' Complaint does not mention either theory of liability.

(internal quotation marks omitted); *see also Allen v. Dairy Farmers of Am., Inc.*, 748 F. Supp. 2d 323, 354 (D. Vt. 2010) ("A statute of limitations analysis is generally riddled with questions of fact, which *the Defendants* must establish in order to bar Plaintiffs' claims" and thus "are generally not resolved with a motion to dismiss under Rule 12(b)(6).") (footnote omitted).

Because Title IX does not include an express statute of limitations and the four-year federal statute of limitations does not apply,[4] courts apply "the most appropriate or analogous state statute of limitations." *Purcell v. N.Y. Inst. of Tech.-Coll. of Osteopathic Med.*, 931 F.3d 59, 62-63 (2d Cir. 2019) (quoting *Curto v. Edmundson*, 392 F.3d 502, 504 (2d Cir. 2004) (per curiam)); *see also Graham Cnty. Soil & Water Conservation Dist. v. U.S. ex rel. Wilson*, 545 U.S. 409, 414 (2005) ("To determine the applicable statute of limitations for a cause of action created by a federal statute, we first ask whether the statute expressly supplies a limitations period. If it does not, we generally 'borrow' the most closely analogous state limitations period.").

The Second Circuit has held that "personal injury actions are the 'most closely analogous' to Title IX claims, and thus applie[s] New York's three-year statute of limitations to Title IX claims." *Purcell*, 931 F.3d at 63 (quoting *Curto*, 392 F.3d at 504). "In a federal question case . . . when a federal court determines the limitations period by applying an analogous state statute of limitations, the court . . . looks to federal common law to determine the time at which the plaintiff's federal claim accrues." *Guilbert v. Gardner*, 480 F.3d 140, 149 (2d Cir. 2007).

A claim typically accrues "when it comes into existence[,]" i.e., "when the plaintiff has a complete and present cause of action.'" *Gabelli v. S.E.C.*, 568 U.S. 442, 448 (2013) (internal citations and quotation marks omitted). However, under the

---

[4] *See Purcell v. N.Y. Inst. of Tech.-Coll. of Osteopathic Med.*, 931 F.3d 59, 62 & n.10 (2d Cir. 2019) ("[A] cause of action aris[es] under an Act of Congress enacted after December 1, 1990—and therefore is governed by § 1658's 4-year statute of limitations—if the plaintiff's claim against the defendant was made possible by a post-1990 enactment. . . . Title IX [was] enacted prior to December 1, 1990.") (internal citations and quotation marks omitted).

discovery rule, a cause of action accrues when, "'with reasonable diligence,' the plaintiff 'has or . . . should have discovered the critical facts of both his injury and its cause.'" *A.Q.C. ex rel. Castillo v. United States*, 656 F.3d 135, 140 (2d Cir. 2011) (quoting *Barrett v. United States*, 689 F.2d 324, 327 (2d Cir. 1982)); *see also Rotella v. Wood*, 528 U.S. 549, 555 (2000) ("[I]n applying [the] discovery accrual rule, . . . discovery of the injury, not discovery of the other elements of a claim, is what starts the clock."); *Karasek v. Regents of Univ. of Cal.*, 500 F. Supp. 3d 967, 979 (N.D. Cal. 2020) (explaining that the discovery rule requires that a Title IX plaintiff "be put on notice not just of the concrete injury but of its 'cause[,]'" meaning the policy of deliberate indifference).

"[N]either the Supreme Court nor the Second Circuit has explicitly held that the discovery rule should apply to accrual of [Title IX] claims." *Doe v. Nat'l Ramah Comm'n, Inc.*, 2018 WL 4284324, at *5 (S.D.N.Y. Sept. 7, 2018). In *Snyder-Hill v. Ohio State University*, the Sixth Circuit reasoned that the discovery rule applies in the Title IX context because it applies in the § 1983 context, and "[t]he analysis concerning when the statute of limitations [for a Title IX claim] [begins] to run is the same as [for a § 1983 claim.]" 48 F.4th 686, 698 (6th Cir. 2022) (internal citations and quotation marks omitted) (third alteration added). In *King-White v. Humble Independent School District*, the Fifth Circuit likewise "[held] that Title IX should be treated like § 1983 for limitations purposes." 803 F.3d 754, 759 (5th Cir. 2015). District courts in the Second Circuit have similarly applied the discovery rule to Title IX cases. *See, e.g., Austin v. Fordham Univ.*, 2022 WL 4626485, at *4 (S.D.N.Y. Sept. 30, 2022) ("Though the Second Circuit has not definitively resolved the issue, the [c]ourt assumes that the . . . [discovery accrual rule] applies to this Title IX action."). The weight of authority thus supports applying the discovery rule in the context of Plaintiffs' claims.

In *JD1 v. Canisius College*, this court held that "a plaintiff's Title IX pre-assault claim accrues when the plaintiff knows or has reason to know of the school's policy of deliberate indifference that created a heightened risk of harassment." 2022 WL 2308902, at *12 (W.D.N.Y. June 27, 2022) (quoting *Karasek*, 500 F. Supp. 3d at 978) (internal quotation marks omitted). The Fifth Circuit has suggested that post-assault Title IX

claims accrue when a plaintiff's complaints to the school's administration "go[] unheeded[.]" *King-White*, 803 F.3d at 763.[5] Gender discrimination claims "accrue when the discriminatory act takes place and the plaintiff has reason to know of it[,]" *Brown v. Castleton State Coll.*, 663 F. Supp. 2d 392, 397 (D. Vt. 2009), and retaliation claims accrue when the plaintiff "discovered or could have discovered that [the school's] administrators were taking adverse action against [the plaintiff] based on protected activity." *Austin*, 2022 WL 4626485, at *5.

The College argues that all of Plaintiffs' Title IX "claims accrued, at the latest, in February 2019" when Plaintiffs reported Professor Noonan's behavior to the Title IX officer and when the College suspended Professor Noonan and banned him from its campus. (Doc. 5-6 at 11.) It therefore claims that Plaintiffs' Complaint was required to be filed by February 2022 to be timely. Because Plaintiffs did not initiate this suit until May 20, 2022, the College requests dismissal of this action.

### 1. Sexual Harassment/Hostile Educational Environment Claims (Count I).

Plaintiffs counter that their "pre-assault claims are based on [the] College's condonation of ongoing sexual harassment of women students who studied under [Professor] Noonan in the ABEC and CAC Programs, which constitutes a policy of deliberate indifference to reports of [Professor] Noonan's sexual misconduct[.]"(Doc. 10 at 15.) They argue that such claims accrued on June 11, 2019, which is the date "they were informed by e-mail that [Professor] Noonan ha[d] been permitted to retire." *Id.* at 19. Prior to receipt of that email, Plaintiffs allegedly "were not on notice that [the]

---

[5] For this reason, several courts have explained that "pre-assault . . . claim[s] may not accrue until well after [] post-assault Title IX claim[s]." *Snyder-Hill v. Ohio State Univ.*, 48 F.4th 686, 704 (6th Cir. 2022); *see also Doe v. Bd. of Supervisors of Univ. of La. Sys.*, 2023 WL 143171, at *16 (M.D. La. Jan. 10, 2023) ("In cases . . . alleging pre-*and* post-assault Title IX claims[,] courts often find that the post-assault claim accrued *before* the pre-assault claim."). While a plaintiff "will typically know or have reason to know that a school mishandles their own report of an assault close to the time of the school's inadequate response[,] . . . that same plaintiff may have no reason to know of a school's deliberate indifference that gave rise to their heightened-risk claim." *Snyder-Hill*, 48 F.4th at 704.

College had a policy of deliberate indifference to complaints about [Professor] Noonan's sexual misconduct." *Id.* Plaintiffs state that their post-assault claims accrued on the same date, at which point they were put "on notice" that the College would not respond to their complaints about Professor Noonan. *Id.* at 21.

At the pleading stage, Plaintiffs plausibly allege that they did not discover the College's deliberate indifference to reports of Professor Noonan's misconduct until June 11, 2019, when Ms. Walleshauser allegedly informed Plaintiffs that the College had discontinued its investigation due to Professor Noonan's retirement. Similarly, Plaintiffs plausibly allege that they did not have reason to know that their complaints to the College had "gone unheeded" or had otherwise been mishandled until that same date.[6] Plaintiffs thus plausibly allege that their post-assault sexual harassment/hostile educational environment claims did not accrue until June 11, 2019. The College's motion to dismiss their sexual harassment/hostile educational environment claims on statute of limitations grounds is therefore DENIED.

### 2. Gender Discrimination Claims (Count II).

Plaintiffs' gender discrimination claims, however, warrant different treatment. Plaintiffs allege that they reported Professor Noonan's gender-based misconduct in February 2019 and thus were aware of his discriminatory acts more than three years

---

[6] Plaintiff Tuhovak may not be similarly situated to the other Plaintiffs. She first complained of Professor Noonan's behavior in 2018 and alleges that those complaints "went unremedied." (Doc. 1 at 3, ¶ 12.) She may thus have become aware of the College's policy of deliberate indifference, at least with respect to any post-assault claims, at an earlier date than the other Plaintiffs. *See Snyder-Hill*, 48 F.4th at 704 ("A plaintiff will typically know or have reason to know that a school mishandles their own report of an assault close to the time of the school's inadequate response."). On the other hand, her complaints in 2018 focused on verbal and emotional abuse, not sexual harassment. *See Harris v. City of New York*, 186 F.3d 243, 250 (2d Cir. 1999) ("[D]ismissal [on timeliness grounds] is appropriate only if a complaint clearly shows the claim is out of time."). A determination must thus await a factual record. Plaintiffs' continuing violation theory of accrual must also be analyzed in the context of a factual record. *See Walker v. Accenture PLC*, 511 F. Supp. 3d 169, 192 (D. Conn. 2020) ("Whether the alleged events . . . constitute a continuing pattern of discrimination triggering the continuing violation doctrine or, instead, are discrete events is a question better addressed on a summary judgment motion after discovery.").

before they filed their Complaint. Plaintiffs do not plausibly allege a continuing violation. Although in their Complaint Plaintiffs allege that they "are entitled to the application of the continuing violation doctrine" (Doc. 1 at 57, ¶ 415) with respect to Count II, they do not allege an instance of gender discrimination that took place within the limitations period. To the contrary, once Professor Noonan was barred from the College's campus, they allege no further contact with him.

"[U]nder the continuing violation doctrine, a plaintiff may bring claims for discriminatory acts that would have been barred by the statute of limitations as long as an act contributing to that [discrimination] took place within the statutory time period." *Purcell*, 931 F.3d at 65 (quoting *Papelino v. Albany Coll. of Pharmacy of Union Univ.*, 633 F.3d 81, 91 (2d Cir. 2011)) (alteration in original); *see also Patterson v. Cnty. of Oneida, N.Y.*, 375 F.3d 206, 220 (2d Cir. 2004) ("To bring a claim within the continuing violation exception, a plaintiff must at the very least allege that one act of discrimination in furtherance of the ongoing policy occurred within the limitations period."). Plaintiffs fail to identify an instance of gender discrimination within the statutory period. Their claims set forth in Count II are thus time-barred and must be DISMISSED.

### 3. Retaliation Claims (Count III).

Plaintiffs assert that their retaliation claims are timely because "they allege that [the College's] retaliation began during the Spring of 2019 and continued to the time four of them graduated the following year, in 2020." (Doc. 10 at 27.) In their Complaint, they allege a series of retaliatory acts and omissions by the College that took place throughout the Spring 2019 semester and into the summer. These include failing to provide Project Tiger footage until the summer of 2019; declining to fully apprise Plaintiffs of the College's Title IX investigatory and adjudicative process; depriving Plaintiffs of supportive measures in contravention of the College's Sexual Harassment and Gender-Based Misconduct Policy; failing to notify Plaintiffs of their rights; and neglecting to provide Plaintiffs with new advisors and other academic supports, resulting in their inability to obtain letters of recommendation for graduate school and other professional endeavors. As each of the alleged acts of retaliation postdate Professor Noonan's removal

from the College's campus, they are not untimely based on the four corners of the Complaint. *See Conn. Gen. Life Ins. Co. v. BioHealth Labs., Inc.*, 988 F.3d 127, 131-32 (2d Cir. 2021) ("Although the statute of limitations is ordinarily an affirmative defense that must be raised in the answer, a statute of limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint.") (quoting *Thea*, 807 F.3d at 501) (internal quotation marks omitted); *Simmons v. Reich*, 2021 WL 5023354, at *1 (2d Cir. Oct. 29, 2021) ("A defendant may raise the affirmative defense that a claim is time-barred in a motion to dismiss if that defense is apparent from the face of the complaint."); *see also Harris v. City of New York*, 186 F.3d 243, 250 (2d Cir. 1999) (denying motion to dismiss on timeliness grounds when complaint showed it was possible for the plaintiff to demonstrate that "some discriminatory act . . . occur[red] within the statute of limitations"). The College's motion to dismiss Plaintiffs' retaliation claims on statute of limitations grounds is therefore DENIED.

### C.     Whether Plaintiffs Have Plausibly Pled Title IX Discrimination.

The College asserts that all of Plaintiffs' Title IX claims are inadequately pled under Fed. R. Civ. P. 12(b)(6) because each fails to plausibly plead one or more essential elements of those claims.

Under Title IX, "[n]o person in the United States shall, on the basis of sex, be . . . subjected to discrimination under any education program or activity receiving Federal financial assistance[.]" 20 U.S.C. § 1681(a). Title IX applies to all public and private educational institutions that receive federal funding, including the College. *See Posso v. Niagara Univ.*, 518 F. Supp. 3d 688, 696 (W.D.N.Y. 2021) (citing *Roskin-Frazee v. Columbia Univ.*, 2018 WL 6523721, at *4 (S.D.N.Y. Nov. 26, 2018)). Federal courts have long recognized a private right of action under Title IX, *see Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 255 (2009) ("[T]his Court has recognized an implied private right of action" under Title IX); *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 749-50 (2d Cir. 2003) ("The Supreme Court has recognized an implied private right of action under Title IX[.]"), and interpret the statute "by looking to . . . caselaw interpreting Title VII." *Yusuf v. Vassar Coll.*, 35 F.3d 709, 714 (2d Cir. 1994).

### 1.   Whether Plaintiffs Plausibly Plead a Sexual Harassment/Hostile Educational Environment Claim Under Title IX (Count I).

Plaintiffs claim that the College's deliberate indifference to Professor Noonan's sexual harassment resulted in a hostile educational environment violation of Title IX that was so severe, pervasive, and offensive that it interfered with their educational opportunities. The College seeks dismissal of this claim, arguing that it promptly responded to Plaintiffs' complaints, relying predominantly on information beyond the four corners of the Complaint.[7]

"[S]exual harassment is a form of discrimination" prohibited by Title IX. *Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 649-50 (1999). "To allege a Title IX claim arising from harassment, a plaintiff must plausibly allege" (1) "a federally funded recipient is" (2) "deliberately indifferent to sexual harassment," (3) "of which they have actual knowledge," (4) "that is so severe, pervasive and objectively offensive that it can be said to deprive the plaintiff of access to the educational opportunities or benefits provided by the school." *Doe v. Sarah Lawrence Coll.*, 453 F. Supp. 3d 653, 665 (S.D.N.Y. 2020) (quoting *Davis*, 526 U.S. 629 at 650).

Because a hostile educational environment claim is "governed by traditional Title VII 'hostile environment' jurisprudence[,]" *Papelino*, 633 F.3d at 89 (quoting *Hayut*, 352 F.3d at 744), a claimant must also plead that (1) "[she] subjectively perceived the

---

[7] The College's reliance on this information was proper for its motion for summary judgment under Rule 56 but cannot be credited for its motion to dismiss under Rule 12(b)(6). *See Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993) ("When determining the sufficiency of plaintiffs' claim for Rule 12(b)(6) purposes, consideration is limited to the factual allegations in plaintiffs' [] complaint, which are accepted as true, to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit."); *see also Khaytin v. Stern & Stern, Esqs.*, 2013 WL 5520000, at *5 (E.D.N.Y. Sept. 30, 2013) ("Although Defendant's arguments are substantiated with evidence, most of this evidence cannot be considered upon a motion to dismiss. . . . While this [c]ourt could consider this evidence by converting Defendant's proposed motion into a motion for summary judgment, . . . it would be inappropriate to do so at this juncture since it is unclear whether Plaintiff has yet had a sufficient opportunity to conduct the discovery necessary to controvert Defendant's evidence.").

environment to be hostile or abusive" and (2) "the environment objectively was hostile or abusive, that is, that it was permeated with discriminatory intimidation, ridicule, and insult sufficiently severe or pervasive to alter the conditions of [her] educational environment." *Id.* Each Plaintiff asserts that, as a result of Professor Noonan's harassment, she is currently in mental health therapy for various conditions including depression, anxiety, and post-traumatic stress disorder. Plaintiffs Engebrecht, Whelan, and Wood further allege that they have postponed graduate school or changed their career plans as a result of Professor Noonan's sexual harassment and the College's inaction.

An educational institution has "actual knowledge" of sexual harassment when "a school official with authority to address the alleged discrimination had actual knowledge, as opposed to mere constructive knowledge, of the discrimination." *Carabello v. New York City Dep't of Educ.*, 928 F. Supp. 2d 627, 638 (E.D.N.Y. 2013). "[I]t would 'frustrate the purposes' of Title IX to permit a damages recovery against a school district for a teacher's sexual harassment of a student based on principles of *respondeat superior* or constructive notice, *i.e.*, without actual notice to a school district official." *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 285 (1998). In addition, actual knowledge is present only if the complaint is made to an "appropriate person." *See id.* at 290 ("[T]he express remedial scheme under Title IX is predicated upon notice to an 'appropriate person' and an opportunity to rectify any violation[.]") (citing 20 U.S.C. § 1682). In teacher-on-student harassment cases, courts have held that those with authority to investigate misconduct constitute "appropriate" people. *See, e.g., Warren ex rel. Good v. Reading Sch. Dist.*, 278 F.3d 163, 173 (3d Cir. 2002) (holding that school principal was an "appropriate person" due to her "authority to . . . investigate a complaint of misconduct" despite her lack of authority to terminate or suspend a teacher); *Williams v. Bd. of Regents of Univ. Sys. of Ga.*, 477 F.3d 1282, 1294-95 (11th Cir. 2007) (holding that plaintiff adequately alleged university's president and athletic director were appropriate persons because both "had authority to take corrective measures" for the school).

The actual knowledge standard "does not set the bar so high that a school district

is not put on notice until it receives a clearly credible report of sexual abuse from the plaintiff-student." *Escue v. N. OK Coll.*, 450 F.3d 1146, 1154 (10th Cir. 2006) (internal quotation marks omitted) (quoting *Doe v. Sch. Admin. Dist. No. 19*, 66 F. Supp. 2d 57, 62 (D. Me. 1999)); *accord Posso*, 518 F. Supp. 3d at 701; *see also Baynard v. Malone*, 268 F.3d 228, 238 n.9 (4th Cir. 2001) ("We note that a Title IX plaintiff is not required to demonstrate actual knowledge that a *particular student* was being abused.") (emphasis supplied). In this case, there is no dispute that the College received what it deemed a credible report. The only issue is when it had "actual knowledge" of Professor Noonan's conduct prior to that time and whether it responded to that actual knowledge with deliberate indifference.

"The analysis of actual knowledge is often 'inextricably intertwined' with the analysis of deliberate indifference." *Carabello*, 928 F. Supp. 2d at 638. "A defendant acts with deliberate indifference for Title IX purposes 'when the defendant's response to known discrimination is *clearly* unreasonable in light of the known circumstances.'" *Posso*, 518 F. Supp. 3d at 697 (quoting *Roskin-Frazee*, 2018 WL 6523721, at *4). "This is a fairly high standard[,]" *Karasek v. Regents of Univ. of Cal.*, 956 F.3d 1093, 1105 (9th Cir. 2020), which is not satisfied by mere negligence. *Posso*, 518 F. Supp. 3d at 697. Instead, "'a plaintiff must allege additional facts beyond past incidents of assault on campus[,]' . . . but those facts need only give the school notice 'of a heightened risk that is specific enough to allow it to remedy such a policy.'" *Id.* (quoting *Tubbs v. Stony Brook Univ.*, 2016 WL 8650463, at *8, *10 (S.D.N.Y. Mar. 4, 2016)). In other words, Plaintiffs must prove the College's deliberate indifference "amounted to 'an official decision . . . not to remedy' the discrimination." *Karasek*, 956 F.3d at 1105 (quoting *Oden v. N. Marianas Coll.*, 440 F.3d 1085, 1089 (9th Cir. 2006)).

"A school's delayed response constitutes deliberate indifference if it prejudices the plaintiff or if the delay was a 'deliberate attempt to sabotage [the p]laintiff's complaint or its orderly resolution.'" *JD1*, 2022 WL 2308902, at *13 (quoting *Emily O. v. Regents of the Univ. of Cal.*, 2021 WL 1535539, at *6 (C.D. Cal. Mar. 9, 2021)) (alteration in original). "[T]he reasonableness of a delayed investigation depends heavily upon the

surrounding circumstances, including the school's actions throughout the delay." *Id.* (quoting *Emily O.*, 2021 WL 1535539, at *6) (internal quotation marks omitted).

Allegations that a school failed to fully explain to a plaintiff his or her rights and options may support a plausible claim for deliberate indifference, but only if such failure transcends mere negligence. *See, e.g., Sarah Lawrence*, 453 F. Supp. 3d at 666 (holding that complaint sufficiently alleged deliberate indifference when plaintiff claimed that the meeting in which she reported an assault was "rushed, disorganized[,] and undocumented" and school "never fully explained her rights and options"); *but see Roskin-Frazee*, 2018 WL 6523721, at *9 ("Defendant's failure to inform [p]laintiff of her Title IX rights[] constitutes, at most, negligence, which falls short of Title IX's clearly unreasonable standard.").

Plaintiffs allege that the College "received numerous complaints regarding sexual harassment and gender-based discrimination perpetuated by [Professor] Noonan" (Doc. 1 at 2, ¶ 7) and thus had actual knowledge of the risks posed by Professor Noonan long before a formal Title IX complaint was lodged. *See Posso*, 518 F. Supp. 3d at 701-02 (explaining that the court would focus on "the particularized risk posed by male swimmers–not on the risk to a particular person" when assessing actual knowledge). Those complaints include Professor Waldau's 2014 reporting of Professor Noonan to the College's Title IX office, *see* Doc. 1 at 39, ¶ 275; Plaintiff Tuhovak's 2018 meeting with Ms. Margulis wherein she complained of Professor Noonan's "verbal and emotional abuse[,]" *id.* at 35, ¶ 253; and an unnamed student's alleged complaints to Professor Hogan. Plaintiffs also allege that Professor Noonan told Plaintiff Wood in January 2019 "that women students and staff had complained about his conduct in the past to the College, but [the College] never found a 'significant violation' of the rules and nothing ever came of those complaints." *Id.* at 50, ¶ 368.

At the time Ms. Margulis and Professor Hogan were allegedly notified of Professor Noonan's behavior, Ms. Margulis was Chair of the ABEC Program and Professor Hogan was Co-Chair of the Biology Department. While Plaintiffs allege that their complaints constituted notice to the College, satisfying the "actual knowledge"

17

requirement, additional facts are necessary to determine whether these representatives of the College were "appropriate" people under *Gebser*.[8] At the pleading stage, the court draws reasonable inferences in Plaintiffs' favor and assumes that Ms. Margulis and Professor Hogan are "appropriate persons," as each occupied a supervisory role. *See Francis v. Kings Park Manor, Inc.*, 992 F.3d 67, 72 (2d Cir. 2021) ("In assessing the complaint, we 'accept all factual allegations as true, and draw all reasonable inferences in the plaintiff's favor.'") (quoting *Austin v. Town of Farmington*, 826 F.3d 622, 625 (2d Cir. 2016)).

Accepting Plaintiffs' allegations as true, Plaintiffs plausibly plead that the College neglected to take corrective action; inadequately investigated their complaints; declined to adjudicate their claims; and, when a formal Title IX complaint was filed, allowed Professor Noonan to retire mid-investigation without punishment. It also allegedly failed to apprise Plaintiffs of their rights and options and failed to provide sufficient academic supports. Because Plaintiffs have adequately pled the essential elements of their claim,[9] the court DENIES the College's request to dismiss on failure to plausibly plead deliberate

---

[8] *See Wyler v. Connecticut State Univ. Sys.*, 100 F. Supp. 3d 182, 191 n.5 (D. Conn. 2015) (on motion for summary judgment, describing it as "at best disputed" that "chairs of [a] music department[] had authority to take corrective action as required by *Gebser*"); *Poe v. Se. Delco Sch. Dist.*, 165 F. Supp. 3d 271, 280 (E.D. Pa. 2015) (ruling that plaintiffs adequately pled actual knowledge by an appropriate person despite "few details about" former principal's "supervisory powers and discretion"); *cf. Blue v. Dist. of Columbia*, 850 F. Supp. 2d 16, 32 (D.D.C. 2012) (granting motion to dismiss Title IX claim when, among other things, plaintiff allegedly told "school personnel" she thought she was pregnant but did not identify those personnel in her complaint or plead facts suggesting they had authority to take corrective measures).

[9] *See Karasek*, 500 F. Supp. 3d at 988 (finding that plaintiff plausibly pled a policy of deliberate indifference when plaintiff alleged that the university failed to respond "in any way to three assaults taking place over four years in one of its clubs") (emphasis omitted); *JD1 v. Canisius College*, 2022 WL 2308902, at *10 (W.D.N.Y. June 27, 2022) (finding that plaintiff plausibly alleged a policy of deliberate indifference based on the school's failure to respond to another plaintiff's sexual assault and the court's inference that the college was "aware of some [anonymous reports of sexual misconduct] before [plaintiff] was assaulted"); *Tubbs v. Stony Brook Univ.*, 2016 WL 8650463, at *7 (S.D.N.Y. Mar. 4, 2016) ("Plaintiff alleges a number of instances of misconduct that a reasonable jury could conclude were clearly unreasonable in light of the circumstances, including [that] campus police did not explain [the plaintiff's] options to her[.]").

indifference grounds.

Because Plaintiffs have plausibly pled a sexual harassment/hostile educational environment claim (Count I), the College's Rule 12(b)(6) motion to dismiss Count I is DENIED.

### 2.   Whether Plaintiffs Plausibly Plead a Claim for Retaliation under Title IX (Count III).

Plaintiffs allege that the College retaliated against them after they complained of Professor Noonan's harassing and discriminatory behavior. The College seeks dismissal of this claim because, as a matter of law, a failure to act does not constitute retaliation.

In *Jackson v. Birmingham Board of Education*, the Supreme Court held that Title IX includes a private right of action for retaliation. 544 U.S. 167, 171 (2005). "[A] plaintiff claiming retaliation under Title IX must first establish a *prima facie* case by showing: (1) protected activity by the plaintiff; (2) knowledge by the defendant of the protected activity; (3) adverse school-related action; and (4) a causal connection between the protected activity and the adverse action." *Papelino*, 633 F.3d at 91.

Title IX retaliation claims are subject to the *McDonnell Douglas* burden-shifting framework. *Id.* at 92. "Once a plaintiff establishes a *prima facie* case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions. After the defendant has done so, the burden shifts back to the plaintiff to demonstrate that the articulated reasons are pretextual." *Id.* (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 804-05 (1973) (internal citation omitted)). Plaintiffs must allege that "a retaliatory motive play[ed] a part" in the adverse action. *Sarah Lawrence Coll.*, 453 F. Supp. 3d at 667 (quoting *Papelino*, 663 F.3d at 92) (alteration in original).

The College does not dispute that Plaintiffs engaged in protected activity when they filed their Title IX complaints with Ms. Walleshauser, as it was an "'action taken to protest or oppose statutorily prohibited discrimination[.]'" *Castro v. Yale Univ.*, 518 F. Supp. 3d 593, 611 (D. Conn. 2021) (quoting *Siuzdak v. Sessions*, 295 F. Supp. 3d 77, 96 (D. Conn. 2018)); *see also id.* (explaining that protected activity "includes a wide range of activities, like reporting discrimination, testifying in a proceeding, or otherwise

participating in an investigation about discrimination[.]"). The College, however, contends that retaliation claims require affirmative efforts to punish Title IX claimants and Plaintiffs merely allege that the College failed to act. *See Andersen v. Rochester City Sch. Dist.*, 2011 WL 1458068, at *7 (W.D.N.Y. April 15, 2011) (stating that "failure to act . . . is not considered an adverse employment action for the purpose of determining whether retaliation in violation of Title VII has occurred."); *Fincher v. Depository Tr. and Clearing Corp.*, 604 F.3d 712, 721 (2d Cir. 2010) ("[A]n employer's failure to investigate a complaint of discrimination" in a § 1981 case "cannot be considered an adverse employment action taken in retaliation for the filing of the same discrimination complaint."). Because an adverse action is "any action that 'could well dissuade'" a claimant "from making or supporting a charge of discrimination[,]" *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015) (Title VII case) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006)), Plaintiffs' allegations other than the mere failure to act must be considered.

"[A]t the pleading stage, 'a plaintiff need not plead facts giving plausible support to the "ultimate question" of whether an adverse action was attributable to the discrimination; rather, the facts need only give plausible support to a "minimal inference" of discriminatory motivation.'" *Novio v. N.Y. Acad. of Art*, 286 F. Supp. 3d 566, 578 (S.D.N.Y. 2017) (quoting *Bailey v. N.Y. L. Sch.*, 2017 WL 835190, at *7 (S.D.N.Y. Mar. 1, 2017)). Here, Plaintiffs contend that the College acted, but did so in an untimely and inadequate manner by abandoning its investigation and allowing Professor Noonan to retire. Plaintiffs further contend that the College's delay and failure to provide academic supports prejudiced Plaintiffs academically and in their prospective careers. More specifically, Plaintiffs assert the College "depriv[ed] Plaintiffs of the ability to . . . make the Project Tiger film as they intended[,] (Doc. 1 at 63, ¶ 440f), and failed to assign Plaintiffs new academic advisors and mentors, *see id.* at 6, ¶ 29, 60, ¶ 428h, 63-64, ¶ 440h, after they engaged in protected activity.

Although a close question, at the pleading stage, Plaintiffs sufficiently allege

retaliation. Other courts have permitted retaliation claims on this basis.[10] Not only is there close temporal proximity between Plaintiffs' protected activity and the College's alleged retaliatory response, but there is arguably no reasonable explanation for failing to provide Plaintiffs with the academic supports they presumably requested and needed. Although evidence of the College's discriminatory motivation is, at this point, "minimal[,]" *Novio*, 286 F. Supp. 3d at 578, Plaintiffs' allegations are not implausible. The College's motion to dismiss Plaintiffs' retaliation claim (Count III) is therefore DENIED.

**D.     Whether Plaintiffs Plausibly Plead a Claim for Breach of Contract (Count IV).**

"Under New York law, an implied contract is formed when a university accepts a student for enrollment[.]" *Papelino*, 633 F.3d at 93 (citing *Carr v. St. John's Univ.*, 231 N.Y.S.2d 410, 413 (N.Y. App. Div. 1962)). The terms of that contract "are 'contained in the university's bulletins, circulars[,] and regulations made available to the student.'" *Id.* (quoting *Vought v. Teachers Coll., Columbia Univ.*, 511 N.Y.S. 2d 880, 881 (N.Y. App. Div. 1987)).

To state a plausible breach of contract claim under New York law, Plaintiffs must plead: "(1) the formation of a contract, (2) the plaintiff's performance of his or her obligations thereunder, (3) the defendant's failure to perform its obligations, and (4) resulting damages to the plaintiff." *Posso*, 518 F. Supp. 3d at 703 (citing *Nakano v. Jamie*

---

[10] *See, e.g., Irrera v. Humpherys*, 859 F.3d 196, 198-99 (2d Cir. 2017) (holding that plaintiff plausibly alleged retaliation when he allegedly failed to receive a single interview after applying to twenty-eight teaching positions, despite being highly qualified, after declining sexual advances from the chair of his department); *Bailey v. N.Y. L. Sch.*, 2017 WL 835190, at *7 (S.D.N.Y. Mar. 1, 2017) (finding that plaintiff who attempted transfer law schools after complaining of a sexual assault by a fellow student met the "exceedingly low burden of demonstrating a plausible minimal inference" of retaliation when she alleged that she "was unable to obtain a letter of recommendation that was required for her [transfer] application" and "received the worst grades of her law school career" the semester after reporting the assault); *Novio v. N.Y. Acad. of Art*, 286 F. Supp. 3d 566, 578-79 (S.D.N.Y. 2017) (finding that plaintiff sufficiently alleged retaliation by graduate school for reporting sex discrimination and harassment when, among other things, school allegedly "stopped making plaintiff aware of Academy functions, art shows, and networking events that could help her find employment[,]" discouraged her from attending school events, and "refus[ed] to provide references or recommendations").

*Sadock, Inc.*, 2000 WL 680365, at *5 (S.D.N.Y. May 25, 2000)).

"[T]he mere allegation of mistreatment without the identification of a specific breached promise or obligation does not state a claim on which relief can be granted." *Nungesser v. Columbia Univ.*, 169 F. Supp. 3d 353, 369 (S.D.N.Y. 2016) (quoting *Gally v. Columbia Univ.*, 22 F. Supp. 2d 199, 206 (S.D.N.Y. 1998) (alteration in original)). For this reason, "general promises about ethical standards . . . are far different from the types of specific promises which have led to valid breach of contract claims against universities." *Gally*, 22 F. Supp. 2d at 207. *Compare Clarke v. Trs. of Columbia Univ.*, 1996 WL 609271, at *5-6 (S.D.N.Y. Oct. 23, 1996) (finding that student who alleged that she did not receive fieldwork supervision she was promised in student handbook adequately stated a claim for breach of contract), *with Gally*, 22 F. Supp. 2d at 208 (explaining that a university's statement of adherence to antidiscrimination laws did "not create a separate and independent contractual obligation.").

Although Plaintiffs identify a number of "general statement[s] of adherence" to antidiscrimination laws in the College's Sexual Harassment and Gender-Based Misconduct Policy, *see id.*, which do not support a breach of contract claim,[11] they also cite to a provision of the policy that states the "Title IX Coordinator is responsible for coordinating the effective implementation of Supportive Measures[,]" which may include "[c]ounseling; [e]xtensions of deadlines or other course-related adjustments; [m]odifications of work or class schedules; [c]ampus escort services; and [r]estrictions on contact between the parties . . . and; [o]ther Supportive Measures deemed appropriate by the Title IX Coordinator." (Doc. 1 at 59, ¶ 425.) Plaintiffs contend the College violated this policy when it "fail[ed] to afford Plaintiffs any supportive measures[,]" *Id.* at 58, ¶ 424, causing them damages. At the pleading stage, these allegations suffice to state a breach of contract claim under New York law in an educational setting. The court thus DENIES the College's motion to dismiss Plaintiffs' breach of contract claim (Count IV).

---

[11] *See, e.g., Gally v. Columbia Univ.*, 22 F. Supp. 2d 199, 208 (S.D.N.Y. 1998) (finding that provision in school's code of conduct that "[a]ll students should receive fair and equal treatment . . . does not create a separate and independent contractual obligation").

### E.    Whether Plaintiffs' Claim for Negligent Retention and Supervision of Professor Noonan is Time-Barred (Count VI).

"To establish a cause of action based on negligent hiring, negligent retention, or negligent supervision, it must be shown that the employer knew or should have known of the employee's propensity for the conduct which caused the injury[.]" *Shor v. Touch-N-Go Farms, Inc.*, 933 N.Y.S.2d 686, 688 (N.Y. App. Div. 2011) (citation omitted).

The College argues that Plaintiffs' claim for negligent retention and supervision of Professor Noonan is time-barred because Plaintiffs filed their complaint more than three years after Professor Noonan was removed from campus. As Plaintiffs point out, however, Professor Noonan was still employed by the College as of June 1, 2019, which would render their claim timely if the sexual harassment continued until this date.

In New York, a three-year statute of limitations applies to claims for negligent retention or supervision, *see* N.Y.C.P.L.R. 214(5), meaning an action must be commenced within "three years [of the] the last act of alleged sexual abuse." *Sharon B. v. Reverend S.*, 665 N.Y.S.2d 139, 140 (N.Y. App. Div. 1997) (explaining that a "three-year [s]tatute of [l]imitations applies to a cause of action for negligent retention or supervision" and finding that "defendants failed to establish that the action was commenced more than three years after the last act of alleged sexual abuse."). The last possible date on which Professor Noonan could have sexually harassed Plaintiffs is February of 2019 when he was suspended and banned from the College's campus. Although he was not terminated at this time, it is uncontested that he had no contact with Plaintiffs thereafter. Even though he remained an employee of the College for several months, nothing he did during those months was an "act of alleged sexual abuse" or caused Plaintiffs harm due to the College's failure to formally terminate his employment.

Because Plaintiffs filed the Complaint over three years from the last date of alleged negligent retention and supervision, the court GRANTS the College's motion to dismiss Plaintiffs' negligent retention and supervision claim (Count VI).

## CONCLUSION

For the foregoing reasons, the court DENIES the College's motion to dismiss Counts I, III, and IV, and GRANTS the College's motion to dismiss Counts II and VI (Doc. 5.)

SO ORDERED.

Dated this ___17___ day of March, 2023.

Christina Reiss, District Judge
United States District Court