**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X
**SIERRA BOUCHER, LILY ENGEBRECHT,**
**NATASSIA TUHOVAK, HANNAH WHELAN,**
**and, CASSIDY WOOD,**

                    **PLAINTIFFS,**              **CASE NO. 1:22-CV-00381-CCR**

        -against-                     **ORAL ARGUMENT REQUESTED**

**TRUSTEES OF CANISIUS COLLEGE,**

                    **DEFENDANTS.**
-------------------------------------------------------------------X

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION**
**TO DEFENDANT'S MOTION FOR PROTECTIVE ORDER**
**PURSUANT TO FED. R. CIV. P. 26(c)(1)**

Respectfully submitted by:

LAW OFFICE OF DANIELA NANAU P.C.
89-03 Rutledge Avenue
Glendale, New York 11385
Telephone: (888) 404-4975
Facsimile: (718) 998-6916
E-Mail: dn@danielananau.com

*Attorneys for Plaintiffs*

## <u>TABLE OF CONTENTS</u>

**PAGE**

TABLE OF AUTHORITIES                                                                 iii-iv

PRELIMINARY STATEMENT                                                          1

RELEVANT FACTS REGARDING FAILED MEET AND CONFER PROCESS          2

LEGAL STANDARD                                                                      4

ARGUMENT                                                                              5

I.      Canisius College's Proposed Protective Order Is Overbroad and Requires
        Judicial Documents To Be Filed Under Seal, Contravening Second Circuit Law    5

II.     Canisius College Fails to Cite to Single Title IX Case that Supports
        its Request for Overreaching Proposed Protective Order                        10

III.    Redaction of Third-Party Names is Preferred Method for Courts in the
        Second Circuit Seeking to Strike Balance Between Privacy Concerns
        Relating to Third-Parties and Presumptive Right of Access to Judicial Documents  16

CONCLUSION                                                                            19

# TABLE OF AUTHORITIES

**PAGE**

## Cases

*Byrne v. Yale Univ.,* 2020 WL 1820761 (D. Conn. Apr. 10, 2020)                17, 18

*Cipollone v. Liggett Grp., Inc.*, 785 F.2d 1108 (3d Cir. 1986)                9

*Davis v. Monroe County Bd. of Educ.,* 526 U.S. 629 (1999)                6

*Duling v. Gristede's Operating Corp.,* 266 F.R.D. 66 (S.D.N.Y. 2010)                5

*Gambale v. Deutsche Bank AG,* 377 F.3d 133 (2d Cir.2004)                4

*Garnett-Bishop v. New York Cmty. Bancorp, Inc.,*
  2013 WL 101590 (E.D.N.Y. Jan. 8, 2013)                12

*Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274 (1998)                6

*In re Savitt/Adler Litigation*, 1997 WL 797511 (N.D.N.Y. Dec. 23, 1997)                16, 17

*In re The City of New York, See* 607 F.3d 923 (2d Cir. 2010)                10, 11

*In re Terrorist Attacks on Sept. 11, 2001,* 454 F.Supp.2d 220 (S.D.N.Y.2006)                4

*JD1 v. Canisius Coll.,* 2022 WL 2308902 (W.D.N.Y. June 27, 2022)                12

*Jerolimo v. Physicians for Women, P.C.,* 238 F.R.D. 354 (D. Conn. 2006)                4

*Johnson Foils, Inc. v. Huyck Corp.,* 61 F.R.D. 405 (N.D.N.Y.1973)                4

*Joy v. North,* 692 F.2d 880 (2d Cir.1982), *cert. denied sub nom.,* 460 U.S. 1051 (1983)   7

*Kelly v. City of New York,* 2003 WL 548400 (S.D.N.Y. Feb. 24, 2003)                16, 17

*Kleftogiannis v. Inline Plastics Corp.*, 411 F. Supp. 3d 216 (D. Conn. 2019)                18

*Kiobel v. Cravath, Swaine & Moore LLP,* 895 F.3d 238 (2d Cir. 2018)                11

*Ladson v. Ulltra E. Parking Corp.,* 164 F.R.D. 376 (S.D.N.Y. 1996)                13

*Long v. OPM*, 692 F.3d 185 (2d Cir. 2021)                17

*Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110 (2d Cir. 2006)                7

## <u>TABLE OF AUTHORITIES</u>

**PAGE**

<u>Cases</u>

*Massey v. FBI*, 3 F.3d 620 (2d Cir. 1993)                                            17

*Matter of N.Y. Times Co.*, 828 F.2d 110 (2d Cir. 1987)                   8

*Metcalf v. Yale Univ.,* 2017 WL 627423 (D. Conn. Feb. 15, 2017)     13, 14

*Mirlis v. Greer*, 952 F.3d 51 (2d Cir. 2020)                                  8

*Open Soc'y Just. Initiative v. Trump*, No. 2020 WL 6286318 (S.D.N.Y. Oct. 27, 2020)   17

*Papelino v. Albany Coll. of Pharm.,* 633 F.3d 81 (2d Cir. 2011)     6

*Perez v. Jupada Enterprises, Inc.,* 2011 WL 501601 (S.D.N.Y. Feb. 14, 2011)   13

*Robert F. v. N. Syracuse Cent. Sch. Dist.,*
    2020 WL 12846935 (N.D.N.Y. July 21, 2020)                  4, 15

*Seattle Times Co. v. Rhinehart,* 467 U.S. 20 (1984)                       4

*SEC v. TheStreet.com*, 273 F.3d 222 (2d Cir. 2001)                        17

*Stern v. Cosby*, 529 F. Supp. 2d 417 (S.D.N.Y. 2007)                      7

*United States v. Amodeo,* 44 F.3d 141 (2d Cir.1995)                       7

*United States v. Amodeo*, 71 F.3d 1044 (2d Cir. 1995)                     8, 17

*Wolfe v. Enochian BioSciences Denmark ApS,*
    2022 WL 2390578 (D. Vt. July 1, 2022)                        4, 8, 9

<u>Rules</u>

Fed. R. Civ. P. 26(c)(1)                                                    *passim*

Plaintiffs Sierra Boucher, Lily Engebrecht, Natassia Tuhovak, Hannah Whelan, and Cassidy Wood respectfully submit this Memorandum of Law in opposition to Defendant Canisius College's[1] Motion seeking adoption of their proposed Protective Order, brought pursuant to Federal Rule of Civil Procedure 26(c)(1). *See* Docket No. 22. Defendant's Memorandum of Law, submitted in support of its Motion, will be referred to as "Def. Mem." *See* Docket No. 22-5.

## **PRELIMINARY STATEMENT**

This is a Title IX action brought on behalf of Plaintiffs who are five former undergraduate students who attended Defendant Canisius College. Plaintiffs studied under Dr. Michael Noonan, a tenured faculty member who worked at Canisius College for forty years. Noonan used his position as the founder of the Animal Behavior, Ecology and Conservation  Program, and as the Director of the Canisius Ambassadors for Conservation, to condition mentorship and departmental support on a student's submission to his constant sexually suggestive behavior and sexist comments that demonstrate his disdain for women.

In their Complaint, Plaintiffs allege that Canisius College had actual notice of Noonan's grooming behavior and sexual harassment of students since at least 2014, and likely earlier, but were deliberately indifferent to the complaints raised by various students, faculty and staff about Noonan's sexual misconduct. *See generally* Complaint, Docket No. 1. In January and February 2019, Plaintiffs joined six other students to complain about Noonan's discriminatory misconduct, first to the Biology Department faculty, and later to Canisius College's Title IX Officer. *See id.*

Canisius College's proposed Protective Order should be rejected by the Court because it seeks to shield any documents that Defendant deems to be "confidential" from public view by

---

[1] Defendant repeatedly refers to itself as "Canisius University" in its Motion papers, which Plaintiffs object to. Defendant has not made a motion to amend the caption pursuant to Fed. R. Civ. P. 10(a) and should refer to itself as "Canisius College" in documents relating to this matter to avoid confusion until a basis for amending the caption has been made to Plaintiffs and a stipulation to do so has been so ordered by the Court.

requiring that they be filed under seal and by placing the burden of the sealing process on Plaintiffs. Despite Plaintiffs' efforts to resolve this matter without the intervention of the Court by proposing a carve-out for judicial documents relevant to the Court's assessment of Defendant's anticipated summary judgment motion, Canisius College has steadfastly rejected any effort to reach a middle ground. It is Plaintiffs' position that Defendant's proposed Protective Order should be rejected because is not narrowly tailored to balance Canisius College's alleged privacy concerns for third-party students against the public's right to access judicial documents.

Plaintiffs believe that Canisius College's alleged privacy concerns can be resolved by requiring the redaction of the names of any non-parties who raised complaints about Noonan's sexual misconduct contained in any documents that will be placed on the docket, unless those non-party students and faculty willingly provide testimony in support of Plaintiffs' claims, as a number have already. Accordingly, Canisius has failed to demonstrate good cause sufficient for the Court to adopt its proposed Protective Order, and its Motion should be denied.

## RELEVANT FACTS REGARDING FAILED MEET AND CONFER PROCESS

The Affirmation from Plaintiffs' counsel, Daniela Nanau, dated March 15, 2024 ("Nanau Aff.") submitted herewith and Exhibits 1-6 attached thereto, demonstrate the failed meet and confer process relating to Canisius College's proposed Protective Order, which occurred in December 2023 and February 2024. Contrary to Defendant's self-serving rendition of events (*see* Def. Mem. 1-4), undersigned counsel never said that the act of exchanging views regarding Defendant's proposed Protective Order was "a waste of time" as Defendant's counsel, Christine Naassana, contends several times in her Declaration and in Defendant's Memorandum of Law. *See* Def. Mem at 1, 4; *see also* Naassana Dec., ¶14.

Rather, Ms. Naassana's repeated failure to explain why Canisius College requires judicial documents be filed under seal with anything more than vague allegations regarding Defendant's concern for third-party students, and her failure to provide caselaw that support Defendant's position, is what caused undersigned counsel to point out to Ms. Naassana that her failure to "engage with me except to demand that I concede to your view of things" was not constructive, but rather "a waste of time." *See* Nanau Aff., ¶28; Ex. 3 at 1.

Prior to the filing of Canisius College's instant Motion, Ms. Naassana provided no Title IX cases on all fours where a judge in the Second Circuit approved of the extreme protections afforded by Defendant's proposed Protective Order. *See* Nanau Aff., ¶34, 36. During a meet and confer by phone on February 21, 2024, when undersigned counsel again requested citation to any Title IX case that supported Defendant's proposed Protective Order, Ms. Naassana told undersigned counsel she did not have to provide it because "we are not litigating a motion." *See* Nanau Aff., ¶45. When Plaintiff's counsel asked Ms. Naassana why statements obtained by Plaintiffs from third-party students who complained about Noonan's sexual misconduct had to also be filed under seal, which we have produced to Defendant already including a Declaration obtained from former Canisius College student Ashley Dittrich, attached to the Nanau Affirmation as Ex. 6, Ms. Naassana had no answer. *See* Nanau Aff., ¶41. When undersigned counsel encouraged Ms. Naassana to understand that Plaintiffs viewed Defendant's proposed Protective Order as an inappropriate attempt to shield Canisius College from an adjudication of their claims in a public form, and that it was obvious she was only concerned with her protecting her client's image, not third-party students, she also did not respond. *See* Nanau Aff., ¶43.

This deficient meet and confer process does not meet the requirements of Fed. R. Civ. P. 26(c)(1), which requires that the movant demonstrate it "has in good faith conferred or attempted

to confer with other affected parties in an effort to resolve the dispute without court action." For this reason alone, the Court should deny Defendant's Motion for a Protective Order with prejudice.

## **LEGAL STANDARD**

Fed. R. Civ. P. 26(c) (1) authorizes a federal court, for good cause, to issue "an order to protect a party or person [from whom discovery is sought] from annoyance, embarrassment, oppression, or undue burden or expense." The rule serves in part to protect parties' legitimate privacy interests. *Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 35 n. 21 (1984); *Wolfe v. Enochian BioSciences Denmark ApS,* 2022 WL 2390578, at *2 (D. Vt. July 1, 2022) (Reiss, D.J.).

"The fact that sensitive information is involved in litigation gives a party neither an absolute nor automatic right to have the discovery process hindered." *Johnson Foils, Inc. v. Huyck Corp.,* 61 F.R.D. 405, 409 (N.D.N.Y.1973). Therefore, the party seeking a protective order bears the burden of establishing that good cause for the order exists. *Gambale v. Deutsche Bank AG,* 377 F.3d 133, 142 (2d Cir.2004). "To establish good cause under Rule 26(c), courts require a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *Jerolimo v. Physicians for Women, P.C.,* 238 F.R.D. 354, 356 (D. Conn. 2006). When "good cause is not shown, the discovery materials in question should not receive judicial protection." *Gambale*, 377 F.3d at 142.

"Good cause is established when it is specifically demonstrated that disclosure will cause a clearly defined and serious injury." *Robert F. v. N. Syracuse Cent. Sch. Dist.,* 2020 WL 12846935, at *3 (N.D.N.Y. July 21, 2020); *accord In re Terrorist Attacks on Sept. 11, 2001,* 454 F.Supp.2d 220, 222 (S.D.N.Y.2006) ("Ordinarily, good cause [for a protective order] exists when a party shows that disclosure will result in a clearly defined, specific and serious injury."). Although the burden is on the movant to establish good cause for the entry of a protective order,

the court ultimately weighs the interests of both sides in fashioning an order." *Duling v. Gristede's Operating Corp.,* 266 F.R.D. 66, 71 (S.D.N.Y. 2010) (collecting cases).

As will be demonstrated below, Canisius fails to carry its burden and establish that good cause exists for the unprecedented protection it seeks relating to information that is directly relevant to Plaintiffs' claims of deliberate indifference in violation of Title IX, and the Court's assessment of the parties' claims and defenses in the context of the anticipated litigation of Defendant's summary judgment motion.

## **ARGUMENT**

### I.    **Canisius College's Proposed Protective Order Is Overbroad and Requires Judicial Documents To Be Filed Under Seal, Contravening Second Circuit Law**

Canisius College's proposed Protective Order requires that all documents marked "confidential," which are defined in part as any documents that contain the names of non-party students, must be filed under seal, even if the documents are deposition transcripts or declarations from third-party students who voluntarily provide testimony to support the Plaintiffs in this case:

> The parties shall treat as Confidential all documents reflecting the name(s) of non-party students, as well as documents whose content could reasonably lead a third party to discover those individuals' identities. To the extent such documents are filed with the Court, the parties hereby agree to file such documents under seal in accordance with Rule 5.3 of the Western District's Local Rules of Civil Procedure, with courtesy copies provided to the Court and counsel electronically.

*See* Def. Ex. C, Docket No. 22-4, Proposed Protective Order, ¶ 2(g).

In addition, Defendant's proposed Protective Order requires Plaintiffs to obtain Canisius College's "consent" before it can file a redacted version of any document marked "confidential" on the docket, or Plaintiffs must bear the burden of filing the document under seal:

> In the event a Party seeks to file any Confidential Discovery Material, that Party shall take appropriate action to ensure that the Confidential Discovery Material receives proper protection from public disclosure, including: (1) filing a redacted document with the consent of the Party who designated the Discovery Material as

Confidential; (2) where appropriate (e.g., in relation to discovery and evidentiary motions), submitting the unredacted documents solely for *in camera* review; or (3) where the preceding measures are not practicable, seeking permission to file the document under seal.

*See id.,* ¶11.

Canisius College's rejected Plaintiffs' suggestion that the proposed Protective Order contain a carve-out for information relating to any investigation conducted by Defendant into Plaintiffs' complaints about Noonan's sexual misconduct, and documents reflecting complaints raised about Noonan's sexual misconduct by other Canisius students, faculty and staff, which are directly relevant to the issue of whether Defendant violated Title IX by demonstrating deliberate indifference to prior complaints about Noonan's sexual misconduct. *See* Nanau Aff., ¶¶15-20; *see also* Ex. 3.

For an educational facility to be liable under Title IX, the plaintiffs must establish that a school official with "authority to address the alleged discrimination and to institute corrective measures" had "actual knowledge" of the discrimination and failed to adequately respond. *Gebser v. Lago Vista Indep. Sch. Dist.,* 524 U.S. 274, 290 (1998); *Papelino v. Albany Coll. of Pharmacy of Union Univ.,* 633 F.3d 81, 88–89 (2d Cir. 2011). A school fails to adequately respond if it provides no response or if it provides a response that "amount[s] to deliberate indifference to discrimination." 524 U.S. at 290. The school's response to sex discrimination must be "clearly unreasonable" in light of known circumstances. *Davis v. Monroe County Bd. of Educ.,* 526 U.S. 629, 648 (1999).

Contrary to Defendant's position, the proposed Protective Order is neither "reasonable" nor is it "appropriate under the circumstances of this case" (*see* Def. Mem. at 5), because is not narrowly tailored to balance Canisius College's alleged privacy concerns for third-party students against the public's right to access judicial documents, thereby contravening Second Circuit

caselaw. In *Joy v. North,* a case on all fours, the Circuit vacated a protective order that put under seal the report and accompanying materials of a corporate board's special litigation committee, which was the main evidence used to support the defendant's motion for summary judgment seeking the dismissal of a shareholders' derivative action, which that the trial court improperly granted. *See* 692 F.2d 880, 893 (2d Cir.1982), *cert. denied sub nom.,* 460 U.S. 1051 (1983).

The *Joy* Court explained that "protective orders are useful to prevent discovery from being used as a club by threatening disclosure of matters which will never be used at trial," but "[t]hese same considerations do not apply in an adjudication, which is a formal government act, and, absent exceptional circumstances, subject to public scrutiny." *See* 692 F.2d at 893. The Circuit further explained that documents used by parties moving for, or opposing, summary judgment should not be filed under seal "absent the most compelling reasons." *Id.; accord Lugosch v. Pyramid Co. of Onondaga,* 435 F.3d 110, 119, 126 (2d Cir. 2006) ("documents submitted to a court in support of or in opposition to a motion for summary judgment are judicial documents to which a presumption of immediate public access attaches") (quoting *United States v. Amodeo,* 44 F.3d 141, 145 (2d Cir.1995)).

"The Second Circuit has set forth a three-part analysis for determining whether documents relating to a lawsuit must be made available to the public." *Stern v. Cosby*, 529 F. Supp. 2d 417, 420 (S.D.N.Y. 2007). First, the court must determine whether the documents at issue are "judicial documents." *Stern*, 529 F. Supp. 2d at 420 (quoting *Lugosch*, 435 F.3d at 119). Second, the court must determine the "weight of the presumption" of public access. *Id.* Third, the court must weigh countervailing interests against the presumption. *Id.*

"[T]he weight to be given the presumption of access must be governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such

information to those monitoring the federal courts." *United States v. Amodeo*, 71 F.3d 1044, 1049 (2d Cir. 1995). "[T]he presumptive right of access is afforded 'strong weight' when applied to documents that play a central role in 'determining litigants' substantive rights—conduct at the heart of Article III.'" *Mirlis v. Greer*, 952 F.3d 51, 60 (2d Cir. 2020) (quoting *Amodeo*, 71 F.3d at 1049)). Accordingly, a court may seal a judicial document or a portion thereof only where the movant shows sealing is "essential to preserve higher values and is narrowly tailored to serve that interest." *Matter of N.Y. Times Co.*, 828 F.2d 110, 116 (2d Cir. 1987).

Canisius College has failed to demonstrate that any discovery exchanged by the parties relevant to this lawsuit would meet the high standard required to place information under seal, and therefore they have failed to demonstrate the need for a protective order that contains any provision requiring the filing of any documents under seal, particularly when those documents are germane to the parties' litigation of Defendant's summary judgment motion, which is what they have proposed in the sections of their Protective Order discussed *infra* at 5.

Although Defendant cites to Your Honor's decision in *Wolfe v. Enochian BioSciences Denmark ApS* several times in their Memorandum of Law (see Def. Mem. at 5, 8 and 10), that case does not support their application for the kind of overly restrictive proposed Protective Order they are asking the Court to adopt in this case. *See* No. 2:21-CV-00053, 2022 WL 2390578 (D. Vt. July 1, 2022). In *Wolfe*, a malicious prosecution case, the parties' discovery involved proprietary business information and information relating to criminal charges against one of the corporate defendants' owners. *See* 2022 WL 2390578, at *1. In response to the plaintiffs' concerns that the defendants would improperly classify information as confidential pursuant to their proposed protective order, the Court added safeguards that do not appear anywhere in Canisius College's proposed Protective Order.

For example, the Court added a provision placing clear limitations on what limited information could be marked confidential: "A designating party must limit any such designation to specific information that qualifies under the appropriate standards and only designate those portions of a document that qualify so that other portions for which protection is not warranted are not subject to unjustified restrictions." *See* 2022 WL 2390578, at *3. In doing so, the Court warned against "[m]ass, indiscriminate, or routinized designations" and further stated that "[d]esignations that are shown to be clearly unjustified or that have been made for an improper purpose expose the designating party to sanctions." *See* 2022 WL 2390578, at *4.

In addition, in *Wolfe,* the Court rejected the defendants' proposed protective order to the extent that it placed on the plaintiffs the burden of filing under seal documents that the defendants had marked as confidential, noting that "the burden of proof, and responsibility to move for protection, are more properly imposed on the party seeking to keep information confidential" and that "[a]ny other conclusion would turn Rule 26(c) on its head." *See* 2022 WL 2390578, at *3 (quoting *Cipollone v. Liggett Grp., Inc.*, 785 F.2d 1108, 1122 (3d Cir. 1986)).

As noted in undersigned counsel's attached Affirmation, Canisius College has already engaged in the mass, indiscriminate marking of its documents as confidential. Of the 553 documents Defendant produced on December 28, 2023, which Ms. Naassana said contained complaints about Noonan's sexual misconduct raised by third-party students and Defendants' investigative file regarding Plaintiffs' complaints about Noonan's sexual harassment, all but thirty-four (34) documents were marked confidential. *See* Nanau Aff., ¶¶ 21-25. Adoption of Defendant's proposed Protective Order, which requires all documents regarding any third-party student to be marked as confidential and filed under seal, will encourage further mass, indiscriminate marking of judicial documents as confidential, in contravention to the Court's position in the *Wolfe* case.

Further, contrary to Defendant's suggestion that their proposed Protective Order will minimize the Court's involvement (Def. Mem. at 8), the mass indiscriminate marking of judicial documents as confidential, which Canisius College has already done, will only encourage motion practice in this case that could be avoided.

Moreover, notwithstanding Canisius College's self-serving claims that "paragraph eight provides a procedure for handling potential disputes regarding [confidentiality] designations" (Def. Mem. at 7), this does not cure Defendant's insistence that when filing their opposition to Canisius College's summary judgment motion, paragraph 11 still places the ultimate burden on Plaintiffs to file judicial documents marked by Defendant as confidential under seal, which as the Court noted in *Wolfe*, is antithetical to the allocation of that burden by Rule 26(c).

## II.     Canisius College Fails to Cite to Single Title IX Case that Supports its Request for <u>Overreaching Proposed Protective Order</u>

None of the cases cited in Canisius' brief are on all fours with the instant case, and none support the kind of unprecedented efforts Defendant is currently engaged in to shield itself from adjudication in this public forum. Notwithstanding Canisius' misquoting, the Second Circuit did not state in *In re The City of New York* that "[r]estrictions on disclosure of confidential or sensitive information are a routine feature of civil litigation." *See* Def. Mem. at 5. Rather, the Circuit stated that "disclosure of confidential information on an 'attorneys' eyes only' basis is a routine feature of civil litigation involving trade secrets." *See* 607 F.3d 923, 935 (2d Cir. 2010). No trade secrets are at issue in this Title IX case.

In *In re The City of New York*, the Second Circuit reversed a decision of the lower court, which granted a motion to compel the production of certain sensitive intelligence reports prepared by undercover officers of the New York City Police Department (NYPD) in a case involving Section 1983 and state law claims against the NYPD brought by protesters arrested during the

2004 Republican National Convention. *See id.,* at 928. In that case, the Second Circuit rejected the plaintiffs' efforts to obtain the sensitive intelligence police reports, and found that restricting the information to "Attorneys' eyes only" and filings under seal, was not sufficient because:

> the consequences of accidental disclosure are too severe to employ the procedure here. If a party in a commercial suit obtains a competitor's trade secrets, at worst the party will gain an unfair financial advantage over his competitor. Though such an injury is serious, it involves money, not public safety, and it can usually be remedied by an injunction or money damages.
>
> Here, however, accidental disclosure of the Field Reports risks undermining important NYPD investigatory procedures and thereby endangering the safety of law enforcement personnel and countless New York residents. Not only is that injury more severe, it is far more difficult to remedy.

See 607 F.3d at 936 (2d Cir. 2010). None of the same public safety issues at issue in *In re The City of New York* are present in the case at bar.

Similarly, Canisius College's reliance on *Kiobel v. Cravath, Swaine & Moore LLP,* (Def. Mem. at 5) is misplaced. *See* 895 F.3d 238 (2d Cir. 2018). *Kiobel* is a case brought by a Nigerian national pursuant to 28 U.S.C. § 1782 to compel the production of documents in the possession of a law firm in New York, which were generated during discovery of a subsequently dismissed human rights case the brought against Royal Dutch Petroleum Co./Shell pursuant to the Alien Tort Statute, for use in pending litigation in the Netherlands. *See* 895 F.3d at 241. The Second Circuit reversed the lower court's grant of the plaintiff's motion to compel production of discovery from the dismissed case for use in the pending Dutch litigation in large part because the plaintiff was seeking to revise a confidentiality order she agreed to be bound by in the dismissed law suit without participation by the other party to the confidentiality agreement, Royal Dutch Company/Shell. *See id.,* 893. F.3d at 241. Importantly, the Second Circuit held that the issues at stake in *Kiobel* were "extraordinatory, and possibly unique," which is not true about the case at bar, a routine case involving Title IX violations that are remarkably similar to other Title IX cases bright by students

against Canisius. *See JD1 v. Canisius Coll.,* 2022 WL 2308902 (W.D.N.Y. June 27, 2022) (granting in part and dismissing in part Title IX and state law claims brought by women students who were subjected to sexual misconduct and abuse by Canisius track team members).

Canisius also attempts to make use of caselaw that provides protection to third-party comparators whose personnel files are relevant to claims raised in employment discrimination cases, which is not relevant to the instant Title IX case. For example, in *Garnett-Bishop v. New York Cmty. Bancorp, Inc.,* an employment case involving race, gender and age discrimination claims, the court granted the employer's motion for a protective order regarding third-party personnel files, over the plaintiff's counsel's objection, who claimed a protective order would "impede her representation of other former NYCB employees whom she may represent in separate and subsequent litigation." *See* 2013 WL 101590, at *2 (E.D.N.Y. Jan. 8, 2013). In granting the motion, the court reasoned that "courts have generally characterized personnel files as confidential and found it appropriate to enter protective orders governing their use in litigation because of . . . the privacy interests of innocent third parties." *See id.*

In this case, neither Plaintiffs nor undersigned counsel intend to use discovery obtained in this litigation for any other purpose than to support Plaintiffs' claims in this litigation and have never made any representations to the contrary. Moreover, the decision in *Garnett-Bishop* directed the parties to develop a protective order together, and nowhere is it suggested that the protective order contain the same provisions Canisius College puts forth in its proposed Protective Order, such as an overbroad definition of what is confidential information, or a mandate that confidential information much be filed under seal, and that the burden to do so be put on the non-designating party. *Cf.* 2013 WL 101590, at *3.

Canisius College's citation to *Perez v. Jupada Enterprises, Inc.,* (Def. Mem. at 6), a class action case brought pursuant to the Fair Labor Standards Act and the New York Labor Law, is similarly misplaced. *See* 2011 WL 501601, at *1 (S.D.N.Y. Feb. 14, 2011). In that case, the district court granted the employer's motion for a protective order to prevent the plaintiffs in that case "from disclosing to other franchise employees" the "sensitive wage and compensation information of non-parties" but did not require that third-party compensation records be filed under seal in the context of dispositive motions, as Defendant's proposed Protective Order requires.

Unlike the instant case, *Ladson v. Ulltra E. Parking Corp.,* (Def. Mem. at 6), does not deal with the propriety of a protective order at all, but rather with the issue of whether comparator evidence in a race and age discrimination employment discrimination case must be produced in the face of a motion to compel. *See* 164 F.R.D. 376, 378 (S.D.N.Y. 1996). In *Ladson*, the district court found that the comparator evidence was relevant and ordered the employer to produce that discovery, noting only in a footnote that designating the third-party evidence as "confidential" was sufficient protection. *See* 164 F.R.D. at 377, n.2. Notably absent is any discussion regarding the need to have the plaintiffs in *Ladson* file comparator third-party evidence under seal in the context of a dispositive motion, which is what Canisius College seeks here.

*Metcalf v. Yale Univ.,* is not a Title IX case, as Canisius College consistently suggests in its brief (Def. Mem. at 6, 9), but an employment case involving allegations of age discrimination, including discriminatory termination of employment, in violation of federal and Connecticut law. *See* 2017 WL 627423, at *5 (D. Conn. Feb. 15, 2017). In the decision relied on by Defendant, the district court ruled on the plaintiff's motion to compel discovery relating to comparators, particularly the personnel files and disciplinary records of those employees also accused of sexual misconduct like the plaintiff. *Id.* Yale University alleged it dismissed the plaintiff, a curator at the

art gallery and adjunct professor, because he engaged in sexual misconduct, but the plaintiff contended that he made a mistake by entering the wrong bathroom. *Id.*

Unlike the instant case, the *Metcalf* court acknowledged that the "none of the documents that [the plaintiff] is now requesting concern cases involving a Yale student. *See* 2017 WL 627423, at *5 (D. Conn. Feb. 15, 2017). Instead, the documents sought by the plaintiff in that case involved Title IX investigations regarding alleged misconduct by comparators to the plaintiff, and since the comparators worked in "departments or work units at Yale" described by the district court as "small," the court believed that "redactions alone may not be sufficient to protect the identity of those involved[.]" *Id.* For that reason, the district court in *Metcalf* required that this comparator evidence, which was limited to the Title IX investigations, be filed under seal and available to the plaintiff on an "Attorneys' eyes only" basis. *See* 2017 WL 627423 at *6–7.

Canisius College makes no similar arguments in the instant case to defend its proposed Protective Order because it cannot. Defendant's documents relating to its investigation of Plaintiffs' complaints about Noonan's sexual harassment, and any documents relating to complaints raised by students about Noonan's sexual harassment before the Plaintiffs came forward and complained starting in January 2019, are directly relevant to whether or not Canisius demonstrated deliberate indifference to Noonan's sexual misconduct. That is the dispositive issue for this Court to determine when it assesses the parties' submissions relating to Defendant's expected summary judgment motion. Accordingly, the kinds of documents Canisius College's proposed Protective Order seeks to require to be filed under seal are judicial documents, by definition, to which the right of public access is presumed.

Moreover, unlike Yale University in *Metcalf*, Canisius College has failed to demonstrate that redacting the names of the students, teachers and faculty who came forward to complain about

Noonan's sexual misconduct would be insufficient. Unlike the *Metcalf*, which involved comparator employees who worked in the university's art gallery and art department, Noonan taught both undergraduate and graduate classes, and any student, professor or staff person is a potential source of complaints against him. According to Canisius' Wikipedia site, Defendant recently changed its name to "Canisius University" and has a current enrollment of 1866 undergraduate students, 764 graduate students, and has 283 faculty members. https://en.wikipedia.org/wiki/Canisius_University. Given the size of its student body and faculty, a casual observer of the docket will never be able to figure out the identity of the students and faculty who came forward for years before Plaintiffs to complaint about Noonan's sexual misconduct if their names are redacted.

Canisius College also cites to school discrimination cases involving protective orders that are different from what Defendant has proposed and therefore not relevant to the Court's analysis. For example, in *Robert F. v. N. Syracuse Cent. Sch. Dist.,* (Def. Mem. at 7), a student disability case brought pursuant to the Rehabilitation Act, the district court overruled objections to a protective order fashioned by the magistrate judge in which comparator student files and the personnel files of numerous school officials would be available only to the plaintiff's attorneys for review. *See* 2020 WL 12846935, at *3 (N.D.N.Y. July 21, 2020). While the district court noted that a protective order restricting confidential information to review by "Attorneys' eyes only" was a "drastic remedy, given its impact on the party entitled to the information" and appropriate only in "a narrow range of situations, primarily the adjudication of trade secret lawsuits," the plaintiff had not demonstrated that the magistrate judge had committed clear error. *Id.* at 4. Notably, the protective order in *Robert F. v. N. Syracuse Cent. Sch. Dist.,* did not contain any provisions requiring documents deemed by the school district to be filed under seal or otherwise interfered

with the district court's Article III duties like Canisius College's proposed Protective Order. Additionally, Defendant's proposed Protective Order contains no "Attorneys' only eyes" provision and therefore this case in inopposite to the issues currently before the Court.

In contradistinction to all of the employment and other civil rights cases cited by Canisius College involving comparator evidence, complaints raised by other students about Noonan's sexual harassment, which may be contained in Noonan's own personnel file, are directly relevant to the issue of whether Canisius engaged in deliberate indifference by failing to respond and remedy complaints raised by students before Plaintiffs came forward in January/February 2019. Unlike comparators in employment cases, Noonan is not an "innocent third part[y]" in this litigation and Canisius College's efforts to have the Court equate him to comparators to afford him the same kind of protections belies Defendant's claim that they are trying to protect third-party students. *See, e.g.,* Def. Mem. at 2. It is clear Canisius College is trying to protect itself from having to adjudicate Plaintiffs' claims in this public venue by seeking unprecedented protection of judicial documents from being placed on the docket, and the Court should not condone such efforts.

## III. Redaction of Third-Party Names is Preferred Method for Courts in Second Circuit Seeking to Strike Balance Between Privacy Concerns Relating to Third-Parties and <u>Presumptive Right of Access to Judicial Documents</u>

Courts in the Second Circuit routinely permit the redaction of third-party names and other identifying information in documents filed on the docket because such information is "largely unrelated to the public interest," and may properly be withheld. *In re Savitt/Adler Litigation*, 1997 WL 797511, at *4 (N.D.N.Y. Dec. 23, 1997) ("[T]he public can assess the Attorney General's actions without the names of the individual AAGs."); *Kelly v. City of New York*, 2003 WL 548400, at *6 (S.D.N.Y. Feb. 24, 2003) ("[T]he public can assess the City's actions in discharging Plaintiffs without the names of the individual [comparator] employees").

"[T]he privacy interests of innocent third parties ... should weigh heavily in a court's balancing equation." *SEC v. TheStreet.com*, 273 F.3d 222, 232 (2d Cir. 2001) (citing *Amodeo*, 71 F.3d at 1051)). "[I]ndividuals . . . have privacy interests in the dissemination of their names." *Massey v. FBI*, 3 F.3d 620, 624 (2d Cir. 1993); *see also Long v. OPM*, 692 F.3d 185, 196 (2d Cir. 2021) ("Redaction of names goes a long way toward protecting against surveillance and publicity those things that are generally treated as nobody else's business.").

For these reasons, courts have allowed for the redaction of names of individuals in documents placed on the docket where their identities have little or no bearing on the outcome of the litigation, as is the case here with any documents relating to complaints raised by Canisius College students and faculty other than Plaintiffs. *See Kelly*, 2003 WL 548400, at *6 ("[R]edacting the employees' names will have minimal consequence on the public's ability to determine whether the City's stated policies regarding tax submissions were uniformly applied."); *In re Savitt/Adler Litigation*, 1997 WL 797511, at *4 ("The redacted record will reveal what political influence a particular AAG may have had.... All that will be missing is the identity of the AAG concerned. Because the redaction sought is minimal and largely unrelated to the public interest, I conclude that defendants have demonstrated that a higher value will be served by redaction and that their proposed redactions are narrowly tailored to serve that interest."); *accord Open Soc'y Just. Initiative v. Trump*, No. 20 CIV. 8121 (KPF), 2020 WL 6286318, at *2 (S.D.N.Y. Oct. 27, 2020) (granting federal government's application to replace document on the docket containing name of low-level employee with version where employee's name was redacted).

Redaction of third-party names was also embraced by the district court in *Byrne v. Yale Univ.,* 2020 WL 1820761, at *2-3 (D. Conn. Apr. 10, 2020), another employment case cited several times by Canisius College. *See* Def. Mem. at 9-10.  In that case, the district court discussed

*Kleftogiannis v. Inline Plastics Corp.*, 411 F. Supp. 3d 216, 230-33 (D. Conn. 2019), an employment case where "Judge Bolden permitted the redaction of non-management employees' names who participated in an internal investigation in documents on the docket because "those employees have significant privacy interests of their own as well" and "Judge Bolden concluded that the employer's proposed solution struck the appropriate balance and was narrowly tailored." *See* 2020 WL 1820761, at *2.

The district court in *Bryne* found that the defendant's proposal, to place documents under seal that had previously been submitted by the parties on the docket during the litigation of dueling summary judgment motions, was "not narrowly tailored to balance that interest against the public's right to know" like the defendant's redaction proposal in *Kleftogiannis*, because some of the documents sought to be placed under seal, like a document called the "Climate Review Report" "is necessary to understand the Court's [summary judgment] ruling" and had to remain on the docket. *See* 2020 WL 1820761, at *3.

In contradistinction to the Climate Review Report, the district court in *Byrne* agreed to place under seal documents relating to a University Wide Committee on Sexual Misconduct's ("UWC") proceeding against Professor González Echevarría, which arose from a Title IX investigation, because that proceeding took place after the plaintiff's tenure vote; the plaintiff was not litigating a sexual harassment claim and did not need prove that Professor González Echevarría's alleged sexual harassment is legally actionable; and the court's ruling on summary judgment did not consider the process or findings of the UWC investigation because it was not essential to the Court's holding. *See* 2020 WL 1820761, at *3.

Accordingly, Canisius College's reliance on *Bryne* is also misplaced because that decision supports Plaintiffs' position that documents relating to sexual harassment complaints about

Noonan raised by third parties should have identifying information such as names and contact information redacted, but otherwise those documents should be placed on the docket, and not under seal, if any party to this litigation uses that evidence in the context of a dispositive motion like Defendant's anticipated summary judgment motion. Redaction of third-party names, not filings under seal, strikes the correct balance between the privacy interests of third parties and the public's presumptive right to access documents relating to the Court's Article III duties in this litigation.

### **CONCLUSION**

For all of the reasons stated herein, Plaintiffs respectfully request that the Court deny Defendant's Motion for a Protective Order with prejudice because the proposed Protective Order is overbroad and contravenes Second Circuit authority related to the presumptive access to judicial documents, and redaction is the better method to protect the privacy interests of third parties.

Dated: March 15, 2024

Respectfully submitted,

LAW OFFICE OF DANIELA NANAU, P.C.

DANIELA NANAU

89-03 Rutledge Avenue
Glendale, New York 11385
Telephone: (888) 404-4975
E-Mail: dn@danielananau.com

ATTORNEYS FOR PLAINTIFFS