UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
SIERRA BOUCHER, LILY ENGEBRECHT,
NATASSIA TUHOVAK, HANNAH WHELAN,
and, CASSIDY WOOD,

                           PLAINTIFFS,                        CASE NO. 1:22-CV-00381-CCR


    -against-

TRUSTEES OF CANISIUS COLLEGE,

                          DEFENDANTS.
-----------------------------------------------------------------X

**AFFIRMATION OF DANIELA NANAU, ESQ. SUBMITTED
IN OPPOSITION TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
SUBMITTED PURSUANT TO 28 U.S.C. § 1746 UNDER PENALTY OF PERJURY**

1. I am a member of the Bar of this Court and the principal attorney at the Law Office of Daniela Nanau, P.C., attorneys for the Plaintiffs in the above-captioned matter.

2. As such, I am familiar with all of the facts and proceedings relating to this action.

3. I submit this Declaration in support of Plaintiffs' opposition to the Motion for a Protective Order submitted by Defendant Trustees of Canisius College ("Canisius College"), dated March 1, 2024, Docket No. 22.

4. A true and accurate copy of the e-mail thread demonstrating communications between me and Christine Naassana, dated December 20, 2023, is attached hereto as **Ex. 1**.

5. On December 20, 2023, Christine Naassana who is the associate attorney representing Canisius College in this action, e-mailed me for the first time, and volunteered to draft a confidentiality agreement for use in the instant case, which I told her Plaintiffs did not need. *See* Ex. 1 at 1-2.

6. Ms. Naassana e-mailed me back to notify me for the first time that Canisius College required a confidentiality order to be in place before it produced any documents without offering any explanation. *See* Ex. 1 at 1.

7. Ms. Naassana also informed me that Canisius College would only produce discovery responses a week after Plaintiffs made a second document production. *See id.*

8. A true and accurate copy of the e-mail thread demonstrating communications between me and Ms. Naassana, dated December 21, 2023, is attached hereto as **Ex. 2**.

9. As I noted in my December 21, 2023 response to Ms. Naassana, Plaintiffs' first document production, consisting of 880 pages of documents relating to their damages, were produced with Plaintiffs' Rule 26 disclosures on August 31, 2023. *See* Ex. 2 at 1.

10. In comparison, Canisius College produced no documents with its Rule 26 disclosures, even though Rule 26 requires, at a minimum, production of any insurance policy that is relevant to the litigation. *See* Ex. 2 at 1.

11. I informed Ms. Naassana that the absence of a confidentiality agreement did not relieve Canisius College of its obligation under F.R.C.P. 34 to produced responsive documents in a timely manner. *See* Ex. 2 at 1-2.

12. A true and accurate copy of the e-mail thread demonstrating communications between me and Ms. Naassana, dated December 22-29, 2023, is attached hereto as **Ex. 3**.

13. Ms. Naassana e-mailed me a draft protective order for the first time on the last working day before Christmas, on December 22, 2023 at 1 p.m., with a note that Canisius College's initial document production "will likely contain confidential documents" and asked me for my thoughts on the proposed draft. *See* Ex. 3 at 3.

14. I responded to Ms. Naassana's draft protective order on December 26, 2023 shortly before 11 a.m. and informed her that the draft was problematic because it does "not define "confidential material" and requires the filing of documents under seal without any mention of the procedures contained in Local Rule 5.3 and applicable case law." *See* Ex. 3 at 3.

15. Additionally, I informed Ms. Naassana that Plaintiffs would not agree to a protective order that did not contain a carve-out for "information that is directly relevant to the claims and defenses in this case. This is a public process and there is a presumption that information related to claims and defenses will be publicly accessible." *See id.*

16. Finally, I encouraged her to reconsider her overbroad protective order and to use redactions to protect the privacy of third-party students, which was sufficient to meet Canisius College's obligations under the Family Educational Rights and Privacy Act (FERPA). *See id.*

17. Ms. Naassana responded more than twenty-four hours later, claiming that my objections to her draft protective order "contradict the University's FERPA obligations and violate the privacy of non-party students" but never explained how or why. Instead, she merely reiterated what her draft protective order required, which at that time also included an overbroad "Attorneys' eyes only" provision. *See* Ex. 3 at 2.

18. At the end of her e-mail on December 27, 2023, Ms. Naassana instructed me as follows: "I am fairly sure that Judge Reiss would expect that we work out the production process without court intervention, and frankly I expect that as well. If you can get back to me promptly, we'll be able to move forward." *See id.*

19. I responded to Ms. Naassana's e-mail less than an hour after she sent it to me, reiterating that the absence of a confidentially agreement that she raised for the first time one week prior, did not excuse Canisius College from producing documents. *See* Ex. 3 at 1-2.

3

20. Additionally, I noted that Ms. Naassana had not provided me with any specific information for me to change my mind reading her overbroad proposed protective order and invited her to explain her reasoning with more concrete reasons because the nature of the protection she was seeking for judicial documents "runs counter to the manner in which litigation is supposed to take place. Litigation is a public process and I am not going to agree that Canisius College gets to hide information demonstrating its liability behind a shield afforded by an over broad confidentiality agreement and filings under seal." *See* Ex. 3 at 1-2.

21. Thereafter, on December 28, 2023, Ms. Naassana produced 553 pages of discovery, but did not respond immediately to my December 27, 2023 e-mail.

22. Of the 553 pages produced on December 28, 2023, only thirty-four (34) pages did not contain a "confidentiality" marking.

23. The documents marked "confidential" in Canisius College's December 28th production contained documents relating to Plaintiffs' complaints about Dr. Michael Noonan's sexual harassment of them, which they raised in January and February 2019, including e-mails from Plaintiffs in which no third-parties are mentioned.

24. The documents marked "confidential" in Canisius College's December 28th production also related to Canisius College's Title IX policy and procedures.

25. During a telephone call with Ms. Naassana on February 21, 2024, she informed me that Canisius College's December 28th production contained portions of Noonan's personnel file and parts of Defendant's investigation file relating to the complaints raised by Plaintiffs and other students about Noonan's sexual misconduct in January and February 2019, as well as information about prior complaints about Noonan's sexual harassment of students and faculty. She did not deny that all of those documents were marked confidential.

26. On December 29, 2023, Ms. Naassana responded to my December 27th email and accused me of "us[ing] this litigation as a weapon to punish or embarrass a specific person or persons, rather than to resolve the issues raised" because I continued to maintain we needed a carve-out for documents relating to Canisius College's investigation into Plaintiffs' complaints about Noonan's sexual harassment and documents relating to complaints raised by other students about Noonan's sexual harassment that would have put Defendant on notice of the need to remedy the situation before my clients came forward in January and February 2019. *See* Ex. 3 at 1.

27. I responded to Ms. Naassana's e-mail half an hour later. I tried to explain, in the most simple terms, that evidence of Canisius College's deliberate indifference to complaints about Noonan's sexual misconduct were judicial documents that could not be hidden from the public because those documents related to the Court's analysis in the context of a dispositive motion like summary judgment. *See* Ex. 3 at 1.

28. I pointed out to Ms. Naassana that her failure to "engage with me except to demand that I concede to your view of things" was not constructive, but rather "a waste of time." *See id.*

29. I ended the e-mail by encouraging Ms. Naassana to reconsider her failure to provide me with specific information about why Canisius College needed such an overbroad and extreme protective order that sought to have judicial documents filed under seal: "If you do not want to describe for me specific information that needs to be protected by your overbroad confidentiality agreement and why, beyond the vagaries that you have provided, you will have to do that for the Court and then we can get to the bottom of this situation and move forward." *See id.*

30. On February 14, 2024, Ms. Naassana sent me correspondence and a revised proposed protective order that was different from the original only in that the "Attorneys eyes only" provision had been removed. No other edits I suggested had been accepted.

5

31. A true copy of Ms. Naassana's correspondence and second proposed protective order is attached hereto as **Ex. 4**.

32. Ms. Naassana's correspondence contained citation to only two cases, none of which were Title IX cases, and none supported filing judicial documents under seal. *See* Ex. 4 at 1-2.

33. Nevertheless, I agreed to a phone call with Ms. Naassana in an effort to engage in a meaningful meet and confer about Canisius College's proposed protective order.

34. In advance of the call, I e-mailed Ms. Naassana and asked for the correct citation of one case in her February 14th letter and if she had any other caselaw support for Canisius proposed protective order because the cases in her letter were inopposite employment cases that dealt with the issue of a protective order relating to third-party comparator evidence.

35. A true copy of my e-mail to Ms. Naassana, dated February 21, 2024, is attached hereto as **Ex. 5**.

36. Ms. Naassana did not respond to my e-mail.

37. Instead, Ms. Naassana called me on February 21, 2024 and reiterated the contents of her February 14th letter, which were the same vague arguments she had previously raised in support of the proposed protective order that consisted mostly of incorrect statements regarding the "routine use of protective orders requiring that documents be filed under seal."

38. During that phone call, I asked Ms. Naassana what identifying information relating to third-party students could not be redacted in documents held by Cansiuis College that required filing under seal. She did not answer that question.

39. When I told Ms. Naassana that her proposed protective order ran counter to Supreme Court and Second Circuit caselaw regarding the importance of judicial document being

6

available to the public, she told repeated that Canisius students would not use the Title IX process if they knew their complaints could be part of litigation later.

40. When I asked her of any students had actually come forward to object to Plaintiffs' litigation against Canisius College, she did not confirm that any had.

41. When I pointed out that, to the contrary, third-party students had actually provided statements regarding their own complaints about Noonan's sexual misconduct, which predate Plaintiffs' complaints in 2019, and demonstrate Canisius College's deliberate indifference, I asked Ms. Naassana why those documents (which were part of Plaintiffs' document production) should be filed under seal, there was no response.

42. A true and accurate copy of a declaration from one former Canisius College student, Ashley Dittrich, who testified that her complaint regarding Noonan's sexual misconduct occurred in 2018 and was ignored by Defendant, pre-dates Plaintiffs' complaints by at least six months and is evidence of Defendant's deliberate indifference. Plaintiffs produced this testimony on December 21, 2023, and it is attached hereto as **Ex. 6**.

43. During the meet and confer, I encouraged Ms. Naassana to understand that I viewed her proposed protective order as an inappropriate attempt to shield Canisius College from an adjudication of my client's claims in a public form, and she was only concerned with her protecting her client's image, to which Ms. Naassana did not respond.

44. I told Ms. Naassana that in light of her inability to provide me with any Title IX case in which a similar protective order had been approved by a judge, I thought we had nothing further to discuss.

45. In response, Ms. Naassana told she was not obliged to give me every case because we were not litigating a motion.

7

46. Our meet and confer ended shortly thereafter.

47. No further communication between counsel for the parties.

48. On March 1, 2024, at 11:24 p.m., Ms. Naassana filed Defendants' Motion for a Protective Order. *See* Docket No. 22.

49. For all of the reasons demonstrated herein related to Defendant's failure to have a substantive meet and confer regarding their proposed protective order, and in Plaintiffs' Memorandum of Law summitted herewith in opposition to Defendant's Motion for a Protective Order, Plaintiffs' respectfully request that the Court deny Defendant's Motion because Canisius College has failed to demonstrate good cause for a protective order that shields judicial documents from the docket and imposes on Plaintiffs the burden of having to engage in motion practice to have such documents filed under seal.

Dated: March 15, 2024

                         Respectfully submitted,

                         LAW OFFICE OF DANIELA NANAU, P.C.

                         _____
                         DANIELA NANAU

                         89-03 Rutledge Avenue
                         Glendale, New York 11385
                         Telephone: (888) 404-4975
                         E-Mail: dn@danielananau.com

                         ATTORNEYS FOR PLAINTIFFS