# Exhibit 7

**MARGARET McCARTHY**

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

------------------------------------------
SIERRA BOUCHER, LILY ENGEBRECHT,
NATASSIA TUHOVAK, HANNAH WHELAN, and
CASSIDY WOOD,

                    Plaintiffs,

        - against -        Case No.
                           1:22-cv-00381-CCR

TRUSTEES OF CANISIUS COLLEGE,

                    Defendant.
------------------------------------------


        Examination before trial of **MARGARET
McCARTHY**, taken pursuant to the Federal Rules of
Civil Procedure, in the offices of JACK W. HUNT &
ASSOCIATES, INC., 1120 Liberty Building, Buffalo,
New York, on September 27, 2024, commencing at
10:25 a.m., before LORI K. BECK, CSR, CM, Notary
Public.

2

```
 1  APPEARANCES:      LAW OFFICE OF DANIELA NANAU, P.C.,
                      By DANIELA NANAU, ESQ.,
 2                    89-03 Rutledge Avenue,
                      Glendale, New York  11385-7935,
 3                    (888) 404-4975,
                      dn@danielananau.com,
 4                    Appearing for the Plaintiffs.

 5                    HODGSON RUSS LLP,
                      By THOMAS S. D'ANTONIO, ESQ.,
 6                    1800 Bausch & Lomb Place,
                      Rochester, New York  14604,
 7                    (585) 454-0700,
                      tdantonio@hodgsonruss.com,
 8                    Appearing for the Defendant.

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23
```

10:40:52  1          **Q.**    Okay.  And then as the chair of the

10:40:56  2   ABEC program, Dr. Noonan was responsible for

10:41:00  3   submitting to you a budget for that program?

10:41:04  4          **A.**    The budgets went through the deans, and

10:41:07  5   the deans recommended the budgets.

10:41:08  6          And there was a -- the college budget-wide

10:41:12  7   committee that finalized budgets for the college,

10:41:19  8   then approved by the board of trustees.

10:41:22  9          It was quite a long process.

10:41:23 10          **Q.**    It sounds like it.

10:41:25 11          Did complaints from ABEC department faculty

10:41:30 12   ever reach you when you -- when you were in the

10:41:32 13   position of vice-president of academic affairs

10:41:35 14   regarding the allocation of funds within the ABEC

10:41:38 15   program?

10:41:43 16          **A.**    I recall a concern by -- I think it was

10:41:47 17   Dr. Malini Suchak about the -- there's also

10:41:53 18   within -- within ABEC, there's an institute for the

10:41:56 19   study of human-animal relations, generally known as

10:42:01 20   ISHAR.  We just refer to it as ISHAR by its

10:42:04 21   initials, I-S-H-A-R.

10:42:07 22          I believe I -- I recall Dr. Suchak reaching

10:42:11 23   out to the dean, who was Dr. Beth Gill, G-I-L-L, at

10:42:19  1  the time, and Dr. Gill bringing to me the concern

10:42:22  2  that Dr. Suchak had about ISHAR funds, that they

10:42:27  3  weren't being fairly distributed or -- or that

10:42:32  4  they're -- I'm sorry, I'm going to take that back

10:42:34  5  for a second.

10:42:35  6       I think the concern was more that they were

10:42:37  7  being misappropriated.  She had a concern that they

10:42:41  8  were being misspent.

10:42:43  9       **Q.**    Dr. Suchak was concerned that

10:42:44 10  Dr. Noonan was misappropriating funds from the

10:42:48 11  ISHAR fund, correct?

10:42:50 12       **A.**    That's it.  That was the complaint.

10:42:52 13       **Q.**    And did you ever direct Dr. Gill to

10:42:58 14  remedy that complaint?

10:43:00 15       **A.**    I did more than that.  I asked the

10:43:01 16  controller to review the account, controller of the

10:43:06 17  institution.  I watched it myself, but I also asked

10:43:08 18  the controller to please review it.

10:43:10 19       I know he asked for receipts, and I don't

10:43:14 20  recall ever receiving any information back from him

10:43:17 21  that there was a problem.

10:43:24 22       **Q.**    To your knowledge, did any other ABEC

10:43:26 23  program faculty members complain about the

10:43:30  1  distribution of funding within the department?

10:43:34  2       **A.**   Dr. Russell, Josh Russell, may have

10:43:37  3  been with Dr. Suchak when she met with Dr. Gill.  I

10:43:42  4  don't know if he shared that complaint or not with

10:43:46  5  her.

10:43:47  6       **Q.**   Are you aware of any concerns raised by

10:43:49  7  Dr. Christy Hoffman during her tenure in the ABEC

10:43:54  8  program?

10:43:55  9       **A.**   I became aware of her concerns in the

10:43:58 10  spring of 2019.

10:44:00 11       **Q.**   And by then -- well, in the spring of

10:44:04 12  2019, Dr. Hoffman was still at Canisius, correct?

10:44:08 13       **A.**   Yes, I believe so.

10:44:09 14       **Q.**   Okay.  And was there any response made

10:44:13 15  by your office or anyone else in Canisius senior

10:44:19 16  administration regarding her concerns about the

10:44:24 17  distribution of funding in the ABEC program --

10:44:26 18       **MR. D'ANTONIO:**  Objection --

10:44:27 19       **BY MS. NANAU:**

10:44:27 20       **Q.**   -- among the faculty?

10:44:29 21       **MR. D'ANTONIO:**  Objection to form.

10:44:29 22       **THE WITNESS:**  I don't believe -- I don't

10:44:31 23  know that her concerns were about the distribution

| | | |
|---|---|---|
| 11:37:20 | 1 | Ms. Walleshauser's investigation, correct? |
| 11:37:23 | 2 | **A.**    I met with Ms. Walleshauser and Mike |
| 11:37:26 | 3 | Noonan when she reviewed the allegations with him. |
| 11:37:28 | 4 | I sat in the room and listened. |
| 11:37:31 | 5 | **Q.**    Okay.  Did you take notes during that |
| 11:37:32 | 6 | meeting? |
| 11:37:33 | 7 | **A.**    No. |
| 11:37:35 | 8 | **Q.**    Any reason why not? |
| 11:37:37 | 9 | **A.**    I was just there to listen.  I knew |
| 11:37:39 | 10 | Linda was taking notes and keeping track of it. |
| 11:37:43 | 11 | **Q.**    Got it.  Dr. McCarthy, do you recall |
| 11:38:07 | 12 | the day when you met with Dr. Noonan and |
| 11:38:13 | 13 | Ms. Walleshauser? |
| 11:38:13 | 14 | **A.**    I do. |
| 11:38:14 | 15 | **Q.**    What day was that? |
| 11:38:15 | 16 | **A.**    February 21st -- |
| 11:38:17 | 17 | **Q.**    Okay. |
| 11:38:17 | 18 | **A.**    -- 2019. |
| 11:38:19 | 19 | **Q.**    Prior to February 21st, |
| 11:38:27 | 20 | Ms. Walleshauser provided her [sic] with the notes |
| 11:38:29 | 21 | that she had accumulated regarding the various |
| 11:38:35 | 22 | student complaints, correct? |
| 11:38:36 | 23 | **MR. D'ANTONIO:**  Can I have that back?  I'm |

12:02:03  1   what was your impression of the situation?

12:02:12  2           And by that I mean:  Did you believe that

12:02:17  3   the students' allegations had merit after you heard

12:02:21  4   Dr. Noonan's response?

12:02:24  5           **MR. D'ANTONIO:**  Objection to the form.

12:02:28  6           **THE WITNESS:**  Overall, yes.

12:02:29  7           **BY MS. NANAU:**

12:02:34  8           **Q.**   So as a result of this meeting on

12:02:37  9   February 21st, 2019, I know you have already

12:02:41 10   testified that you provided Dr. Noonan with notice

12:02:43 11   that he was going to be put on a paid leave of

12:02:47 12   absence, correct?

12:02:47 13           **A.**   Yes.

12:02:48 14           **Q.**   Did you come to any other conclusions

12:02:50 15   that day?

12:02:55 16           **A.**   That the investigation needed to

12:02:58 17   continue.  We needed to continue to gather

12:03:01 18   information and continue to learn more.

12:03:07 19           **Q.**   Okay.  Did you share with President

12:03:12 20   Hurley your impressions of this meeting with

12:03:15 21   Dr. Noonan and Ms. Walleshauser on February 21st,

12:03:19 22   2019?

12:03:19 23           **A.**   Yes.

12:18:02  1          **Q.**    So as a CAC class, was the footage

12:18:12  2    Dr. Noonan's property --

12:18:13  3          **MR. D'ANTONIO:**  Objection to form.

12:18:14  4          **BY MS. NANAU:**

12:18:14  5          **Q.**    -- or was it Canisius's property, do

12:18:16  6    you know?

12:18:17  7          **A.**    Course material, which this was a

12:18:20  8    course, so course material is the property of the

12:18:23  9    professor.

12:18:25 10          **Q.**    Okay.  Course material -- is that

12:18:34 11    distinguishable from research that a professor who

12:18:44 12    engages in research at Canisius would arguably own?

12:18:55 13          **MR. D'ANTONIO:**  Objection to form.

12:18:56 14          **THE WITNESS:**  I'm not sure I'm following.

12:18:59 15          **BY MS. NANAU:**

12:18:59 16          **Q.**    Okay.  Is there -- is there a

12:19:01 17    distinction at Canisius between work product of a

12:19:11 18    faculty member during the course of a class and

12:19:15 19    research that they engage in with Canisius

12:19:19 20    students?

12:19:24 21          **MR. D'ANTONIO:**  Same objection.  If you

12:19:27 22    understand the question, you may answer it.

12:19:28 23          **THE WITNESS:**  Material related to a course,

| | | |
|---|---|---|
| 12:54:20 | 1 | **Q.**   Okay.  So after you and President |
| 12:54:26 | 2 | Hurley made the decision to terminate Dr. Noonan's |
| 12:54:31 | 3 | employment with Canisius, were the discussions |
| 12:54:34 | 4 | largely between attorneys? |
| 12:54:38 | 5 | **A.**   Yes. |
| 12:54:40 | 6 | |
| 12:54:44 | 7 | |
| 12:54:47 | 8 | |
| 12:54:48 | 9 | |
| | 10 | |
| | 11 | |
| | 12 | |
| | 13 | |
| | 14 | |
| | 15 | |
| 12:55:26 | 16 | |
| 12:55:26 | 17 | |
| 12:55:26 | 18 | |
| 12:55:28 | 19 | |
| 12:55:33 | 20 | |
| 12:55:39 | 21 | |
| 12:55:40 | 22 | |
| 12:55:41 | 23 | |

113

```
 1  STATE OF NEW YORK )

 2                              ss:

 3  COUNTY OF ERIE    )

 4

 5       I DO HEREBY CERTIFY as a Notary Public in and

 6  for the State of New York, that I did attend and

 7  report the foregoing deposition, which was taken

 8  down by me in a verbatim manner by means of machine

 9  shorthand.  Further, that the deposition was then

10  reduced to writing in my presence and under my

11  direction.  That the deposition was taken to be

12  used in the foregoing entitled action.  That the

13  said deponent, before examination, was duly sworn

14  to testify to the truth, the whole truth and

15  nothing but the truth, relative to said action.

16

17

18

                              _____
19                            LORI K. BECK,
                              CSR, CM,
20                            Notary Public.

21

22

23
```

*JACK W. HUNT & ASSOCIATES, INC.*

*1120 Liberty Building*

*Buffalo, New York  14202  -  (716) 853-5600*