# Exhibit 11

**ELIZABETH ANN HOGAN**

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

------------------------------------------
SIERRA BOUCHER, LILY ENGEBRECHT,
NATASSIA TUHOVAK, HANNAH WHELAN, AND
CASSIDY WOOD,

                Plaintiffs,

   - against -   Case No.
                  1:22-cv-00381-CCR

TRUSTEES OF CANISIUS COLLEGE,

                Defendant.
------------------------------------------

Examination before trial of **ELIZABETH ANN HOGAN**, taken pursuant to Subpoena, in the offices of JACK W. HUNT & ASSOCIATES, INC., 1120 Liberty Building, Buffalo, New York, on June 19, 2024, commencing at 9:23 a.m., before LYNNE E. DIMARCO, Notary Public.

*JACK W. HUNT & ASSOCIATES, INC.*

```
 1  APPEARANCES:     LAW OFFICE OF DANIELA NANAU, P.C.,
                    By DANIELA NANAU, ESQ.,
 2                  89-03 Rutledge Avenue,
                    Glendale, New York  11385-7935,
 3                  (888) 404-4975,
                    dn@danielananau.com,
 4                  Appearing for the Plaintiffs.

 5                  HODGSON RUSS LLP,
                    By THOMAS S. D'ANTONIO, ESQ.,
 6                  1800 Bausch & Lomb Place,
                    Rochester, New York  14604,
 7                  (585) 454-0700,
                    tdantonio@hodgsonruss.com,
 8                  Appearing for the Defendant.

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23
```

```
09:56:07   1         A.   No.
09:56:08   2         MR. D'ANTONIO:   Form.
09:56:10   3         BY MS. NANAU:
09:56:11   4         Q.   Okay.  Prior to the spring of 2019, did
09:56:20   5   any student at Canisius ever come to you with any
09:56:24   6   concern about Dr. Noonan?
09:56:27   7         A.   Not that I can recall.
09:56:31   8         Q.   If a student had come to you with a
09:56:34   9   concern about Dr. Noonan when you were not a
09:56:37  10   department chair, is there anything in writing that
09:56:43  11   would demonstrate that you encouraged them to raise
09:56:46  12   it with the biology chair?  I'm going to withdraw
09:57:01  13   the question.
09:57:01  14         MR. D'ANTONIO:   And also I think her
09:57:03  15   testimony was that she would bring it forward to
09:57:06  16   the chair.
09:57:07  17         MS. NANAU:   Right, so I'm asking something a
09:57:10  18   little bit different.
09:57:10  19         MR. D'ANTONIO:   That's what I want to make
09:57:12  20   sure.
09:57:12  21         BY MS. NANAU:
09:57:13  22         Q.   So you don't recall a student ever
09:57:15  23   coming to you about concerns with Dr. Noonan prior
```

*Elizabeth Ann Hogan - Ms. Nanau - 06/19/2024*

30

```
09:57:18   1  to the spring of 2019, correct?
09:57:20   2           A.    Correct.
09:57:20   3           Q.    That was when you were the department
09:57:23   4  chair, correct?
09:57:23   5           A.    Yes.
09:57:24   6           Q.    Okay.  If a student -- and you said you
09:57:26   7  didn't recall, right, if a student had come to you
09:57:29   8  about Dr. Noonan before you were the department
09:57:31   9  chair, would there be a writing, like an e-mail or
09:57:36  10  something else where you would have brought that
09:57:39  11  student's concern to the attention of the chair, or
09:57:42  12  would it have been perhaps more informal like going
09:57:46  13  to the department chair during a meeting or you
09:57:50  14  passing in the hall and mentioning it?
09:57:53  15           MR. D'ANTONIO:  Objection to the
09:57:54  16  hypothetical, but you may answer it, if you
09:57:59  17  understand.
09:57:59  18           THE WITNESS:  Hypothetically, I don't -- it
09:58:02  19  could have been either of those.  I could have -- I
09:58:06  20  would have certainly made sure that the chair knew
09:58:09  21  of the situation, but it would have either been
09:58:12  22  verbally or via e-mail.
09:58:15  23           BY MS. NANAU:
```

*Elizabeth Ann Hogan - Ms. Nanau - 06/19/2024*

31

| | | |
|---|---|---|
| 09:58:15 | 1 | **Q.** Now, not hypothetically, did you ever |
| 09:58:20 | 2 | direct a student to the biology department chair |
| 09:58:23 | 3 | where a student raised a concern with you about |
| 09:58:27 | 4 | Dr. Noonan; do you recall that? |
| 09:58:28 | 5 | **A.** I don't recall. |
| 09:58:29 | 6 | **Q.** Okay. So can you tell me when is the |
| 09:58:37 | 7 | first time a student came to you with concerns |
| 09:58:40 | 8 | about Dr. Noonan? |
| 09:58:44 | 9 | **A.** Yes, it was after a faculty member in |
| 09:58:52 | 10 | my department raised concerns about a student and |
| 09:58:57 | 11 | her interactions with Dr. Noonan. |
| 09:58:59 | 12 | That student -- I told the faculty members |
| 09:59:04 | 13 | to tell the student to make an appointment to see |
| 09:59:08 | 14 | me so we could discuss the situation, so that would |
| 09:59:12 | 15 | be January 2019. |
| 09:59:13 | 16 | **Q.** Okay. So who was the faculty member |
| 09:59:16 | 17 | that brought this concern of the students to your |
| 09:59:19 | 18 | attention? |
| 09:59:19 | 19 | **A.** Dr. Daniel Hauser. |
| 09:59:22 | 20 | **Q.** So what did Dr. Hauser tell you? |
| 09:59:26 | 21 | **A.** He told me that he was concerned about |
| 09:59:30 | 22 | a student in his lab who was doing a research |
| 09:59:34 | 23 | project that was involving both Dr. Noonan and |

```
10:01:18   1   exhibit -- or actually the bottom of the first
10:01:22   2   page, there's an e-mail from the student to you
10:01:25   3   dated January 24th, 2019, correct?
10:01:28   4           A.   Correct.
10:01:29   5           Q.   Okay.  And in the body of the e-mail,
10:01:33   6   which is on the second page, the student reports to
10:01:38   7   you that Dr. Hauser reached out to her and said
10:01:42   8   that you would like to talk to her about the
10:01:46   9   combined research with Dr. Hauser and Dr. Noonan,
10:01:49  10   correct?
10:01:49  11           A.   Correct.
10:01:49  12           Q.   And did such a meeting take place?
10:01:53  13           A.   Yes.
10:01:54  14           Q.   Okay.  And who was at the meeting
10:01:56  15   besides you and the student?
10:02:00  16           A.   No one else.
10:02:02  17           Q.   Did you take notes during that meeting?
10:02:05  18           A.   I did.
10:02:05  19           Q.   Okay.  What did the student tell you?
10:02:13  20           A.   She explained why she decided to stop
10:02:18  21   doing research with Dr. Noonan.  She described
10:02:24  22   conversations that she had with Dr. Noonan that
10:02:26  23   left her in tears.
```

10:02:30  1       She described that it was a very stressful
10:02:33  2  situation and she thought it was best to cut ties
10:02:40  3  with him and that it would be unfair for her to
10:02:46  4  continue.
10:02:46  5       Because we discussed the option of her doing
10:02:49  6  research solely with Dr. Hauser without any contact
10:02:54  7  with Dr. Noonan, but she felt that would be unfair
10:02:59  8  to Dr. Hauser.  So she felt her best option was to
10:03:03  9  walk away from the project.
10:03:05 10       **Q.**   Did the student raise any concerns with
10:03:09 11  you about, you know, the impact on her educational
10:03:14 12  life with this decision to cut ties and walk away
10:03:19 13  from the project?
10:03:20 14       **A.**   Yeah.
10:03:21 15       **Q.**   What did she say?
10:03:23 16       **A.**   She had intended to go to vet school
10:03:27 17  and she felt that the stress of the situation that
10:03:32 18  she's been in at Canisius and working with
10:03:35 19  Dr. Noonan had made her re-think that of trying to
10:03:41 20  go on with another four years of school at that
10:03:45 21  point.
10:03:47 22       **Q.**   Okay.  Is there anything else that the
10:03:53 23  student said to you during the meeting that you had

10:06:28  1  meeting or was this you jotting down thoughts about
10:06:33  2  how to resolve the situation, what does that
10:06:36  3  reflect?
10:06:36  4       **A.**   After the meeting I had a discussion
10:06:38  5  with Dr. Hauser who in the notes is referred to as
10:06:43  6  Dan.
10:06:43  7       **Q.**   Right.
10:06:44  8       **A.**   That, you know, how can we resolve the
10:06:48  9  situation, if the student wanted to continue doing
10:06:51 10  research, would that be possible.  So I just wanted
10:06:54 11  to have options available to the student.
10:06:56 12       **Q.**   Okay.  I'm wondering, there are some
10:07:07 13  pages in between your notes that are just left
10:07:10 14  blank and so I assume that there was nothing on
10:07:15 15  this second page marked as 570.
10:07:18 16       And then going to the third page, Canisius
10:07:23 17  571, there are notes stating 1/25; do you see that?
10:07:29 18       **A.**   Yes.
10:07:29 19       **Q.**   Okay.  And so are these your notes
10:07:33 20  taken during the meeting with the student?
10:07:41 21       **A.**   Yes.
10:07:41 22       **Q.**   Okay.
10:07:45 23       **MR. D'ANTONIO:**  For the record, Daniela, I

|          |    |                                                        |
|----------|----|--------------------------------------------------------|
| 10:08:39 | 1  | ready.                                                 |
| 10:08:41 | 2  | **MR. D'ANTONIO:**  Do you want her to go to a         |
| 10:08:43 | 3  | certain page?                                          |
| 10:08:43 | 4  | **MS. NANAU:**  We're going to go through all of       |
| 10:08:46 | 5  | them.  I don't know that they're all her notes, so     |
| 10:08:49 | 6  | this is an important document I think.                 |
| 10:08:51 | 7  | **MR. D'ANTONIO:**  Take your time and go              |
| 10:08:53 | 8  | through it.  I'm happy to fill up your coffee if       |
| 10:08:59 | 9  | you want.                                              |
| 10:08:59 | 10 | **MS. NANAU:**  My suggestion would be we go           |
| 10:09:01 | 11 | from note to note, because it seems like your notes    |
| 10:09:06 | 12 | memorialize various meetings with students and also    |
| 10:09:10 | 13 | senior administrators.  So I think we should do it     |
| 10:09:14 | 14 | chunk by chunk, so I would review 571 to 572 for       |
| 10:09:24 | 15 | now.                                                   |
| 10:09:29 | 16 | (Discussion off the record: 10:09 a.m.)                |
| 10:10:15 | 17 | **THE WITNESS:**  Okay.  I'm good.                     |
| 10:10:17 | 18 | **BY MS. NANAU:**                                      |
| 10:10:18 | 19 | **Q.**   Okay.  So is it true from my                  |
| 10:10:26 | 20 | understanding of these two pages 571 and 572 that      |
| 10:10:31 | 21 | these two pages contain your notes from the meeting    |
| 10:10:34 | 22 | with the student who e-mailed you in Plaintiff's       |
| 10:10:37 | 23 | Exhibit 15, correct?                                   |

| | | |
|---|---|---|
| 10:10:39 | 1 | **A.**   Correct. |
| 10:10:39 | 2 | **Q.**   Okay.  The student told you in addition |
| 10:10:48 | 3 | to the fact that she was no longer going to |
| 10:10:52 | 4 | veterinarian school that she was worried that |
| 10:10:58 | 5 | Dr. Noonan would have a negative impact on her |
| 10:11:03 | 6 | application? |
| 10:11:04 | 7 | **A.**   Yes. |
| 10:11:06 | 8 | **Q.**   Can you tell me a little bit more about |
| 10:11:08 | 9 | that concern of the student.  What exactly was the |
| 10:11:12 | 10 | concern that she wouldn't get a recommendation or |
| 10:11:15 | 11 | that he would write something that wasn't positive |
| 10:11:18 | 12 | for her? |
| 10:11:20 | 13 | **A.**   As best as I can recall, she felt that |
| 10:11:24 | 14 | because she terminated her research project with |
| 10:11:27 | 15 | Dr. Noonan he would not write a letter of |
| 10:11:31 | 16 | recommendation for her for vet school. |
| 10:11:34 | 17 |      She also seemed to be under the impression |
| 10:11:37 | 18 | that he had many contacts at vet school, so even if |
| 10:11:42 | 19 | she didn't ask him to write a letter of |
| 10:11:44 | 20 | recommendation, he would be able to influence that |
| 10:11:47 | 21 | process. |
| 10:11:52 | 22 | **Q.**   Did you ask the student where she got |
| 10:11:55 | 23 | that understanding about Dr. Noonan's influence at |

155

```
 1  STATE OF NEW YORK )
 2                    ss:
 3  COUNTY OF ERIE    )
 4
 5       I DO HEREBY CERTIFY as a Notary Public in and
 6  for the State of New York, that I did attend and
 7  report the foregoing deposition, which was taken
 8  down by me in a verbatim manner by means of machine
 9  shorthand.  Further, that the deposition was then
10  reduced to writing in my presence and under my
11  direction.  That the deposition was taken to be
12  used in the foregoing entitled action.  That the
13  said deponent, before examination, was duly sworn
14  to testify to the truth, the whole truth and
15  nothing but the truth, relative to said action.
16
17
18
                              *Lynne E. DiMarco*
19                            LYNNE E. DiMARCO,
                              Notary Public.
20
21
22
23
```