# Exhibit 13

**TANYA LOUGHEAD**

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

------------------------------------------
SIERRA BOUCHER, LILY ENGEBRECHT,
NATASSIA TUHOVAK, HANNAH WHELAN, and
CASSIDY WOOD,

                    Plaintiffs,

        - against -      Case No.
                         1:22-cv-00381-CCR

TRUSTEES OF CANISIUS COLLEGE,

                    Defendant.
------------------------------------------


        Examination before trial of **TANYA LOUGHEAD**, taken pursuant to the Federal Rules of Civil Procedure, in the offices of JACK W. HUNT & ASSOCIATES, INC., 1120 Liberty Building, Buffalo, New York, on September 26, 2024, commencing at 2:52 p.m., before LORI K. BECK, CSR, CM, Notary Public.

*JACK W. HUNT & ASSOCIATES, INC.*

2

| | | |
|---|---|---|
| 1 | APPEARANCES: | LAW OFFICE OF DANIELA NANAU, P.C., |
| | | By DANIELA NANAU, ESQ., |
| 2 | | 89-03 Rutledge Avenue, |
| | | Glendale, New York  11385-7935, |
| 3 | | (888) 404-4975, |
| | | dn@danielananau.com, |
| 4 | | Appearing for the Plaintiffs. |
| 5 | | HODGSON RUSS LLP, |
| | | By THOMAS S. D'ANTONIO, ESQ., |
| 6 | | 1800 Bausch & Lomb Place, |
| | | Rochester, New York  14604, |
| 7 | | (585) 454-0700, |
| | | tdantonio@hodgsonruss.com, |
| 8 | | Appearing for the Defendant. |

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

*Tanya Loughead - Ms. Nanau - 09/26/2024*

5

```
14:54:14   1  way we're not talking on top of one another, which
14:54:17   2  happens in normal conversation, but here we'll just
14:54:21   3  make the court reporter's job more difficult.
14:54:22   4          And finally, while I don't think we will be
14:54:25   5  here very long today, I'm open to take a break at
14:54:29   6  any time.  I just ask that if a question is
14:54:31   7  pending, if it's out there, that you answer the
14:54:34   8  question and then we take a break, okay?
14:54:36   9       A.   Okay.
14:54:39  10       Q.   So Dr. Loughead, my understanding is
14:54:42  11  that you are a professor at Canisius University,
14:54:47  12  correct?
14:54:47  13       A.   Yes.
14:54:48  14       Q.   And how long have you worked for
14:54:52  15  Canisius?
14:54:52  16       A.   This is my 19th year.
14:54:55  17       Q.   Wow.  And what department are you a
14:54:59  18  faculty member in?
14:55:01  19       A.   Department of philosophy.
14:55:03  20       Q.   And are you a tenured professor?
14:55:06  21       A.   Yes.
14:55:08  22       Q.   Okay.  When did you receive tenure?
14:55:12  23       A.   I think 2010.
```

| | | |
|---|---|---|
| 15:12:30 | 1 | been in, and I was a bit surprised by that. |
| 15:12:33 | 2 | I went to his office, and I sat down.  He |
| 15:12:35 | 3 | had quite a large desk.  The room -- the office was |
| 15:12:38 | 4 | about as big as this room.  He was sitting behind |
| 15:12:41 | 5 | the desk at one end of the room, and I sat in a |
| 15:12:44 | 6 | chair on the other side, and I asked him if I could |
| 15:12:48 | 7 | speak with him about ▓▓▓▓▓▓ request and about |
| 15:12:51 | 8 | this class. |
| 15:12:52 | 9 | And I wouldn't say we had a conversation. |
| 15:12:58 | 10 | He stood up from his desk and started pacing in the |
| 15:13:01 | 11 | back of the room and yelling. |
| 15:13:06 | 12 | And I was a bit confused.  I had expected a |
| 15:13:09 | 13 | rational discussion and a solution.  I was a bit |
| 15:13:12 | 14 | confused at his behavior, that he was pacing and |
| 15:13:15 | 15 | yelling and acting erratic.  And I was a little bit |
| 15:13:21 | 16 | scared, to be frank, because I had never seen |
| 15:13:24 | 17 | someone behave like this. |
| 15:13:26 | 18 | And I kept telling him, you know, "Let's |
| 15:13:28 | 19 | have a discussion.  I think we can have a solution |
| 15:13:31 | 20 | to this.  I think ▓▓▓▓▓▓ solution is a good one. |
| 15:13:34 | 21 | Let's sit down, let's relax, let's take a breather, |
| 15:13:38 | 22 | let's try to come up with a rational response to |
| 15:13:40 | 23 | this." |

```
15:13:42   1         And he wouldn't sit down, and he wouldn't
15:13:45   2    stop yelling.  He was threatening ████ in front
15:13:50   3    of me, and he was threatening me.  At the time I
15:13:54   4    did not have tenure, and he was threatening me as
15:13:56   5    well, implying that he would somehow harm my tenure
15:14:01   6    case or harm my name or in some way punish me.
15:14:05   7         And he kept pacing, and he wasn't listening
15:14:11   8    to me, so at one point I said, "You really need to
15:14:14   9    sit down.  You really need to calm down."
15:14:18  10         And he had like a tall glass filled with
15:14:21  11    pens and pencils in the front of his desk, and as
15:14:26  12    he was pacing, he grabbed a big handful of them and
15:14:29  13    threw them at my head as I was sitting there.
15:14:33  14         And I was utterly shocked, and I said, "This
15:14:38  15    is not professional behavior," and I said, you
15:14:45  16    know, "If you're going to discuss this in a
15:14:47  17    rational manner, I'm happy to discuss it again, but
15:14:51  18    I'm going to end this discussion and leave now."
15:14:53  19         And he kept yelling at me and threatening me
15:14:56  20    that he was going to do something to me, and I left
15:14:58  21    his office.
15:14:59  22         And it was soon after that that I found out
15:15:03  23    that he actually had kicked me off the IACUC as
```

```
15:17:51   1              A.   I do not recall.
15:17:52   2              Q.   Would it be fair to say that you had
15:17:54   3   been at Canisius for at least five years?
15:17:59   4              MR. D'ANTONIO:   Objection to form.
15:18:00   5              THE WITNESS:   I don't believe so.  If I had
15:18:03   6   to guess, I would say it was about three years
15:18:07   7   after I joined Canisius, which would make it 2008
15:18:10   8   or 2009.
15:18:12   9              BY MS. NANAU:
15:18:12  10              Q.   Okay.  Had you seen -- other than your
15:18:23  11   tenure on the IACUC, had you seen Dr. Noonan engage
15:18:28  12   with other faculty members in other -- in another
15:18:34  13   capacity?
15:18:36  14              A.   Many times.  He was chair of the
15:18:42  15   Faculty Senate for two terms while I was a Faculty
15:18:47  16   Senator, and it's a small campus with a small
15:18:50  17   faculty.
15:18:51  18              I would say it's fair to say that on
15:18:53  19   average, I saw Dr. Noonan or spoke to him in some
15:18:55  20   way at least once a week either because there was a
15:18:59  21   Senate meeting or just because I ran into him on
15:19:03  22   campus.
15:19:03  23              Q.   Let's take your time with Dr. Noonan in
```

15:20:50  1  meeting merely to talk about service learning,
15:20:53  2  opportunities she was offering, nothing
15:20:56  3  controversial.
15:20:58  4         And Dr. Noonan was unbelievably sadistic to
15:21:08  5  her, cruel, yelling at her.  Once again I saw this
15:21:11  6  pacing behavior of him, standing up, pacing,
15:21:16  7  yelling at people.
15:21:16  8         And again I didn't understand why, because
15:21:20  9  the content of what she was saying did not threaten
15:21:25 10  him in any way.  She was -- he doesn't do service
15:21:28 11  learning, and she was talking about places that she
15:21:34 12  offers service learning, and I was struck by a
15:21:37 13  mismatch between what was at stake for Dr. Noonan
15:21:41 14  and why he was so angry and pacing and yelling.
15:21:45 15         And it went on for about 30 minutes that he
15:21:48 16  was acting in a sadistic way towards her, and
15:21:53 17  eventually, myself and a couple of others in the
15:21:56 18  meeting -- it was a Senate meeting, so there were
15:21:58 19  approximately 15 people in the room -- repeatedly
15:22:02 20  said to Dr. Noonan, "Let's end this conversation.
15:22:04 21  Let's move on.  Let's -- let's wrap this up."
15:22:08 22         I could tell that Sister Pat was flustered
15:22:13 23  and close to tears, and I was really disturbed

15:22:18  1  after the Senate meeting, to such a degree that the
15:22:21  2  next day I contacted my dean and reported the
15:22:25  3  incident to her.
15:22:27  4          **Q.**   Who was the dean who you reported this
15:22:32  5  incident with Noonan and Sister Pat to?
15:22:37  6          **A.**   Pat Erickson.
15:22:39  7          **Q.**   Is it Dr. Erickson?
15:22:41  8          **A.**   Yes.
15:22:42  9          **Q.**   Was Dr. Erickson the dean of the
15:22:44 10  college of arts and sciences?
15:22:47 11          **A.**   Yes.
15:22:47 12          **Q.**   And when do you think this was that you
15:22:50 13  went to Dean Erickson?
15:22:53 14          **A.**   I do not recall, but I just looked in
15:22:58 15  my old email to see the years when Dr. Noonan was
15:23:02 16  chair of the Faculty Senate, and it seems like
15:23:05 17  those years were 2014, 2015.
15:23:11 18          So I am guessing that the meeting with
15:23:14 19  Sister Pat took place sometime in 2014, 2015, and
15:23:19 20  that thus my report to the dean took place in 2014,
15:23:24 21  '15.
15:23:24 22          **Q.**   So you went to Dr. Erickson after you
15:23:27 23  had -- or years after you had this disconcerting

```
15:23:33  1   meeting with Dr. Noonan about ▇▇▇▇▇ request.
15:23:35  2        A.   Right.  I did not go to the dean at
15:23:37  3   that time.  I told my chair of my department about
15:23:39  4   the meeting.
15:23:40  5        Q.   Okay.  Who was the chair?
15:23:42  6        A.   George Boger, B-O-G-E-R.
15:23:48  7        Q.   So when did you tell Dr. Boger about
15:23:52  8   the meeting that you had with Dr. Noonan regarding
15:23:55  9   ▇▇▇▇▇ concern and his behavior towards you?
15:23:59 10        A.   On two occasions.  The week that it
15:24:02 11   happened I gave him the basic outline of the
15:24:08 12   meeting, and I said -- because he was my chair, I
15:24:15 13   said, "He said disconcerting things, threatened me,
15:24:19 14   threatened my tenure, threatened my success at
15:24:24 15   Canisius, and as my chair, I want you to know that
15:24:27 16   Dr. Noonan said this."
15:24:28 17             And then I had a second conversation with
15:24:30 18   him probably two or three weeks later that he --
15:24:38 19   that is, Dr. Boger -- instigated, and Dr. Boger
15:24:44 20   contacted me in my office.  He came to my office
15:24:50 21   and said could he shut the door, which was odd,
15:24:53 22   because we have an open-door policy in our
15:24:55 23   department.  We talk, and all of us keep our office
```

16:25:02  1  **Q.** Did you ever ask Dr. Noonan why you're
16:25:07  2  no longer being -- being given notice about the
16:25:09  3  meetings?
16:25:09  4  **A.** I did not.
16:25:10  5  **Q.** Okay. In terms of Dr. Noonan -- and
16:25:25  6  again, I'm going to try to shorten this.
16:25:29  7  So my understanding is that your conclusion
16:25:32  8  is that Dr. Noonan was a bully based on your
16:25:35  9  observing his behavior over the years.
16:25:36 10  **A.** Yes.
16:25:37 11  **MS. NANAU:** Objection to form.
16:25:37 12  **BY MR. D'ANTONIO:**
16:25:39 13  **Q.** And I think you said he was a bully to
16:25:42 14  both men and women.
16:25:43 15  **A.** Yes.
16:25:43 16  **Q.** Okay. I know that you concluded that
16:25:48 17  there were two incidents of which you were aware
16:25:53 18  where his reaction seemed stronger than other times
16:25:58 19  you had observed him in bullying behavior.
16:26:01 20  That is, when you were in his office --
16:26:03 21  **A.** Yes.
16:26:03 22  **Q.** -- and then the incident with Sister
16:26:05 23  Pat?

82

1  STATE OF NEW YORK )
2                    ss:
3  COUNTY OF ERIE    )
4
5       I DO HEREBY CERTIFY as a Notary Public in and
6  for the State of New York, that I did attend and
7  report the foregoing deposition, which was taken
8  down by me in a verbatim manner by means of machine
9  shorthand.  Further, that the deposition was then
10 reduced to writing in my presence and under my
11 direction.  That the deposition was taken to be
12 used in the foregoing entitled action.  That the
13 said deponent, before examination, was duly sworn
14 to testify to the truth, the whole truth and
15 nothing but the truth, relative to said action.
16
17
18
19                      LORI K. BECK,
                        CSR, CM,
20                      Notary Public.
21
22
23