**Plaintiffs' Exhibit G**

**LINDA WALLESHAUSER**

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

----------------------------------------
SIERRA BOUCHER, LILY ENGEBRECHT,
NATASSIA TUHOVAK, HANNAH WHELAN, and
CASSIDY WOOD,

                    Plaintiffs,

      - against -    Case No.
                    1:22-cv-00381-CCR

TRUSTEES OF CANISIUS COLLEGE,

                    Defendant.
----------------------------------------


        Examination before trial of **LINDA WALLESHAUSER**, taken pursuant to the Federal Rules of Civil Procedure, in the offices of JACK W. HUNT & ASSOCIATES, INC., 1120 Liberty Building, Buffalo, New York, on September 27, 2024, commencing at 1:52 p.m., before LORI K. BECK, CSR, CM, Notary Public.

14:05:55  1  resources complaints and investigations, if any,

14:05:57  2  correct?

14:05:58  3       **A.**   Correct.

14:06:00  4       **Q.**   Okay.  Did you learn about complaints

14:06:09  5  regarding Dr. Noonan prior to the spring of 2019?

14:06:16  6       **A.**   No.

14:06:18  7       **Q.**   When is the first time that you became

14:06:21  8  aware of a complaint regarding Dr. Noonan's

14:06:25  9  conduct?

14:06:25  10      **A.**   At the end of January of 2019.

14:06:29  11      **Q.**   And who made you aware of that?

14:06:31  12      **A.**   Dr. Sue Margulis and Dr. Liz Hogan.

14:06:42  13  Elizabeth Hogan, excuse me.

14:06:44  14      **Q.**   And did Dr. Hogan and Dr. Margulis --

14:06:47  15  did they make you aware of complaints regarding

14:06:49  16  Dr. Noonan's conduct at the same time, or how did

14:06:51  17  it happen?

14:06:52  18      **A.**   Dr. Margulis met with me first, and

14:06:57  19  then Dr. Hogan met with me separately afterwards.

14:07:01  20      **Q.**   Okay.  And what prompted Dr. Margulis

14:07:04  21  to come to you in January of 2019?

14:07:07  22      **MR. D'ANTONIO:**   Objection to form.  Are you

14:07:08  23  asking what's -- what prompted her to come?

14:07:12 1        **MS. NANAU:**  Yes.

14:07:12 2        **BY MS. NANAU:**

14:07:12 3        **Q.**   What was the substance of the

14:07:14 4   complaint --

14:07:14 5        **MR. D'ANTONIO:**  That's different.

14:07:15 6        **BY MS. NANAU:**

14:07:16 7        **Q.**   -- that Dr. Margulis related to you in

14:07:18 8   January of 2019?

14:07:20 9        **A.**   She advised me that several students

14:07:24 10  had come forth to speak with her regarding concerns

14:07:28 11  about Dr. Noonan's behaviors, most recently at that

14:07:34 12  time on the trip to India that the students were

14:07:38 13  involved in.

14:07:40 14       **Q.**   Okay.

15       **The following was marked for Identification:**

16         **PLF. EXH. 79          Investigation Summary, Bates**

17                              **numbers CANISIUS 000487**

18                              **through CANISIUS 000490**

14:09:22 19

14:09:22 20       **BY MS. NANAU:**

14:09:24 21       **Q.**   So I show you what's been marked as

14:09:26 22  Plaintiffs' 79.  It is a multi-page document

14:09:30 23  produced by the Defendant, and the Bates stamp

14:09:34  1  range is CANISIUS 487 to 490.

14:09:38  2    Ms. Walleshauser, do you recognize this

14:09:41  3  document?

14:09:41  4    **A.** I do.

14:09:42  5    **Q.** Is this a document that you developed?

14:09:45  6    **A.** Yes.

14:09:45  7    **Q.** Okay.  Did you develop it with anyone's

14:09:48  8  assistance?

14:09:51  9    **MR. D'ANTONIO:**  You mean actual drafting as

14:09:53 10  opposed to the information being provided?

14:09:56 11    **MS. NANAU:**  Exactly.

14:09:56 12    **BY MS. NANAU:**

14:09:57 13    **Q.** In the actual drafting.

14:09:58 14    **A.** In the drafting, no.

14:09:59 15    **Q.** Okay.  And with regard to the

14:10:03 16  information provided by other sources, is that

14:10:08 17  confined to the last page?

14:10:11 18    **A.** Yes.

14:10:12 19    **Q.** Okay.  So is it fair to say that the

14:10:19 20  last page is an investigation timeline with regard

14:10:23 21  to complaints raised about Dr. Noonan's misconduct

14:10:27 22  during the spring of 2019?

14:10:30 23    **A.** Yes.

14:10:31 1          **Q.**    Okay.  So it looks like the first point

14:10:37 2   in this timeline is January 28th, 2019, and what's

14:10:43 3   memorialized is a meeting with Dr. Sue Margulis,

14:10:48 4   and then it says, slash:  General student concerns.

14:10:51 5          Did I read that correctly?

14:10:53 6          **A.**    Yes.

14:10:53 7          **Q.**    Okay.  And do you -- you related to me

14:10:57 8   that Dr. Margulis came to you to share concerns

14:11:02 9   that students had raised about Dr. Noonan.

14:11:11 10         The context of some of those concerns was

14:11:13 11  the trip to India in December and January '19 --

14:11:17 12  I'm sorry, December and January -- December 2018 to

14:11:22 13  January 2019, correct?

14:11:23 14         **A.**    Correct, yes.

14:11:24 15         **Q.**    And were you -- were you aware of when

14:11:27 16  other students raised complaints with Dr. Margulis

14:11:31 17  regarding Dr. Noonan's conduct?

14:11:36 18         **A.**    Can you repeat that, please.

14:11:37 19         **Q.**    Sure.  Were you aware of when other

14:11:41 20  students other than the Project Tiger students who

14:11:44 21  went on the India trip -- when they raised their

14:11:47 22  complaints to Dr. Margulis?

14:11:50 23         **MR. D'ANTONIO:**  Objection to form.  You may

14:50:39 1 complaints regarding issues with Dr. Mike Noonan?

14:50:44 2 If so, can we schedule a brief call at your

14:50:48 3 convenience?

14:50:48 4      Did I read that correctly?

14:50:50 5      **A.**   Yes.

14:50:50 6      **Q.**   So why did you send this email to

14:50:53 7 Dr. Mangione if she had a method of memorializing

14:51:00 8 all of the complaints that were raised with her?

14:51:03 9      **A.**   I felt it was important to get a verbal

14:51:06 10 confirmation from her, and I knew her very well and

14:51:11 11 felt it was appropriate to -- to reach out.

14:51:15 12      I -- even though I had checked her records

14:51:17 13 and did not find anything, I felt it was important

14:51:21 14 to talk with her.

14:51:22 15      **Q.**   You knew Dr. Mangione very well because

14:51:26 16 she was the Title 9 coordinator at Canisius during

14:51:29 17 the time that you worked there, correct?

14:51:31 18      **A.**   She was also the vice-president for

14:51:33 19 student affairs, and I worked with her on the

14:51:38 20 leadership team, so I had a very close working

14:51:44 21 relationship with her in that capacity as well.

14:51:46 22      **Q.**   Got it.  So she -- Dr. Mangione wrote

14:51:54 23 you back, correct?

14:51:55  1      **A.**   Yes.

14:51:56  2      **Q.**   And the email is on the first page,

14:51:59  3  correct?

14:51:59  4      **A.**   Yes.

14:52:00  5      **Q.**   And she writes:  I do not -- in the

14:52:04  6  second -- or third sentence:

14:52:07  7      I do not recall receiving any Title 9

14:52:09  8  related complaints involving Dr. Mike Noonan.  I

14:52:13  9  recall that in her lawsuit against Canisius, and

14:52:17 10  then there is a name that's redacted, made

14:52:20 11  accusations -- I think it should be that Dr. Noonan

14:52:24 12  inappropriately touched another student, but that

14:52:28 13  alleged student never filed a complaint with me,

14:52:32 14  and I checked with Dr. Ellen Conley, who was the

14:52:37 15  Title 9 coordinator until June 2013, and she did

14:52:42 16  not recall a complaint being filed against

14:52:44 17  Dr. Noonan.

14:52:45 18      Did I read that correctly?

14:52:46 19      **A.**   Yes.

14:52:50 20      **Q.**   The lawsuit against Canisius that is

14:52:53 21  referenced here, was that a lawsuit brought by

14:52:57 22  Morgan Dunbar?

14:52:59 23      **A.**   From my understanding, yes.

14:53:10  1          **Q.**   And then Dr. Mangione wrote that she

14:53:20  2    checked with Dr. Ellen Conley, who was the Title 9

14:53:25  3    coordinator until June 2013.

14:53:27  4          I guess I'm wondering:  Did you understand

14:53:30  5    Dr. Mangione to state that she had, in 2019,

14:53:35  6    checked with Dr. Conley about whether a Title 9

14:53:40  7    complaint had been filed by a student against

14:53:43  8    Dr. Noonan or that in 2013 she had checked with

14:53:49  9    Dr. Conley about a Title 9 complaint regarding

14:53:53 10    Dr. Noonan?

14:53:54 11          **MR. D'ANTONIO:**  Objection to form.  You've

14:53:56 12    got the document.  Are you asking what she

14:53:59 13    understands?

14:54:00 14          **MS. NANAU:**  I'm asking what she understood

14:54:03 15    the email from Dr. Mangione to mean.

14:54:05 16          **THE WITNESS:**  I was understanding that she

14:54:07 17    had checked with Dr. Conley recent -- at that time

14:54:11 18    to confirm.

14:54:11 19          **BY MS. NANAU:**

14:54:12 20          **Q.**   In 2019?

14:54:14 21          **A.**   Yes.  That was my understanding.

14:54:15 22          **Q.**   Okay.  Do you know if the Canisius

14:54:25 23    Title 9 policy in 2013 required mandatory reporters

15:12:39  1          **A.**    Oh, I'm sorry.  Yes, that's correct.

15:12:42  2          **Q.**    Okay.  So I'm particularly interested

15:12:45  3    in asking you about a bias report that starts on

15:12:50  4    1749 and 1750, so it's, yeah, these little

15:12:55  5    right-hand numbers.

15:12:57  6          **MR. D'ANTONIO:**  Yeah, but we don't have them

15:12:59  7    on this.

15:13:00  8              (Off the record: 3:13 p.m.)

15:14:55  9              (On the record: 3:14 p.m.)

15:14:56 10          **THE WITNESS:**  Okay.

15:14:57 11          **BY MS. NANAU:**

15:14:57 12          **Q.**    So what is this two-page document,

15:15:01 13    Ms. Walleshauser?

15:15:02 14          **A.**    This is the -- an actual bias report

15:15:05 15    form that was received.

15:15:08 16          **Q.**    And is the date of receipt

15:15:12 17    February 12th, 2019?

15:15:15 18          **A.**    Yes.

15:15:17 19          **Q.**    And this is an anonymous complaint,

15:15:23 20    correct?

15:15:23 21          **A.**    That's right.

15:15:24 22          **Q.**    And do you know if the -- if Canisius

15:15:29 23    received this complaint prior to February 12th,

15:15:32  1   2019?

15:15:34  2          **A.**   This is date stamped and received on

15:15:37  3   February 12th --

15:15:38  4          **Q.**   Okay.

15:15:38  5          **A.**   -- through the system, the Qualtrics

15:15:43  6   system.

15:15:49  7          **Q.**   What is Qualtrics?

15:15:50  8          **A.**   It's a reporting tool.  It's a software

15:15:54  9   that's -- that was used.

15:15:56 10          **Q.**   When did Canisius implement this

15:16:00 11   Qualtrics system, do you know?

15:16:02 12          **A.**   I don't know.

15:16:07 13          **Q.**   Okay.  Are you aware that students are

15:16:09 14   permitted to submit comments to Canisius regarding

15:16:15 15   the classes that they've taken at the end of a

15:16:18 16   semester?

15:16:19 17          **A.**   Yes.

15:16:21 18          **Q.**   In your capacity as the interim

15:16:25 19   Title -- Title 9 coordinator for faculty and staff,

15:16:28 20   did you review student comments of the classes that

15:16:34 21   they took at Canisius?

15:16:37 22          **A.**   For all faculty?

15:16:41 23          **Q.**   Yes.

15:16:42 1      **A.**    No.

15:16:42 2      **Q.**    Did you review the student comments?

15:16:44 3      **A.**    No, this -- the -- those comments were

15:16:48 4  not available to me to review.

15:16:52 5      **Q.**    Who -- who gets the student comments at

15:16:55 6  the end of a semester?

15:16:57 7      **A.**    To my understanding, the department

15:16:59 8  chairs receive them.

15:17:04 9      **Q.**    If a department chair receives a

15:17:07 10 comment that makes claims regarding alleged sexual

15:17:17 11 misconduct by a faculty member, are they required

15:17:20 12 to report that comment to the Title 9 coordinator?

15:17:25 13     **A.**    In that situation, yes.

15:17:27 14     **Q.**    Okay.

15  **The following was marked for Identification:**

16   **PLF. EXH. 83        Course Evaluations|**

17                         **Anthology, Bates numbers**

18                         **Canisius06933 through**

19                         **Canisius06940**

15:18:25 20

15:18:25 21     **BY MS. NANAU:**

15:18:25 22     **Q.**    So I'm going to direct your attention

15:18:29 23 in Plaintiffs' 83, which is a document with the

15:18:34 1  Bates-stamp range 6933 to 6940.

15:18:43 2          I'm going to direct your attention to the

15:18:45 3  second to last page.

15:18:53 4          **A.**   Okay.

15:18:56 5          **Q.**   And it's the last point on this page

15:19:02 6  starting with:  Dr. Noonan is not the kind of man I

15:19:06 7  want to be spending my money on to be teaching me.

15:19:09 8          Do you see that?

15:19:10 9          **A.**   I do.

15:19:12 10         **Q.**   And do you see that this February 12th,

15:19:17 11 2019, has -- this bias report form has the exact

15:19:26 12 same first sentence?

15:19:27 13         **A.**   Yes.

15:19:29 14         **Q.**   And would you agree with me that the

15:19:34 15 bias report form from February 12th, 2019, is

15:19:40 16 verbatim what appears on 6939?

15:19:44 17         **A.**   Yes.

15:19:45 18         **Q.**   Okay.  And these comments -- or the

15:19:52 19 comments that are in Plaintiffs' 83 are from a

15:19:57 20 summary report of student comments relating to

15:20:03 21 Dr. Noonan from the fall of 2018, correct?

15:20:07 22         **MR. D'ANTONIO:**  The course was in the fall

15:20:08 23 of 2018.  The document isn't dated.

15:20:17  1          **MS. NANAU:**  Well, that -- that's true that

15:20:18  2  there is no perceived date that I can see.

15:20:18  3          **BY MS. NANAU:**

15:20:22  4          **Q.**    I guess my question is,

15:20:26  5  Ms. Walleshauser:  Do you -- are you aware of when

15:20:27  6  students are permitted to provide feedback on

15:20:33  7  faculty performance?

15:20:34  8          Is it immediately at the conclusion of a

15:20:37  9  class?

15:20:38 10          **A.**    I'm -- I'm not aware of the schedule.

15:20:40 11          **Q.**    Okay.

15:20:42 12          **A.**    That's an academic responsibility.

15:20:46 13          **Q.**    Were you aware of this -- that there

15:20:48 14  had been a -- that the same comments reflected in

15:20:53 15  the bias report from February 12th, 2019, had also

15:20:58 16  appeared in comments submitted to Canisius

15:21:02 17  regarding Dr. Noonan's performance as a professor

15:21:07 18  in sex evolution and behavior in the fall of 2018?

15:21:11 19          **A.**    I was not aware.

15:21:19 20          **Q.**    Okay.  Did there ever come a time

15:21:20 21  during your investigation in 2019 where the student

15:21:24 22  who provided this bias report form from

15:21:28 23  February 12th, 2019 -- that the identity of that

15:28:03  1  I think some --

15:28:11  2      **THE WITNESS:**  This -- this is the summary of

15:28:15  3  the first meeting with Dr. Noonan and a summary of

15:28:19  4  his responses on that particular day.

15:28:21  5      This is not the entire investigation

15:28:24  6  summary.

15:28:24  7      **BY MS. NANAU:**

15:28:24  8      **Q.**  Okay.

15:28:25  9      **A.**  Yes.  Yes.

15:28:27  10     **Q.**  So this document is a summary of the

15:28:37  11  meeting that you had with Dr. McCarthy and

15:28:39  12  Dr. Noonan on February 21st, 2019, correct?

15:28:43  13     **A.**  Yes.

15:28:45  14     **Q.**  And at that meeting, you told

15:28:48  15  Dr. Noonan that your role was as an investigator

15:28:53  16  and fact finder, correct?

15:28:54  17     **A.**  Yes.

15:28:55  18     **Q.**  And you informed him that Canisius had

15:28:59  19  received several complaints regarding his

15:29:02  20  interactions with students and that is why you were

15:29:05  21  meeting there today, correct?

15:29:08  22     **A.**  Correct.

15:29:09  23     **Q.**  And during the course of the meeting,

15:29:12  1  you afforded him with detail regarding the

15:29:16  2  allegations of misconduct that had been attributed

15:29:20  3  to him by the students who came forward in

15:29:23  4  January and February of 2019, correct?

15:29:25  5      **A.**   Correct.

15:29:25  6      **Q.**   And you also provided him with an

15:29:28  7  opportunity to respond to the allegations, correct?

15:29:31  8      **A.**   Yes.

15:29:32  9      **Q.**   And his response is memorialized in

15:29:35  10  Plaintiffs' 74?

15:29:37  11      **A.**   Yes.

15:29:39  12      **Q.**   When you were in the meeting with

15:29:41  13  Dr. Noonan and Dr. McCarthy, how did you

15:29:47  14  memorialize Dr. Noonan's responses?

15:29:49  15      **A.**   I was taking notes throughout the

15:29:51  16  entire meeting on my computer.

15:29:54  17      **Q.**   Okay.  So you were typewriting --

15:29:56  18      **A.**   Correct.

15:29:57  19      **Q.**   -- responses?

15:29:58  20      **A.**   Yes.

15:29:58  21      **Q.**   Okay.  And was there a draft of this

15:30:02  22  document when you walked out of the meeting on

15:30:07  23  February 21st, 2019?

15:34:24  1          **A.**    Correct.

15:34:25  2          **Q.**    Okay.  At -- at the end of the

15:34:40  3    February 21st, 2019 meeting, Dr. Noonan was

15:34:43  4    informed that he was going to be put on paid leave,

15:34:45  5    correct?

15:34:46  6          **A.**    Yes.

15:34:47  7          **Q.**    Okay.  And --

15:34:51  8          **MR. D'ANTONIO:**  Are you finished with that

15:34:52  9    document?

15:34:53  10          **MS. NANAU:**  I am.

15:34:53  11          **MR. D'ANTONIO:**  Okay.

15:34:53  12          **BY MS. NANAU:**

15:34:54  13          **Q.**    And after February 21st, 2019, when you

15:35:00  14    met with Dr. Noonan, is it true that you met with

15:35:03  15    him outside of the Canisius campus?

15:35:06  16          **MR. D'ANTONIO:**  Objection to form.  May I

15:35:08  17    have that back?

15:35:11  18          **MS. NANAU:**  Let me strike that question.

15:35:13  19          **BY MS. NANAU:**

15:35:13  20          **Q.**    When you met with Dr. Noonan after

15:35:15  21    February 21st, 2019, you did not meet with him on

15:35:19  22    Canisius's campus, correct?

15:35:21  23          **MR. D'ANTONIO:**  This is meetings after the

15:35:22  1  February 21st.

15:35:23  2          **MS. NANAU:**  Yes.

15:35:24  3          **MR. D'ANTONIO:**  I'm sorry.

15:35:25  4          **MS. NANAU:**  Yes, that's what I said.

15:35:26  5          **THE WITNESS:**  No, meetings with Dr. Noonan

15:35:27  6  were all on the Canisius campus.

15:35:31  7          **BY MS. NANAU:**

15:35:31  8          **Q.**  Okay.  So even after --

15:35:31  9          **A.**  Yes.

15:35:34 10          **Q.**  -- February 21st.

15:35:35 11          **A.**  Yes.

15:35:37 12          **Q.**  Did they all take place in the same

15:35:39 13  place?

15:35:40 14          **A.**  Yes.

15:35:41 15          **Q.**  And where was that?

15:35:42 16          **A.**  The president's boardroom at Canisius.

15:35:46 17          **Q.**  Is that like a conference room?

15:35:48 18          **A.**  Yes.

15:35:50 19          **Q.**  Okay.  Then the next entry on your

15:35:55 20  investigation timeline is Monday, February 25th,

15:36:01 21  2019:  Faculty statement provided, Dr. Christy

15:36:05 22  Hoffman, additional email statement provided on

15:36:09 23  2/27/19.

15:36:11  1          Did I read that correctly?

15:36:13  2          **A.**    Yes.

15:36:13  3          **Q.**    And then you have entries on Tuesday,

15:36:17  4   2/26/19 reflecting a faculty statement provided by

15:36:22  5   Dr. Suchak and Thursday, 2/28/19, a faculty

15:36:30  6   statement provided by Dr. Russell, correct?

15:36:33  7          **A.**    Correct.

15:36:35  8          **Q.**    And you provided information regarding

15:36:41  9   these faculty statements to Dr. McCarthy as well,

15:36:44 10   correct?

15:36:44 11          **A.**    Correct.

15:36:46 12          **Q.**    Did you rely on Dr. McCarthy to convey

15:36:49 13   the information in your reports to President

15:36:52 14   Hurley?

15:36:56 15          **A.**    I provided President Hurley the

15:36:59 16   investigation summary, the full investigation

15:37:03 17   summary.

15:37:05 18          **Q.**    Okay.  And the full investigation

15:37:07 19   summary, is that comprised of documents that we've

15:37:13 20   already reviewed?

15:37:14 21          **A.**    Yes.

15:37:15 22          **Q.**    And what are the documents that we've

15:37:17 23   reviewed that was your investigation summary?

15:37:19  1          **A.**    The initial investigation summary from

15:37:22  2    2/21.

15:37:23  3          **Q.**    So Plaintiffs' 74.

15:37:25  4          **A.**    Yes, and there is another summary from

15:37:30  5    the follow-up meeting with Dr. Noonan on March 13th

15:37:34  6    that included the faculty -- the faculty statements

15:37:38  7    as well.

15:37:41  8          **Q.**    Okay.

15:37:42  9          **A.**    That was included.  This was not the

15:37:45 10    full investigation summary.

15:37:46 11          **MR. D'ANTONIO:**  Plaintiffs' 74 was not the

15:37:48 12    full investigation summary.

15:37:50 13          **THE WITNESS:**  No.  No, there was another

15:37:52 14    document, and it would have included some of the --

15:38:04 15    the exact same process with -- where --

15:38:07 16          **MR. D'ANTONIO:**  Summarizing his answers.

15:38:08 17          **THE WITNESS:**  Summarizing his answers, yes,

15:38:10 18    correct.

15:38:11 19          **BY MS. NANAU:**

15:38:11 20          **Q.**    Got it.

15:38:12 21          **A.**    Yes.

15:38:12 22          **Q.**    While we're on the subject, I thought I

15:38:38 23    would bring out these additional documents.

16:14:39 1      **A.**    Yes.

16:14:40 2      **Q.**    Is that when your direct contact with

16:14:43 3 Dr. Noonan stopped?

16:14:43 4      **A.**    Correct.

16:14:44 5      **Q.**    Okay.  And then the last point is

16:14:49 6 Wednesday, 3/20/2019, statement obtained via phone

16:14:54 7 from, and then there's a blank -- or it's blacked

16:14:58 8 out.  Do you see that?

16:14:59 9      **A.**    Yes.

16:14:59 10      **Q.**    Who is that individual?

16:15:02 11      **A.**    I believe it was ▨▨▨▨▨▨

16:15:10 12      **Q.**    And did ▨▨▨▨▨▨ provide you with a

16:15:16 13 statement in writing, or was it a verbal statement

16:15:19 14 over the telephone?

16:15:20 15      **A.**    It was a verbal statement over the

16:15:22 16 telephone.

16:15:22 17      **Q.**    And was that memorialized in any of the

16:15:24 18 documents that we've discussed today?

16:15:28 19      **A.**    I believe so.  It is in the

16:15:36 20 investigation summary.  I believe it's in the

16:15:38 21 master summary.

16:15:40 22      **Q.**    And so the master summary would be

16:15:44 23 Plaintiffs' 74?  I think we agreed the master

16:15:49  1  summary was 74 and 85 combined, right?

16:15:53  2      **A.**    They're -- they're -- does that first

16:15:57  3  statement include all of the statements from the

16:16:02  4  students that -- because what you have is not the

16:16:06  5  full comprehensive.

16:16:07  6      There was one comprehensive document that

16:16:10  7  included both of those pieces but also all of my

16:16:14  8  summary notes from the meetings with each student.

16:16:20  9      **Q.**  Such --

16:16:20 10      **A.**  So you --

16:16:21 11      **Q.**  How about -- can I refer to you

16:16:23 12  Plaintiffs' 73.

16:16:26 13      **MR. D'ANTONIO:**  If we can find it.

16:16:32 14      **THE WITNESS:**  That's why I keep referring to

16:16:34 15  this master document.

16:16:34 16      **MS. NANAU:**  Sure.

16:16:35 17      **THE WITNESS:**  That's what my -- my master --

16:16:38 18  my whole summary was in one large -- large summary.

16:16:43 19          (Off the record: 4:16 p.m.)

16:17:03 20          (On the record: 4:17 p.m.)

16:17:04 21      **MR. D'ANTONIO:**  All right.  I've handed her

16:17:06 22  Exhibit 73.

16:17:11 23      **MS. NANAU:**  Thank you.

16:18:14  1      **THE WITNESS:**  These are all the individual

16:18:18  2  notes, but in the -- there is one final summary of

16:18:23  3  everything that also had an additional note, I

16:18:29  4  believe, from ████ and it says verbal statement

16:18:33  5  provided --

16:18:37  6      **BY MS. NANAU:**

16:18:37  7      **Q.**  Okay.

16:18:38  8      **A.**  -- by ████, and I -- if I'm

16:18:44  9  remembering that name correctly.

16:18:45  10     **MR. D'ANTONIO:**  It is -- no, that's --

16:18:47  11  you're correct.  I mean, there is an ████

16:18:51  12  that's involved.

16:18:52  13     **THE WITNESS:**  Yes.

16:18:52  14     **BY MS. NANAU:**

16:18:53  15     **Q.**  Well, Ms. Walleshauser, I will

16:18:56  16  definitely look out for that.  I don't -- sitting

16:18:59  17  here right now looking at my Exhibits that I've

16:19:02  18  prepared to question you about, I don't think I

16:19:05  19  have that.

16:19:05  20     But now that you've advised me that there

16:19:12  21  was a phone call between you and ████ do

16:19:15  22  you -- do you remember if you had handwritten notes

16:19:20  23  or typed notes regarding the call that you had with

16:19:25  1  Ms. Bagen?

16:19:27  2          **A.**   I -- I am not certain.

16:19:28  3          **Q.**   Okay.  During your initial meeting with

16:19:38  4  the students who came forward in January and

16:19:41  5  February of 2019, the students raised various

16:19:47  6  concerns they had about how their academic -- how

16:19:59  7  their -- I guess their educational experience at

16:20:03  8  Canisius would be affected by their complaints

16:20:07  9  about Dr. Noonan, correct?

16:20:09 10          **MR. D'ANTONIO:**  Objection to form.

16:20:14 11          **THE WITNESS:**  They expressed concerns to me

16:20:19 12  about how them coming forward would impact their

16:20:22 13  academics?

16:20:22 14          **BY MS. NANAU:**

16:20:23 15          **Q.**   Yes.

16:20:24 16          **A.**   Yes.

16:20:24 17          **Q.**   Okay.

         18  **The following was marked for Identification:**

         19   **PLF. EXH. 86**          **Dr. Noonan-Next**

         20                            **Steps-2-14-19, Bates number**

         21                            **CANISIUS 000349**

16:21:06 22

16:21:06 23          **THE WITNESS:**  Okay.

16:21:07  1          **BY MS. NANAU:**

16:21:07  2          **Q.**   So I show you what's been marked as

16:21:09  3   Plaintiffs' 86.  It's a one-page document, and the

16:21:12  4   Bates stamp is CANISIUS 349.

16:21:15  5          This is a typewritten document.  Are these

16:21:16  6   your notes?

16:21:17  7          **A.**   Yes.

16:21:17  8          **Q.**   Okay.  So the top of the document says

16:21:21  9   Dr. Noonan Next Steps 2/14/2019 -- or 2/14/19,

16:21:27 10   correct?

16:21:28 11          **A.**   Correct.

16:21:28 12          **Q.**   And the first point is:

16:21:30 13          Address academic backup plan for all area

16:21:34 14   class, research team, work-study students, and

16:21:40 15   Project Tiger.

16:21:41 16          Did I read that correctly?

16:21:42 17          **A.**   Yes.

16:21:47 18          **Q.**   Were these next steps that you would

16:21:52 19   address, or were these next steps that Canisius as

16:21:55 20   a whole had to address?

16:21:57 21          **A.**   Canisius as a whole --

16:21:58 22          **Q.**   Okay.

16:21:58 23          **A.**   -- had to address.

16:22:00 1      **Q.**   So with regard to addressing a backup

16:22:05 2  plan for all area class, research team, work-study

16:22:10 3  students, and Project Tiger, who was ultimately

16:22:12 4  responsible for that?

16:22:13 5      **A.**   That would have been Dr. Sue Margulis,

16:22:23 6  Dr. Liz Hogan, and Dr. Peter Schaber, who was the

16:22:28 7  dean, and all of this would have been reviewed and

16:22:32 8  discussed under the advisement of the

16:22:34 9  vice-president, Dr. Margaret McCarthy.

16:22:38 10     **Q.**   The second point is IT backup plan,

16:22:45 11 correct?

16:22:46 12     **A.**   Yes.

16:22:47 13     **Q.**   So there was a concern raised by the

16:22:50 14 students regarding information they had on

16:22:53 15 computers that were in Dr. Noonan's area in the

16:22:57 16 ABEC department, correct?

16:22:57 17     **A.**   Yes.

16:23:00 18     **Q.**   And to your knowledge, those computers

16:23:02 19 were backed up, correct?

16:23:04 20     **A.**   Correct.

16:23:04 21     **Q.**   And that -- those backups included the

16:23:07 22 Project Tiger footage, correct?

16:23:09 23     **A.**   Correct.

16:23:09  1         **Q.**   Okay.  And the third point is -- on

16:23:15  2    your list is film footage from Project India; is

16:23:21  3    that correct?

16:23:22  4         **A.**   Yes.

16:23:22  5         **Q.**   The students, when they came forward to

16:23:24  6    discuss their concerns about Dr. Noonan's

16:23:25  7    misconduct with you, they had concerns about

16:23:28  8    whether or not they would be able to complete

16:23:31  9    their -- their Project Tiger documentary, correct?

16:23:34 10         **A.**   Yes.

16:23:38 11         **Q.**   And the end result was that during the

16:23:43 12    spring 2019 semester, they were not afforded the

16:23:47 13    film footage, correct?

16:23:49 14         **MR. D'ANTONIO:**  Objection, form.

16:23:52 15         **THE WITNESS:**  I'm not certain that's

16:23:54 16    correct.  They were working very closely with

16:24:00 17    Dr. Margulis and Dr. Hogan to identify the best way

16:24:05 18    to proceed to complete the semester and all of

16:24:09 19    these individual requirements and things they were

16:24:12 20    concerned about.

16:24:13 21         **BY MS. NANAU:**

16:24:14 22         **Q.**   Were you -- were you involved in those

16:24:15 23    discussions?

16:24:16  1          **A.**    I was not.

16:24:16  2          **Q.**    Okay.  So you don't know one way or the

16:24:18  3   other if they made the Project Tiger documentary

16:24:28  4   during the spring of 2019, correct?

16:24:31  5          **A.**    Correct, I'm not certain.

16:24:33  6          **Q.**    Okay.  So the fourth point here is:

16:24:39  7          Clarify document signed when students travel

16:24:43  8   to India, medical authority.

16:24:46  9          Did I read that correctly?

16:24:47  10         **A.**    Yes.

16:24:48  11         **Q.**    What does that mean?

16:24:49  12         **A.**    So from my understanding, there was a

16:24:50  13   release form that -- that the students were

16:24:55  14   required to sign when taking a trip with -- with

16:25:02  15   Dr. Noonan on these research trips.

16:25:05  16         **Q.**    Did you ever locate that medical

16:25:08  17   release form?  Do you know if it existed?

16:25:13  18         **A.**    I don't believe I located that form.

16:25:15  19         **Q.**    So you don't know whether or not it

16:25:17  20   existed --

16:25:18  21         **A.**    No.

16:25:19  22         **Q.**    -- right?  Then the next point is:

16:25:22  23         Clarify if any male students participate in

16:41:19 1          We were following the investigation

16:41:20 2   protocols that were outlined in the antiharassment

16:41:24 3   and discrimination policy, in conjunction with the

16:41:27 4   New York State sexual harassment prevention policy,

16:41:30 5   not the protocols that were outlined in the sexual

16:41:33 6   and gender misconduct policy.

16:41:36 7          **Q.**   Okay.  But I guess more specifically

16:41:43 8   what I'm interested in is:

16:41:47 9          What specific accommodations did you tell

16:41:50 10  the students who came forward in January or

16:41:55 11  February of 2019 regarding Noonan's misconduct

16:41:58 12  could be available to them?

16:41:59 13          Was that a discussion that was had?

16:42:01 14          **A.**   Can you clarify what you mean by

16:42:03 15  accommodations?

16:42:03 16          **Q.**   Sure.  Any kind of support that they

16:42:07 17  could request that Canisius afford them in the wake

16:42:10 18  of coming forward with a complaint.

16:42:13 19          **A.**   So I was aware that they were provided

16:42:16 20  policies through a campus-wide communication when

16:42:21 21  Connie and I were appointed to our interim roles

16:42:27 22  from the office of the president.

16:42:28 23          I was also aware that all of those policies

16:42:30 1 were available to them on their student portal and

16:42:35 2 the Canisius web.

16:42:35 3     I was also aware that our student -- our

16:42:38 4 student counseling center had communicated it with

16:42:42 5 the campus community about resources available.

16:42:44 6     I asked them through every meeting and email

16:42:47 7 if they needed anything, to ask, and that we as --

16:42:53 8 as the college were -- were here to support them.

16:42:57 9     **Q.**  My question is a little different.

16:43:00 10     Did you ever tell the students who came

16:43:03 11 forward in January and February of 2019 that they

16:43:07 12 could request Canisius's support in the form of

16:43:12 13 specific accommodations and provide them examples

16:43:14 14 of what those accommodations could be?

16:43:17 15     **A.**  I gave them general information and

16:43:20 16 said if they needed any support, to -- to advise

16:43:24 17 us.

16:43:25 18     **Q.**  Okay.  And so by providing the students

16:43:29 19 with general information, you pointed them to the

16:43:31 20 policies that you've already articulated, correct?

16:43:35 21     **A.**  Yes.

16:43:35 22     **Q.**  Okay.  But my understanding is you

16:43:38 23 didn't specifically discuss specific accommodations