**Plaintiffs' Exhibit Z**

## SEPARATION AGREEMENT, CONFIDENTIALITY AGREEMENT AND RELEASE

**THIS SEPARATION AGREEMENT, CONFIDENTIALITY AGREEMENT AND RELEASE** ("the Agreement") is entered into this ___31___ day of __May__, 2019 by and between Michael Noonan, Ph.D. ("Dr. Noonan") and Canisius College of Buffalo ("Canisius" or the "College"), and is to become effective as of the Effective Date as specified in Paragraph 19.0, below. Dr. Noonan and the College shall be referenced, collectively, as the "Parties."

### RECITALS

A. Dr. Noonan is a tenured faculty member and a Professor at Canisius.

B. Earlier this academic year, the College received reports alleging that Dr. Noonan previously had violated certain behavioral expectations and Canisius Community Standards, including expectations and standards governing sexual harassment. Collectively, these reports are referenced as the "Complaints." Among the parties reporting the Complaints were several Canisius students and fellow faculty members.

C. Dr. Noonan, for his part, has denied that he had engaged in any act constituting sexual harassment, or any act that he believed was inappropriate at the time of its commission. He continues to deny any act of wrongdoing of any sort.

D. Dr. Noonan was placed on paid leave by Canisius during the time the resulting review of these Complaints by the College (the "Investigation") was undertaken, and he has remained on leave through the date of this Agreement.

E. After all interviews with the student and faculty complainants participating in the Investigation had concluded, but before any findings had been shared with the parties or communicated, and before a determination with respect to the next step to be taken in the process, if any, had been made, Dr. Noonan and the College agreed that he would voluntarily retire from his employment at Canisius, and resign all positions held at Canisius.

F. The Parties wish to avoid a continuation of this dispute, and wish to resolve their differences in the manner discussed below.

### AGREEMENT

The Parties therefore agree as follows:

**1.0  Retirement and Resignation**

Dr. Noonan will retire from the College, effective June 1, 2019, and will resign from all positions and posts held by him at Canisius College, including his position as a tenured Professor of Biology

and of Animal Behavior, Ecology and Conservation ("ABEC"), as of that date. His salary for the 2018-2019 academic year, however, will run through August 31, 2019. Dr. Noonan will timely submit all necessary paperwork as required by the College to effectuate that retirement and any necessary resignations. Upon his retirement, Dr. Noonan will not initiate contact, directly or indirectly, with any student or faculty member at the College absent consent of the College's Vice President for Academic Affairs (currently, Dr. Margaret McCarthy) or her designee.

The College will determine the manner and means that it will communicate the fact of Dr. Noonan's retirement, but will offer him the opportunity to provide suggestions or input with respect to any such communication. The College also will designate as the person to respond to any status or employment-related inquiries about Dr. Noonan (*i.e.*, from any subsequent employer seeking employment history) its Associate Vice President for Human Resources and Compliance, (currently, Linda Walleshauser, SPHR, SHRM-CP), who will inform such inquirers that Dr. Noonan retired from the Canisius faculty as of the end of the 2018-2019 academic year. No prior recommendation or employment-related communication or comment about Dr. Noonan from any College official is to be used by him in discussions with any third parties.

## 2.0    Subsequent Employment at Canisius and Post-Retirement Title

Dr. Noonan agrees not to re-apply for any teaching position at the College, agrees not to identify himself as an active faculty member of the College, and absent specific, personal invitation directed to him (as opposed to an invitation to "all retirees," or a similar large group of which he may be a member), he will not, before June 30, 2021, visit campus or participate in any Canisius events (on or off-campus), absent the express permission of the Vice President for Academic Affairs. Notwithstanding the foregoing, Dr. Noonan will be allowed to continue to access, remotely, the Canisius College Bouwhuis Library resources that are "on line" and otherwise available through the internet to support his academic and scholastic activities.

The College will not recommend Dr. Noonan for the title of Professor *Emeritus*. However, as a retired faculty member he may reference himself, in professional presentations and publications, as "Professor of Biology, Canisius College, Retired," or "Professor of Animal Behavior, Ecology and Conservation, Canisius College, Retired," or "Professor of Biology and Professor of Animal Behavior, Ecology and Conservation, Canisius College, Retired."

## 3.0    Salary Benefit

In consideration of the promises made by Dr. Noonan in this Agreement, including but not limited to the general and unconditional release set forth in Paragraph 4.0 below and Dr. Noonan's confidentiality commitments set forth in Paragraph 12.0 below, Canisius agrees to continue Dr. Noonan's base salary (currently $88,843 *per annum*) for a period of 18 months (beginning on September 1, 2019), for a total of $133,264.50. These sums, referenced as the "Salary Benefit," shall be paid in accordance with the customary Canisius schedule with respect to faculty salaries, on the standard pay dates otherwise applicable during the 2019-2020 and 2020-2021 academic years (as applicable). These Salary Benefit payments will be subject to standard withholdings and payroll deductions for federal and state taxes, Medicare and social security taxes, and similar obligations. Dr. Noonan shall not be entitled, as part of any Salary Benefit or any other provision

of this Agreement, to any employment-related benefits that may otherwise be available to active Canisius employees, but he shall be afforded such benefits, if any, that are afforded generally to all faculty members who have retired from the College. Should Dr. Noonan elect to receive benefits otherwise available generally to retired Canisius faculty members, he agrees to be subject to the same enrollment terms, and to be responsible for any costs for those benefits, in the same manner as is applicable to other retired faculty members.

Dr. Noonan acknowledges and agrees that the Salary Benefit referenced in this Paragraph 3.0 is in excess of any amount or benefit to which he otherwise would be entitled to following retirement, absent entry into this Agreement, and further acknowledges and agrees that Canisius would not agree to offer any benefits hereunder, including without limitation the Salary Benefit, if Dr. Noonan did not: (a) enter into this Agreement; (b) agree to the general and unconditional release of claims as set forth in Paragraph 4.0; and (c) agree to the confidentiality provisions as set forth in Paragraph 12.0.

**4.0    Release and Discharge**

In consideration of the Salary Benefit, the promises provided for in this Agreement, and other good and valuable consideration, the receipt and sufficiency of which Dr. Noonan hereby acknowledges explicitly and expressly, Dr. Noonan, on behalf of himself and each and every one of his heirs, executors, administrators, parents, guardians, family members, representatives, agents and assigns (collectively, the "Releasing Parties"), hereby completely and comprehensively releases, acquits and forever discharges Canisius College of Buffalo as well as its past, present, and future affiliates and its past, present and future officers, trustees, attorneys, agents, principals, servants, representatives, employees, students, privies, insurers, reinsurers, predecessors, successors, and assigns (collectively, the "Released Parties"), from any and all claims of any sort whatsoever, from the beginning of time to the date Dr. Noonan executes this Agreement. This complete, general and comprehensive release further includes any and all claims, demands, actions, causes of action, damages, injuries, liabilities and costs (including claims for attorneys' fees and/or litigation expenses and disbursements), of any and every kind and description, whether asserted or unasserted, latent or patent, known or unknown, that ever existed, now are existing or hereafter may exist, whether arising under common law, statute or any other basis at law or inequity (all claims mentioned in this sentence collectively referenced as the "Claims and Liabilities"). The Claims and Liabilities include, without limitation, any rights or claims he may have under the Americans with Disabilities Act, which prohibits discrimination on the basis of disability; the Age Discrimination in Employment Act, which prohibits age discrimination in employment; Title VII of the Civil Rights Act of 1964, as amended, which prohibits retaliation and discrimination in employment based on race, color, national origin, religion, sex, sexual orientation and various other protected statuses; the Older Workers Benefit Protection Act; the Family and Medical Leave Act; the Employee Retirement Income Security Act of 1974, as amended; the Fair Labor Standards Act; the New York State Human Rights Law; the New York State Executive Law; the Buffalo City Code; any other federal, state or local statute, law or regulation (including without limitation those statutes, laws and/or regulations prohibiting employment discrimination); any claims (on any basis) for wrongful discharge, whether based on claimed violations of statute or based on claims in contract, tort, common law or equity; any claims for failure to pay wages due or other monies owed (including, without limitation, claims under any alleged employment agreement or

Canisius04958

appointment letter, or for benefits or unpaid vacation pay); any claims of fraud, misrepresentation, breach of contract, loss of business opportunity, career damage, damage to earning capacity, retaliation, harassment, sexual harassment, whistle-blower activities, negligence, defamation, false light, injury to reputation or interference with actual or prospective economic advantage; any claims of intentional or negligent infliction of emotional distress; any claimed violation of any other federal, state, civil or human rights statute or code; or any other claimed violation of any local, state or federal law, statute, regulation, code, ordinance and/or public policy, or common law, contract or tort claim having any bearing whatsoever on the terms and conditions of Dr. Noonan's hiring, compensation and/or employment at Canisius; any events giving rise to the Investigation into any Complaint; the Investigation into any Complaint; any other act or omission alleged to have been undertaken by the College or any College employee or agent with respect to any Complaint; the termination, resignation from, retirement from and/or the cessation of his employment at (and/or from any position held at) Canisius (whether involving Canisius alone or in combination with any one or more of the Released Parties); and/or any act or omission by any Released Party that Dr. Noonan claims or may claim caused him harm, injury, loss or damage of any sort including, without limitation, any allegations or claims for costs, fees or other expenses, including attorneys' fees, incurred in these matters which Dr. Noonan ever had, now has, or may have as of the date he executes this Agreement.

The foregoing release shall NOT be construed or deemed to be a waiver or release of any claim for unemployment compensation benefits, or any pending claim or appeal Dr. Noonan has before the New York State Workers' Compensation Board or the United States Social Security Administration, or any benefits to which he may be entitled as a result of such Workers' Compensation Board or Social Security Administration claims or appeals, or any other claim that may not as a matter of governing law be released. If Dr. Noonan files a lawsuit, charge, complaint or other document asserting or attempting to assert a claim which is within the scope of those Claims and Liabilities that are released pursuant to this Paragraph 4.0, or this Agreement, whether or not such claim is valid, or whether or not he otherwise breaches any term of this Agreement, he shall agree to waive any right for damages or monetary relief from any Released Party pursuant to said lawsuit, charge, complaint or claim, and she also shall be responsible for all reasonable costs and legal fees incurred by Canisius or by any one or more of the Released Parties in investigating, responding to and/or defending against that lawsuit, charge, complaint or other claim, or in responding to any such breach.

Dr. Noonan retains the right to file suit for Breach of this Agreement against any of the Released Parties. In no event, however, shall such a lawsuit, charge, complaint, claim or breach affect or negate the validity of enforceability of the general release and waiver provided in this Paragraph 4.0. Nothing in this Agreement shall be construed to prevent Dr. Noonan from participating in an investigation conducted by the EEOC, or any fair employment practice agency, relating to any matter, including, but not limited to, responding to inquiries pursuant to EEOC's Enforcement Guidance on Non-Waivable Employee Rights Under EEOC-Enforced Statutes, No. 915-002, dated April 11, 1997. Notwithstanding anything contained herein, nothing in this Agreement shall waive or be construed as waiving: (i) any claim related to the enforcement of this Agreement; (ii) any claims that may arise after the Effective Date of this Agreement; (iii) any claim for accrued, vested benefits under any employee benefit plan of Siena or for unemployment or workers compensation benefits; (iv) any claims that cannot be waived by law.

Dr. Noonan further acknowledges that he is subject to no liens or unsatisfied claims for attorneys' fees or expert and support costs owing by him or on his behalf, that were incurred in, or in any way related to, any Claims and Liabilities referenced in this Paragraph 4.0, or any dealings with Canisius College, including for services provided to Dr. Noonan by the Nesenoff & Miltenberg LLP law firm, and that in all events Dr. Noonan will remain solely responsible for payment of all attorneys' fees, expert costs and support costs incurred by him and/or on his behalf, including for services provided to Dr. Noonan by the Nesenoff & Miltenberg LLP law firm.

Dr. Noonan acknowledges that he understands that his release commitments and obligations under this Paragraph 4.0 of this Agreement shall survive the completion of all acts and obligations under this Agreement, and continue in perpetuity.

### 5.0    Valid Basis to Investigate and Maintenance of Investigation Records

The Parties agree that the Complaints received by Canisius with respect to Dr. Noonan constituted a valid basis for Canisius to conduct the Investigation. However, due to Dr. Noonan's retirement, the College no longer needs to continue with the investigation process into Dr. Noonan's alleged misconduct, and it will make no final determination or findings with respect to the Complaints. Dr. Noonan, for his part, continues to deny any wrongdoing or misconduct.

The College will maintain the underlying Complaints and the Investigation materials compiled to date in Dr. Noonan's faculty personnel file, which file will remain in a secure location in the College's Human Resources Department. Given Dr. Noonan's retirement, the Investigation materials and Complaints will not be moved to Dr. Noonan's faculty evaluation file, where they otherwise would have been accessible to members of the College's Faculty Status Committee.

### 6.0    No Pending or Future Lawsuits, Actions or Proceedings

Dr. Noonan represents and warrants that he has not commenced or filed, and does not know of the commencement or filing of, any lawsuit, complaint, charge, proceeding or matter against Canisius and/or any of the Released Parties, in any court, administrative or regulatory agency and/or other forum, with regard to any act, omission, dispute, occurrence, situation or matter, including but not limited to the Complaints or the Investigation. Dr. Noonan further represents and warrants that he agrees not to file or commence, or cause to be filed or commenced, at any point in the future any lawsuit, complaint, proceeding or matter against Canisius and/or any of the Released Parties, in any court, administrative or regulatory agency and/or other forum, with regard to any dispute, issue or claim arising out of or in any way related to the Complaints or the Investigation except that if the Dr. Noonan is named as a party in an action for an act or omission occurring at a time he was employed by the College, Dr. Noonan reserves any and all rights to seek indemnification, contribution, setoff or direct recovery from Canisius for such acts or omissions. Canisius, for its part, represents and warrants that it has not commenced or filed, and does not know of the commencement or filing of, any lawsuit, complaint, charge, proceeding or matter against Dr. Noonan, in any court, administrative or regulatory agency and/or other forum, with regard to any act, omission, dispute, occurrence, situation or matter, including but not limited to the Complaints or the Investigation, and that it agrees not to file or commence, or cause to be filed or commenced,

Canisius04960

at any point in the future any lawsuit, complaint, proceeding or matter against Dr. Noonan with regard to any dispute arising out of the Complaints or the Investigation, except that if the College is named as a party in an action commenced against Dr. Noonan for an act or omission occurring at a time he was employed by the College, Canisius reserves any and all rights to seek indemnification, contribution, setoff or direct recovery from Dr. Noonan for such acts or omissions.

Canisius also will not communicate information regarding the Complaints and/or the Investigation to any third party, unless a response is required with respect to a valid inquiry from law enforcement, a subpoena, or a judicial order. Absent a prohibition against disclosure of such inquiry, subpoena or order (*i.e.*, a directive from law enforcement in a pending criminal investigation or other confidential investigation), the College also agrees that Dr. Noonan will promptly be notified of any such inquiry, subpoena or order so that Dr. Noonan may take any steps necessary, including but not limited to seeking a Protective Order. Canisius is not aware of any pending inquiry, subpoena or order of the type referenced in this paragraph 6.0.

### 7.0 E-mail Account Access and Usage

Dr. Noonan may continue to maintain noonan@canisius.edu, a Canisius.edu e-mail address, which he agrees will be used only for professional communications, such as communications with other scholars about professional topics, student recommendations, submission of papers and colloquium presentations, and the like. In all respects, Dr. Noonan agrees to communicate professionally with colleagues while using this account, and will remain solely responsible for the content of such communications. He also will adhere to the Canisius e-mail use policies, as those policies may from time to time be amended, he acknowledges that Canisius may monitor his use of this e-mail account, and he will be responsible for any usage policy violation that may occur. In all events, Dr. Noonan acknowledges that, consistent with his commitment recited in paragraph 1.0, above, he will not initiate contact using his Canisius.edu account, directly or indirectly, with any student or faculty member at the College absent consent of the College's Vice President for Academic Affairs or her designee.

### 8.0 Film and Photographic Work

Dr. Noonan will be permitted access to a video editing equipment so that he may complete certain unfinished film projects, including a project known as "Project Tiger." That equipment will be made available to Dr. Noonan in his home, and the College shall assist in installation of the equipment, if necessary. Dr. Noonan will be responsible for returning the equipment within a reasonable time; the Parties expect that return date to be on or about September 1, 2019. Students who worked with Dr. Noonan on Project Tiger, or any other unfinished projects, will be offered the option of appearing in and receiving credit on any resulting film or video work, or declining to appear in and declining to receive credit on any resulting film or video work. Students participating in the recent Project Tiger efforts also will be afforded access to the film or video materials created in connection with those Project Tiger efforts for their use in developing their own finished work.

Dr. Noonan represents and warrants that all students who worked on and/or appeared in the Project Tiger video, or video created in connection with other unfinished projects referenced in this Paragraph 8.0, have signed releases or application materials incorporating language authorizing the use of their images and likenesses, and agrees to provide copies of these releases or application materials to Canisius on or before the Effective Date; notwithstanding the existence of these releases, those students will be offered the option of withdrawing any previously granted permission, in which case their images and/or names will not appear on any finished work developed by Dr. Noonan. Canisius will assume responsibility for contacting students with respect to this option, and will promptly inform Dr. Noonan of their determinations.

Canisius will own the rights to all resulting film or video work, as well as all film or video work created by Dr. Noonan while in its employ, unless Dr. Noonan can establish that the work was created outside work hours and responsibilities, using no work benefits and/or related travel support furnished by the College, whether those benefits or support was afforded to Dr. Noonan directly or indirectly (i.e., by College-affiliated institutes or programs, by grants administered by Canisius or received while Dr. Noonan was its employee, and the like).

Dr. Noonan is hereby afforded by the College, a non-exclusive, no-cost, non-commercial, revocable license to use these works owned by the College in connection with legitimate pedagogical or educational activities, such as classroom instruction or professional lectures or presentations. This non-exclusive, no-cost, non-commercial, revocable license would extend to all tangible creations or works in which Dr. Noonan has been involved during his period of employment at the College, including all works referenced in this Paragraph 8.0.

### 9.0    Office Materials and Course Materials

Dr. Noonan will be offered the opportunity to take possession of his personal property, subject to review with Department Chair and other appropriate College officials. This property will include microscope slides, MarineLand tissue samples, marine mammal testing equipment, research data, personal files, film files from video editing stations, Buffalo Zoo artifacts, books and other personal possessions, *unless, and upon agreement of the Parties,* the property is customarily used in or needed for College course offerings or programs. Dr. Noonan has returned to the College, prior to his execution of the Agreement, the College's equipment purchased with College funds (*i.e.*, cameras, recording equipment, video equipment and the like) said property consisted of two video cameras, six laptops (from Marineland data collection), one overhead projector (from BZG CAC program) and one box bnc video connectors. The College also will be afforded reasonable access, as it may need, to any research data or other information or property that Dr. Noonan may remove from campus under the terms of this Agreement and this Paragraph 9.0.

### 10.0    Website Content and Ownership

Canisius will own and control those websites and web addresses, now administered by Dr. Noonan, that relate to programs, institutes and/or course offerings at the College, whether or not they are integrated currently in the Canisius servers. These sites include the ISHAR.org and conservenature.org websites.

Dr. Noonan will be afforded the opportunity to transfer material he has created from any website referenced in the preceding portion of this Paragraph 10.0 to a separate site or sites that he creates or controls. This would include, but not be limited to, "michaelnoonan.org." Any such websites created or controlled by Dr. Noonan shall delete references to current Canisius students, and/or to current Canisius programs, institutes or course offerings, and not reflect any ongoing affiliation with Canisius College, although Dr. Noonan may use one or more of the specified titles referenced in Paragraph 2.0, above. In identifying website content he wishes to copy and transfer or migrate from one of the websites mentioned in the first paragraph of this Paragraph 10.0 to a website that he controls, Dr. Noonan may seek reasonable support in so doing from the College. The person with whom Dr. Noonan should interact with respect to such copying, transfer and/or migration is Jason Kruk, or Mr. Kruk's designee. In all events, if the content to be copied, transferred or migrated includes names, images or likenesses of third parties, Dr. Noonan represents and warrants that these third parties have executed releases authorizing the use of such names, images and/or likenesses. In addition, to the extent the third parties whose names, images and/or likenesses were enrolled at the College in the 2018-2019 academic year, Dr. Noonan further represents and warrants that these third party students have executed releases authorizing use of their names, images and/or likenesses that were signed by the student third parties on or after May 1, 2019. Upon request, Dr. Noonan will provide to the College copies of any releases referenced in this Paragraph 10.0

### 11.0 Completion of Journal Articles

Dr. Noonan agrees that he will use reasonable and best efforts, as will the College, to effect the timely completion of scholarly projects in which he has been engaged with Canisius Professor Daniel Haeusser, including finalization of scholarly articles they are developing and jointly authoring.

### 12.0 Confidentiality

The Parties agree to keep the fact of this Agreement, as well as the fact of its existence and all of the terms, conditions and provisions of this Agreement, strictly and completely confidential. The Parties therefore also agree not to discuss, disseminate, disclose or publish in any manner, be it orally, in writing or otherwise, to any person or entity, any of the specific terms contained within this Agreement. The Parties understand and acknowledge that their commitment and agreement to enter into and abide by this broad and comprehensive confidentiality provision is material to both Parties , and that both Parties would not have agreed to enter into this Agreement absent the Parties' commitment and agreement to enter into and abide by this broad and comprehensive confidentiality provision.

Notwithstanding the foregoing, Dr. Noonan may disclose the terms of this Agreement to any immediate family member, lawyer or tax advisor acting on his behalf, and in the event such a disclosure is made to any of the foregoing individuals or entities, each of them shall be advised by Dr. Noonan, in advance of such disclosure, of the confidentiality requirement hereunder, and each of them shall commit and agree to abide by its terms and maintain the same information as strictly confidential, in accordance with the provisions of this Paragraph 12.0. If Dr. Noonan discloses

information to any of the foregoing individuals or entities, then Dr. Noonan shall be responsible to ensure compliance by them with the confidentiality provisions in this Paragraph 12.0.

The Parties acknowledge and understand that their obligations under this Paragraph 12.0 of this Agreement shall survive the completion of all acts and obligations under this Agreement, and continue in perpetuity.

### 13.0 Warranty of Capacity to Execute Agreement

Dr. Noonan represents and warrants that: (i) he has the sole right and exclusive authority to enter into this Agreement (including without limitation granting the general releases provided for herein); (ii) he has the legal capacity to enter into this Agreement and to make the promises and commitments specified herein, and is not suffering from any impairment or impediment that would limit, restrict or negate his ability to enter into this Agreement and to make the promises and commitments specified herein.

### 14.0 Entire Agreement; Binding Effect; Benefit of Agreement

This Agreement constitutes the entire agreement between the Parties with respect to the matters set forth herein, and it supersedes any and all prior oral or written agreements, commitments or understandings with respect to such matters. This Agreement shall be binding upon, shall inure to the benefit of, and shall be enforceable only by Dr. Noonan, Canisius and the Released Parties, as well as their respective successors, heirs, executors, administrators and permitted assigns. No other person or entity shall have any rights under this Agreement or be entitled to bring any action to enforce any of its provisions.

### 15.0 Legal and Tax Advice; Comprehension of Agreement

In entering into this Agreement, Dr. Noonan represents that he has relied solely upon the legal and tax advice of his own attorney and other advisers, who are the attorneys and advisers of his choice. Dr. Noonan agrees that he shall be solely responsible for the tax liability and tax consequences, if any, with respect to any benefit received under this Agreement, including without limitation the Salary Benefit. Dr. Noonan represents and warrants that the terms of this Agreement have been completely read and, to the extent he deems appropriate explained to, Dr. Noonan by his attorney, and that such terms are fully understood and voluntarily accepted by Dr. Noonan. Dr. Noonan affirmatively represents that he has not been pressured or coerced by any person or entity, including without limitation Canisius or any other Released Party, to enter into this Agreement.

### 16.0 Governing Law

This Agreement shall be governed by and interpreted in accordance with the internal laws of the State of New York, without giving effect to any choice of law or conflict of law principles.

Canisius04964

## 17.0 Amendment

This Agreement cannot be modified or amended verbally, and can be modified or amended only by an instrument in writing authorized and executed by both Dr. Noonan and Canisius.

## 18.0 Incorporation of Recitals

The Parties agree that the Recitals reflected on page 1 of this Agreement, including Recitals in subparagraphs (A) through (F) of this Agreement, are reaffirmed by the Parties as accurate, and are incorporated by reference in, and expressly made a part of, this Agreement.

18.1 **Severability.** If for any reason any provision of this Agreement is determined to be invalid or unenforceable, the remaining provisions of this Agreement nevertheless shall be construed, performed, and enforced as if the invalidated or unenforceable provisions had not been included in the rest of the Agreement.

18.2 **Counterparts.** If this Agreement is executed in counterparts, each counterpart shall be deemed an original, and all counterparts so executed shall constitute one Agreement binding on all of the parties hereto, notwithstanding that all of the Parties are not signatory to the same counterpart. This Agreement may be executed by original or facsimile or e-mail signature, each of which shall be equally binding for the purposes of the Agreement.

## 19.0 Effective Date and Related Acknowledgments

Dr. Noonan acknowledges that he has been advised by this writing that: (a) he should *carefully read and fully understand* the provisions of this Agreement; (b) through this Agreement, *he is releasing the Released Parties* from any and all claims as specified in Paragraph 4.0, above; (c) he has *knowingly and voluntarily agreed to all of the terms* set forth in the Agreement; (d) he *knowingly and voluntarily intends to be legally bound* by the Agreement; (e) his waiver and *release do not apply to any rights or claims that may arise after the Effective Date* of this Agreement; (f) *he has been advised to consult with an attorney* prior to executing this Agreement; (g) *he has, and has been offered, a period of twenty-one (21) days to consider this Agreement* (although he may choose to voluntarily execute this Agreement earlier); (h) *he has seven (7) days following the execution of this Agreement to revoke the Agreement*; (i) **to become effective, the revocation referenced in subparagraph (h) must be in writing and delivered to Linda Walleshauser at Old Main, Canisius College within seven (7) days after Dr. Noonan first executes this Agreement**; and (i) this Agreement *shall not be effective until the date upon which the revocation period has expired*, which shall be the **eighth day after** this Agreement is first executed by him, which day shall be known as the "Effective Date." No Salary Benefit will be paid, or payable, until after the Effective Date passes, assuming Dr. Noonan does not revoke this Agreement.

**[BALANCE OF THIS PAGE IS BLANK—SIGNATURES FOLLOW]**

IN WITNESS WHEREOF, Dr. Michael Noonan and Canisius College of Buffalo hereby execute this Agreement:

_____      31 May 2019
Michael Noonan, Ph.D.                       Date

STATE OF NEW YORK )
COUNTY OF ERIE ) ss.:

On the 31 day of May, 2019, personally appeared before me Michael Noonan, to me known to be the individual described in and who executed the within and foregoing instrument, and, being duly sworn by me did depose and say that he resides at Michael Noonan PHD, and acknowledged that he has read and understood and has executed the foregoing instrument as his free and voluntary act and deed, for the uses, purposes and consideration expressed therein.

_____
Notary Public

CYNTHIA M CARRUBBA
NOTARY PUBLIC - STATE OF NEW YORK
ERIE COUNTY
LIC. #01CA6080574
COMM. EXP. 09/16/2022

**CANISIUS COLLEGE OF BUFFALO**

By:
_____      6/5/19
                                                Date

STATE OF NEW YORK )
COUNTY OF ERIE )
On the 5 day of June, 2019, personally appeared before me John J. Hurley, to me known to be the individual described in and who executed the within and foregoing instrument, and, being duly sworn by me did depose and say that his/her business address is 2001 Main Street, Buffalo, New York, and acknowledged that he/she has read and understood and has executed the foregoing instrument as his free and voluntary act and deed on behalf of Canisius College of Buffalo, for the uses, purposes and consideration expressed therein.

Dawn M. Rotterman
Notary Public, State Of New York
Registration # 01RO6227853
Qualified in Erie County
My commission expires Sept 7, 2022

_____
Notary Public

SEPARATION AGREEMENT, CONFIDENTIALITY AGREEMENT AND RELEASE
Page 11 of 11

Canisius04966