**Plaintiffs' Exhibit Y**

**MARGARET McCARTHY**

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---------------------------------------
SIERRA BOUCHER, LILY ENGEBRECHT,
NATASSIA TUHOVAK, HANNAH WHELAN, and
CASSIDY WOOD,

                    Plaintiffs,

    - against -    Case No.
                  1:22-cv-00381-CCR

TRUSTEES OF CANISIUS COLLEGE,

                    Defendant.
---------------------------------------

        Examination before trial of **MARGARET McCARTHY**, taken pursuant to the Federal Rules of Civil Procedure, in the offices of JACK W. HUNT & ASSOCIATES, INC., 1120 Liberty Building, Buffalo, New York, on September 27, 2024, commencing at 10:25 a.m., before LORI K. BECK, CSR, CM, Notary Public.

*JACK W. HUNT & ASSOCIATES, INC.*

| | | |
|---|---|---|
| 10:40:52 | 1 | Q. Okay. And then as the chair of the |
| 10:40:56 | 2 | ABEC program, Dr. Noonan was responsible for |
| 10:41:00 | 3 | submitting to you a budget for that program? |
| 10:41:04 | 4 | A. The budgets went through the deans, and |
| 10:41:07 | 5 | the deans recommended the budgets. |
| 10:41:08 | 6 | And there was a -- the college budget-wide |
| 10:41:12 | 7 | committee that finalized budgets for the college, |
| 10:41:19 | 8 | then approved by the board of trustees. |
| 10:41:22 | 9 | It was quite a long process. |
| 10:41:23 | 10 | Q. It sounds like it. |
| 10:41:25 | 11 | Did complaints from ABEC department faculty |
| 10:41:30 | 12 | ever reach you when you -- when you were in the |
| 10:41:32 | 13 | position of vice-president of academic affairs |
| 10:41:35 | 14 | regarding the allocation of funds within the ABEC |
| 10:41:38 | 15 | program? |
| 10:41:43 | 16 | A. I recall a concern by -- I think it was |
| 10:41:47 | 17 | Dr. Malini Suchak about the -- there's also |
| 10:41:53 | 18 | within -- within ABEC, there's an institute for the |
| 10:41:56 | 19 | study of human-animal relations, generally known as |
| 10:42:01 | 20 | ISHAR. We just refer to it as ISHAR by its |
| 10:42:04 | 21 | initials, I-S-H-A-R. |
| 10:42:07 | 22 | I believe I -- I recall Dr. Suchak reaching |
| 10:42:11 | 23 | out to the dean, who was Dr. Beth Gill, G-I-L-L, at |

| | | |
|---|---|---|
| 10:42:19 | 1 | the time, and Dr. Gill bringing to me the concern |
| 10:42:22 | 2 | that Dr. Suchak had about ISHAR funds, that they |
| 10:42:27 | 3 | weren't being fairly distributed or -- or that |
| 10:42:32 | 4 | they're -- I'm sorry, I'm going to take that back |
| 10:42:34 | 5 | for a second. |
| 10:42:35 | 6 | I think the concern was more that they were |
| 10:42:37 | 7 | being misappropriated. She had a concern that they |
| 10:42:41 | 8 | were being misspent. |
| 10:42:43 | 9 | Q. Dr. Suchak was concerned that |
| 10:42:44 | 10 | Dr. Noonan was misappropriating funds from the |
| 10:42:48 | 11 | ISHAR fund, correct? |
| 10:42:50 | 12 | A. That's it. That was the complaint. |
| 10:42:52 | 13 | Q. And did you ever direct Dr. Gill to |
| 10:42:58 | 14 | remedy that complaint? |
| 10:43:00 | 15 | A. I did more than that. I asked the |
| 10:43:01 | 16 | controller to review the account, controller of the |
| 10:43:06 | 17 | institution. I watched it myself, but I also asked |
| 10:43:08 | 18 | the controller to please review it. |
| 10:43:10 | 19 | I know he asked for receipts, and I don't |
| 10:43:14 | 20 | recall ever receiving any information back from him |
| 10:43:17 | 21 | that there was a problem. |
| 10:43:24 | 22 | Q. To your knowledge, did any other ABEC |
| 10:43:26 | 23 | program faculty members complain about the |

| | | |
|---|---|---|
| 12:52:15 | 1 | Q.    So were you -- were you informed by |
| 12:52:29 | 2 | Dr. Gill that the concern about favoritism had to |
| 12:52:32 | 3 | do with Dr. Noonan repeatedly taking certain |
| 12:52:37 | 4 | trips -- certain students on trips? |
| 12:52:40 | 5 | **MR. D'ANTONIO:**  Objection to the form. |
| 12:52:42 | 6 | **THE WITNESS:**  No. |
| 12:52:43 | 7 | **BY MS. NANAU:** |
| 12:52:43 | 8 | Q.    Okay.  I don't think I have any more |
| 12:53:01 | 9 | questions for you about this Exhibit, so we can |
| 12:53:03 | 10 | move on. |
| 12:53:28 | 11 | Did there come a time when a decision was |
| 12:53:32 | 12 | made regarding Dr. Noonan's future at Canisius? |
| 12:53:40 | 13 | A.    Yes. |
| 12:53:41 | 14 | Q.    And who made that decision? |
| 12:53:42 | 15 | A.    The president, ultimately, and I. |
| 12:53:53 | 16 | Q.    What was the decision that you and |
| 12:53:56 | 17 | President Hurley reached with regard to Dr. Noonan |
| 12:53:59 | 18 | in the wake of Ms. Walleshauser's investigation? |
| 12:54:04 | 19 | A.    That we needed to separate from the -- |
| 12:54:07 | 20 | we needed to separate him from the institution. |
| 12:54:14 | 21 | Q.    And who conveyed that decision to |
| 12:54:15 | 22 | Dr. Noonan, do you know? |
| 12:54:19 | 23 | A.    His attorney, I believe. |

| | | |
|---|---|---|
| 12:54:20 | 1 | Q. Okay. So after you and President |
| 12:54:26 | 2 | Hurley made the decision to terminate Dr. Noonan's |
| 12:54:31 | 3 | employment with Canisius, were the discussions |
| 12:54:34 | 4 | largely between attorneys? |
| 12:54:38 | 5 | A. Yes. |
| 12:54:40 | 6 | Q. Okay. There came a time when Canisius |
| 12:54:44 | 7 | executed a settlement agreement with Dr. Noonan, |
| 12:54:47 | 8 | correct? |
| 12:54:48 | 9 | A. Yes. |
| | 10 | **The following was marked for Identification:** |
| | 11 | **PLF. EXH. 78          Separation Agreement,** |
| | 12 | **Confidentiality Agreement** |
| | 13 | **and Release, Bates numbers** |
| | 14 | **Canisius04956 through** |
| | 15 | **Canisius04966** |
| 12:55:26 | 16 | |
| 12:55:26 | 17 | **BY MS. NANAU:** |
| 12:55:26 | 18 | Q. So, Dr. McCarthy, I show you what's |
| 12:55:28 | 19 | been marked as Plaintiffs' 78. It's a document |
| 12:55:33 | 20 | with the Bates-stamp range Canisius 4956 to 4966. |
| 12:55:39 | 21 | Do you recognize this document? |
| 12:55:40 | 22 | A. Yes. |
| 12:55:41 | 23 | Q. You've seen it before? |

*Margaret McCarthy - Ms. Nanau - 09/27/2024*

101

```
12:55:42   1        A.   Yes.
12:55:42   2        Q.   This is the settlement agreement that
12:55:44   3   Canisius entered into with Dr. Noonan in May of
12:55:49   4   2019, correct?
12:55:50   5        A.   Yes.
12:55:53   6        Q.   Did Dr. Noonan require, to sign this
12:55:57   7   agreement, that his termination of employment would
12:56:00   8   be called a retirement?
12:56:02   9        MR. D'ANTONIO:   Do you want her to read the
12:56:04  10   document before you ask her questions here?
12:56:06  11        MS. NANAU:   Well, I'm wondering --
12:56:09  12        BY MS. NANAU:
12:56:09  13        Q.   Do you -- are you aware of the contents
12:56:11  14   of this document?
12:56:12  15        A.   It would help just to review it
12:56:14  16   quickly, if you don't mind.
12:56:14  17        Q.   Please, yes.
12:56:14  18        A.   I don't think I need to read it word
12:56:16  19   for word.
12:56:18  20        MR. D'ANTONIO:   Then you can ask more
12:56:20  21   questions.
12:56:21  22        MS. NANAU:   I assumed more knowledge.
12:56:26  23        THE WITNESS:   Just to refresh.
```

|          |    |                                                                    |
|----------|----|--------------------------------------------------------------------|
| 12:56:27 | 1  | (Off the record: 12:56 p.m.)                                       |
| 12:59:37 | 2  | (On the record: 12:59 p.m.)                                        |
| 12:59:38 | 3  | **BY MS. NANAU:**                                                  |
| 12:59:38 | 4  | **Q.**   So, Dr. McCarthy, you've had an                           |
| 12:59:40 | 5  | opportunity to review Plaintiffs' 78, correct?                     |
| 12:59:43 | 6  | **A.**   Yes.                                                      |
| 12:59:44 | 7  | **Q.**   So my question is this:                                   |
| 12:59:45 | 8  | Did Dr. Noonan require that his termination                        |
| 12:59:48 | 9  | of employment would be articulated to the Canisius                 |
| 12:59:55 | 10 | community as a retirement?                                         |
| 12:59:59 | 11 | **A.**   The specific terms were negotiated by                     |
| 13:00:02 | 12 | the attorneys, attorney-to-attorney.  I was not in                 |
| 13:00:04 | 13 | those conversations, so I really can't say.                        |
| 13:00:07 | 14 | It's here in the document.                                         |
| 13:00:08 | 15 | **Q.**   Okay.  So I guess Canisius -- or let me                   |
| 13:00:13 | 16 | take it -- let me strike that.                                     |
| 13:00:15 | 17 | You are not aware of any specific demands                          |
| 13:00:20 | 18 | that Dr. Noonan raised to enter into the separation                |
| 13:00:24 | 19 | agreement with Canisius?                                           |
| 13:00:27 | 20 | **A.**   If I -- any -- any specific demands I                     |
| 13:00:30 | 21 | would have heard would have come to me from our                    |
| 13:00:33 | 22 | attorney and been privileged.                                      |
| 13:00:36 | 23 | **Q.**   Well --                                                   |

```
13:00:37  1        A.     Unless I'm misunderstanding your
13:00:38  2   question.
13:00:39  3        Q.     So -- so privilege is -- covers
13:00:42  4   communications with the attorney but not the facts,
13:00:47  5   right?
13:00:47  6        A.     I thought -- I'm sorry, would you
13:00:48  7   repeat the question?  I thought you said was I --
13:00:48  8        Q.     Sure.
13:00:51  9        A.     -- aware of any specific --
13:00:54 10        Q.     Sure.  Were you aware of any specific
13:00:57 11   demands, right, that Dr. Noonan raised to enter
13:00:59 12   into this agreement with Canisius?
13:01:01 13        That's what I'm wondering, if you have any
13:01:04 14   understanding of those demands.
13:01:10 15        MR. D'ANTONIO:  So let me just -- before --
13:01:12 16   before she answers, let me just interpose a caution
13:01:16 17   here.
13:01:17 18        MS. NANAU:  Okay.
13:01:18 19        MR. D'ANTONIO:  To the extent that -- that
13:01:22 20   there were specific demands that were made during
13:01:27 21   the negotiations, we would have discussed them in
13:01:33 22   terms of what the college could or should have done
13:01:37 23   in response to those and what the objectives of the
```

|  |  |  |
|---|---|---|
| 13:01:41 | 1 | institution were, and those would be privileged |
| 13:01:44 | 2 | communications, so -- |
| 13:01:46 | 3 | **MS. NANAU:** The discussion among you and |
| 13:01:48 | 4 | Canisius, correct? |
| 13:01:48 | 5 | **MR. D'ANTONIO:** Yes, absolutely. |
| 13:01:50 | 6 | **MS. NANAU:** Right. |
| 13:01:50 | 7 | **MR. D'ANTONIO:** Exactly right. |
| 13:01:51 | 8 | **MS. NANAU:** Okay. I understand that |
| 13:01:53 | 9 | carve-out. |
| 13:01:54 | 10 | **MR. D'ANTONIO:** So -- so if the question is |
| 13:01:56 | 11 | did I talk with Dr. McCarthy and give her a list of |
| 13:02:01 | 12 | demands, you know, I'll let her answer that |
| 13:02:03 | 13 | question. |
| 13:02:03 | 14 | **MS. NANAU:** Okay. |
| 13:02:04 | 15 | **MR. D'ANTONIO:** But -- but beyond that, kind |
| 13:02:06 | 16 | of what was the strategy and all of that -- |
| 13:02:08 | 17 | **MS. NANAU:** That, I understand, is |
| 13:02:09 | 18 | privileged. |
| 13:02:09 | 19 | **MR. D'ANTONIO:** Okay. Fair enough. |
| 13:02:10 | 20 | **MS. NANAU:** This is -- I'm trying to -- |
| 13:02:12 | 21 | **MR. D'ANTONIO:** I understand. |
| 13:02:13 | 22 | **MS. NANAU:** I'm trying to really, you know, |
| 13:02:15 | 23 | not tread on attorney-client communications here, |

```
13:02:19  1  but I do believe that I am entitled to understand
13:02:21  2  the framework for this negotiation, right?
13:02:24  3          MR. D'ANTONIO:  If it was -- if it was
13:02:26  4  shared, you know, as these are the demands.
13:02:30  5          MS. NANAU:  Yes.
13:02:31  6          THE WITNESS:  But if that list comes from
13:02:32  7  you, then it's not privileged?
13:02:34  8          MR. D'ANTONIO:  Well, if the list -- the
13:02:36  9  list itself -- in other words, if I ticked off for
13:02:40 10  you here are ten things Dr. Noonan wanted -- and
13:02:44 11  I'm not suggesting that I did do that, but if I
13:02:47 12  did, Daniela's entitled to it.  I'll let you answer
13:02:52 13  that question.
13:02:53 14          But if it's here's the demands and what we
13:02:56 15  should do strategy-wise --
13:02:58 16          THE WITNESS:  Okay.
13:02:59 17          MR. D'ANTONIO:  -- or any discussions that
13:03:02 18  you and the president and I would have had --
13:03:02 19          THE WITNESS:  Then it doesn't --
13:03:03 20          MR. D'ANTONIO:  -- that's privileged.
13:03:04 21          THE WITNESS:  Okay.
13:03:04 22          BY MS. NANAU:
13:03:06 23          Q.    Do you understand the distinction?
```