UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

SIERRA BOUCHER, LILY ENGEBRECHT,
NATASSIA TUHOVAK, HANNAH WHELAN,
and CASSIDY WOOD,

                        Plaintiffs,

        -against-

TRUSTEES OF CANISIUS COLLEGE,

                        Defendants.
_____

Case No. 1:22-cv-00381-CCR

### CANISIUS UNIVERSITY'S REPLY TO PLAINTIFFS' RESPONSE TO THE UNIVERSITY'S LOCAL RULE 56.1 STATEMENT

Defendant Canisius University submits the following Reply to plaintiffs' Responses (Dkt. 42-1) to the University's December 16, 2024 Statement of Disputed and Undisputed Material Facts, which was submitted pursuant to Local Rule 56(a)(1).  (*See* Dkt. 33-67).[1]

The University's Reply with respect to plaintiffs' Responses is compelled under the circumstances because plaintiffs, in response to numerous specific and discrete facts set forth in the University's Local Rule 56(a)(1) Statement, refused to address directly whether such specific and discrete facts were disputed or undisputed.  Instead, plaintiffs purport to dispute, or "dispute in part," numerous articulated facts in the University's Rule 56 Statement without identifying any Record evidence countering the stated fact as it was set forth in that Statement, and they gratuitously add extraneous, largely irrelevant, and self-serving assertions and propositions that do not contravene the articulated fact at issue.

_____

[1] The University responds in a separate submission to the "additional material facts" asserted by plaintiffs under Local Rule 56(a)(2).  That submission, filed herewith, is styled "Canisius University's Response to Plaintiffs' Statement of Additional Material Facts."

That is an improper response under Federal Rule 56(e), which requires parties responding to a movant's Rule 56 Statement to "properly address another party's assertion of fact," and under Local Rule 56(a)(2), which requires parties responding to a movant's Rule 56(a)(1) Statement to "specifically controvert" the proffered facts. Sidestepping or dissembling is patently inappropriate. *See, e.g.*, *Lopez v. Echebia*, 693 F. Supp. 2d 381, 386 (S.D.N.Y. 2010) (quoting *Holtz v. Rockefeller & Co., Inc.,* 258 F.3d 62, 74 (2d Cir. 2001) ("The purpose of Local Rule 56.1 is to streamline the consideration of summary judgment motions by freeing district courts from the need to hunt through voluminous records without guidance from the parties").

The consequence of plaintiffs' improper responses is plain: "[i]n light of Plaintiff's express failure to properly controvert Defendants' statement of facts, this Court will deem those factual assertions admitted to the extent they are supported by the record evidence." *Lester v. M&M Knopf Auto Parts*, No. 04-cv-850S, 2006 WL 2806465, at *2 (W.D.N.Y. Sept. 28, 2006); *accord*, WDNY Local Rule 56(a)(2) ("Each numbered paragraph in the moving party's statement of material facts may be deemed admitted for purposes of the motion unless it is specifically controverted by a correspondingly numbered paragraph in the opposing statement"); *Andres v. Town of Wheatland*, No. 18-cv-1486-CCR, 2024 WL 1120413, at *6-7 (W.D.N.Y. Mar. 14, 2024) (collecting cases).

To facilitate the Court's review, the table below sets forth, in separate columns:  (1) the relevant paragraph number of the articulated fact, as it was stated in the University's Rule 56(a)(1) Statement; (2) the actual fact that was to be "specifically controverted," with the Record evidence supporting that fact as it was articulated by Canisius; and (3) the University's Reply to plaintiffs' Response (Dkt. 42-1 at ¶¶ 1-154) to that articulated fact, which in each instance fails to specifically or meaningfully controvert the specific fact at issue.  Because the University's stated facts were not specifically or appropriately disputed, they should be deemed admitted.

| ¶ | The University's Statement of Material Facts (Dkt. 33-67) | The University's Reply to Plaintiffs' Proposed Fact |
|---|---|---|
| 2.[2] | In 2019, Noonan was a member of the University's Department of Animal Behavior, Ecology and Conservation ("ABEC"), and had been so since 2009. Walleshauser Dec., ¶ 3. | Plaintiffs' response does not specifically or appropriately dispute these articulated facts as to Dr. Noonan's membership in the ABEC Department between 2009 and 2019, and does not cite to any admissible evidence that contravenes the fact as articulated by Canisius; plaintiffs' response instead contains superfluous allegations irrelevant to the fact as articulated. |
| 3. | Plaintiff Sierra Boucher enrolled as a freshman at Canisius College in the Fall of 2017. Ex. 41. Boucher graduated from Canisius in May of 2021 with a 3.73 cumulative GPA, and double majored in ABEC and Digital Media Arts with a concentration in film. Ex. 1 at 23:1-11; 49:15-22; Ex. 41. Boucher graduated *magna cum laude* from Canisius. Ex. 1 at 49:15-22; Ex. 41. Noonan was Boucher's academic advisor. Ex. 1 at 56:8. | Plaintiffs' response does not specifically or appropriately dispute these articulated facts with respect to Ms. Boucher's date of matriculation, major, academic honors conferred, and academic performance at Canisius, and does not cite to any admissible evidence that contravenes the facts as articulated by Canisius; plaintiffs' response instead contains superfluous allegations irrelevant to the facts as articulated. |
| 4. | Plaintiff Lily Engebrecht enrolled as a freshman at Canisius College in the Fall of 2016. Ex. 41. Engebrecht graduated from Canisius in May of 2020 with a 3.55 cumulative GPA and double majored in ABEC and Biology with a minor in Conservation. Ex. 41; Ex. 2 at 42:12-22. Engebrecht graduated *cum laude* from Canisius. Ex. 41. Dr. Malini Suchak, a Professor in the ABEC Department, was Engebrecht's academic advisor. Ex. 2 at 173:6-21. | Plaintiffs' response does not specifically or appropriately dispute these articulated facts with respect to Ms. Engebrecht's date of matriculation, major, academic honors conferred, academic performance and academic advisement at Canisius, and does not cite to any admissible evidence that contravenes the fact as articulated by Canisius; plaintiffs' response instead contains superfluous allegations irrelevant to the facts as articulated. |
| 6. | Tuhovak began receiving counseling at the Canisius Counseling Center "shortly after orientation" during her freshman year. Ex. 3 at 223:18-21. | Plaintiffs' response does not specifically or appropriately dispute this articulated fact with respect to counseling received by Ms. Tuhovak while at Canisius, and does not cite to any admissible evidence that contravenes the fact as articulated by Canisius; plaintiffs' response instead contains superfluous allegations irrelevant to the fact as articulated. |

---

[2] The paragraph numbers in this column correlate to the paragraphs in Canisius University's Rule 56(a)(1) Statement, and to those same paragraph numbers in plaintiffs' Response to that Rule Statement. (*See* Dkts. 33-67, 42-1).

| | | |
|---|---|---|
| 9. | Wood visited the Canisius Counseling Center for two appointments her freshman year at Canisius. Ex. 5 at 238:14-239:5. | Plaintiffs' response does not specifically or appropriately dispute this articulated fact with respect to counseling received by Ms. Wood while at Canisius, and does not cite to any admissible evidence that contravenes the fact as articulated by Canisius; plaintiffs' response instead contains superfluous allegations irrelevant to the fact as articulated. |
| 10. | On Thursday, February 7, 2019 at 2:17 PM, Ms. Walleshauser received an email from Tuhovak requesting to meet with her in order to "discuss some concerns" Tuhovak was having with "a professor." Ex. 47. Neither the "professor" nor the "concerns" were identified in Tuhovak's February 7, 2019 email. Ex. 47. | Plaintiffs' response does not specifically or appropriately dispute these articulated facts with respect to the date, time, content, or quoted material from the email received by Ms. Walleshauser from Ms. Tuhovak on February 7, 2019, and does not cite to any admissible evidence that contravenes those facts as articulated by Canisius; plaintiffs' response instead contains superfluous and inaccurate allegations irrelevant to the facts as articulated. |
| 12. | Tuhovak emailed Ms. Walleshauser again on Friday, February 8, 2019, stating that "other students" with "some concerns" wished to join the meeting. Tuhovak identified neither the "other students" nor their "concerns" in the February 8, 2019 email. Ms. Walleshauser told Tuhovak they all were welcome, and she arranged for meeting space to accommodate them. Walleshauser Dec., ¶ 8; Ex. 47. | Plaintiffs' response does not specifically or appropriately dispute these articulated facts with respect to the content or quoted material from the February 8, 2019 email sent by Ms. Tuhovak to Ms. Walleshauser, and does not cite to any admissible evidence that contravenes those facts as articulated; plaintiffs' response instead contains superfluous and inaccurate allegations irrelevant to the facts as articulated by Canisius. <br><br> While Ms. Walleshauser's response did not use the term "all are welcome" in her response to Ms. Tuhovak, she made clear that all the students who wished to meet indeed were welcome to meet with her, as she made arrangements to meet with all five plaintiffs, and others, immediately upon her return to campus on February 11. Walleshauser Dec., ¶ 9; Ex. 6 at 52:14-17; 53:7-20; Ex. 14; Ex. 63. |
| 14. | At this February 11 meeting, the students reported a variety of concerns about Noonan's behavior, primarily focused on his behaviors during a recent trip he had led to India, which had concluded on January 13, 2019. Walleshauser Dec., ¶ 9; Ex. 6 at 52:14-17; 53:7-20; Ex. 14. | Plaintiffs' response does not specifically or appropriately dispute these articulated facts as related to concerns reported to Ms. Walleshauser at the February 11, 2019 by the students, and does not cite to any admissible evidence that contravenes those facts as articulated by Canisius; plaintiffs' response instead contains superfluous allegations irrelevant to the facts as articulated. |
| 15. | The reported concerns of the students included: <br><br> • Asking students to assist him in stretching his leg, after he had undergone recent surgery; | Plaintiffs' response does not specifically or appropriately dispute these articulated facts as related to the concerns reported by students at the February 11 meeting with Ms. Walleshauser, and does not cite to any |

| | | |
|---|---|---|
| | <ul><li>Adjusting the clothing of female students, such as tucking in bra straps at the shoulder area, or assisting with microphone placements, prior to video recordings;</li><li>Braiding the hair of certain female students;</li><li>Discussing the process of using suppositories to assist students suffering from digestive difficulties in India, and offering to assist students in the placement of those health aids;</li><li>Discussing the romantic lives of students with them, and occasionally discussing of his own romantic life;</li><li>Commenting about student appearances, and occasionally demeaning students; and</li><li>Showing cultural insensitivity to a local Indian guide during the recently concluded trip.</li></ul>Walleshauser Dec., ¶ 10. | admissible evidence that contravenes those facts as articulated by Canisius; plaintiffs' response instead contains superfluous and inaccurate allegations irrelevant to the facts as articulated. |
| 16. | Eight students, including four plaintiffs—Boucher, Engebrecht, Whelan, and Wood—went on the trip to India, as part of a three-credit course titled, ABEC 490: Canisius Ambassadors for Conservation, that was offered in the Spring of 2019. This course was also known and referenced as "Project Tiger," as it involved primarily the study of tigers in India, and elsewhere. Ex. 41; Walleshauser Dec., ¶ 26. | Plaintiffs' response does not specifically or appropriately dispute these articulated facts as related to the trip taken by the students to India, the assertion it was part of a three credit course listed as ABEC 490, and that it involved the study of tigers and was thus known as "Project Tiger," nor does their response cite to any admissible evidence that contravenes the facts as articulated by Canisius; plaintiffs' response instead contains superfluous allegations irrelevant to the facts as articulated. |
| 17. | None of the eight students who participated on the trip to India contacted anyone at Canisius, or their parents, with any purported concerns about Noonan while the students were in India. Ex. 1 at 162:18-23; 163:10-13; Ex. 4 at 190:8-10; Ex. 5 at 143:10-14. | Plaintiffs' response does not specifically or appropriately dispute this articulated fact as related to the absence of any report by any plaintiff to Canisius, or to the plaintiffs' parents, or any report about any purported concerns about Dr. Noonan while they were in India, and does not cite to any admissible evidence that contravenes those facts as articulated by Canisius; plaintiffs' response instead contains superfluous and inaccurate allegations irrelevant to the fact as articulated. |
| 18. | In addition to the February 11 meeting, on February 7 and February 12, 2019, Ms. Walleshauser received two anonymous bias reports regarding concerns about Noonan and his allegedly "sexist" behavior, that were filed through the College's confidential reporting tool. Walleshauser Dec., ¶ 12 n.2. | Plaintiffs' response does not specifically or appropriately dispute these articulated facts as related to the nature and dates of two anonymous reports received by Ms. Walleshauser, through the Canisius confidential reporting tool, regarding concerns about Dr. Noonan, and does not cite to any admissible evidence that contravenes those facts as articulated by Canisius; |

| | | plaintiffs' response instead contains superfluous allegations irrelevant to the facts as articulated. |
|---|---|---|
| 19. | Before the eight students met with Ms. Walleshauser on February 11, a non-party student (identified as "Student 1") met with Dr. Elizabeth Hogan, the Chair of the Biology Department, on Friday, January 25, 2019. Ex. 46. | Plaintiffs' response does not specifically or appropriately dispute this articulated fact as related to Student 1's meeting with Dr. Hogan on January 25, 2019, and does not cite to any admissible evidence that contravenes the fact as articulated by Canisius; plaintiffs' response instead contains superfluous and inaccurate allegations irrelevant to the fact as articulated. |
| 20. | Student 1 told Dr. Hogan at their meeting that she decided to stop doing research with Noonan, described conversations with him that left her in tears, and expressed concern that he would not write her a letter of recommendation for veterinarian school because she left his research team. Ex. 11 at 33:19-34:1-4; 40:8-21; Ex. 46. | Plaintiffs' response does not specifically or appropriately dispute these articulated facts as related to the topics discussed during Student 1's meeting with Dr. Hogan on January 25, 2019, and does not cite to any admissible evidence that contravenes these facts as articulated by Canisius; plaintiffs' response instead contains superfluous allegations irrelevant to the facts as articulated. |
| 21. | Dr. Hogan immediately shared Student 1's concerns (but not her name) with Ms. Walleshauser on January 25, and Ms. Walleshauser encouraged Dr. Hogan to have Student 1 contact her directly if she wanted to make a complaint. Walleshauser Dec., ¶¶ 4-6; Ex. 46. | Plaintiffs' response does not specifically or appropriately dispute these articulated facts as related to Dr. Hogan's January 25, 2019 disclosure made to Ms. Walleshauser, and does not cite to any admissible evidence that contravenes those facts as articulated by Canisius; plaintiffs' response instead contains superfluous allegations irrelevant to the facts as articulated. |
| 24. | Ms. Walleshauser asked each student at the February 11 group meeting to provide individual written statements summarizing all their concerns, so that she would have a comprehensive record of their concerns. Ex. 1 at 193:12-20; Ex. 2 at 137:1-7; Ex. 4 at 207:4-5; Ex. 6 at 55:1-5. | Plaintiffs' response does not specifically or appropriately dispute this articulated fact as related to Ms. Walleshauser's February 11 request to have the students submit written statements to her, and does not cite to any admissible evidence that contravenes the fact as articulated by Canisius; plaintiffs' response instead contains superfluous allegations irrelevant to the fact as articulated. |
| 25. | Ms. Walleshauser received written statements from all but one of the students, including four of the five plaintiffs (Boucher, Engebrecht, Wood, and Whelan), on or before Wednesday, February 13. Walleshauser Dec., ¶ 13. | Plaintiffs' response does not specifically or appropriately dispute this articulated fact as related to Ms. Walleshauser's receipt of written statements from the four students specified, and does not cite to any admissible evidence that contravenes the fact as articulated by Canisius; plaintiffs' response instead contains superfluous and inaccurate allegations irrelevant to the fact as articulated. |
| 26. | Tuhovak did not respond to this request. Ms. Walleshauser later asked Tuhovak, on March 19, 2019, to submit a statement, but Tuhovak never responded to this request, either, and she never | Plaintiffs' response does not specifically or appropriately dispute these articulated facts as related to Ms. Tuhovak's failure to respond to Ms. Walleshauser's February 11 request for a written statement, or to the fact |

|  | submitted a written statement to Ms. Walleshauser. Ex. 3 at 183:19-184:1; Ex. 6 at 55:22-56:7; Ex. 59; Walleshauser Dec., ¶¶ 13, 31. | that Ms. Tuhovak never supplied the written statement as requested, and does not cite to any admissible evidence that contravenes those facts as articulated by Canisius; plaintiffs' response instead contains superfluous allegations irrelevant to the facts as articulated. |
|---|---|---|
| 27. | On February 11, after the group meeting with the students, Ms. Walleshauser notified the College's President, John Hurley, about their reports. Walleshauser Dec., ¶ 14. | Plaintiffs' response does not specifically or appropriately dispute this articulated fact as related to Ms. Walleshauser's February 11 notification to President Hurley regarding the student reports, and does not cite to any admissible evidence that contravenes the fact as articulated by Canisius; plaintiffs' response instead contains superfluous allegations irrelevant to the fact as articulated. |
| 28. | That same day, and over the next several days, Ms. Walleshauser also met with other senior College officials about these student reports, including Dr. Margaret McCarthy, the College's Vice President for Academic Affairs (and the College's most senior academic officer), as well as Dr. Peter Schaber, the Dean of the College of Arts and Sciences at Canisius. Walleshauser Dec., ¶ 14. | Plaintiffs' response does not specifically or appropriately dispute these articulated facts as related to meetings occurring between Ms. Walleshauser and other University officials, including Vice President McCarthy and Dean Schaber, on and in the days immediately after February 11, and does not cite to any admissible evidence that contravenes those facts as articulated by Canisius; plaintiffs' response instead contains superfluous allegations irrelevant to the facts as articulated. |
| 29. | As of Thursday, February 14 (the day after the student interviews concluded), Ms. Walleshauser and other senior College officials determined that Canisius would place Noonan on involuntary leave, relieve him of all teaching and academic responsibilities, and direct that he neither visit campus unescorted, nor contact any Canisius student in any way as the investigation proceeded. Walleshauser Dec., ¶ 15. | Plaintiffs' response does not specifically or appropriately dispute the fact as set forth by the University that as of Thursday, February 14, 2019, senior College officials determined that Canisius would place Noonan on involuntary leave as the investigation proceeded, and does not cite to any admissible evidence that contravenes the fact as articulated by Canisius; plaintiffs' response instead contains superfluous and inaccurate allegations irrelevant to the fact as articulated. |
| 31. | By February 15, Ms. Walleshauser confirmed that Noonan was traveling with friends out of the area, was not with students, and was not scheduled to return to campus until the morning of Thursday, February 21. Walleshauser Dec., ¶ 16. | Plaintiffs' response does not specifically or appropriately dispute these articulated facts as related to Ms. Walleshauser's confirmation that Dr. Noonan was not traveling with students, and was not scheduled to return to campus before February 21, 2019, and does not cite to any admissible evidence that contravenes those facts as articulated by Canisius; plaintiffs' response instead contains superfluous allegations irrelevant to the facts as articulated. |
| 32. | On Friday, February 15, Dr. Margulis confirmed with Dr. Hogan that the lecture for Noonan's | Plaintiffs' response does not specifically or appropriately dispute this articulated fact as related to |

| | | |
|---|---|---|
| | "Social Organization of Mammals" course would be taken over by Dr. Malini Suchak. Ex. 8 at 109:10-13; Walleshauser Dec., ¶ 22. | Dr. Margulis's decision to assign Dr. Suchak to take over the Social Organization of Mammals course from Dr. Noonan, and does not cite to any admissible evidence that contravenes the fact as articulated by Canisius; plaintiffs' response instead contains superfluous and inaccurate allegations irrelevant to the fact as articulated. *See also* Exhibit 65 [Canisius 01689], submitted herewith. |
| 33. | As of February 15, Dr. Margulis and Dr. Suchak also had agreed to divide coverage of the lab portion of the Social Organization of Mammals course that Noonan was teaching that semester. Ex. 8 at 108:8-19; Walleshauser Dec., ¶ 22. | Plaintiffs' response does not specifically or appropriately dispute this articulated fact as to Dr. Margulis and Dr. Suchak having agreed to share responsibility for covering the lab portion of the Social Organization of Mammals course previously taught by Dr. Noonan, and does not cite to any admissible evidence that contravenes the fact as articulated by Canisius; plaintiffs' response instead contains superfluous and inaccurate allegations irrelevant to the fact as articulated. *See also* Exhibit 65 [Canisius 01689], submitted herewith. |
| 34. | As of that date the University was about to commence its Presidents' Day Break, and there would be no classes on Monday, February 18 and Tuesday, February 19. Ex. 34. | Plaintiffs' response does not specifically or appropriately dispute this articulated fact as related to the University's academic calendar in 2019, and does not cite to any admissible evidence that contravenes the fact as articulated by Canisius; plaintiffs' response instead contains superfluous allegations irrelevant to the fact as articulated. |
| 37. | Whelan responded via email, "That is a relief, and also I am very sorry. I should have clarified that for myself before emailing you. Thank you for getting back to me so quickly. I hope you can understand my concern when hearing (clearly a rumor) that he was with students. Thank you for everything you have done." Ex. 49. | Plaintiffs' response does not specifically or appropriately dispute these articulated facts as related to the language quoted from Ms. Whelan's email, and does not cite to any admissible evidence that contravenes those facts as articulated by Canisius; plaintiffs' response instead contains superfluous allegations irrelevant to the facts as articulated. |
| 38. | On February 15, Whelan took a screenshot of Ms. Walleshauser's email response and texted the screenshot to the Project Tiger students, including Boucher, Engebrecht, and Wood. Ex. 5 at 190:13-192:13; Ex. 35. | Plaintiffs' response does not specifically or appropriately dispute these articulated facts as related to the screenshot sent by Ms. Whelan to, among others, Ms. Boucher, Ms. Engebrecht, and Ms. Wood, and does not cite to any admissible evidence that contravenes those facts as articulated by Canisius; plaintiffs' response instead contains superfluous allegations irrelevant to the facts as articulated. |
| 44. | As a result of the February 21 meeting, Dr. McCarthy concluded that "the investigation needed to continue. We needed to continue to gather information and continue to learn more." Ex. 7 at 66:14-18. | Plaintiffs' response does not specifically or appropriately dispute this articulated fact as related to the conclusion of Dr. McCarthy that as of February 21, 2019 the investigation with respect to the allegations against Dr. Noonan needed to continue, and the |

| | | University needed to gather more information, and does not cite to any admissible evidence that contravenes the fact as articulated by Canisius; plaintiffs' response instead contains superfluous and inaccurate allegations irrelevant to the fact as articulated. |
|---|---|---|
| 47. | Dr. Hogan also invited the students to "meet with either Dr. Margulis or me to discuss how to proceed with your research projects and/or work on the documentaries." Walleshauser Dec., ¶ 24; Ex. 52. | Plaintiffs' response does not specifically or appropriately dispute this articulated fact as related to the content of the quoted communication from Dr. Hogan, and does not cite to any admissible evidence that contravenes the fact as articulated by Canisius; plaintiffs' response instead contains superfluous allegations irrelevant to the fact as articulated. |
| 51. | Boucher never had any contact with Noonan after February 14, 2019, and Noonan never communicated with Boucher electronically, via social media, or via the phone after February 14, 2019. Ex. 1 at 200:20-201:4. | Plaintiffs' response does not specifically or appropriately dispute these articulated facts as related to the absence of any contact or communication between Dr. Noonan and Ms. Boucher after February 14, 2019, and does not cite to any admissible evidence that contravenes those facts as articulated by Canisius; plaintiffs' response instead contains superfluous allegations irrelevant to the facts as articulated. |
| 52. | Engebrecht never saw Noonan, never spoke with Noonan, and never communicated in any way with Noonan on or after February 13, 2019, which is when she sent her written statement to Ms. Walleshauser. Ex. 2 at 141:2-10. | Plaintiffs' response does not specifically or appropriately dispute these articulated facts as related to the absence of any contact or communication between Dr. Noonan and Ms. Engebrecht after February 13, 2019, and does not cite to any admissible evidence that contravenes those facts as articulated by Canisius; plaintiffs' response instead contains superfluous and inaccurate allegations irrelevant to the facts as articulated. |
| 53. | After February 11, 2019, Tuhovak never saw Noonan in person again, never attended a class or lab session with Noonan, and never again spoke with Noonan. Ex. 3 at 199:3-13. | Plaintiffs' response does not specifically or appropriately dispute these articulated facts as related to the absence of any contact or communication between Dr. Noonan and Ms. Tuhovak after February 11, 2019, and does not cite to any admissible evidence that contravenes those facts as articulated by Canisius; plaintiffs' response instead contains superfluous and inaccurate allegations irrelevant to the facts as articulated. |
| 54. | Whelan never had any contact with Noonan after February 21, 2019, and Noonan never emailed her or reached out to her on social media after February 21. Ex. 4 at 241:16-242:1. | Plaintiffs' response does not specifically or appropriately dispute these articulated facts as related to the absence of any contact or communication between Dr. Noonan and Ms. Whelan after February 21, 2019, and does not cite to any admissible evidence that contravenes those facts as articulated by Canisius; plaintiffs' response instead contains superfluous and |

|  |  | inaccurate allegations irrelevant to the facts as articulated. |
|---|---|---|
| 58. | Dr. Margulis assigned Dr. Christy Hoffman to assist Noonan's research students with data analysis, and Dr. Hoffman also helped the students, including Tuhovak, prepare for Ignatian Scholarship Day presentations. Ex. 8 at 123:7-14; 236:14-17. | Plaintiffs' response does not specifically or appropriately dispute these articulated facts as related to the involvement of Dr. Hoffman in assisting students who had been working with Dr. Noonan on their data analysis and with their Ignatian Scholarship Day presentations, and does not cite to any admissible evidence that contravenes those facts as articulated by Canisius; plaintiffs' response instead contains superfluous and inaccurate allegations irrelevant to the facts as articulated. *See also* Exhibit 66, submitted herewith. |
| 59. | The ABEC faculty reassigned all Noonan's advisees, including Boucher, "within a day" of his February 21 suspension. Ex. 8 at 236:23-237:4; Ex. 9 at 94:8-22; Ex. 10 at 85:22-86:2. | Plaintiffs' response does not specifically or appropriately dispute this articulated fact as related to the reassignment of students who had been advised by Dr. Noonan to other advisors within a day of his February 21, 2019 suspension, and does not cite to any admissible evidence that contravenes the fact as articulated by Canisius; plaintiffs' response instead contains superfluous and inaccurate allegations irrelevant to the fact as articulated. |
| 60. | On February 21, Wood requested and was granted a one-day extension by Professor Miranda Workman to submit a paper. Ex. 20. | Plaintiffs' response does not specifically or appropriately dispute this articulated fact as related to the accommodation granted to Ms. Wood by Dr. Workman, and does not cite to any admissible evidence that contravenes the fact as articulated by Canisius; plaintiffs' response instead contains superfluous allegations irrelevant to the fact as articulated. |
| 64. | Dr. Sara Morris led a trip to California starting on April 16, 2019 with another student group, who previously had committed to that trip with Noonan. Walleshauser Dec., ¶ 23; Ex. 53. | Plaintiffs' response does not specifically or appropriately dispute these articulated facts as related to Dr. Morris agreeing to lead a student trip to California in April 2019 in place of Dr. Noonan, and does not cite to any admissible evidence that contravenes those facts as articulated by Canisius; plaintiffs' response instead contains superfluous and inaccurate allegations irrelevant to the facts as articulated. |
| 67. | Dr. Margulis and Dr. Russell did not have the skills to edit and complete a video documentary. Ex. 8 at 131:10-16; Ex. 10 at 93:9-13. | Plaintiffs' response does not specifically or appropriately dispute these articulated facts as related to the inexperience of Dr. Margulis and Dr. Russell in editing and completing video documentaries, and does not cite to any admissible evidence that contravenes those facts as articulated by Canisius; plaintiffs' response instead contains superfluous allegations irrelevant to the facts as articulated |

| | | |
|---|---|---|
| 69. | Dr. Margulis and Dr. Russell therefore suggested, instead of a video using the footage taken in India, a series of educational podcasts. Ultimately, the Project Tiger students completed a series of podcasts titled, "Canisius Conservation Conversations." Ex. 8 at 131:22-132:9; *see also* Ex. 1 at 214:2-15; Ex. 10 at 101:3-5. | Plaintiffs' response does not specifically or appropriately dispute these articulated facts as related to the suggestion of Dr. Margulis and Dr. Russell that the students in the Project Tiger course complete a series of podcasts instead of a video film, and does not cite to any admissible evidence that contravenes those facts as articulated by Canisius; plaintiffs' response instead contains superfluous allegations irrelevant to the facts as articulated. *See also* Exhibit 19. |
| 70. | Boucher and Wood added their work on the Project Tiger podcasts to their resumes. Ex. 5 at 215:16-19; Ex. 36. | Plaintiffs' response does not specifically or appropriately dispute these articulated facts as related to addition by Ms. Wood on her resume of her work on the Project Tiger podcasts, and does not cite to any admissible evidence that contravenes those facts as articulated by Canisius. Ms. Boucher's resume also claims credit as the "Editor and Host, Canisius College" of a podcast starting in January 2019 (Ex. 36), which is when the ABEC 490 [Project Tiger] course commenced. |
| 72. | On July 15, 2019, Dr. Margulis offered Boucher a job for the following academic year, to be the host and engineer of additional ABEC Department podcasts. Ex. 22. | Plaintiffs' response does not specifically or appropriately dispute this articulated fact as related to offer made by Dr. Margulis to Ms. Boucher for a job, during the 2019-2020 academic year, to be the host and engineer of additional ABEC podcasts, and does not cite to any admissible evidence that contravenes the fact as articulated by Canisius; plaintiffs' response instead contains superfluous allegations irrelevant to the fact as articulated |
| 73. | Boucher, Engebrecht, Whelan, and Wood earned three credits for completing the Project Tiger course in the Spring of 2019. Ex. 41. | Plaintiffs' response does not specifically or appropriately dispute these articulated facts as related to the academic credit received by Ms. Boucher, Ms. Engebrecht, Ms. Whelan, and Ms. Wood for completion of the Project Tiger course in 2019, and does not cite to any admissible evidence that contravenes those facts as articulated by Canisius; plaintiffs' response instead contains superfluous and inaccurate allegations irrelevant to the facts as articulated.<br><br>Plaintiffs incorrectly assert that each received an "Incomplete" grade for that course ("ABEC 490") in the Spring of 2019. However, plaintiffs' transcripts plainly state, "An (I) listed at the end of the course will indicate that a course has been repeated and included in the GPA calculation." *See* Ex. 41 at Canisius 06861. Ms. Engebrecht, Ms. Whelan, and Ms. Wood thus have an "I" next to ABEC 490 because they completed ABEC |

| | | |
|---|---|---|
| | | 490 in previous semesters. *See* Ex. 41 at Canisius 06866, 06876, 06880. Ms. Boucher received no "I" designation for ABEC 490 because she enrolled in the course only once. *See* Ex. 41 at Canisius 06860. |
| 74. | Each of those plaintiffs earned an "A" in the course. Ex. 41. | Plaintiffs' response does not specifically or appropriately dispute these articulated facts as related to the grades received by Ms. Wood, Ms. Engebrecht, Ms. Whelan, and Ms. Boucher in the Project Tiger course, and does not cite to any admissible evidence that contravenes those facts as articulated by Canisius; plaintiffs' response instead contains superfluous allegations irrelevant to the facts as articulated. |
| 76. | Boucher's Spring 2019 GPA was a 3.94, Engebrecht's Spring 2019 GPA was a 3.87, Tuhovak's Spring 2019 GPA was a 4.0, Whelan's Spring 2019 GPA was a 4.0, and Wood's Spring 2019 GPA was a 3.81. Ex. 41. | Plaintiffs' response does not specifically or appropriately dispute these articulated facts as related to the students' grade point averages earned during the Spring 2019 semester, and does not cite to any admissible evidence that contravenes those facts as articulated by Canisius; plaintiffs' response instead contains superfluous and inaccurate allegations irrelevant to the facts as articulated. *See also* the University's Reply to Response No. 73, *supra*. |
| 78. | By Thursday, February 28, Ms. Walleshauser met individually with and collected statements from four faculty members—Dr. Hoffman, Dr. Margulis, Dr. Russell, and Dr. Suchak. Walleshauser Dec., ¶ 29; Ex. 57; Ex. 63; *see also* Ex. 6 at 77:19-78:7. | Plaintiffs' response does not specifically or appropriately dispute these articulated facts as related to the meetings Ms. Walleshauser held with Drs. Hoffman, Margulis, Russell and Suchak in which each made statements to her, and does not cite to any admissible evidence that contravenes those facts as articulated by Canisius; plaintiffs' response instead contains superfluous and inaccurate allegations irrelevant to the facts as articulated. |
| 79. | On Wednesday, March 13, Ms. Walleshauser met with Noonan for a second time to review the additional allegations from the faculty. Walleshauser Dec., ¶ 32; Ex. 6 at 80:20-81:7; 82:6-13; Ex. 63. | Plaintiffs' response does not specifically or appropriately dispute this articulated fact as related to the meeting held by Ms. Walleshauser with Dr. Noonan, during which she reviewed with him additional allegations made by the faculty, and does not cite to any admissible evidence that contravenes the fact as articulated by Canisius; plaintiffs' response instead contains superfluous allegations irrelevant to the fact as articulated. |
| 83. | After a group meeting with the student complainants on April 26, 2019, Ms. | Plaintiffs' response does not specifically or appropriately dispute these articulated facts as related to |

| | | |
|---|---|---|
| | Walleshauser sent weekly e-mail updates to the students on April 29, May 6, May 13, May 20, May 28, and June 11. Walleshauser Dec., ¶¶ 33-35; Ex. 60. | the updates sent by Ms. Walleshauser to the student complainants on the specified dates, and does not cite to any admissible evidence that contravenes those facts as articulated by Canisius; plaintiffs' response instead contains superfluous allegations irrelevant to the facts as articulated |
| 84. | After President Hurley and Dr. McCarthy "made the decision to terminate Noonan's employment with Canisius," the "discussions were largely between attorneys[.]" Ex. 7 at 100:1-5. | Plaintiffs' response does not specifically or appropriately dispute these articulated facts as related to the shift of the discussions to counsel after Dr. Noonan retained an established New York City law firm to represent him, and does not cite to any admissible evidence that contravenes those facts as articulated by Canisius; plaintiffs' response instead contains superfluous and inaccurate allegations irrelevant to the facts as articulated. |
| 87. | Boucher also responded to Ms. Walleshauser via email on June 21, 2019, ostensibly on behalf of the complainant group, stating, "Thank you for your help along this process. *We really appreciate the work you and Canisius College have put in regarding our concerns*. I would like to access the footage, if possible over the summer. I am so excited to be able to work on this film. Thank you." Walleshauser Dec., ¶ 36; Ex. 61 (emphasis supplied). | Plaintiffs' response does not specifically or appropriately dispute these articulated facts as related to the content of Ms. Boucher's June 21, 2019 email to Ms. Walleshauser, or the language quoted from Ms. Boucher's email, and does not cite to any admissible evidence that contravenes those facts as articulated by Canisius; plaintiffs' response instead contains superfluous allegations irrelevant to the facts as articulated. |
| 88. | Six student complainants, including Boucher, Engebrecht, Whelan, and Wood, were juniors and sophomores during the Project Tiger trip, but Boucher was the only student who chose to access the video footage from the India trip. Ex. 1 at 233:9-13; Ex. 2 at 158:11-14; Ex. 4 at 261:20-264:20. | Plaintiffs' response does not specifically or appropriately dispute these articulated facts as related to the fact that of the six students on the Project Tiger trip to India who were then in their sophomore or junior year at Canisius, only Ms. Boucher chose to access the video footage from the India trip, and does not cite to any admissible evidence that contravenes those facts as articulated by Canisius; plaintiffs' response instead contains superfluous and inaccurate allegations irrelevant to the facts as articulated. |
| 89. | Dr. Hoffman shared with Ms. Walleshauser that she had previously met with Jennifer Skowron, the Assistant Director of Human Resources, on September 4, 2014. Ex. 57. | Plaintiffs' response does not specifically or appropriately dispute this articulated fact as related to the discussion between Dr. Hoffman and Ms. Walleshauser, during which Dr. Hoffman claimed she had met with Jennifer Skowron on September 4, 2014, and does not cite to any admissible evidence that contravenes the fact as articulated by Canisius; plaintiffs' response instead contains superfluous allegations irrelevant to the facts as articulated. |

| | | |
|---|---|---|
| 90. | Dr. Hoffman claimed to have met with Ms. Skowron because she was "pregnant and was wanting to let HR know about this and that [she] was concerned about [Noonan] using that as a reason to hug [her] or touch [her] stomach. Once [Ms. Skowron] knew of this concern, she immediately directed [Dr. Hoffman] to Deborah Winslow-Schaber's office (the head of HR at the time)." Ex. 57. | Plaintiffs' response does not specifically or appropriately dispute these articulated facts as related to the discussion between Dr. Hoffman and Ms. Walleshauser, during which Dr. Hoffman made the statement as recorded, and does not cite to any admissible evidence that contravenes those facts as articulated by Canisius; plaintiffs' response instead contains superfluous allegations irrelevant to the facts as articulated. |
| 91. | Dr. Hoffman did not claim that Noonan had in fact touched her stomach area during her pregnancy. Ex. 57. | Plaintiffs' response does not specifically or appropriately dispute this articulated fact as related to the absence of any claim by Dr. Hoffman that Dr. Noonan had actually touched her stomach, and does not cite to any admissible evidence that contravenes the fact as articulated by Canisius; plaintiffs' response instead contains superfluous allegations irrelevant to the fact as articulated. |
| 93. | Ms. Walleshauser also was told that Dr. Suchak and Dr. Russell met with Dr. Elizabeth Gill, the former Dean of the College of Arts and Sciences, in October of 2017 to discuss the "misuse of funds" and "concerns . . . regarding Dr. Noonan and the quality of student experience on trips after hearing concerns from students." Ex. 7 at 17:11-19:5; Ex. 10 at 42:1643:13; Ex. 57. | Plaintiffs' response does not specifically or appropriately dispute these articulated facts as related to discussions with Ms. Walleshauser in which she was told of a meeting in October 2017 between Dr. Russell, Dr. Suchak and Dean Gill, during which the topics identified were raised, and does not cite to any admissible evidence that contravenes those facts as articulated by Canisius; plaintiffs' response instead contains superfluous and inaccurate allegations irrelevant to the facts as articulated. |
| 94. | At the October 2017 meeting, Dr. Russell and Dr. Suchak shared with Dr. Gill that the "student concerns" were related primarily to a recent trip to Antarctica, where they reported Noonan was missing for periods of time, and asked students to get "too close to animals," even after various guides told them not to do so. They also discussed the nature of physical fitness tests Noonan used as part of the application process for trips. Ex. 9 at 40:10-41:22; Ex. 10 at 41:15-42:3. | Plaintiffs' response does not specifically or appropriately dispute these articulated facts as related to discussions with Ms. Walleshauser in which she was told of a meeting in October 2017 between Dr. Russell, Dr. Suchak and Dean Gill, during which the topics identified were discussed, and does not cite to any admissible evidence that contravenes those facts as articulated by Canisius; plaintiffs' response instead contains superfluous and inaccurate allegations irrelevant to the facts as articulated. |
| 96. | Dr. Suchak also claimed that she had met with Dr. McCarthy in April 2018 to discuss the use of ABEC Department funds for certain expenses. Ex. 7 at 17:22-18:8; Ex. 9 at 42:7-12. | Plaintiffs' response does not specifically or appropriately dispute these articulated facts as related to discussions with Ms. Walleshauser in which she was told of a meeting in April 2018 between Dr. Suchak and Dr. McCarthy, during which Dr. Suchak claimed that they discussed the use of ABEC Department funds for certain expenses, and does not cite to any admissible evidence that contravenes those facts as articulated by |

| | | Canisius; plaintiffs' response instead contains superfluous allegations irrelevant to the facts as articulated. |
|---|---|---|
| 97. | After the April 2018 meeting, Dr. McCarthy responded by working with the University's controller to review the account. Ex. 7 at 18:13-18; Ex. 9 at 42:7-12. | Plaintiffs' response does not specifically or appropriately dispute these articulated facts as related to Dr. McCarthy's work with the Canisius Controller, after the April 2018 meeting, to review the ABEC account, and does not cite to any admissible evidence that contravenes those facts as articulated by Canisius; plaintiffs' response instead contains superfluous and inaccurate allegations irrelevant to the facts as articulated. |
| 98. | Dr. McCarthy also thereafter monitored the account herself, and did not recall "ever receiving any information back from [the controller] that there was a problem." Ex. 7 at 18:19-21. | Plaintiffs' response does not specifically or appropriately dispute these articulated facts as related to Dr. McCarthy's monitoring of the ABEC account, and not having been informed by the Controller of any problems with that account, and does not cite to any admissible evidence that contravenes those facts as articulated by Canisius; plaintiffs' response instead contains superfluous and inaccurate allegations irrelevant to the facts as articulated. |
| 99. | Dr. Tanya Loughead, a Philosophy professor, claims that she met with Noonan in "about 2008 or 2009," and during the meeting Noonan was "pacing and yelling and acting erratic." Ex. 13 at 5:10-21; 20:12-17; 24:5-8. | Plaintiffs' response does not specifically or appropriately dispute these articulated facts as related to the time in 2008 or 2009 that Dr. Loughead claimed to have met Dr. Noonan, or his behavior during that meeting as described by Dr. Loughead, and does not cite to any admissible evidence that contravenes those facts as articulated by Canisius; plaintiffs' response instead contains superfluous allegations irrelevant to the facts as articulated. |
| 101. | Dr. Loughead claims that she notified Dr. George Boger, the Chair of the Philosophy Department, about the events at this meeting. She notified no one else, and did not file a complaint. Ex. 13 at 24:5-8; 28:2-16. | Plaintiffs' response does not specifically or appropriately dispute these articulated facts as related to Dr. Loughead's discussions with Dr. Boger, that she notified no one else at the College with respect to Dr. Noonan's behavior at the referenced meeting, or that she did not file a complaint with respect to such meeting, and does not cite to any admissible evidence that contravenes those facts as articulated by Canisius; plaintiffs' response instead contains superfluous and inaccurate allegations irrelevant to the facts as articulated. |
| 103. | During the Faculty Senate meeting, Dr. Loughead claims that Noonan was "unbelievably sadistic" and "cruel" to Sister Pat, by "yelling at her." Ex. 13 at 26:4-7. | Plaintiffs' response does not specifically or appropriately dispute these articulated facts as related to Dr. Loughead's description of Noonan's behavior during the referenced meeting of the Faculty Senate, and does not cite to any admissible evidence that |

| | | contravenes those facts as articulated by Canisius; plaintiffs' response instead contains superfluous and inaccurate allegations irrelevant to the facts as articulated. |
|---|---|---|
| 104. | Dr. Loughead claims that she notified Dr. Patricia Erickson, the former Dean of the College of Arts & Sciences, about this event, also in 2014 or 2015. Ex. 13 at 27:4-17. | Plaintiffs' response does not specifically or appropriately dispute this articulated fact as related to communications with Dean Erickson regarding the referenced Faculty Senate meeting, and does not cite to any admissible evidence that contravenes the fact as articulated by Canisius; plaintiffs' response instead contains superfluous and inaccurate allegations irrelevant to the facts as articulated. |
| 105. | Dr. Loughead agreed that Dr. Noonan was "a bully to both men and women." Ex. 13 at 67:13-15. | Plaintiffs' response does not specifically or appropriately dispute this articulated fact as related to Dr. Loughead's claim that Dr. Noonan was "a bully to both men and women," and does not cite to any admissible evidence that contravenes the fact as articulated by Canisius; plaintiffs' response instead contains superfluous allegations irrelevant to the facts as articulated. |
| 106. | Dr. Margulis met with Tuhovak in her office, on March 13, 2018. Ex. 3 at 126:5-7; Ex. 23. | Plaintiffs' response does not specifically or appropriately dispute this articulated fact as related to the date and place of Ms. Tuhovak's March 2018 meeting with Dr. Margulis, and does not cite to any admissible evidence that contravenes the fact as articulated by Canisius; plaintiffs' response instead contains superfluous allegations irrelevant to the fact as articulated. |
| 110. | Tuhovak testified that she did not use the words "sex discrimination" at the March 13, 2018 meeting with Dr. Margulis, purportedly because she "didn't have the vocabulary at that point in time." Ex. 3 at 129:1-6. | Plaintiffs' response does not specifically or appropriately dispute these articulated facts as related to Ms. Tuhovak's testimony that she did not use the term "sex discrimination" during her March 2018 meeting with Dr. Margulis, and does not cite to any admissible evidence that contravenes those facts as articulated by Canisius; plaintiffs' response instead contains superfluous and inaccurate allegations irrelevant to the facts as articulated. |
| 111. | She posited at her deposition that, in her opinion, "It should have been obvious," and "It should have been on" Dr. Margulis to "be able to pick up on these little tells." Ex. 3 at 129:1-15. | Plaintiffs' response does not specifically or appropriately dispute these articulated facts as related to Ms. Tuhovak's testimony, in which the quoted statements were made, and does not cite to any admissible evidence that contravenes those facts as articulated by Canisius; plaintiffs' response instead contains superfluous and inaccurate allegations irrelevant to the facts as articulated. |

| | | |
|---|---|---|
| 112. | In spite of the advice Dr. Margulis gave Tuhovak, to leave Noonan's research team, she chose not to do so. Tuhovak thus remained on Noonan's research team until his suspension and ultimate separation from Canisius. Ex. 3 at 70:21-22. | Plaintiffs' response does not specifically or appropriately dispute these articulated facts as related to Ms. Tuhovak's choice to remain on Dr. Noonan's research team although Dr. Margulis advised Tuhovak of her option to leave, and does not cite to any admissible evidence that contravenes those facts as articulated by Canisius; plaintiffs' response instead contains superfluous allegations irrelevant to the facts as articulated. |
| 113-116. | On December 12, 2018, Dr. Margulis met with another student, Student 2, who Dr. Margulis recalled having "some complaints about certain topics that Dr. Noonan lectured on in his class," Sex, Evolution, and Behavior. Ex. 8 at 41:7-22; Ex. 57.<br><br>Student 2 said that she "felt that [the topics] were a little intrusive and personal." Ex. 8 at 41:18-42:5.<br><br>At the December 12, 2018 meeting, Student 2 "indicated that much of a class period was spent looking at pictures of men and being asked to rate them. Students who self-identified as LGBTQ were especially called on for their opinions." Ex. 57.<br><br>At the December 12, 2018 meeting, Student 2 also shared with Dr. Margulis that Noonan "does an anonymous survey about sexual partners[.]" Ex. 8 at 43:3-11; Ex. 57 | Plaintiffs' response does not specifically or appropriately dispute these articulated facts as related to the December 12, 2018 meeting between Dr. Margulis and Student 2, and does not cite to any admissible evidence that contravenes those facts as articulated by Canisius; plaintiffs' response instead contains superfluous and inaccurate allegations irrelevant to the facts as articulated. |
| 118. | Dr. Margulis advised Student 2 that she could file an anonymous bias report. Ex. 57 at 01933. | Plaintiffs' response does not specifically or appropriately dispute this articulated fact as related to Dr. Margulis's advice to Student 2 that she could file an anonymous bias report with the University, and does not cite to any admissible evidence that contravenes the fact as articulated by Canisius; plaintiffs' response instead contains superfluous allegations irrelevant to the fact as articulated. |
| 119. | Student 3 is a former Canisius student, who transferred to Canisius in 2010 or 2011 and took Dr. Noonan's Social Organization of Mammals course and lab. Ex. 12 at 6:4-14; 20:1923. | Plaintiffs' response does not specifically or appropriately dispute these articulated facts as related to the approximate date Student 3 matriculated at Canisius, or that upon matriculating she took Dr. Noonan's Social Organization of Mammals course, and does not cite to any admissible evidence that contravenes those facts as articulated by Canisius; plaintiffs' response instead |

| | | contains superfluous allegations irrelevant to the facts as articulated |
|---|---|---|
| 121. | Student 3 testified that Noonan "walked over to" the student and "took [the student's] legs and he put them up over her head[,]" which lasted about "five or ten seconds." Ex. 12 at 15:6-11. | Plaintiffs' response does not specifically or appropriately dispute these articulated facts as related to Student 3's testimony that Dr. Noonan purportedly took a student's legs and put them over her head during a bus trip to the Pittsburgh Zoo, and does not cite to any admissible evidence that contravenes those facts as articulated by Canisius; plaintiffs' response instead contains superfluous and inaccurate allegations irrelevant to the facts as articulated |
| 122. | Student 3 claims that she reported the Pittsburgh Zoo incident to two unidentified "Deans" at some point in 2011. Ex. 12 at 26:18-27:16. | Plaintiffs' response does not specifically or appropriately dispute these articulated facts as related to Student 3 claiming to have discussed the encounter on the bus trip to the Pittsburgh Zoo with two deans she did not identify, and does not cite to any admissible evidence that contravenes those facts as articulated by Canisius; plaintiffs' response instead contains superfluous and inaccurate allegations irrelevant to the facts as articulated. |
| 123. | As part of the Social Organization of Mammals course, Student 3 further testified that she was "required" to observe Dr. Noonan "break [the] necks" of lab rats. Ex. 12 at 18:3-15. | Plaintiffs' response does not specifically or appropriately dispute these articulated facts as related to the events Student 3 alleges she was required to observe as part of Dr. Noonan's Social Organization of Mammals course, or the quoted passages from Student 3's deposition, and does not cite to any admissible evidence that contravenes those facts as articulated by Canisius; plaintiffs' response instead contains superfluous allegations irrelevant to the facts as articulated. |
| 124. | Student 3 claims that she spoke with Dr. Margulis, the College's newspaper, and an unidentified "Dean of Students" in 2010 or 2011 about how Dr. Noonan would "break the necks" of the rats. Ex. 12 at 23:13-25:19. | Plaintiffs' response does not specifically or appropriately dispute these articulated facts as related to Student 3's testimony in which she claimed to have engaged in discussion of the events involving rats in Dr. Noonan's Social Organization of Mammals course with the College's newspaper and an unidentified Dean, or the quoted passages from Student 3's deposition, and does not cite to any admissible evidence that contravenes those facts as articulated by Canisius; plaintiffs' response instead contains superfluous allegations irrelevant to the facts as articulated. |
| 125. | Cervical dislocation is a "common form of euthanasia" used in neuroscience experiments, which is research that Noonan had conducted. Ex. 9 at 70:2-19. | Plaintiffs' response does not specifically or appropriately dispute these articulated facts as related to the practice of cervical dislocation of rats used in certain forms of neuroscientific experimentation, or the quoted passage from Dr. Suchak's deposition, and does not cite |

| | | |
|---|---|---|
| | | to any admissible evidence that contravenes those facts as articulated by Canisius; plaintiffs' response instead contains superfluous and inaccurate allegations irrelevant to the facts as articulated. |
| 126. | A neuroscientist must "have a mechanism to kill the animal quickly and humanely and also be able to get the brain tissue quickly." Ex. 9 at 71:3-6. | Plaintiffs' response does not specifically or appropriately dispute these articulated facts as related to the practice of cervical dislocation of rats used in certain forms of neuroscientific experimentation, or the quoted passage from Dr. Suchak's deposition, and does not cite to any admissible evidence that contravenes those facts as articulated by Canisius; plaintiffs' response instead contains superfluous allegations irrelevant to the facts as articulated. |
| 127. | Faculty are not required to submit student course evaluations as part of their annual review, and a faculty member may opt out of collecting student evaluations. Ex. 10 at 131:4-19; Young Declaration at ¶¶ 5-6. | Plaintiffs' response does not specifically or appropriately dispute these articulated facts as related to the practice of allowing faculty at the University to opt out of collecting student evaluations at the conclusion of courses they teach, and does not cite to any admissible evidence that contravenes those facts as articulated by Canisius; plaintiffs' response instead contains superfluous and inaccurate allegations irrelevant to the facts as articulated. |
| 130. | Other Canisius employees and administrators, including the Dean of the College of Arts & Sciences, did not have access to any course evaluations for Noonan's courses. Young Declaration at 117, 11-12. | Plaintiffs' response does not specifically or appropriately dispute these articulated facts as related to the lack of access that senior College administrators, including the Dean of the College of Arts and Sciences, had to Dr. Noonan's course evaluations, and does not cite to any admissible evidence that contravenes those facts as articulated by Canisius; plaintiffs' response instead contains superfluous and inaccurate allegations irrelevant to the facts as articulated. |
| 131. | One anonymous student wrote in the evaluation of Noonan's Fall 2018 course, BIO 317: Sex, Evolution, and Behavior, that in her opinion he "is degrading to his female and male students and makes the most inappropriate comments." Ex. 37 at 06937. | Plaintiffs' response does not specifically or appropriately dispute these articulated facts as related to the content of the referenced student evaluation, or the quoted portion of that evaluation, and does not cite to any admissible evidence that contravenes those facts as articulated by Canisius; plaintiffs' response instead contains superfluous allegations irrelevant to the facts as articulated. |
| 132. | Dr. Margulis wrote letters of recommendation, and agreed to be a reference in support of Sierra Boucher's various summer internship applications in 2020 and 2021. Ex. 42. | Plaintiffs' response does not specifically or appropriately dispute these articulated facts as related to the agreement of Dr. Margulis to serve as a reference for Ms. Boucher with respect to various summer internships in 2020 and 2021, and does not cite to any admissible evidence that contravenes those facts as articulated by Canisius; plaintiffs' response instead contains |

|  |  | superfluous allegations irrelevant to the facts as articulated. |
|---|---|---|
| 133. | Dr. Robin Foster wrote nine letters of recommendation in support of Boucher's applications for master's degree programs, summer internships, and fellowships from 2021 through 2023. Ex. 43. | Plaintiffs' response does not specifically or appropriately dispute these articulated facts as related to the fact that Dr. Foster wrote letters of recommendation for Ms. Boucher in support of her applications to nine masters' programs, summer internships and fellowships between 2021 and 2023, and does not cite to any admissible evidence that contravenes the facts as articulated by Canisius; plaintiffs' response instead contains superfluous allegations irrelevant to those facts as articulated. |
| 134. | Dr. Suchak wrote five letters of recommendation in support of Boucher's applications for master's degree programs in 2022. Ex. 25. | Plaintiffs' response does not specifically or appropriately dispute these articulated facts as related to the fact that Dr. Suchak wrote letters of recommendation for Ms. Boucher in support of her applications to five masters' degree programs in 2022, and does not cite to any admissible evidence that contravenes those facts as articulated by Canisius; plaintiffs' response instead contains superfluous allegations irrelevant to the facts as articulated. |
| 136. | Dr. Margulis wrote to Boucher that she "would be willing to make an exception" to help Boucher avoid taking nineteen credits during her last semester at Canisius. Ex. 24. | Plaintiffs' response does not specifically or appropriately dispute this articulated fact as related to the fact that Dr. Margulis afforded Ms. Boucher an exception that allowed Ms. Boucher to avoid the obligation to take 19 credits during her last semester at the University, and does not cite to any admissible evidence that contravenes the fact as articulated by Canisius; plaintiffs' response instead contains superfluous allegations irrelevant to the fact as articulated. |
| 138. | In November 2019, Dr. Russell assisted Engebrecht with her senior thesis, and offered to be her thesis supervisor. Ex. 26; Ex. 10 at 107:3-11. | Plaintiffs' response does not specifically or appropriately dispute these articulated facts as related to the offer Dr. Russell made to Ms. Engebrecht to be her senior thesis supervisor, or that Dr. Russell provided assistance to Ms. Engebrecht in connection with that thesis, and does not cite to any admissible evidence that contravenes those facts as articulated by Canisius; plaintiffs' response instead contains superfluous allegations irrelevant to the facts as articulated. |
| 142. | Engebrecht never asked an ABEC or Biology faculty member for a letter of recommendation. Engebrecht at 179:17-21. | Plaintiffs' response does not specifically or appropriately dispute this articulated fact as related to Ms. Engebrecht never having asked any faculty member in the University's ABEC or Biology Department for a letter of recommendation, and does not cite to any admissible evidence that contravenes the fact as |

| | | articulated by Canisius; plaintiffs' response instead contains superfluous allegations irrelevant to the fact as articulated. |
|---|---|---|
| 143. | After Engebrecht graduated, she posted on her Facebook page that stated she "benefited from all of the wonderful mentors and faculty" during her years at Canisius. Ex. 29. | Plaintiffs' response does not specifically or appropriately dispute this articulated fact as related to the quoted language Ms. Engebrecht posted publicly on her Facebook page in 2020, and does not cite to any admissible evidence that contravenes the fact as articulated by Canisius; plaintiffs' response instead contains superfluous allegations irrelevant to the fact as articulated. |
| 148. | Whelan's ABEC advisor was Dr. Russell, but she never sought advice from Dr. Russell about graduate school or life after Canisius. Ex. 10 at 116:21-117:1; Ex. 4 at 255:10-17. | Plaintiffs' response does not specifically or appropriately dispute this articulated fact as related to the fact that Ms. Whelan never sought advice from Dr. Russell about graduate school, or life after Canisius, and does not cite to any admissible evidence that contravenes the fact as articulated by Canisius; plaintiffs' response instead contains superfluous allegations irrelevant to the fact as articulated. |
| 149. | Wood asked for and was granted a one-day extension to submit a paper for Professor Workman after Noonan's suspension. Ex. 20. | Plaintiffs' response does not specifically or appropriately dispute these articulated facts as related to the fact that Ms. Wood sought, and was granted, an extension from Dr. Workman to complete a paper after Dr. Noonan had been suspended from the University, and does not cite to any admissible evidence that contravenes those facts as articulated by Canisius; plaintiffs' response instead contains superfluous allegations irrelevant to the facts as articulated. |
| 150. | During the Spring 2019 semester, Dr. Russell encouraged Wood to apply for a research opportunity to earn money and gain more in-depth research experience. Ex. 45. | Plaintiffs' response does not specifically or appropriately dispute this articulated fact as related to the suggestion that was made by Dr. Russell to Ms. Wood that she apply for the referenced research opportunity, and does not cite to any admissible evidence that contravenes the facts as articulated by Canisius; plaintiffs' response instead contains superfluous allegations irrelevant to the fact as articulated. |
| 152. | Dr. Russell assisted Wood with a post-graduation job application in 2020. Ex. 31. | Plaintiffs' response does not specifically or appropriately dispute this articulated fact as related to the assistance provided to Ms. Wood by Dr. Russell in connection with a 2020 job application, and does not cite to any admissible evidence that contravenes the fact as articulated by Canisius; plaintiffs' response instead contains superfluous allegations irrelevant to the fact as articulated. |

Dated: March 10, 2025

**HODGSON RUSS LLP**

By: /s/ Thomas S. D'Antonio _____
       Thomas S. D'Antonio
       Christine M. Naassana

1800 Bausch & Lomb Place
Rochester, NY 14604
585.454.0700

*Attorneys for defendant Canisius University*